R. Jeremy Adamson (12818) (jadamson@kba.law)
Chad S. Pehrson (12622) (cpehrson@kba.law)
Robert P. Harrington (12541) (rharrington@kba.law)
Stephen Richards *(*19332*)* (srichards@kba.law)
**KUNZLER BEAN & ADAMSON, PC**
50 West Broadway Ste 1000
Salt Lake City Utah 84101
Telephone: (801) 994-4646

*Attorneys for Defendants, Counter Claimants and Third-Party Plaintiffs*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CAPANA SWISS ADVISORS AG, a Swiss corporation; AMERIMARK AUTOMOTIVE AG, a Swiss corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>RYMARK, INC., a Utah corporation; NICHOLAS THAYNE MARKOSIAN, an individual; JOHN KIRKLAND, an individual; and VICKY SMALL, an individual,<br><br>Defendants. | **OBJECTION TO MAGISTRATE JUDGE'S GRANTING OF MOTION TO SEAL**<br><br>Case No.: 2:23-cv-00467<br><br>Judge: Ted Stewart<br>Magistrate Judge: Cecilia M. Romero |
| RYMARK, INC., a Utah corporation; and NICHOLAS THAYNE MARKOSIAN, an individual,<br><br>Counter Claimants,<br><br>vs.<br><br>CAPANA SWISS ADVISORS AG, a Swiss corporation, and Amerimark Automotive AG, a Swiss Corporation,<br><br>Counter Defendants. | |

| |
|---|
| RYMARK, INC., a Utah corporation; and NICHOLAS THAYNE MARKOSIAN, an individual, |
| Third-Party Plaintiffs, |
| vs. |
| SHAEN BERNHARDT, an individual; ASHLEY MIRON LESHEM, an individual; DAVID HESTERMAN, an individual; NICOLAI COLSHORN, an individual; STEFAN KAMMERLANDER, an individual; ALEXANDER COENEN, an individual; MARTIN FASSER HEEG, an individual; AMERIMARK GROUP AG, a Swiss corporation; and PHILOMAXCAP AG, a German corporation, |
| Third-Party Defendants. |

I.   **RELIEF SOUGHT AND GROUNDS THEREFORE**

On July 13, 2024, Defendants Rymark, Inc. and Nicholas Markosian filed a motion for leave to file an amended counterclaim and third-party complaint. (Dkt. 107.) The amended counterclaim and third-party complaint (which this Court subsequently granted leave to file, Dkt. 137) describes a fraudulent scheme by Plaintiffs AmeriMark Automotive AG ("**AmeriMark Automotive**") and Capana Swiss Advisors AG ("**Capana**"), which were assisted by (among others) Third-Party Defendants Shaen Bernhardt, Miron Leshem, and David Hesterman. (*See* Dkt. 138.) The goal of the scheme was to use Rymark in a pump-and-dump securities fraud in Europe, and then to ultimately steal Rymark – a used car dealership – from Mr. Markosian. The draft Amended Counterclaim and Third-Party Complaint attached 38 exhibits documenting the fraud, which exhibits were primarily drawn from Plaintiffs' productions in this case.

2

Two days after the motion was filed, Plaintiffs contacted the Consents Clerk and requested that 18 of the exhibits be temporarily sealed. Then Plaintiffs filed a motion to indefinitely seal 17 of the exhibits on two grounds: the documents had "been designated as 'CONFIDENTIAL' pursuant to the parties' Protective Order" and the documents contained unspecified "confidential, sensitive and proprietary commercial information." (Dkt. 110 at 3.) Defendants opposed the motion. (Dkt. 115.)

