R. Jeremy Adamson (12818) jadamson@kba.law
Chad S. Pehrson (12622) cpehrson@kba.law
Robert P. Harrington (12541) rharrington@kba.law
Stephen Richards (19332) srichards@kba.law
**KUNZLER BEAN & ADAMSON, PC**
50 W Broadway, Ste 1000
Salt Lake City Utah 84101
Telephone: (801) 994-4646

*Attorneys for Defendants and Counter Claimants*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CAPANA SWISS ADVISORS AG, a Swiss corporation; AMERIMARK AUTOMOTIVE AG, a Swiss corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>RYMARK, INC., a Utah corporation; NICHOLAS THAYNE MARKOSIAN, an individual; JOHN KIRKLAND, an individual; and VICKY SMALL, an individual,<br><br>Defendants. | **DEFENDANTS' MOTION TO COMPEL DEPOSITION OF DIRECTOR OF PLAINTIFF AMERIMARK AUTOMOTIVE, NICOLAI COLSHORN**<br><br>Case No.: 2:23-cv-00467-TS-CMR<br><br>Judge: Ted Stewart<br>Magistrate Judge: Cecilia M. Romero |
| RYMARK, INC., a Utah corporation; and NICHOLAS THAYNE MARKOSIAN, an individual,<br><br>Counter Claimants,<br><br>vs.<br><br>CAP ANA SWISS ADVISORS AG, a Swiss corporation, and Amerimark Automotive AG, a Swiss Corporation,<br><br>Counter Defendants. | |

1

I.      **RELIEF SOUGHT AND GROUNDS THEREFORE**

Corporate parties are required to produce their directors and managing agents for deposition. *OL Private Counsel, LLC v. Olson*, No. 2:21-0045, 2023 WL 8018982, at *2 (D. Utah Nov. 20, 2023). When they refuse to do so, Rule 37 authorizes a suite of sanctions, including dismissal. Fed. R. Civ. P. 37(d)(1)(A)(ii); *id.* 37(b)(2)(a). Here, on June 11, 2024, Defendants requested the deposition of Nicolai Colshorn, the longtime director (and managing agent) of Plaintiff AmeriMark Automotive. Mr. Colshorn is likely the most knowledgeable witness in this case. He signed an affidavit attached to the Amended Complaint. He was identified by Plaintiffs as a document custodian for them, and he appears nearly 100 times on their "privilege log." As of early September 2024, he is a Third-Party Defendant. It should have been a foregone conclusion that Plaintiffs would produce him upon notice.

But on July 22, 2024, nearly six weeks after Rymark originally requested Mr. Colshorn's deposition, Plaintiffs announced that Mr. Colshorn had resigned due to retirement on June 28, 2024. That exact "resignation" date is two-and-a-half weeks after his deposition was requested. On account of this retirement, Plaintiffs said they would not produce Mr. Colshorn for deposition. Rymark noticed Mr. Colshorn's deposition for August 6, 2024. Mr. Colshorn did not show up, and neither did Plaintiffs' counsel. The parties subsequently met and conferred in person, and Plaintiffs confirmed that (1) they would not produce Mr. Colshorn for a re-scheduled deposition following his failure to appear, (2) they had not communicated with Mr. Colshorn in an attempt to procure his appearance, and (3) the parties were at an impasse.

Plaintiffs are obligated to produce Mr. Colshorn for deposition. Federal courts do not allow corporate parties to avoid having their directors sit for deposition through conveniently

timed resignations, departures, or reassignments; on the contrary, "an officer, director, or managing agent cannot evade deposition by notice through the artifice of formally resigning an office," *Grain D'OR v. Wizman*, 2023 WL 2162499, at *3 (S.D.N.Y. Feb. 22, 2023). That is particularly true when the circumstances of a resignation are suspicious, as they are here. Mr. Colshorn has intimate personal knowledge about facts, particularly given that for many years, he purportedly was the sole agent acting for the Swiss shell entities.

