R. Jeremy Adamson (12818) (jadamson@kba.law)
Chad S. Pehrson (12622) (cpehrson@kba.law)
Robert P. Harrington (12541) (rharrington@kba.law)
Stephen Richards *(*19332*)* (srichards@kba.law)
**KUNZLER BEAN & ADAMSON, PC**
50 West Broadway Ste 1000
Salt Lake City Utah 84101
Telephone: (801) 994-4646

*Attorneys for Defendants, Counter Claimants
and Third-Party Plaintiffs*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CAPANA SWISS ADVISORS AG, a Swiss corporation; AMERIMARK AUTOMOTIVE AG, a Swiss corporation,<br><br>              Plaintiffs,<br><br>vs.<br><br>RYMARK, INC., a Utah corporation; NICHOLAS THAYNE MARKOSIAN, an individual; JOHN KIRKLAND, an individual; and VICKY SMALL, an individual,<br><br>              Defendants. | **DEFENDANTS' OPPOSITION TO MOTION RE CONFIDENTIALITY DESIGNATIONS [DKT. 172]**<br><br>Case No.: 2:23-cv-00467<br><br>Judge: Ted Stewart<br>Magistrate Judge: Cecilia M. Romero |
| RYMARK, INC., a Utah corporation; and NICHOLAS THAYNE MARKOSIAN, an individual,<br><br>              Counter Claimants,<br><br>vs.<br><br>CAPANA SWISS ADVISORS AG, a Swiss corporation, and Amerimark Automotive AG, a Swiss Corporation, | |

i

|  |
|---|
| Counter Defendants. |
| RYMARK, INC., a Utah corporation; and NICHOLAS THAYNE MARKOSIAN, an individual, |
| Third-Party Plaintiffs, |
| vs. |
| SHAEN BERNHARDT, an individual; ASHLEY MIRON LESHEM, an individual; DAVID HESTERMAN, an individual; NICOLAI COLSHORN, an individual; STEFAN KAMMERLANDER, an individual; ALEXANDER COENEN, an individual; MARTIN FASSER HEEG, an individual; AMERIMARK GROUP AG, a Swiss corporation; and PHILOMAXCAP AG, a German corporation, |
| Third-Party Defendants. |

## I. INTRODUCTION

As set forth herein, Plaintiffs have not complied with the plain language of this Court's SPO. Yet now, now the Motion, seeks the Court's absolution for those violations. To preserve the integrity of the SPO, as well as follow mandatory precedent and logical jurisprudence, the Motion must be denied.

These now-disputed issues began when Plaintiffs designated every single page of every document they produced as "Confidential" under the SPO. This included "Confidential" designations for completely blank pages, documents already in Defendants' possession, and documents Plaintiffs had *already filed on the public docket*, like the Complaint. This approach of course violated the SPO, which expressly requires Plaintiffs to "use reasonable care to avoid

designating any documents or information as CONFIDENTIAL . . . that is not entitled to such designation or which is generally available to the public," and to "designate only that part of a document . . . that is CONFIDENTIAL . . . rather than the entire document . . . ." (SPO § 4(g).)

Defendants confronted this improper practice exactly as dictated by the SPO. Specifically, Defendants served timely written challenges to Plaintiffs' designations. These communications explained the improper nature of designations and requesting that Plaintiffs remove the designations. In each communication, Rymark:

   (1) expressly stated that it was making a challenge under Section 9(b) of the Standard Protective Order ("SPO");

   (2) identified the grounds for its challenge (namely, Plaintiffs' bad-faith blanket designations), and

   (3) specified the new requested designation (*i.e.*, no confidentiality designation).

These challenges were clear and unambiguous: each communication included the precise words: "pursuant to Section 9(b) of the protective order, Defendants challenge . . . ."

The SPO mandates that once a challenge is made to "a document or documents," the designating party has seven days to "advise" whether it "persists" in the designation and then, if so, seven more days to seek a protective order. (SPO § 9(b).) Only if it does *both* of these things, then the confidentiality designations are maintained until the Court rules on the motion for a protective order. But if the designating party fails to either advise whether it persists in a designation or move for relief, the documents are automatically de-designated to the designation requested by the challenging party.

Rymark did not write the SPO but has definitively complied with its exact terms in all respects. Rymark first served its SPO-compliant challenges on January 17 and followed that up

with similar challenges on February 5 and June 28. But Plaintiffs never advised whether they persisted in the challenged designations and did not move for relief until the instant November Motion. Under black-and-white terms of the Court-imposed SPO, the challenged documents were automatically de-designated, and that de-designation occurred on January 31.

