

January 17, 2024

Erik A. Christiansen
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, UT 84111
EChristiansen@parsonsbehle.com

Sarah E. Diamond
**VENABLE LLP**
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
SEDiamond@Venable.com

  Re: *Capana Swiss Advisors AG, et al. v. Rymark, Inc. et al.*

Dear Erik and Sarah:

  We write to respond to your letter of January 3, 2024, and to call to your attention portions of your document productions that, we believe, show your clients have forged documents in support of their claims.

## Plaintiffs' Discovery Responses

  Plaintiffs' discovery responses remain deficient, notwithstanding the arguments made in your January 3 letter. We address those arguments below, but unless we shortly receive amended responses, we will seek relief from the Court.

*Requests for Production 2, 3, 4, 5, and 7*

  Your responses to requests are made "subject to and without waiving" objections. As we explained in our December 17, 2024 letter, this is improper without stating which documents are being withheld and why. *Smash Tech., LLC v. Smash Sols., LLC*, 335 F.R.D. 438, 442 (D. Utah 2020). Otherwise, parties could, as you have here, (1) assert voluminous objections but agree to produce some documents; (2) produce only the responsive documents they want to produce, rather than the ones they don't want to produce; and then (3) refuse to say what was not produced and why, leaving the requesting party in the dark as to whether the responding party had actually fulfilled their obligation to produce all responsive documents. *Smash Technology*, which your letter failed to address or distinguish, explained at length why this specific approach

is forbidden. *Id.* ("[S]uch practice leaves the requesting Party uncertain as to whether the question has been fully answer or whether only a portion of the question has been answered . . . .") (citation omitted).

The authority in your letter is not to the contrary. In *Podium Corp. v. Chekkit Geolocation Servs. Inc.*, 2021 WL 3072607, at *1-2 (D. Utah Apr. 1, 2021), the parties disputed whether the discovery request was relevant at all, and therefore whether the responding party had an obligation to produce any documents. No production was being made "subject to and without waiving" objections. Here, by contrast, you have agreed to produce some documents – in a concession that these requests are addressed to relevant matters[1] – but will not say what you are not producing, and why. *Podium* does not bless this practice.[2]

Similarly, we believe that it is uncontroversial that parties are obligated to state, when responding to a discovery request, that they will produce all responsive nonprivileged documents. *See, e.g.*, *Spencer v. Delphi Automotive Sys., LLC*, 2019 WL 6324628, at *2 (D. Utah Nov. 26, 2019) (requiring a "verification statement in [] supplemental responses that all responsive documents have been produced"); *Rains v. Westminster College*, 2022 WL 299449, at *2 (D. Utah Feb. 1, 2022) ("The Westminster Defendants' representation that 'several hundred pages' were produced is insufficient to show all responsive documents were produced after a diligent search."). We are surprised by your refusal to agree to produce all responsive nonprivileged documents, and this refusal, combined with your refusal to say what you are not producing and why, convinces us that you are improperly withholding responsive documents. We intend to seek relief on this issue absent amended responses.

*Request for Production 4 (cont'd)*

This request calls for communications between AmeriMark (or Capana, as the case may be) and individuals listed in Defendants' Initial Disclosures. In addition to the issues discussed above, Plaintiffs' responses to this request impose two additional limitations, neither of which is warranted. You agree to produce only those communications are (1) "related to Defendants or AmeriMark" and (2) "pertinent to the claims and defenses raised in this lawsuit." (And per your standard practice, you do not even agree to produce all of these documents.) Yet your letter only

---

[1] Your letter repeatedly misstates – without any authority – the relevance standard for discovery in federal court. Rule 26 permits Defendants to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Hence, the relevant inquiry is not whether a document request addressed to a relevant matter might conceivably turn up a responsive but not particularly relevant document. (Nearly all requests will.) Instead, the question is whether the request is addressed to a relevant matter in the first instance.