On October 2, Magistrate Judge Romero held a hearing on several discovery motions and announced that she would also take up Plaintiffs' motion to seal. (Declaration of Chad S. Pehrson ("**Pehrson Decl.**") ¶ 2.) Judge Romero said she would not be "hearing argument" on any of the motions and granted Plaintiffs' motion to seal "for the reasons stated in the motion as to why each of the listed documents was designated confidential," concluding that "the request [was] narrowly tailored to protect only the specific information deserving protection" and that "good cause" existed to "maintain plaintiffs' confidential business information under seal." (Pehrson Decl. Ex. A at 3:18–23, 14:5–17.)  The Magistrate Judge then issued a minute order on October 2 granting the motion. (Dkt. 156.)

Judge Romero's order was "clearly erroneous" and "contrary to law," Fed. R. Civ. P. 72(a). The Court should set it aside and issue a new order denying Plaintiffs' motion to seal. Judge Romero neither acknowledged nor applied the governing standard for sealing court records, namely, that the moving party must show a "significant interest that outweighs the presumption" of public access, and that this interest must be supported by "specific argument or facts." *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1241 (10th Cir. 2012). Rather than identify an "interest" that might outweigh public access, Judge Romero apparently credited Plaintiffs' conclusory assertion

that the 17 exhibits in question "contain confidential and proprietary information," Dkt. 112 at 7, without analyzing the exhibits. The Magistrate Judge also appears to have sealed the documents on the basis that Plaintiffs designated them confidential under the governing protective order: a *per se* insufficient basis for sealing.

Defendants fully appreciate the burden that motions to seal place on federal courts, particularly on federal magistrate judges who have many other pressing substantive concerns. But the Magistrate Judge should have imposed the correct standard on Plaintiffs. Having chosen to bring this lawsuit in public, Plaintiffs are not now entitled to defend against Rymark's claims in secret. And allowing sealing standards to slip even a little opens the floodgates. Plaintiffs have designated nearly every document "Confidential" under the protective order and made clear in their motion to seal that they intend to seal anything damaging to their case. What that means in practical terms is that unless the Court intervenes, virtually every motion going forward will need to be accompanied by a motion to seal, which will only further inundate the Magistrate Judge.

The Court should issue an order setting aside the Magistrate Judge's order and denying Plaintiffs' motion to seal.

## II.     FACTUAL BACKGROUND

This is a dispute over who owns Defendant Rymark, a Taylorsville-based car dealership. Plaintiff AmeriMark Automotive is a Swiss shell corporation that claims to own Rymark based on a years-long penny stock scheme created by David Hesterman and Miron Leshem. Hesterman is a twice-convicted securities fraudster. Leshem, similarly, has repeatedly been the target of securities enforcement; he is subject to penny-stock bars here in the United States, and just earlier this year he was fined €2,000,000 by France's chief securities regulator. (Dkt. 138 ¶¶ 41, 45.)

In 2015, Hesterman and Leshem persuaded Rymark's owner, Defendant Nick Markosian, to give them $125,000 that would ostensibly be used to quickly list Rymark on a European stock exchange to raise money for Rymark's Utah-based expansions. (*Id.* ¶¶ 43–47.) In fact – unbeknownst to Mr. Markosian – Hesterman and Leshem actually wanted to use Rymark in what is called a "pump-and-dump" scheme. Their plan was to (1) have Rymark be acquired by a Swiss shell company, (2) list that shell company on a European exchange, (3) issue false press releases or letters that would artificially inflate the shell company's stock price (the "pump"), and then (4) sell the shell company's stock at a fraudulent profit (the "dump"). (*Id.* ¶¶ 47–51.)

Hesterman and Leshem's plan got off to a slow start. By late 2018, Leshem had still failed to list the Swiss shell company and asked Mr. Markosian for more money. When Mr. Markosian declined, Leshem stole 13,000,000 of Mr. Markosian's shares of the then-current shell – AmeriMark Group AG – and gave them to Whitetree Capital, a company controlled by Leshem's friends. (Dkt. 138 ¶¶ 4–5.) Whitetree Capital, in turn, gave those shares to Plaintiff Capana, and Capana's principal, Third-Party Defendant Shaen Bernhardt, began running the pump-and-dump with Leshem.