Plaintiffs insisted that Mr. Colshorn's retirement was business as usual and that he has reached retirement age. But Mr. Colshorn is still a director of **75** other Swiss companies, including one joined the day prior to his "retirement".

The Court should order Plaintiffs to produce Mr. Colshorn for deposition. If they continue to refuse, the Court should order briefing and a hearing on an appropriate sanction.

## II.     BACKGROUND

Rymark's owner, Nick Markosian, was solicited by two well-known participants in multiple securities schemes: Miron Leshem and David Hesterman. Leshem and Hesterman told Mr. Markosian that if he gave them $125,000, they could quickly raise capital for Rymark in Europe. Duped, Mr. Markosian gave Leshem and Hesterman the money. But rather than raise money for Rymark, Leshem and Hesterman embarked on a years-long pump-and-dump securities fraud scheme. Leshem arranged various corporate transactions for Rymark and attempted to list the resulting Swiss companies on multiple European exchanges. When this didn't work, Leshem stole 13 million shares of AmeriMark Group from Mr. Markosian and gave those shares to Whitetree, which in turn gave the shares to Capana. In the meantime, Capana and Leshem together pumped-and-dumped AmeriMark Group's stock on an exchange in Austria by,

among other things, timing false press releases to affect the market for AmeriMark Group (the "pump"), then selling shares at a fraudulent profit (the "dump"). (*See generally* Dkt. 139.)

Although the parties disagree on much, no one can dispute that Nicolai Colshorn is a central character in this story. Colshorn is the longtime director of both Plaintiff AmeriMark Automotive and the parent shell entity. Mr. Colshorn regularly communicated on behalf of these entities. (*E.g.*, Dkt. 16 ¶¶ 55, 82; Dkt. 139 ¶¶ 93, 98, 106, 122, 125–26.) He signed an affidavit attached to the Amended Complaint. (Dkt. 16-62.) Plaintiffs designated him as a document custodian in this case; critical documents (both genuine and forged) were produced from his files. (Declaration of Chad S. Pehrson ¶ 3.) Colshorn appears approximately 100 times on Plaintiffs' privilege log. (*Id.*) And Plaintiffs listed Colshorn on their initial disclosures as possessing relevant information and said that Colshorn could be "contacted via Plaintiffs' counsel." (Pehrson Decl. ¶ 1.) Most importantly, Plaintiffs' claim to ownership of 13 million disputed shares of AmeriMark Group stock is dependent on a single document that Colshorn supposedly created and signed. (Dkt. 16 ¶ 53; Dkt. 16-36.) In short, Colshorn likely has more relevant personal knowledge of the claims in this case than any other single witness.

On June 11, 2024, Defendants notified counsel for AmeriMark Automotive that they intended to depose Colshorn and asked for dates "in the first two weeks of August" when Colshorn could sit for deposition in Salt Lake City. (Pehrson Decl. ¶ 5.) Plaintiffs did not promptly provide Rymark with dates for Colshorn's deposition. On June 28, 2024, Rymark sent Plaintiffs a draft third-party complaint that named Colshorn as a third-party defendant. (*Id.* ¶ 6.)

Nearly a month later, on July 22, 2024, Plaintiffs' counsel wrote to Rymark and said that Colshorn was "no longer a director of AmeriMark Automotive AG," ostensibly because he had

4

"reached retirement age in Switzerland." (Pehrson Decl. ¶ 7.) Plaintiffs also attached what they said was a resignation letter signed by Colshorn. (*Id.* ¶ 8) The letter was dated June 28, 2024: the same day Rymark sent Plaintiffs the draft third-party complaint naming Colshorn. The letter is one sentence long, in German, and does not mention retirement or Colshorn's age. It simply says that Colshorn was immediately resigning as a director of AmeriMark Automotive. (*See id.*)