Notably, months later in March 2024, Rymark filed de-designated documents on the public docket in March 2024, and Plaintiffs did not object. But many months later, when Rymark filed additional documents in July 2024, Plaintiffs argued for the first time that Rymark's previously communicated challenges had been ineffective. And now—more than ten months after Rymark's original challenge—Plaintiffs filed the Motion.

The Court should deny the Motion for the following reasons:

- ***First*, the Motion is untimely under the SPO.** Plaintiffs are more than nine months late to the SPO's deadlines. Accordingly, the SPO already de-designated Plaintiffs' productions.

- ***Second*, even if Plaintiffs disputed the adequacy of Rymark's challenge, it was still their obligation to timely move for relief.** Rymark communicated a challenge under the SPO. And here again, the plain language of the SPO governs: upon a challenge, the *designating* party must move for relief.[1] Yet Plaintiffs ignored Rymark's challenges, including failing to object the first time Rymark filed de-designated documents. Now, any months later, the Motion asks the Court to undermine the SPO and bless their inaction.

- ***Third*, Rymark's challenges were adequate under the SPO.** Plaintiffs

---

[1] Even Plaintiffs' lone cited authority – *Fietchner v. Am. Mut. Ins. Co.*, 2010 WL 5072006 (D. Colo. Dec. 7, 2010) – involved a party that disputed the adequacy of a challenge but still timely moved for relief, ultimately preserving its designations.

complain that Rymark should have listed every document in Plaintiffs' production when making a challenge. This is upside-down. Under the SPO, Plaintiff was obligated to evaluate each document prior to designating. Having instead made blanket designations, Plaintiffs logically cannot be heard to complain that Rymark responded with a blanket challenge. Federal courts universally condemn blanket designations and regularly permit blanket challenges to them.

- **Fourth, Plaintiffs' motion fails to carry their burden of demonstrating that the tens of thousands of documents they designated "Confidential" warrant that designation.** The underlying rationale for a sealing request from a private company is the risk of "competitive harm" through revelation of the company's strategic interests. In other words, the risk is that *competitors* would use the information to their ongoing business advantage, in manners unrelated to the substance of the litigation. Yet here, not only has no such competitive harm been alleged, but no such competitive harm is possible. Specifically, the only "business interest" that Plaintiffs claim to own is Rymark. (*See, e.g.*, Dkt. 16 (Plaintiffs alleging that Rymark is the "only operating asset" in the AmeriMark structure). As such, Plaintiff Swiss "holding company" lacks any conceivable competitive interests other than that which would affect the putative operating asset Rymark, and no argument has been raised on that front.

- **Finally, granting the Motion would endorse the breaches of the SPO by Plaintiffs, and undermine the SPO's specific procedural steps that are supposed to be in place for all parties in all cases.** In other words, as Plaintiffs have done here, other parties could game the system by designate everything confidential, refuse to accept

challenges from the other side, and then object only when embarrassing documents are on filed on the public docket. If the Court accepts such conduct in this case, the SPO becomes a non-functional and ineffectual component of this Court's Local Rules.

## II. PERTINENT FACTUAL BACKGROUND

Plaintiffs' Motion presents an inaccurate account, including by claiming the dispute first arose in June 2024. (Motion at 2, 4.) Rather, Rymark's full compliance with the SPO began in January 2024. The most pertinent facts include the following:

1. **Dec. 2024: Every Single Page of Plaintiffs' Rolling Production Blanket-Designated "Confidential."**

Plaintiffs began slowly producing documents in December 2023. Every page of every document in Plaintiffs' "rolling production" was stamped "Confidential." This was true even of documents for which there could be no good-faith argument of confidentiality, like public filings and blank pages

2. **Jan. 17, 2024: Rymark Sends SPO-Compliant Objection.**

On January 17, 2024, Rymark sent Plaintiffs a letter explaining that (1) their blanket designations were improper, (2) the SPO obligated Plaintiffs not to over-designate, and (3) that it was *Plaintiffs'* obligation, not Rymark's, to go "page-by-page" through Plaintiffs' documents "to determine which documents are legitimately entitled to protection under the protective order." (Pehrson Decl. ¶ 2)

In this communication, Rymark expressly asserted a formal challenge to Plaintiffs' designations:

> Accordingly, pursuant to Section 9(b) of the protective order, Defendants challenge all confidentiality designations you made to your productions and request that you remove the CONFIDENTIAL designation from all pages of all documents.