[2] The other case you cited, *Xmission, L.C. v. Adknowledge, Inc.*, 2016 WL 3746528, at *1 n.1 (D. Utah July 8, 2016), also does not say that productions "subject to and without waiving" objections are appropriate. Instead, it merely noted in a footnote that a party had made such a production.

defends the first of these limitations, arguing at length that you should not be required to produce documents pertaining to "other transactions Plaintiffs have engaged in with third-parties" because, in your view, they do not relate to "defenses and claims raised in this lawsuit."

We disagree. However, in an attempt to find a compromise, we are willing to set that disagreement to the side for now so long as you abandon the second limitation. (It is not appropriate for you to make proprietary determinations of whether a responsive nonprivileged document is "pertinent" enough to warrant production.) In other words, we will accept, for now, a response to this request that agrees to produce all responsive nonprivileged documents and communications that are related to Defendants and/or any AmeriMark entity. Please serve amended responses to this effect. Otherwise, we will seek relief.

*Request for Production 5 (cont'd)*

This request calls for documents or communications related to any power of attorney purportedly executed or entered into by Mr. Markosian, along with documents and communications related to actions taken by individuals pursuant to that power. You still agree only to produce (some) nonprivileged responsive documents that "are related to the power(s) of attorney at issue in this matter."

We think it is apparent that any power of attorney in your clients' possession, custody, or control that was executed by Nick Markosian would be relevant to this lawsuit. Actions purportedly taken pursuant to powers of attorney executed by Nick Markosian are central to your claims, and to our defenses. If you believe that your clients are in possession of documents related to powers of attorney purportedly executed by Nick Markosian that are not "at issue" in this matter, please identify those powers of attorney. You should also agree, as requested, to produce all "documents and communications related to actions taken by individuals pursuant to" any power of attorney purportedly executed by Mr. Markosian. Otherwise we will move to compel.

*Request for Production 6*

This request calls for documents and communications related to compliance with the laws of the United States. On our original meet and confer call, you requested that we consider narrowing this request by identifying specific categories of "laws of the United States," such as laws governing real estate transactions or securities laws. Now that we have done so, you have shifted course and now demand that we identify specific "citations" of law because you should not be required to read large portions of the U.S. Code.

We think you are able to develop search terms for documents responsive to this request, as we have agreed to modify it, without reading large portions of the U.S. Code. If you will not even attempt to do so, then we believe the parties are at an impasse, and we will seek relief.

3

*Request for Production 8*

  This request calls for documents and communications related to, with, or about Orbital AG and Shaen Bernhardt. We are not willing to narrow this request as to Plaintiff AmeriMark's responses. All documents in AmeriMark's possession, custody, or control that relate to Orbital AG and/or Mr. Bernhardt are plainly relevant, since Plaintiffs' claims rely on Orbital AG legitimately becoming the primary owner of AmeriMark, and because of Mr. Bernhardt's role in this process. With respect to Capana's response, in an effort to reach a compromise, we are willing to narrow this request to documents and communications that are related to, with, or about Orbital AG and Shaen Bernhardt, and that also relate to Defendants and/or any AmeriMark entity. With this understanding, please amend your response and agree to produce all responsive nonprivileged documents.

  For clarity, however, we reject your suggestion that documents related to Mr. Bernhardt are "wholly irrelevant" and that we are trying to "drum up support" for a "misguided theory that [Mr. Bernhardt] is a bad actor." Even the documents you have produced so far, for instance, show the following about Mr. Bernhardt:

- Mr. Leshem was communicating with Mr. Bernhardt about AmeriMark at least as early as June 2018. (*E.g.*, PL_000000886.) This was long before AmeriMark was listed on a public exchange and long before "Swiss legal counsel" is supposed to have approached Orbital "to see if Orbital would be interested in investing in the AmeriMark Automotive structure as a distressed project." (Am. Compl. ¶ 60.)
- Mr. Leshem said of Mr. Bernhardt in May 2020, "Shaen is my associate in Switzerland who has helped me with Amerimark extensively!" (PL_0000002750.)
- Mr. Bernhardt is the beneficial owner of Capana. (PL_0000002808.)
- Mr. Leshem represented in August 2020 that Capana is "the Swiss vehicle through which [he] conduct[s] business" and to which Mr. Bernhardt was "an advisor." (PL_0000002861.)
- In August 2020, Mr. Bernhardt and Mr. Colshorn exchanged emails regarding "delet[ing]" Mr. Markosian "from AmeriMark Automotive," "taking over Rymark Inc.," and "build[ing] up a corresponding threatening backdrop that must be taken seriously by the Americans." (PL_0000002830.)
- In November 2021, Mr. Bernhardt stated that his goal was to "get the Amerimark companies cleaned up to reduce risk and so we can use them in the transaction scheduled for the end of the year." (PL_0000002472.)