Bernhardt and Leshem together managed to get AmeriMark Group listed on the Vienna Stock Exchange, where they pumped-and-dumped its stock for a profit, issuing completely false press releases that were specially timed to manipulate the market, then selling shares at a profit. (*Id.* ¶¶ 8, 113–124.) Along the way, Bernhardt and Leshem conspired to hide the scheme from a skeptical Austrian regulator, Martin Wenzl. Bernhardt and Leshem set up a bogus phone number to be answered in German in order to give the false impression that AmeriMark Group had European operations. (*Id.* ¶¶ 89–92.) Bernhardt and Leshem also concealed from Wenzl a letter

5

Rymark sent disputing that it was owned by AmeriMark. (*Id.* ¶¶ 99–106.) And they desperately fended off pointed inquiries by Wenzl in May 2021, as the most egregiously false press releases were issued. (*Id.* ¶¶ 113–127.) In June, Wenzl figured out what was going on and delisted AmeriMark Group shares. (*Id.* ¶ 129.)

After the delisting, Bernhardt tried to swap the stolen 13,000,000 shares for a controlling stake in another European company, Third-Party Defendant Philomaxcap AG. (Dkt. 138 ¶¶ 15–16.) But skeptical shareholders filed litigation challenging the transaction, questioning whether AmeriMark Group really owned Rymark. (*Id.* ¶ 16.) So Bernhardt and his U.S.-based counsel, John Worden, attempted to pressure Mr. Markosian to agree that Rymark was actually owned by the Swiss shell companies. (*Id.*) When Mr. Markosian refused, Bernhardt and Worden made various sporadic threats over a period of years, including numerous threats relating to their theories of Rymark's purported tax violations for not acknowledging foreign ownership, and eventually filed this litigation seeking control of Rymark.

Neither Mr. Markosian nor Rymark ever sold any shares or made any money in this scheme. Instead, on false premises, Mr. Markosian gave $125,000 to Hesterman and Leshem on the (false) promise that Hesterman and Leshem would help raise legitimate funds for Rymark to expand its operations. All Mr. Markosian got in return for his $125,000 was this lawsuit, in which Europeans that Mr. Markosian has never met claim to own his car dealership based on a scheme run by known fraudsters.

### III. RELEVANT PROCEDURAL BACKGROUND

On June 28, 2024, Rymark sent Plaintiffs a copy of a draft Amended Counterclaim and Third-Party Complaint and asked whether they would stipulate to its filing. The draft included

Bates numbers for the documents that would be attached to it as exhibits, so it would be obvious which documents would be filed with the Amended Counterclaim and Third-Party Complaint. (Pehrson Decl. ¶ 3.) Plaintiffs would not agree to stipulate to the filing of the Amended Counterclaim and Third-Party Complaint, so on July 13, 2024, Rymark filed a motion for leave to file its Amended Counterclaim and Third-Party Complaint, attaching the draft and the exact exhibits Rymark had told Plaintiffs it was going to file. (*See* Dkt. 107.)

Two days later, on July 15, counsel for Plaintiffs emailed the Consents Clerk – without advance notice to Rymark – and requested that the Consents Clerk put eighteen of the exhibits to the draft Amended Counterclaim and Third-Party Complaint under "immediate temporary seal" so that Plaintiffs could file a motion to seal. (Pehrson Decl. ¶ 4.) Less than an hour later, over Rymark's objection (and after an *ex parte* call between the Consents Clerk and Plaintiffs' counsel)[1] the Consents Clerk said that "[p]er chambers," the exhibits had been sealed. (*Id.*) On July 16, 2024, Plaintiffs filed a motion to seal seventeen of the exhibits to the Amended Complaint. (Dkt. 110.) Two days later, Rymark filed an opposition. (Dkt. 115.)