Believing Plaintiffs' refusal to produce Colshorn was entirely improper, Rymark served AmeriMark Automotive with a notice for Colshorn's deposition for August 6. (Pehrson Decl. ¶ 10.) Neither Colshorn nor Plaintiffs' counsel showed up. (*Id.*) So that same day, Rymark filed a motion to compel Colshorn's deposition. (Dkt. 129.) Plaintiffs opposed. (Dkt. 132.) The Court denied the motion (and a host of other discovery motions) for failure to meet and confer. (Dkt. 156.) The parties subsequently met and conferred in person regarding the Colshorn deposition. Plaintiffs said they would not produce Colshorn for a deposition and that they had not communicated with Colshorn or his counsel in an attempt to procure his appearance. (Pehrson Decl. ¶ 10.) The parties agreed that the issue presented irreconcilable differences. (*Id.* ¶ 10.)

### III.   LEGAL STANDARD

Pursuant to Rule 30(b)(1), corporate parties are required to produce their directors, officers, and managing agents for deposition upon notice. *OL Private Counsel*, 2023 WL 8018982, at *2. Typically, an individual's status as a director, officer, or managing agent is assessed at the time of deposition, and as a result, corporate parties *usually* are not required to produce *former* directors, officers, or managing agents for deposition. But "this rule is not woodenly applied." *Dubai Islamic Bank v. Citibank, N.A.*, 2002 WL 1159699, at *3 (S.D.N.Y.

5

May 31, 2002).[1] Instead, federal courts recognize exceptions under which they will require a corporate party to produce a former officer, director, or managing agent for deposition.

*First*, when an officer, director, or managing agent's termination or resignation appears to have been a response to litigation, federal courts look to the witness's status "as of the time when the activities disputed in the litigation occurred, not at the time of deposition." *In re Terrorist Attacks on September 11, 2001*, 2020 WL 8611024, at *5 (S.D.N.Y. Aug. 27, 2020) (requiring party to produce witness whose "retirement may have related in part to the pending litigation"); *see also Edu-Science (USA), Inc. v. Intubrite, LLC*, 2013 WL 4716232, at *3 (S.D. Cal. Sept. 3, 2013) (noting the exception "when a corporation terminates an officer in light of pending litigation") (citation omitted). Federal courts are particularly suspicious when a witness is terminated or resigns "after being put on notice by the opposing party of its intention to take that witness's deposition." *RePet, Inc. v. Zhao*, 2018 WL 9802098, at *7 (C.D. Cal. Jan. 16, 2018). When this is true, courts look to the witness's status "as of the date the witness's deposition was requested." *Id.*; *see also In re Lithium Ion Batteries Antitrust Litig.*, 2015 WL 5440789, at *6 (N.D. Cal. Sept. 15, 2015) (looking to witness's status as of "the date Plaintiffs requested [the witness's] deposition"). At bottom, "an officer, director, or managing agent cannot evade deposition by notice through the artifice of formally resigning an office." *Grain D'OR LLC v. Wizman*, 2023 WL 2162499, at *3 (S.D.N.Y. Feb. 22, 2023).

---

[1] Defendants diligently reviewed case law from courts in the Tenth Circuit but found no on-point cases addressing the issue of whether a corporate party must produce for deposition a director who resigns in the face of a request for deposition. However, as set forth herein, courts outside the Tenth Circuit appear to be virtually uniform in their recognition of the rule that corporate parties can be required to produce former officers and directors after suspicious resignations that follow deposition requests, and Defendants respectfully submit that the Court should rely on all pertinent federal cases.

*Second*, similarly, when a witness is reassigned or otherwise moved within a corporate structure, particularly in response to litigation, courts will disregard these internal corporate machinations and require the witness to appear, even if the witness's new role does not qualify him or her as an officer, director, or managing agent. As one court has explained, the reason for this exception is "obvious": without it, "an organization could manipulate discovery and frustrate the purpose of the rule simply by moving its managers around whenever it wished to prevent them from being deposed." *E.I. DuPont*, 268 F.R.D. at 49. Hence, reassignment does not cause a witness's status as a director, officer, or managing agent to "magically disappear." *Id.*; *see also S.E.C. v. Volkswagen Aktiengesellschaft*, 2023 WL 1927244 (N.D. Cal. Feb. 10, 2023) (requiring party to produce witness who was managing agent "when the events . . . took place").