(*Id.*)

### 3. Plain Language of SPO Placed Burden on Plaintiffs as Designating Party.

The District's SPO provides that once a challenge has been made, the designating party must state within seven days whether it "persists" in the challenged designation and then move for a protective order with seven additional days. Plaintiffs fulfilled neither requirement.

### 4. After SPO Deadline, Plaintiffs Claim Entitlement to Blanket Designation Rights and Ignore Express SPO Language.

On January 26 –nine days after Rymark's challenge – Plaintiffs sent Rymark a letter saying that they were "entitled" to designate their entire productions as confidential, and complaining that Rymark should "specifically identify the documents that [it believed] should not be designated as confidential." (Pehrson Decl. ¶ 3)

### 5. Plaintiffs' Rolling Productions Continue to Blanket Designate.

Plaintiffs subsequently continued to designate every page in every batch of their rolling productions as confidential. (Pehrson Decl. ¶ 4)

### 6. Feb. 5, 2024: Rymark Again Challenges Designations Under SPO.

On February 5, 2024, Rymark served another challenge:

> You have continued to blanket-designate all produced documents as "Confidential" under the terms of the protective order. We already explained to you why this was improper. Pursuant to Section 9(b) of the protective order, Defendants challenge all confidentiality designations you made to all documents produced since our January 17 letter and request that you remove the CONFIDENTIAL designation from all pages of all documents.

(Pehrson Decl. ¶ 5.)

### 7. Plaintiffs Again Fail to Respond to SPO Challenge.

Plaintiffs again did not respond by the SPO's seven-day deadline. Instead, they waited

nearly a month before telling Rymark that they would "deny" its request to de-designate and again demanding that Rymark go document-by-document through its productions. (Pehrson Decl. ¶ 6)

**8. March 15, 2024: Rymark Publicly Files Documents Automatically De-Designated Under SPO Procedures; Plaintiffs Do Nothing.**

On March 15, 2024, Rymark filed a motion for the issuance of letters of request under the Hague Convention. Understanding the plain language of the SPO, and that it had successfully challenged off the confidentiality designations Plaintiffs had applied to their productions to date, Rymark filed several documents from those productions with its motion. (*See generally* Dkt. 53.) Plaintiffs did not object (or move to seal the documents). This further confirmed Rymark's well-founded belief in the plain language of the Court-promulgated SPO, and also that Plaintiffs understood their blanket designations were inappropriate and that the challenged documents had been de-designated.

**9. Despite the Public Filings of De-Designated Documents, Plaintiffs' Rolling Production Continued.**

As Plaintiffs continued their rolling production, they continued to designate every page of newly produced document batches as "Confidential." (Pehrson Decl. ¶ 7).

**10. June 28, 2024: Rymark Conveys draft Amended Counterclaim and Third-Party Complaint, and Again Challenges Recently Conveyed Blanked-Designated Documents.**

As contemplated by relevant procedural rules, weeks in advance of filing, Rymark asked Plaintiffs whether they would stipulate to the proposed Amended Complaint. The conveyed proposed Amended Complaint included express reference to every single exhibit to be attached, by bates number. Along with this conveyance, Defendants served yet another express challenge to Plaintiffs' recent confidentiality designations:

Finally, pursuant to Section 9(b) of the protective order, Defendants challenge all

confidentiality designations you have applied to all documents produced since our February 5, 2024 letter (at which time we challenged all confidentiality designations then to-date, such that – for clarity's sake – we have challenged all confidentiality designations you have made).

(Pehrson Decl. ¶ 8.)

11. **Plaintiffs Do Not Respond to Challenge; Instead Bringing Their Own Challenge as to Rymark-designated Documents.**

Following the June 28 challenge, Plaintiffs again did not follow the SPO's procedures for responding to challenges. Instead, Plaintiffs sent Rymark a letter complaining again that Rymark had not gone document-by-document through their own document production. (Pehrson Decl. ¶ 9.)

12. **July 13, 2024 Public Filing of De-Designated Materials.**

Following Defendants' refusal to stipulate to the amended pleading, Rymark filed a motion for leave to amend, attaching its draft Amended Counterclaim and Third-Party Complaint. Just as the June 28 conveyance had done, the filing attached exhibits from Plaintiffs' production for which Rymark had challenged the confidentiality designation. Yet Plaintiffs expressed shock at the filing, and subsequently moved to seal many of these exhibits and also filed what they styled as a short-form motion to "protect" their confidentiality designations, Dkt. 111. The Court granted Plaintiffs' motion to seal but denied Plaintiffs' motion to protect their confidentiality designations for failure to meet and confer and failure to address the relevant standard.