  Should we be required to seek relief on this request, we are confident that the Court will understand, after reviewing the documents above, why Mr. Bernhardt's conduct is a proper subject of discovery in this action.

*Request for Production 9*

This request calls for documents and communications related to Plaintiffs' decision to wait for nearly three years before filing this lawsuit. You still have not stated that you will produce <u>all</u> non-privileged documents that are responsive to this request, and that you will log <u>all</u> allegedly privileged documents that are responsive to this request. Instead, you state only that you will "produce non-privileged documents that are relevant and responsive to Request for Production 9." This request seeks information on a relevant subject matter – Plaintiffs' delay in bringing suit – so you may not withhold documents based on your subjective belief regarding whether or not responsive documents are "relevant" to the parties' claims and defenses. And, as set forth above, you are required to produce <u>all</u>, not <u>some</u>, non-privileged responsive documents. Please amend your response immediately.

*Request for Production 10*

This request seeks documents and communications related to Plaintiffs' communications, or lack thereof, with the Vienna Stock Exchange, AmeriMark shareholders, regulatory authorities, and counterparties regarding the September 2020 disavowal. Here again, you are required to state that you will produce all non-privileged responsive documents, not "documents evidencing communications that are responsive to Request for Production 10."

*Request for Production 11 – Capana*

This request calls for documents and communications related to Capana's representations and agreements regarding Rymark's financial documents. You state that you will "rely on [your] own understanding of the phrases 'representations,' 'agreements,' and 'financial documents'" to guide your search for responsive documents, and that you will "produce any relevant, non-privileged documents [you] believe are responsive based on [your] own understanding of the request." As we have previously explained, you have an obligation under the Federal Rules to "exercise 'common sense' and attribute ordinary definitions to terms in discovery request." *Smash*, 335 F.R.D. at 449. We are not confident, based on your response, that you are meeting this obligation. Accordingly, please provide us with the custodians and search terms you used in searching for documents responsive to this request. In addition, you should amend your response to state that you will produce <u>all</u> responsive non-privileged documents, not an undefined set of "relevant, non-privileged documents" that you believe are "responsive."

*Request for Production 11 – AmeriMark*

This request calls for documents sufficient to show all transactions by any party in AmeriMark's ownership units. You are still refusing to respond adequately. We do not understand why. This lawsuit is about who owns how much of Rymark. You contend that AmeriMark owns Rymark. "[T]ransactions by any party in AmeriMark's ownership units" is therefore a relevant subject for discovery. You have not identified any reason why AmeriMark should be able to withhold documents showing transactions in AmeriMark ownership units. We

5

believe the parties are at an impasse on this request, and we will seek relief absent an amended response.

### Blanket Confidentiality Designations

So far as we can tell, you have designated every page of every document in your productions as "CONFIDENTIAL." Federal courts condemn this approach. *See, e.g.*, *PPD Enters., LLC v. Stryker Corp.*, 2017 WL 3263469, at *1 (S.D. Tex. June 27, 2017) ("Obviously, defendants made no attempt to conduct a good faith, document-by-document review of its production in order to determine which might truly deserve confidentiality protection, and which might not. Instead, defendants sought to evade this responsibility by breezily designating the whole lot, thereby improperly attempting to shift their own time and expense burden to the plaintiff and this court.").