On August 15, 2024, Magistrate Judge Romero set a hearing for October 2 on several discovery motions the parties had filed. (Dkt. 133.) Plaintiffs' motion to seal, Dkt. 110, was not among the motions listed by Judge Romero for the October 2 hearing. Nevertheless, at the hearing Judge Romero announced that she was prepared to rule on the sealing motion, although she was "not hearing argument" on any of the motions before her. (Pehrson Decl. ¶ 3. [Hearing Tr. at 3:18–

---

[1] Defendants do not mean to accuse Court staff of anything untoward. Plaintiffs knew what Defendants were going to file, waited for Defendants' filing, and then unfairly put Court staff in an impossible situation with an emergency, off-docket request to seal documents filed by an opposing party. But how that request was handled was, at the very least, highly irregular.

7

23].) The Magistrate Judge then announced that as to the motion to seal,

> [T]he plaintiffs' motion is styled as a motion to seal and, therefore, references the standard for sealing documents under local Rule 5-1, which requires a, quote, showing of good cause, end quote. That comes from local Rule 5-3-A-1. Under this standard and for the reasons stated in the motion as to why each of the listed documents was designated confidential, the Court finds the request is narrowly tailored to protect only the specific information deserving protection pursuant to local Rule 5-3, and the Court finds good cause to maintain plaintiffs' confidential business information under seal. The Court, therefore, grants the motion.

(Pehrson Decl. Ex. A at 14:5–17.) The next day, the Magistrate Judge issued a minute order granting the motion. (Dkt. 156.)

## IV.   DISCUSSION

### A.   Legal Standard

In the United States, "there is both a constitutional (First Amendment) and common law right of public access to judicial documents." *Sparto v. Hearts for Hospice, LLC*, No. 2:12—801, 2023 WL 3080557, at *1 (D. Utah Apr. 25, 2023) (Stewart, D.J.). "Courts have long recognized a common-law right of access to judicial records," and although this right is "not absolute," it may be limited only when "countervailing interests heavily outweigh the public's interest in access." *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1241 (10th Cir. 2012). The party seeking to restrict access – here, Plaintiffs – bears the burden to show "some significant interest that outweighs the presumption." *Id.*; *see also Sparto*, 2023 WL 3080557, at *1 (applying this "significant interest" standard). This interest must be "real" and "substantial," and the burden to show it is "heavy." *Colony*, 698 F.3d at 1242. "[S]pecific argument or facts" as to why the "confidentiality" of documents "outweighs the presumption of public access" are required before a court may seal the documents. *Id.* And the burden on the party seeking to seal court records is particularly heavy when documents are "used to determine litigants' substantive legal rights"; when this is so, a

"strong presumption of access attaches." *Id.* at 1242. Consistent with these requirements, this Court's Local Rules provide that the sealing of records is "highly discouraged." DUCivR 5-3(a)(1).

"28 U.S.C. § 636(b)(1)(A) and Rule 72(a) of the Federal Rules of Civil Procedure, permit a district court to review a Magistrate Judge's orders on nondispositive matters under a clearly erroneous or contrary to law standard." *Combe v. Cinemark USA, Inc.*, 2009 WL 3584883, at *1 (D. Utah Oct. 26, 2009) (Stewart, D.J.). "The clearly erroneous standard applies to factual findings and requires an affirmation of the Magistrate Judge's decision unless 'on the entire evidence [the court] is left with the definite and firm conviction that a mistake has been committed.'" *Id.* (quoting *Smith v. MCI Telecomms. Corp.*, 137 F.R.D. 25, 27 (D. Kan. 1991)). "The contrary to law standard, however, permits the district court to conduct a plenary review of the magistrate[']s purely legal determinations and may set aside an order if the wrong legal standard was applied." *Id.* at *1; *see also id.* at *3 (sustaining objection where magistrate judge applied wrong legal standard).