IV.   **ARGUMENT**

It appears that Mr. Colshorn resigned from AmeriMark Automotive to avoid being deposed.  Given his role in the facts of this case, including the submission of the Complaint, AmeriMark Automotive should produce him for deposition.

The timing of Colshorn's "retirement" could hardly be more suspicious. Colshorn helmed AmeriMark Automotive for nearly eight years, oversaw the pump-and-dump scheme in question, helped AmeriMark Automotive prepare for this litigation, signed an affidavit designed to support AmeriMark Automotive's claims, and collected his emails for review and production. But when Defendants sought to depose Mr. Colshorn—where he would have to testify under oath about his

involvement in the securities schemes at issue in this litigation—he resigned.[2] Neither he nor AmeriMark Automotive gave advance or prompt notice of his resignation.

Under similarly suspicious circumstances, federal courts uniformly require corporate parties to produce former directors, officers, or managing agents for deposition. In *In re Terrorist Attacks*, for instance, the plaintiff notified the defendant that it wished to depose a witness; three months later that witness took an "Early Retirement" without advance notice to the party that had sought the deposition. 2020 WL 8611024, at *5. The defendant argued it should not have to present a former employee for deposition, but the court explained that the defendant's "failure to notify" the other party as to the "change in status" supported an inference that the "retirement may have related in part to the pending litigation" – something that would warrant assessing the witness's status "as of the time when the activities disputed in the litigation occurred." *Id.* Similarly, in *Credit Lyonnais, S.A. v. SGC Int'l, Inc.*, 160 F.3d 428, 430 (8th Cir. 1998), the court explained that a witness could not "use his resignation as a complete excuse to avoid [a] deposition" where the witness in question had been "president [of a corporate party] at the time of the events" at issue and then subsequently resigned. *See also In re Lithium Ion Batteries*, 2015 WL 5440789, at *4-5 (assessing defense witness status as of "the date [the plaintiffs] requested [the witness's] deposition," since the witness "first-hand knowledge of the alleged conspiracy"

---

[2] Colshorn's resignation letter is dated June 28, 2024 – the same day Rymark sent Plaintiffs a draft third-party complaint naming Colshorn as a third-party defendant. Plaintiffs previously argued that Colshorn "could not have seen Defendants' draft before his resignation" because Colshorn's resignation letter was dated June 28 and it was already June 29 in Europe by the time Rymark sent the draft. (Dkt. 132 at 3.) But Rymark has not seen a transmittal email for Colshorn's resignation letter that shows the letter was not backdated. And, curiously, Colshorn's resignation was not recorded with the Swiss authorities until July 19, 2024. (Pehrson Decl. ¶ 11 & Ex. 5.) In any event, however, the most important thing about the timing of Colshorn's resignation is that it happened *after* Rymark requested Colshorn's deposition.

and the corporate defendant had waited more than a month to inform the plaintiff of the witness's departure); *E.I. DuPont*, 268 F.R.D. at 50–51 (finding "ample evidence" to require former employees to sit for deposition where defendant had "reassign[ed] or terminat[ed]" several employees with relevant knowledge and then "vacillat[ed]" on the issue in the litigation).

AmeriMark Automotive does not dispute that Colshorn was the director of AmeriMark Automotive and therefore that AmeriMark Automotive was required under Rule 30(b)(1) to produce Colshorn for deposition as of June 11, 2024, the date Rymark requested Colshorn's deposition.[3] Instead, AmeriMark Automotive argues that it should not be required to produce Colshorn for deposition because his resignation was tied to his reaching retirement age. It is not clear why this should matter; no known case law suggests that so long as a person is of retirement age, he or she may avoid being deposed by resigning shortly after a request for a deposition is made. But in any case, AmeriMark Automotive's assertion that Colshorn resigned because of retirement is contradicted by significant evidence.