13. **October 11 Meet-and-Confer and November 14 Filing by Plaintiffs.**

The parties subsequently met and conferred in person about confidentiality designations on October 11. At that meeting, the parties agreed that they were at an impasse over whether Plaintiffs' documents were still "Confidential" under the SPO. Plaintiffs confirmed that they

understood Rymark's position in an October 14, 2024 letter. Plaintiffs then waited another month before filing the Motion on November 14, 2024.

### III.  LEGAL STANDARD

"There is both a constitutional (First Amendment) and common law right of public access to judicial documents." *Sparto v. Hearts for Hospice, LLC*, No. 2:12—801, 2023 WL 3080557, at *1 (D. Utah Apr. 25, 2023) (denying unopposed motion to seal).  "Courts have long recognized a common-law right of access to judicial records," and although this right is "not absolute," it may be limited only when "countervailing interests heavily outweigh the public's interest in access." *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1241 (10th Cir. 2012). The party seeking to restrict access – here, Plaintiffs – bears the burden to show "some significant interest that outweighs the presumption." *Id.*; *see also Sparto*, 2023 WL 3080557, at *1 (applying this "significant interest" standard). This interest must be "real" and "substantial," and the burden to show it is "heavy." *Colony*, 698 F.3d at 1242.  "Where a party seeks a protective order to maintain confidentiality designations of trade secrets or other confidential commercial information, the court must weigh the risk of disclosure to competitors against the risk that a protective order will impair prosecution or defense of the claims." *Anne A. v. United HealthCare Ins. Co.*, 2023 WL 197301, at *2 & n.19 (D. Utah Jan. 17, 2023) (citation and quotation marks omitted). The moving party must satisfy a "three-factor test" by showing (1) "the information sought is a trade secret or other confidential research, development, or commercial information," (2) disclosure "might be harmful," and (3) "the harm from disclosure outweighs the need for access." *Id.*

IV. ARGUMENT

A. Under the Express Plain Language of the SPO, this Matter Has Already Been Decided and the Motion Is Untimely.

The SPO has been promulgated by this Court through its Local Rules. The SPO imposes strict timing requirements when one party challenges another's confidentiality designations. "If no response is made within seven (7) days" after the challenge, "the information will be de-designated to the category requested by the receiving party." But if, within seven days, the designating party "advise[s] the receiving parties" that it "persists in the designation," "explain[s] the reason for the particular designation," and "state[s] its intent to seek a protective order," the designating party gets seven more days to actually file a motion. (*Id.* § 9(b)(i)–(ii).) If "no such motion is made within seven (7) days," "the information will be de-designated to the category requested by the receiving party."

Plaintiffs ignored these express deadlines for months. After Rymark served its first challenge on January 17, Plaintiffs did not respond until January 26, after the deadline. Accordingly, at that time, the challenged documents were *ipso facto* de-designated. Similarly, after Rymark's February 5 challenge, Plaintiffs waited nearly a month – until March 4 – to respond at all. Again, the SPO mandates de-designations.

After Rymark's third challenge, on June 28, Plaintiffs this time responded within one week (on July 3). But their response did not comply with the SPO because it did not advise whether they persisted in the challenged designations, did not explain the reason for the designations (except to incredulously claim that they had "a good-faith basis" for designating every single page). Plaintiffs also failed to comply with the SPO by failing to state whether they would seek a protective order.

And in any case, Plaintiffs did not seek a protective order within seven days of their initial response. So as of July 10, all of Plaintiffs' produced documents had lost their confidentiality designations. Accordingly, no existing designations are available to be "protected" by the Motion.

**B.  If Plaintiffs Believed Rymark's Challenges Were Inadequate, They Were Obligated To Move For Relief Under the Procedures Set Forth in the SPO.**

Plaintiffs do not dispute that they failed to meet the SPO's timing requirements in response to Rymark's challenges. But they say that Rymark's challenges were ineffective because Rymark only "made a handful of passing and broad statements" about "the allegedly 'blanket' designation of Plaintiffs' documents" but otherwise refused to go through their production "page-by-page," which Plaintiffs say is "the exact procedure required by the Protective Order." (Motion at 4.) This is inaccurate.