Instead, pursuant to Section 4(g) of the protective order, you were obligated to use "reasonable care to avoid designating any documents or information as CONFIDENTIAL INFORMATION . . . that is not entitled to such designation." It is, of course, not our obligation to review your entire production page-by-page to determine which documents are legitimately entitled to protection under the protective order. That was your obligation. Accordingly, pursuant to Section 9(b) of the protective order, Defendants challenge all confidentiality designations you made to your productions and request that you remove the CONFIDENTIAL designation from all pages of all documents.

### Defendants' Document Production

Thank you for making the specific observations regarding the Rymark production. We read your comments closely and reviewed our production. In conducting this review, we learned that the electronic materials collected dated back only to October 2019. Upon learning this, we continued to search through Rymark's materials, and located additional servers and other electronic materials that date back prior to October 2019.

The following search terms were entered as part of the process of locating responsive documents, and will be applied to newly collected source materials. We would be happy to receive feedback on these terms, and add additional terms as you propose.

- Capana
- Capana Swiss Advisors AG
- AmeriMark
- AmeriMark Automotive AG
- AmeriMark Group AG
- Ananda Capital Partners, Inc.
- Ananda
- Gysi & Partner Rechtsanwalte Ltd.
- CHARIS Finanz- und Vermoegensmanagement AG
- Bank for Investments und Wertpapiere AG

- Steffen Rausch Kessler AG
- NOUV MT
- Grantchester Equity
- 4Service Cloud Tech AG
- ECON Commercial Company GmbH
- White Tree Capital
- Orbital AG
- Capital Lounge GmbH
- Friends and Equity GmbH
- SIX-SIS
- Bank M
- Schweiger
- Bendura Bank
- Abovo Treuhand
- Philomax
- "Share Exchange Agreement"
- "Agreement concerning a contribution in kind"
- Global Share Certificate
- Global-Zertifikat
- "Acquisition and Reverse Merger Agreement"
- "Mandate Agreement"
- "Equity Research"
- "Listing Agreement"
- Marche Libre
- Euronext
- Paris Stock Exchange
- Maltese Stock Exchange
- Vienna Stock Exchange
- Vienna Direct
- Frankfurt Stock Exchange
- Austrian Financial Market Authority
- Switzerland
- Germany
- Nicolai Colshorn
- Dr. iur. Markus Thier
- Adrian Zehner
- Felix Kappeler
- Martin Fasser
- Anthony Attla
- Eve Carpentier
- Martin Wenzl
- Pasqual Vernich Hermano
- Frank Hueser/Frank Huser
- David Hesterman
- Hestermaniac

7

- Pascal Seeberger/Pascal Seeburger
- Miron Leshem
- Miron
- Alexander Coenen
- Stefan Kammerlander
- Mathias Voigt
- Daniel Gysi
- Beat Weibel
- Martina Sperlich
- Ralf Helfritsch
- @amerimarkag.com
- @econcc.ch
- @solvaction.com
- @4service.com
- @charis-trust.ch
- @gysipartner.ch
- @vossreedstein.com
- @inversionis.com

**<u>Defendants' Discovery Responses</u>**

*Markosian – RFP 13*

This request, as you note, asked us to produce documents sufficient to show every expenditure of a productive, multi-location automobile dealership over a nearly eight-year period. It is apparent that the burden of producing those documents is disproportionate to the needs of this case.

In your letter, you suggest that what you are really interested in is "dividends" paid to "entities other than AmeriMark Automotive." If you are proposing to narrow this request to only those documents sufficient to show those "dividends," please identify what you mean by "dividend" and we will consider whether the burden of locating those documents is, in our view, proportionate to the needs of the case.

*Markosian – RFP 17; Markosian – RFP 19; Kirkland – RFP 9; Small – RFP 9*

These requests call for all documents supporting certain contentions or affirmative defenses. We have already explained to you, in prior correspondence, why these sorts of blockbuster/contention document requests are inappropriate, particularly at this procedural stage. (*See* Dec. 17, 2023 Pehrson Ltr. at 6-7.) You ignored what we said in this letter and the authority we cited. In our view, meet-and-confer correspondence is not productive when one side refuses to engage with arguments made, and authority cited, by the other. We remain willing to meet and confer regarding the appropriate approach to blockbuster document requests, but we would request that you first meaningfully respond to our December 17 letter.