### B. The Magistrate Judge's Order Granting The Motion To Seal Was Clearly Erroneous And Contrary To Law

#### 1. The Magistrate Judge Failed To Acknowledge Or Apply The Correct "Significant Interest" Standard For Sealing Court Records, Especially Court Records That Determine Parties' Substantive Rights

In granting Plaintiffs' motion to seal, the Magistrate Judge failed to acknowledge the correct legal standard, namely, that there is a "presumption in favor of access to judicial records," that to overcome this presumption, a "real and substantial interest" must exist to "depriv[e] the public of access to the records that inform [courts'] decision-making processes" and this interest must "heavily outweigh the public interests in access to the judicial record," *Colony*, 698 F.3d at 1241–42. Instead, Judge Romero disregarded the public interest entirely (and did not acknowledge

9

the presumption of public access), did not perform the required balancing, and applied a "good cause" standard to grant Plaintiffs' motion. (Pehrson Decl. Ex. A at 14:5–17.) It is true that Local Rule 5-3(a)(1) refers to "good cause." But this is in *addition to* the Tenth Circuit's standard, not a *replacement* standard, and courts in this district regularly acknowledge that they are bound by the "significant interest" standard and must balance the public's right of access against the confidentiality interests asserted by litigants. *E.g.*, Amann v. Office of Utah Attorney General, No. 2:18-cv-00341, 2024 WL 2188459, at *1 (D. Utah May 15, 2024) (acknowledging both local rules and Tenth Circuit authority and considering the public interest as to each document at issue); AH Aero Serv., LLC v. Heber City, No. 2:17-cv-1118, 2020 WL 6135819, at *2 (D. Utah Oct. 19, 2020) (explaining that Local Rule 5-3(a)(1) is "consistent" with the Tenth Circuit rules but must be "read in harmony with Tenth Circuit precedent"); *see also* United States v. Jackman, 2:09–cr–581, 2011 WL 2790165, at *1–2 (D. Utah July 14, 2011) (Stewart, D.J.) (acknowledging both the "good cause" and "significant interest" standards for sealing and repeatedly discussing the public interest).

**2. Under The Correct Legal Standard, The Motion Should Have Been Denied**

If Judge Romero had applied the correct "significant interest" standard, she would have denied Plaintiffs' motion. The "significant interest" standard requires that parties seeking to overcome the presumption of public access identify, document by document, an interest that warrants disregarding public access, and to support this interest with "specific argument or facts." Colony, 698 F.3d at 1242; *see also* DUCivR 5-3(b)(2)(C) (requiring the moving party to "state the statute, rule, case law, or reason supporting the sealing of the Document").

Plaintiffs did not even attempt to do so. Their motion to seal provided only sketches of the

10

17 documents at issue and does not, even once, identify a specific piece of proprietary commercial or financial information at issue and explain why the information is so sensitive that it should overcome the presumption of public access. (Dkt. 110 at 3–5.) Even a cursory review of the documents reveals nothing at all that warrants sealing, as follows:

- Dkt. 107-3 is an email from Adrian Zehnder, a Swiss lawyer who assisted in the fraud, to Miron Leshem, the original architect of the fraud. As set forth in paragraph 55 of the Amended Counterclaim and Third-Party Complaint,[2] the email shows Zehnder recommending Third-Party Defendant Nicolai Colshorn to be the director of the Swiss shell entity. This email contains no proprietary or commercial information whatsoever, particularly because the entity in question – Plaintiff AmeriMark Automotive – has no operations, no employees, and no competitive commercial interests. (*See, e.g.*, Dkt. 16 (Plaintiffs alleging that Rymark is the "only operating asset" in the AmeriMark structure).) Plaintiffs described this document only as "a confidential email" among various participants, with no further facts or argument. (Dkt. 110 at 3.)

- Dkt. 107-5 is an email from Leshem to Third-Party Defendants Stefan Kammerlander and Nicolai Colshorn. The email does nothing more than show Leshem hiring Kammerlander to work on the scheme, *see* Dkt. 138 ¶ 62 & n.9, and contains no proprietary or commercial information whatsoever. Plaintiffs misdescribed this email as involving different participants. (Dkt. 110 at 3.)