*First*, public Swiss records indicate that Colshorn remains a director of some **75** other Swiss companies. (Pehrson Decl. ¶ 12 & Ex. 7.) And Colshorn's directorship of several of those companies is very recent; his start date as a director of a company called VITAX AG, for instance, was June 27, 2024 – *the day before* he supposedly resigned from AmeriMark Automotive due to age. (*Id.*) So whatever the genuine explanation for Colshorn's departure, it is not that he is retiring. Colshorn is still taking new work.[4]

---

[3] *See, e.g.*, Dkt. 16-62 ¶ 2.1
[4] AmeriMark Automotive says that Colshorn turned 65 in 2023, but Colshorn signed up as a director with three other companies in 2023. (Pehrson Decl. Para. 11-12, Exh. 7 (Helvion GmbH (6/14/2024), Lyght AG (5/24/2023), SWISS DATA AG (5/3/2023), and Unity Vision GmbH (10/17/2023).)

9

*Second*, Colshorn did not contemporaneously resign from his directorship with AmeriMark Automotive's parent, AmeriMark Group AG. Indeed, Swiss records indicate he only resigned from AmeriMark Group in October 2024: four months after supposedly resigning from AmeriMark Automotive, and a month after Judge Stewart granted Rymark's motion to add AmeriMark Group as a third-party defendant. (Pehrson Decl. ¶ 13, 15). In other words, Colshorn stayed on with AmeriMark Group until it became obvious that his directorship there, too, would require him to be deposed in this litigation.

*Third*, Colshorn has in fact been threatening to resign from AmeriMark for years. In 2019, he told Miron Leshem that unless he received a "significant payment" from AmeriMark Group, he would "resign immediately." (Pehrson Decl. ¶ 13, Exh. 8) In January 2021, Colshorn told Shaen Bernhardt that once AmeriMark Group had an alternative "bookkeeper" in place, Colshorn "would resign then." (*Id.* ¶ 14 & Ex. 9 [PL_0000005316].) In April 2022, after the pump-and-dump was over, Colshorn told Leshem he would "be resigning from the Board of Directors of AmeriMark Automotive AG and AmeriMark Group AG in the next few weeks." (*Id.* ¶ 15 & Ex. 10 [PL_0000006816].) Colshorn did not mention his age in *any* of these retirement threats, and on each occasion, Leshem and/or Bernhardt convinced him to remain aboard. The obvious explanation appears to be the correct one: Colshorn resigned because he wants to avoid being deposed. The Court should not allow these sorts of discovery antics.

V.     CONCLUSION

AmeriMark Automotive chose to file this lawsuit. It expressly premised its claims based on statements made, affidavits signed, and documents created, by its longtime director, Nicolai Colshorn. It could not possibly have been surprised when Rymark requested Colshorn's

10

deposition. And it should not be permitted to shield Colshorn – certainly one of the most important witnesses in this dispute – from deposition. The Court should issue an order requiring AmeriMark Automotive to produce Colshorn for deposition in Salt Lake City. And if AmeriMark Automotive fails to do so, the Court should order briefing on an appropriate sanction.

DATED: November 14, 2024

**Kunzler Bean & Adamson, PC**

*/s/ Chad S. Pehrson*
R. Jeremy Adamson
Chad S. Pehrson
Stephen Richards
Robert Harrington

*Attorneys for Defendants and Counter Claimants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of November 2024, I filed the foregoing **DEFENDANTS' MOTION TO COMPEL DEPOSITION OF THIRD-PARTY DEFENDANT AND DIRECTOR OF PLAINTIFF AMERIMARK AUTOMOTIVE, NICOLAI COLSHORN** via the Court's CM/ECF system, which provided notice of such filing to all counsel of record.

*/s/ Andrea Coats*