*First*, Rymark's challenges were not "a handful of passing and broad statements." Rymark's communications specifically challenged Plaintiffs' designations on three separate occasions. On each occasion, Rymark used the words, "pursuant to Section 9(b) of the protective order, Defendants challenge . . . ." On each occasion, Rymark explained the basis for its challenge – namely, Plaintiffs' bad-faith blanket designations. On each occasion, Rymark requested in writing that Plaintiffs remove the designations. And on each occasion, Rymark specified the new designation (namely, *no* designation, since there is no designation below "Confidential"). That is precisely what the SPO requires, and Plaintiffs cannot possibly have misunderstood Rymark's three written challenges to separate tranches of documents, each taking place during a six-month period, as "passing" "statements."

2

*Second*, nothing in the SPO requires page-by-page challenges.[2] On the contrary, the SPO expressly permits challenges to multiple "documents" at once. (SPO § 9(b) (referring to challenges to "the designation of a document or documents").) More to the point, Section 9(b) of the SPO– which governs challenges – presumes that the designating party will have complied with Section 4(g) of the SPO, which forbids over-designations and specifically commands that parties designate only specific protectable information – like, in the SPO's example, "the part of [a] document setting forth [] specific pricing information" – rather than "entire document[s]." (SPO § 4(g).) Here, Plaintiffs flouted § 4(g), designated everything Confidential, and then complained when Rymark would not do their job for them: *i.e.*, go page-by-page through Plaintiffs' own production to identify specific protectable information. Nothing in the SPO condones this approach; rather the SPO's plain language dictates otherwise.

And third, the SPO mandates that the designating party, not the challenging party, carries the burden of seeking court involvement after a disagreement about designations. (SPO § 9(c).) So if Plaintiffs thought there was something wrong with Rymark's challenges, they had an obligation to seek relief. That is exactly what happened in *Fietchner v. Am. Mut. Ins. Co.*, 2010 WL 5072006 (D. Colo. Dec. 7, 2010), the lone authority Plaintiffs cite in support of their argument that Rymark's challenges were inadequate. In *Fietchner*, on November 10, 2010, the non-designating party objected to the other's designations (incidentally by saying no more than that "upon consideration of the materials" produced, it "objects to [the] confidentiality designation"). This prompted the designating party to move for a protective order within twelve days.[3] Plaintiffs, by

---

[2] Notably, when Plaintiffs argue that page-by-page challenges are the "exact procedure required" by the SPO, *see* Motion at 4, they neither cite to the SPO nor quote any of its language.
[3] The protective order applicable in *Fietchner* required a motion within ten business days.

contrast, refused to acknowledge Rymark's challenges, essentially daring Rymark to file challenged documents. Then, when Rymark did so in March 2024, Plaintiffs did nothing. It was only in July 2024 – six months after Rymark's initial challenge – that Plaintiffs first objected to Rymark's filing of challenged documents. And it was another four months before Plaintiffs filed the Motion.

## C. Federal Courts Condemn Blanket Designations And Permit Blanket Challenges To Blanket Designations

Plaintiffs argue that despite the plain language of the SPO, they were permitted to make blanket designations, and Rymark was forbidden from making blanket challenges. This argument is not supported by the SPO or any case law. Federal courts condemn blanket designations. *See, e.g.*, *See, e.g.*, PPD Enters., LLC v. Stryker Corp., 2017 WL 3263469, at *1 (S.D. Tex. June 27, 2017) (condemning party's designation of "the whole lot" of its production, "thereby improperly attempting to shift their own time and expense burden to the plaintiff and this court"); United States v. Neuberger, 2024 WL 3370605, at *2 (D. Md. Mar. 15, 2024) ("Blanket confidentiality designations run afoul of the terms and purpose of [a protective] order and serve only to engender more litigation."). One court described a 99% rate of confidentiality designations as "flagrant" and "grossly abus[ive]," particularly where the party designated things like "blank pages" and "publicly accessible documents" confidential. *In re ULLICO Inc. Litig.*, 237 F.R.D. 314, 317–18 (D.D.C. 2006).[4] Courts also acknowledge that improper blanket designations impose many unfair costs on opposing parties. They threaten to "improperly shift[] the cost of review of

---

[4] Federal courts are taken aback by designation rates well *below* what Plaintiffs applied here. *E.g.*, THK Am., Inc. v. NSK Co., 157 F.R.D. 637, 645 (N.D. Ill. 1993) (79% rate was "absurdly high"); Healthtrio, LLC v. Aetna, Inc., 2014 WL 6886923, at *3 (D. Colo. Dec. 5, 2014) ("90% is an absurd number").