8

**Evidence of Fraudulent Conduct By Capana**

Finally, our review of your clients' document production so far raises serious questions about whether Capana personnel[3] have forged documents in support of Capana and AmeriMark's claims. Given that the Amended Complaint was verified under penalty of perjury, we write to you in good faith to give you an opportunity to respond to our concerns and provide us with additional information in advance of our seeking appropriate relief from the Court.

The Amended Complaint alleges that sometime in late 2018[4], White Tree Capital, Ltd. ("**Whitetree**") "demanded a significant stock grant" in AmeriMark Group (not AmeriMark Automotive) "in order to fund ongoing expenses." (Am. Compl. ¶ 52.) This "significant stock grant" is, you allege, how Capana allegedly came to own nearly half of AmeriMark Group. (*See id.* ¶ 62 (alleging that on May 14, 2019, Orbital AG "purchased from White Tree options to acquire substantially all of White Tree's shares in AmeriMark Group").)

We do not think your document production substantiates these allegations. No communications with Whitetree appear in your production. Nor do we see communications with Whitetree in David Hesterman's productions.[5] We have not located any documentation related to the "significant stock grant" Whitetree is supposed to have demanded from AmeriMark Group in late 2018. And you appear not to have produced the agreement by which Orbital AG is supposed to have purchased, from Whitetree, options to acquire AmeriMark Group stock.

Moreover, the documents in your productions that do mention Whitetree are suspect. For instance, on July 23, 2019, Miron Leshem told Nicole Kuster that Mr. Markosian had "transferred ownership of 13 million AmeriMArk [sic] Group Shares [sic] to Whitetree Capital." (PL_0000002101.) But later that year, after Ms. Kuster had created a shareholder register, she asked Mr. Leshem to explain which shares Whitetree had supposedly obtained from Mr.

---

[3] We are not persuaded by your efforts to distance Capana or Mr. Bernhardt from Mr. Leshem. *See, e.g.*, Jan. 3, 2024 Christiansen Ltr. at 7-8 (arguing that Defendants have alleged that Mr. Leshem defrauded them, but not that "Plaintiffs" committed any "wrongful act"). As we explained above, in August 2020, Mr. Leshem described Capana as "the Swiss vehicle through which [he] conduct[s] business and [to] which Shaen is an advisor." (PL_0000002861.) And in May 2020, he described Mr. Bernhardt as his "associate" who had "helped [him] with AmeriMark extensively!" (PL_0000002750.) Mr. Leshem also emailed from a Capana email address. (*See, e.g.*, PL_0000002474.)

[4] The Amended Complaint is not specific on when Whitetree supposedly agreed to fund ongoing expenses.

[5] Whitetree is mentioned twice in Mr. Hesterman's productions but is not described as a shareholder of AmeriMark Group either time. In April 2019, Mr. Leshem told Mr. Colshorn that Whitetree was "the strategic partner of Grantchester equity [sic] as regards facilitating admission of AmeriMArk [sic] Group to listing." (Hesterman0001099.) And in February 2020, Mr. Leshem directed Ms. Small to "submit an invoice" to Whitetree "in principal of listing fee." (Hesterman0001196.)

Markosian. Ms. Kuster had located a set of "Subscription Forms" that purported to subscribe for shares of AmeriMark Automotive AG in May 2018; one of these forms was for Whitetree Capital. (PL_0000002081 at *2099.) The Subscription Form for Whitetree purported to contribute 11,700,117 shares of AmeriMark <u>Automotive</u> in exchange for 13,000,000 shares of AmeriMark <u>Group</u>. This is obviously not consistent with Mr. Leshem's statement that Mr. Markosian sold Whitetree 13 million shares of AmeriMark <u>Group</u> stock. Nor is it consistent with the Amended Complaint. If Whitetree had obtained shares in AmeriMark Group, as you allege, then there should not be, in your document production, a Whitetree subscription form converting shares in AmeriMark Automotive to shares in AmeriMark Group.