- Dkt. 107-6 begins with a June 2018 email chain between Third-Party Defendants Miron

---

[2] Plaintiffs made no attempt to seal the Amended Counterclaim and Third-Party Complaint, which frequently describes the sealed exhibits at some length.

11

Leshem and Stefan Kammerlander, copying others, including Shaen Bernhardt. The only commercial information contained in the email pertains to Defendant Rymark, which does not want the email sealed. Plaintiffs incorrectly described this email as being about "confidential corporate transaction planning," with no additional detail or argument. (Dkt. 110 at 3.)

- Dkt. 107-16 is a critical document in this case; as set forth in the Amended Counterclaim and Third-Party Complaint, it shows Third-Party Defendants Miron Leshem and Nicolai Colshorn working to create a German-language phone number to dupe a suspicious Austrian market official, Martin Wenzl, into believing that AmeriMark Group had European operations. (Dkt. 138 ¶ 91 & n.22.) As Leshem said at the time, the "key" was to make sure that "when Wenzl checks, everything is correct." (*Id.*) The email contains no commercial information. In the briefing before Judge Romero, Plaintiffs misdescribed this email as being about "confidential shareholder communications" – quite the euphemism for an email openly plotting fraud on market officials. (Dkt. 110 at 4.)

- Dkt. 107-17 is another email related to the fraudulent phone number; as set forth in the Amended Counterclaim and Third-Party Complaint, this email shows Leshem alerting Third-Party Defendant Shaen Bernhardt that the telephone service had been set up. (Dkt. 138 ¶ 91 & n.23.) The email contains no confidential or proprietary information whatsoever. Plaintiffs again misrepresented this email to somehow be about "confidential shareholder communications. (Dkt. 110 at 4.)

- Dkt. 107-18 is another email related to Bernhardt and Leshem's fraud on European

market officials. Although Plaintiffs clawed this email back, the propriety of that clawback is the current subject of discussions between the parties. In any event, as the Amended Counterclaim and Third-Party Complaint describes, this email shows Bernhardt agreeing to "check on the status" of a bogus German entity created to, once again, give market officials the false impression of European operations. (Dkt. 138 ¶ 92 & n.24.) The email does *not* contain, as Plaintiffs say, "confidential business information of third-party AmeriMark Group AG shareholders," and Plaintiffs proposed no redactions of that (supposed) "confidential business information." (Dkt. 110 at 4.)

- Dkt. 107-19 is an email chain that originates with a complaint from a disgruntled shareholder and ends with Bernhardt promising to "deal with" the complaint. (Dkt. 138 ¶ 93 & n.25.) Nothing in the email is confidential, but it does show Bernhardt operating the fraud. Plaintiffs misdescribe the email as somehow being "a confidential email . . . re: Shareholder communications." (Dkt. 110 at 4.)

- Dkt. 107-20 is an email from a disgruntled investor[3] to Third-Party Defendant Nicolai Colshorn, which Colshorn subsequently forwarded to Bernhardt. As alleged in the Amended Counterclaim and Third-Party Complaint, the email alleges that shareholders purchased AmeriMark shares on the recommendation of an "online economics

---

[3] Plaintiffs' motion suggested that "investor names" should be sealed. But (1) it is not clear why this is so, given that the investors in question reached out to AmeriMark; and (2) in any event, Plaintiffs could have proposed to redact investors names, but instead proposed to seal all 17 documents entirely. Judge Romero acknowledged, but did not actually enforce, Local Rule 5-3(b)(2)(A)'s requirement that motions to seal be "narrowly tailored to seek protection of only the specific information that the party alleges is truly deserving of protection."

magazine" and suggests that a ring of pump-and-dump schemers had been busted in July 2020. (Dkt. 138 ¶ 94 & n.26.) Nothing about the email involves "confidential shareholder communications," as Plaintiffs say. (Dkt. 110 at 4.)