4

confidentiality" to the other side. <u>Del Campo v. Am. Corrective Counseling Servs., Inc.</u>, 2007 WL 3306496, at *4 (N.D. Cal. Nov. 6, 2007). And they tax litigant and Court resources.[5] See <u>ULLICO</u>, 237 F.R.D. at 318.

And second, when parties blanket-designate documents, federal courts allow blanket challenges. "[I]f the challenging party demonstrates that the producing/designating party did not act in good faith, then it has grounds to assert a broad, blanket request to re-review and re-designation." <u>United States v. Planned Parenthood Fed. of Am., Inc.</u>, 2022 WL 19006362, at *3 (N.D. Tex. Oct. 11, 2022); see also <u>Paradigm Alliance</u>, 248 F.R.D 598, 604-05 (D. Kan. Feb. 28, 2008) (permitting a blanket challenge because "[i]mplicit in the PO and its provision for designating documents as 'confidential' or 'AEO' is a requirement of good faith."). As a rule of thumb, federal courts believe that designation rates over 70% "support an inference of bad faith." <u>Planned Parenthood Fed. of Am.</u>, 2022 WL 19010531, at *3. Here, Plaintiffs' original rate was **100%**, and their revised rate (even if Plaintiffs' post-hoc, ineffective de-designations mattered) is **over 95%**. Under the case law, neither approach complies with the good faith standard.[6]

**D. Plaintiffs Have Not Carried Their Burden To Show That Virtually All Of Their Documents Are Protectable.**

Finally, even if Plaintiffs had brought a timely motion (they did not), even if Plaintiffs were permitted to assert blanket designations (they were not), even if Rymark were not permitted to

---

[5] And such tactics give the designating party an unfair tactical advantage: because an opposing party is unlikely to spend the resources going page-by-page through the other side's production making de-designation requests, it will instead do so only for documents it believes are material, thereby giving the producing party an unfair glimpse into litigation strategy and work product.
[6] Plaintiffs' authority – *Fietchner* – is not to the contrary, both because there the designating party timely moved for relief, *see supra*, but also because there is no suggestion in *Fietchner* that over-designations even approached the levels at issue here and in the cases cited above.

assert a blanket challenge (it was), and even if there were something procedurally wrong with Rymark's repeated challenges (there was not), Plaintiffs' Motion falls well short of carrying their burden to show that 95% of their produced documents are protectable.

For instance, Plaintiffs argue that Swiss privacy laws require them to designate "Confidential" any emails involving Europeans. It ought to go without saying that Swiss law does not apply here. But in any case, *Plaintiffs* have filed *many* emails involving Swiss or other European individuals in support of their own filings. (*E.g.*, Dkt. 16-38 (Colshorn), Dkt. 16-39 (Colshorn, Weibel, Gysi), Dkt. 16-41 (Colshorn), Dkt. 16-44 (Colshorn, Weibel, Gysi), Dkt. 16-53 (Vernich Hermano), Dkt. 16-56 (del Barrio).) In other words, Plaintiffs are opportunistic when it comes to Swiss privacy laws: those laws apparently don't matter whenever Plaintiffs think a filing will help *them*, but when it comes to filings by *Defendants*, Plaintiffs then become inexorably constrained by Swiss privacy laws. The Court should reject this argument.

### E.  Granting The Motion Would Undermine this Court's SPO.

Finally, granting Plaintiffs' Motion would be an express overruling of the SPO's plain language.  Such a turnabout would establish a roadmap for any party uninterested in doing the work of document-by-document confidentiality designations: designate *every single page* confidential, and then when the non-designating party challenges, demand that they challenge specific pages.

The Motion should be denied.

DATED: November 26, 2024

**KUNZLER BEAN & ADAMSON, PC**

<u>/s/ *Chad S. Pehrson*</u>
R. Jeremy Adamson
Chad S. Pehrson
Robert P. Harrington
Stephen Richards

*Attorneys for Defendants,*
*Counter Claimants and*
*Third-Party Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this the 27th day of November, I filed the foregoing via the Court's CM/ECF system, which provided notice of such filing to all counsel of records.

*/s/Chad Pehrson*
Chad Pehrson