The set of Subscription Forms that contained the Whitetree form also contained a subscription form for Mr. Markosian. But this form appears to have been fabricated. The form in question (PL_0000002100) says that Mr. Markosian exchanged 5,797,547 shares of AmeriMark Automotive for 6,441,655 shares of AmeriMark Group:

> 6'441'655 bearer shares with a nominal value of CHF 0.05 each
> (total nominal value CHF 322'082.75)
>
> I herewith commit myself to an unconditional contribution in kind of 5'797'547 shares of AmeriMark Automotive AG, in Frauenfeld, Switzerland, for 6'441'655 newly issued bearer shares of AmeriMark Group AG (former: 4Service Cloud Tech AG).
>
> _SLC LAT 5/10/18_
> Place, date
>
> For Nicholas T. Markosian:
>
> _[signature]_
> Nicholas T. Markosian

(PL_0000002100.)

But the subscription form attached to the Amended Complaint, which bears the same date, says that Mr. Markosian actually exchanged 17,497,500 shares of AmeriMark Automotive for 19,441,667 shares of AmeriMark Group:

10

> 19'441'667 bearer shares with a nominal value of CHF 0.05 each
> (total nominal value CHF 972'083.35)
>
> I herewith commit myself to an unconditional contribution in kind of 17'497'500 shares of AmeriMark Automotive AG, in Frauenfeld, Switzerland, for 19'441'667 newly issued bearer shares of AmeriMark Group AG (former: 4Service Cloud Tech AG).
>
> SLC LAT 5/10/18
> Place, date
>
> For Nicholas T. Markosian:
>
> [signature]
> Nicholas T. Markosian

(Am. Compl. Ex. 24.)

These two documents are irreconcilable. And there are obvious indicia of forgery on the Subscription Form from your production, including a visible line above Mr. Markosian's supposed signature. The straightforward implication of these documents, combined with the absence of documentation showing any transactions between Mr. Markosian and Whitetree, is that Mr. Markosian never sold any shares to Whitetree. Instead, the shares appear to have been stolen from Mr. Markosian and transferred to your client.[6]

Based on our review of these documents, we believe the verified allegations in the Amended Complaint regarding Whitetree's supposed acquisition of shares are false. And given the detail of the Amended Complaint generally, and the voluminous exhibits attached to it, we doubt that any false allegations regarding Whitetree were made "after an inquiry reasonable under the circumstances." Fed. R. Civ. P. 11(b).

So that we can better evaluate the facts surrounding those allegations, and potential remedies, please produce the following documents to us by January 24, 2024:

- All agreements pursuant to which Whitetree supposedly acquired an ownership interest in any AmeriMark entity.

---

[6] Ms. Kuster noted the discrepancy between Mr. Leshem's statement that Whitetree acquired AmeriMark Group shares, and the Subscription Form showing that Whitetree owned AmeriMark Automotive shares pre-conversion, in 2019. (PL_0000002049.) She asked Mr. Leshem to produce the supposed share transfer agreements between Mr. Markosian and Whitetree, but he failed to do so. (*Id.*)

11

- All agreements pursuant to which Whitetree supposedly sold an ownership interest in any AmeriMark entity, including any option to purchase an ownership interest in any AmeriMark entity.
- All agreements pursuant to which Capana and/or Orbital AG supposedly acquired an ownership interest in any AmeriMark entity.
- All communications between Whitetree, on the one hand, and any person or entity mentioned in the Amended Complaint or Answer and Counterclaim, on the other hand.

All of these documents are responsive to our discovery requests but have not been produced so far. Given the significant evidence of fraud on your clients' part, we cannot accept you withholding them any longer. We reserve the right to seek any available relief, including against Messrs. Kammerlander and Heeg.

            **KUNZLER BEAN & ADAMSON, P.C.**

            */s/ Chad S. Pehrson*

            Chad S. Pehrson