- Dkt. 107-21 is an email chain between Third-Party Defendants Bernhardt and Colshorn regarding their attempts to defraud Martin Wenzl, the Viennese market official. The Amended Counterclaim and Third-Party Complaint quotes from the document at length. (Dkt. 138 ¶¶ 95–96 & nn. 27–28.) Nothing in the email is confidential.

- Dkt. 107-23 is an email from a disgruntled AmeriMark shareholder. Plaintiffs say that this email contains "the identity and contact details of AmeriMark Group AG shareholders," but rather than propose to redact this information, Plaintiffs demanded to seal the entire exhibit. Likely this is because, as set forth in the Amended Counterclaim and Third-Party Complaint, the email notes that investors had investigated AmeriMark's supposed European headquarters and found nothing "except for a sign on the door that says 'NICOLAI.'" (Dkt. 138 ¶ 98.) (In fact, AmeriMark had no European operations, something Plaintiffs were desperately trying to conceal from market officials to keep the scheme alive.)

- Dkt. 107-25 is an email chain between Third-Party Defendants Nicolai Colshorn and Shaen Bernhardt. As set forth in the Amended Counterclaim and Third-Party Complaint, the email shows Colshorn noting that Martin Wenzl at the Vienna Stock Exchange was threatening "delisting" of AmeriMark shares. (Dkt. 138 ¶ 106 & n.35.) Nothing in this email chain is confidential.

- Dkt. 107-26 another email chain between Colshorn and Bernhardt discussing the fraud.

14

In this chain, as set forth in the Amended Counterclaim and Third-Party Complaint, Colshorn again warns Bernhardt about Wenzl's investigation. (Dkt. 138 ¶ 106 & n.36.)

- Dkt. 107-32 is an email chain between Colshorn and Wenzl, the Viennese market authority, in which Wenzl presses Colshorn with multiple questions about AmeriMark's public website and corporate management. (Dkt. 138 ¶ 122 & nn. 44–45.) Nothing in this email between Colshorn and third-party market officials is confidential, but it does show Colshorn desperately trying to keep Wenzl off the scent of the fraud.

- Dkt. 107-34 is another email chain between Colshorn and Wenzl. In this chain, Wenzl points out that AmeriMark press releases were obviously part of a pump-and-dump, presses Colshorn for information on the press releases, and complaints that Colshorn purported to have no relevant information. (Dkt. 138 ¶ 126 & n. 48.) Nothing in this communication with Wenzl is confidential.

- Dkt. 107-35 is an email between Bernhardt and Colshorn in which Colshorn complains about the "serious mistakes" AmeriMark was making, and in which Bernhardt retorts that Colshorn was being "ungrateful." (Dkt. 138 ¶ 128 & nn.50–51.) Nothing in the email warrants sealing.

- Dkt. 107-36 is yet another Bernhardt–Colshorn email; in this chain, Colshorn complains to Bernhardt that he did not have a "responsible contact" at AmeriMark for purposes of compliance with Germany's money-laundering statute. (Dkt. 138 ¶ 128 & n.52.) Nothing in this email is confidential.

- Dkt. 107-37 is an email from Wenzl to Colshorn announcing that AmeriMark shares

would be delisted. (Dkt. 138 ¶ 129 & n.53.) Nothing in this email is confidential.

Plaintiffs submitted no declarations from Capana or AmeriMark personnel setting forth the supposedly critical commercial interests in the foregoing documents or identifying supposed competitive harm that might befall Plaintiffs if the exhibits remain public. Indeed, the only evidence in support of the motion to seal was an attorney declaration that, *in its entirety*, repeated *verbatim* the sketches of the 17 documents at issue and then made three entirely conclusory assertions: (i) that the documents "contain confidential, sensitive, and proprietary commercial information," (ii) that "[p]rotecting the security and confidentiality of these attachments is critical," and (iii) that the motion was "narrowly tailored to seek protection for only the information which Plaintiffs believes [sic] is truly deserving of protection." (Dkt. 110-1 ¶¶ 2–3.)

These conclusory assertions are entitled to no weight at all in the sealing analysis, and courts in this routinely deny sealing motions that rest on such thin reeds. *See, e.g.*, *Hanks v. Anderson*, No. 2:19-00999, 2024 WL 4187207, at *3 (D. Utah Sept. 13, 2024) (denying motion to seal where party did not "specifically identify any proprietary business information—other than a vague reference [to] the 'financial aspects' of the agreement"). As the Tenth Circuit explained, a "generalized allusion to confidential information is woefully inadequate to meet" the moving party's "heavy burden" on a sealing motion. *Jetaway Aviation, LLC v. Bd. of Cnyt. Com'rs of Cnty. of Montrose, Colo.*, 754 F.3d 824, 827 (10th Cir. 2014). That should be especially true here because Plaintiff AmeriMark Automotive has no business operations and no competitive interests; as alleged by Plaintiffs, it is a Swiss shell that does no business other than to hold Rymark (which does not want the documents sealed.) And to the extent that what Plaintiffs really fear is the reputational harm that may befall them if documents from their productions that show them

16

engaged in fraud become part of the public record, the "potential for reputational harm is typically not enough to overcome the heavy presumption in favor of keeping court records open to the public." *Sparto v. Hearts for Hospice, LLC*, No. 2:12-cv-801, 2023 WL 3080557, at *1 (D. Utah Apr. 25, 2023) (Stewart, D.J.). Moreover, having chosen to bring this litigation in the first place, Plaintiffs should hardly be heard to complain that Rymark is fighting back and that that fight, like Plaintiffs' original allegations, will be public.

> 3. The Magistrate Judge Appears To Have Granted The Motion At Least In Part Because Plaintiffs Designated The Documents "Confidential" Under The Protective Order, Which Is Not A Legitimate Ground For Sealing

Finally, the Magistrate Judge may have granted the motion to seal on the ground that Plaintiffs designated the documents "Confidential" under the standard protective order. (Pehrson Decl. Ex. A at 14:10–16 (granting the motion "for the reasons stated in the motion as to why each of the listed documents was designated confidential"). But it is settled under that the designation of a document as confidential does not justify sealing. *See, e.g.*, *Helm v. Kansas*, 656 F.3d 1277, 1292 (10th Cir. 2011) (party "cannot overcome the presumption against sealing judicial records simply by pointing out that the records are subject to a protective order"). Moreover, as Defendants explained in their opposition to the motion to seal, Dkt. 115, Plaintiffs designated every page of every document they produced "Confidential." Plaintiffs later purported to de-designate some of these documents but still contend that more than 95% of the documents they produced are "Confidential." If Plaintiffs' designations matter at all to the sealing analysis, Defendants anticipate many dozens of motions to seal over the course of this case.

## V. CONCLUSION

Defendants object to Judge Romero's order reluctantly. But nearly everything about

Plaintiffs' motion to seal unfolded in a highly irregular manner. The exhibits were sealed, "per chambers," in response to a unilateral email from Plaintiffs' counsel, over Defendants' objection and subsequent to a phone call between Court staff and Plaintiffs' counsel to which Defendants' counsel were not parties. And the Magistrate Judge sealed the 17 documents – including some of the most important evidence in this case – "for the reasons stated in the motion" and without applying the correct standard. The District Court should intervene, set aside the Magistrate Judge's order, and enter a new order denying Plaintiffs' motion to seal, Dkt. 110.

DATED: October 17, 2024

**KUNZLER BEAN & ADAMSON, PC**

/s/ *Chad S. Pehrson*
R. Jeremy Adamson
Chad S. Pehrson
Robert P. Harrington
Stephen Richards

*Attorneys for Defendants,*
*Counter Claimants and*
*Third-Party Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of October, I filed the foregoing via the Court's CM/ECF system, which provided notice of such filing to all counsel of records.

*/s/Chad Pehrson*
Chad Pehrson
