Erik A. Christiansen (USB 7372)
Hannah J. Ector (USB 17980)
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: (801) 532-1234
Facsimile: (801) 536-6111
EChristiansen@parsonsbehle.com
HEctor@parsonsbehle.com

John S. Worden (CA SBN 142943) (*Admitted Pro Hac Vice*)
Sarah E. Diamond (CA SBN 281162) (*Admitted Pro Hac Vice*)
**VENABLE LLP**
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
Telephone: (310) 229-9900
Facsimile: (310) 229-9901
JSWorden@venable.com
SEDiamond@venable.com

*Attorneys for Plaintiffs Capana Swiss Advisors AG and*
*AmeriMark Automotive AG, and Third-Party Defendants*
*Shaen Bernhardt, Martin Fasser Heeg, and Stefan Kammerlander*

## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| CAPANA SWISS ADVISORS AG, a Swiss corporation; AMERIMARK AUTOMOTIVE AG, a Swiss corporation,<br><br>Plaintiffs,<br><br>v.<br><br>RYMARK, INC., a Utah corporation; NICHOLAS THAYNE MARKOSIAN, an individual; JOHN KIRKLAND, an individual; and VICKY SMALL, an individual,<br><br>Defendants. | **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR LEAVE TO FILE SECOND AMENDED COUNTERCLAIM AND AMENDED THIRD-PARTY COMPLAINT [DKT. NO. 180]**<br><br>Case No. 2:23-cv-00467<br>Judge: Hon. Ted Stewart<br>Magistrate Judge: Hon. Cecilia M. Romero |

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ...................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND.....................................................1

LEGAL STANDARD.............................................................................................3

ARGUMENT .......................................................................................................3

     I.       The Motion Should be Denied Because of Defendants' Undue Delay ...................3

     II.     The Motion Should Be Denied Because Amendment Would Cause Undue Prejudice ......................................................................................................5

     III.    The Motion Should Be Denied Because Amendment Is Futile............................6

          A.     The Court Lacks Personal Jurisdiction Over the Proposed New Defendants ................................................................................. 6

          B.     Defendants' Proposed Additional Claims Fail as A Matter of Law .......... 8

CONCLUSION...................................................................................................10

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amquip Corp. v. Admiral Ins. Co.*,
    231 F.R.D. 197 (E.D. Pa. 2005)................................................................5

*Anixter v. Home-Stake Prod. Co.*,
    77 F.3d 1215 (10th Cir. 1996) ..............................................................9

*Calder v. Jones*,
    465 U.S. 783 (1984)..............................................................................7

*Carr v. Polis*,
    No. 24-1302, 2024 U.S. App. LEXIS 25009 (10th Cir. 2024) .................3

*Cent. Bank, N.A. v. First Interstate Bank, N.A.*,
    511 U.S. 164 (1994)..............................................................................9

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
    752 F.3d 173 (2d Cir. 2013)................................................................10

*Compton v. Rent-A- Center, Inc.*,
    350 Fed. Appx. 215 (10th Cir. 2009)....................................................3

*Curley v. Perry*,
    246 F.3d 1278 (10th Cir. 2001) ............................................................3

*Dinkel v. Crane Care, Inc.*,
    No. 09-388 LH/RHS, 2010 U.S. Dist. LEXIS 151605 (D. N.M., Jan. 28, 2010)....................7

*Durham v. Xerox Corp.*,
    18 F.3d 836 (10th Cir. 1994) ................................................................5

*EEOC v. Arabian Am. Oil Co.*,
    499 U.S. 244 (1991)............................................................................10

*Fed. Ins. Co. v. Gates Learjet Corp.*,
    823 F.2d 383 (10th Cir. 1987) ..............................................................5

*Fenn v. MLeads Enters.*,
    2006 UT 8, 137 P.3d 706 (Sup. Ct.) ......................................................7

*Foman v. Davis*,
    371 U.S. 182 (1962)..............................................................................8

*Frank v. U.S. W., Inc.*,
  3 F.3d 1357 (10th Cir. 1993) ......................................................................4, 5, 6

*Galindo v. Asset Recovery Trust*,
  No. 2:07CV878-DS, 2008 U.S. Dist. LEXIS 61495 (D. Utah. Aug. 12, 2008) .....................10

*Gohier v. Enright*,
  186 F.3d 1216 (10th Cir. 1999) ........................................................................6

*Halberstam v. Welch*,
  705 F.2d 472 (D.C. Cir. 1983) .........................................................................9

*Harnischfeger Eng'ns, Inc. v. Uniflo Conveyor, Inc.*,
  883 F. Supp. 608 (D. Utah 1995) ......................................................................7

*Holmes v. Young*,
  885 P.2d 305 (Colo. App. 1994) .......................................................................9

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
  564 U.S. 135 (2011) ...................................................................................9

*Jefferson Cnty. Sch. Dist. v. Moody's Investor's Serv.*,
  175 F.3d 848 (10th Cir. 1999) ........................................................................3

*Las Vegas Ice & Cold Storage Co. v. Far W. Bank*,
  893 F.2d 1182 (10th Cir. 1990) .......................................................................3

*Lister v. Alza Corp.*,
  No. 2:05-cv-1077-TS, 2006 U.S. Dist. LEXIS 86006 (D. Utah, Nov. 14, 2006) .....................7

*Minter v. Prime Equip. Co.*,
  451 F.3d 1196 (10th Cir. 2006) ....................................................................4, 5, 8

*Morrison v. Nat'l Austl. Bank Ltd.*,
  561 U.S. 247 (2010) ..................................................................................10

*Ortiz v. N.M.*,
  550 F. Supp. 3d 1020 (D. N.M. Jul. 22, 2021) .........................................................4

*Old Republic Ins. Co. v. Cont'l Motors, Inc.*,
  877 F.3d 895 (10th Cir. 2017) ........................................................................7

*Patton v. Guyer*,
  443 F.2d 79 (10th Cir. 1971) .........................................................................5

*Pohl Inc. of Am. v. Webelhuth*,
  2008 UT 89, *P17, 201 P.3d 944 (Sup. Ct.) ...........................................................7

iv

*Pro Axess, Inc. v. Orlux Distrib., Inc.*,
  428 F.3d 1270 (10th Cir. 2005) ............................................................7

*Psimenos v. E.F. Hutton & Co.*,
  722 F.2d 1041 (2d Cir. 1983)..............................................................10

*SEC v. Wolfson*,
  539 F.3d 1249 (10th Cir. 2008) ............................................................9

*Steinert v. Winn Group, Inc.*,
  190 F.R.D. 680 (D. Kan. 2000)..........................................................5, 6

*U.S. v. DeLuna*,
  10 F.3d 1529 (10th Cir.1993) ...............................................................9

*U.S. v. Esparsen*,
  930 F.2d 1461 (10th Cir. 1991) ............................................................9

*U.S. v. McKneely*,
  69 F.3d 1067 (10th Cir. 1995) ..............................................................9

*U.S. v. Phillips*,
  543 F.3d 1197 (10th Cir. 2008) ............................................................9

**Statutes**

15 U.S.C. § 78J(b)...................................................................................8

Exchange Act, § 10(b) ....................................................................8, 9, 10

Utah Code Ann. § 61-1-1 (1953) .......................................................8, 10

**Court Rules**

Fed. R. Civ. P. 15(a)(2)............................................................................3

Fed. R. Civ. P. 12(b) ...............................................................................7

**Other Authorities**

17 C.F.R. § 240.10b-5.............................................................................8

## INTRODUCTION

On September 16, 2020, Defendants' current counsel, Chad Pehrson, sent a letter to Plaintiffs and Counter-Defendants stating, "Markosian Auto, Mr. Kirkland, and Mr. Markosian have no connection or relationship with you, and no connection or relationship with the putative entity Amerimark AG."  After being confronted by *dozens* of documents signed and notarized by Markosian, Defendants changed course, suing thirteen parties and alleging a vast international conspiracy.  Now, near the close of discovery and after nearly all depositions were completed, Defendants seek leave to amend yet *again* to add new claims and two new parties, including ***Plaintiff AmeriMark Automotive AG's Swiss attorney, Felix Kappeler***.  Defendants' proposed second amended counter-claim is a transparent attempt to delay trial and to slander reputable professionals with lies.  As set forth below, Defendants' Motion for Leave ("Motion") fails.

First, Defendants unduly delayed by waiting *three months* after the deposition they claim provided new information.  It did not.  Defendants had the purported "new information" since July 15, 2024.  Second, Defendants' proposed amendment would unduly prejudice Plaintiffs because allowing them to amend again would delay trial and force Plaintiffs to incur substantial attorneys' fees to re-take depositions and conduct new discovery.  Finally, amendment is futile. There is no personal jurisdiction against the proposed new parties and Defendants' new claims for *domestic* securities fraud fail because the foreign securities in question were never traded in the United States.  Though leave to amend is liberally granted, Tenth Circuit courts are clear that amendment can be denied for any of these three bases, *each* of which apply here.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 16, 2020, Mr. Pehrson sent a letter (the "Disavowal Letter") to AmeriMark Group AG, Nicolai Colshorn, Miron Leshem, David Hesterman, and Ananda Capital Partners, Inc., titled "Notice of Non-Relationship" stating:

> Markosian Auto is small family business located in Salt Lake City, Utah. We demand that you cease and desist from any and all representations that you or your business affiliates have any connection with, relationship with, agency with, or

authority from Markosian Auto. In short, you do not and have not represented Markosian Auto for any purpose.

Diamond Decl., Ex. 1. Upon receipt of this patently false letter, Plaintiffs' counsel provided Mr.

Pehrson with dozens of documents notarized, signed, or emailed by Markosian. For example:

- November 8, 2016 email where Markosian asked his wife to retrieve his passport so he could facilitate Rymark's listing on the Malta Stock Exchange. Diamond Decl., Ex. 2;
- November 2016 email where a bank reference letter and a notarized copy of Markosian's utility bill and passport were sent to Swiss service providers. Dkt. No. 16 at ⁋ 20, Ex. 4;
- October 2016 email whereby Markosian again sent a notarized copy of his passport and a utility bill. *Id.* at ⁋ 20, Ex. 30.[1]
- May 6, 2016 email from Markosian correcting the spelling of his name on a Power of Attorney document, which Ananda requested he sign. Diamond Decl., Ex. 3.
- At least 14 key documents, all signed by Markosian, including a listing agreement, financial statements, a Share Exchange Agreement, the AmeriMark AG Shareholder List, and a promissory note.

Confronted with Markosian's notarized signatures on documents relating to the very

Defendants disavowed any "connection or relationship" to, Defendants alleged forgery,

suggesting notaries (including Bank of Utah employees) were in on the conspiracy. *See, e.g.*,

Defendants' Answer, ⁋⁋ 23-24, 29, 53. At deposition, Markosian changed his story *again*,

claiming ignorance of which documents he had signed. Defendants now have a new tactic:

slandering reputable professionals—including Plaintiff AmeriMark Automotive AG's Swiss

*lawyer*—by inventing a conspiracy undermined by Markosian's own signed documents. This

action was filed July 18, 2023. Since then, Plaintiffs have complied with all deadlines to bring

this case to trial.[2] *This case is straightforward as the key pieces of evidence are the very*

*documents Markosian signed*.

Defendants have tried to delay trial from the start. On November 7, 2023, they filed a

motion to extend discovery until June 30, 2025, claiming they needed "to engage in discovery

with respect to 49 specific individuals or companies that are presently located in Europe." Dkt.

No. 21. Defendants then waited *four months*, until March 18, 2024, to file a Motion for Issuance

---

[1] Prior to the September 16, 2020 Disavowal Letter, Markosian sent *at least*: 156 emails to Hesterman; 26 emails to Leshem; 7 emails to Ananda; and 2 emails to Colshorn.

[2] Rather than grant Defendants' Motion, Plaintiffs request that the Court set a date for trial.

of Letters of Request for International Judicial Assistance.  Dkt. No. 53.  On June 13, 2024, the Court extended discovery by 120 days to January 28, 2025.  Dkt. No. 88.  At the hearing the Court instructed the parties to promptly move forward.  Four more months passed, during which Defendants failed to serve the parties they already named.  *See* Dkt. No. 183.  Now, just two days before the deadline, Defendants seek to amend for a second time to add Felix Kappeler and Frank Hueser as parties and two additional causes of action.

## LEGAL STANDARD

Granting leave to amend is within the discretion of this court.  *See Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) (affirming denial of leave to amend where amendment "could not cure defect").  Such leave is "freely give[n] leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  However, Tenth Circuit Courts are clear that leave should be denied when there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party [or] futility of amendment."  *Compton v. Rent-A- Center, Inc.*, 350 Fed. Appx. 215, 220 (10th Cir. 2009) (affirming that "the district court acted within its discretion to deny leave to amend"); *see Curley* 246 F.3d at 1284 (denying leave where the complaint "could not be amended to cure defect"); *Jefferson Cnty. Sch. Dist. v. Moody's Investor's Serv.*, 175 F.3d 848, 859 (10th Cir. 1999) (denying leave where amendment would be futile).  Only one reason for denial must be shown for denial to be proper.  *Las Vegas Ice & Cold Storage Co. v. Far W. Bank*, 893 F.2d 1182, 1185 (10th Cir. 1990) (denying leave to amend because "untimeliness alone may be a sufficient basis for denial.").

## ARGUMENT

Defendants' Motion should be denied because (1) Defendants unduly delayed in seeking leave to amend; (2) amendment would unduly prejudice Plaintiffs; and (3) amendment is futile.

### I.    **The Motion Should be Denied Because of Defendants' Undue Delay**

There is no question that Defendants unduly delayed, which is grounds for denial of their Motion.  *Frank v. U.S. W., Inc.*, 3 F.3d 1357, 1365-66 (10th Cir. 1993) (it is "well settled in [the Tenth] circuit that untimeliness alone is a sufficient reason to deny leave to amend," especially

when the moving party "has no adequate explanation for the delay").  The longer the delay, "the more likely the motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason" for denial of leave.  *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 (10th Cir. 2006).

"Unduly delay occurs where the [party's] amendments 'make the complaint a 'moving target.'"  *Ortiz v. N. M.*, 550 F. Supp. 3d 1020, 1085 (D. N.M. Jul. 22, 2021) (citing *Minter*, 451 F.3d at 1205).  That is precisely what Defendants did here.  *See supra*, 2-3.  Defendants' *only* explanation for their delay is that "Bernhardt's deposition established Kappeler and Hueser's extensive involvement with misleading press releases that were a key part of the pump and dump." Motion at 5.  ***This is false.***  Bernhardt's September 4, 2024 deposition testimony that "Mr. Kappeler routinely reviewed press releases for the company" was already known to Plaintiffs based on documents produced on July 15, 2024—*nearly five months ago*—including bates number PL_0000012091, whereby Leshem sent Colshorn and Bernhardt an email, *copying Kappeler*, asking Colshorn to "please find the AmeriMark Press release *as approved by Herr Kappeler*" (emphasis added).  There is simply no justifiable reason for Defendants' delay.  Similarly, Mr. Hueser and his role have been explicitly known to Defendants since *February 2020*, including bates number RYMARK000413 where Hueser's involvement in European operations is described by Leshem *directly to Markosian* in detail.

Even if Defendants only discovered Hueser and Kappeler's involvement in the publication of press releases at Bernhardt's September 4, 2024 deposition (they did not), that explanation does not support leave to amend.  *See Ortiz v. Bayer Corp.*, 550 F. Supp. 3d at 1085 ("Courts will deny amendment if the party learned of the facts upon which its proposed amendment is based and nevertheless unreasonably delayed in moving to amend its complaint").  Bernhardt's deposition, which Defendants claim "established Kappeler and Hueser's extensive involvement with misleading press releases that were a key part of the pump and dump," took place on September 4, 2024.  Motion at 5.  More than *three months* have passed since then.  Defendants give no

4

explanation for why they waited until November 26, 2024, *two days* before the deadline to move to amend (and just two months before the close of discovery), to file their Motion.

These are not innocent discoveries, coincidentally at the eleventh hour, that render amendment proper—they are clear attempts to delay. Defendants' Motion should be denied for this reason alone. *See Frank*, 3 F.3d at 1365–66 (denying leave to amend "when the party filing the motion ha[d] no adequate explanation for the delay"); *Fed. Ins. Co. v. Gates Learjet Corp.*, 823 F.2d 383, 387 (10th Cir. 1987) (denying leave to amend where "the moving party could not demonstrate excusable neglect"); *Durham v. Xerox Corp.*, 18 F.3d 836, 840 (10th Cir. 1994) (denying leave on the basis of "unexplained delay alone.").

## II.  The Motion Should Be Denied Because Amendment Would Cause Undue Prejudice

Leave to amend is properly and independently denied when "the amendment would prejudice the nonmoving party." *Minter*, 451 F.3d at 1207. Prejudice results "when the amendment unfairly affects the [plaintiffs] 'in terms of preparing their defense to the amendment.'" *Id.* at 1208 (quoting *Patton v. Guyer*, 443 F.2d 79, 86 (10th Cir. 1971)). Prejudice may be found where the amended allegations relate to different subject matter than those in the existing complaint and when they "raise significant new factual issues." *Minter*, 451 F.3d at 1208; *see also Steinert v. Winn Group, Inc.*, 190 F.R.D. 680, 683 (D. Kan. 2000) ("a host of new issues or theories requiring substantial additional evidence or a change in tactics or theories by a party causing undue difficulty in defending a lawsuit may constitute prejudice"); *Amquip Corp. v. Admiral Ins. Co.*, 231 F.R.D. 197, 199 (E.D. Pa. 2005) ("A party is unduly prejudiced if amendment would cause surprise, *result in additional discovery, or add cost in the preparation to defend against new facts or theories*") (emphasis added). That will happen here.

On November 21, 2023, Defendants sought an extension of discovery through June 30, 2025, claiming it was necessary to seek information from 49 European entities. *See* Dkt. No. 30. This Court instead extended discovery by ninety days until January 28, 2025. *See* Dkt. No. 88. Defendants utterly failed to use that time effectively. Indeed, Defendants waited more than *eight months* to even *issue* Letters Rogatory to at least one of those forty-nine European entities and

completely ignored a Swiss judge's emails regarding the same. *See* Dkt. No. 170. These facts alone warrant denial of Defendants' Motion. *See Steinert*, 190 F.R.D. at 683 (denying leave where, although amendment would not be futile and the amendment was not brought in bad faith, the addition of new claims and defendants "would require the opposing parties to expend additional time and resources and substantially delay the progress of this action.").

After sitting on their allegations *for well over a year*, Defendants seek to add two new parties and two new causes of actions. *See generally* Motion. The two claims contain entirely new theories relating to Utah and federal securities fraud. *Id.* at Ex. B, 63-67. Yet, Defendants argue that Plaintiffs "cannot credibly argue undue prejudice because they will be able to test the amended claims on the merits through discovery," and because the action "is in its infancy." Motion at 8-9. Not so. Discovery closes on January 28, 2025. *See* Dkt. No. 88. If this Court grants the Motion, it will force a further extension and cause substantial delay. Unlike Defendants, Plaintiffs have judiciously pursued their claims and wish to avoid spending thousands of additional hours and dollars waiting for Defendants to do the same. Defendants' failure to act should not be rewarded by granting them leave to amend. Defendants' tactics to delay trial must stop.

## III.   The Motion Should Be Denied Because Amendment Is Futile

Leave to amend is properly denied if amendment is futile. *Frank*, 3 F.3d at 1365; *Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir. 1999) (futility exists when an amended complaint "would be subject to dismissal"). Amendment is futile because (a) the Court has no jurisdiction over foreign nationals Kappeler or Hueser, and (b) Defendants' claims fail as a matter of law.

### A.   The Court Lacks Personal Jurisdiction Over the Proposed New Defendants

Defendants seek leave to add two individuals—Hueser and Kappeler—as third-party defendants. The Court does not have personal jurisdiction over either individual. This alone is grounds for denying Defendants' Motion. *See, e.g., Lister v. Alza Corp.*, No. 2:05-cv-1077-TS, 2006 U.S. Dist. LEXIS 86006, at * 1 (D. Utah, Nov. 14, 2006) (denying leave because there were no minimum contacts between the proposed party and the state); *Dinkel v. Crane Care, Inc.*, No.

09-388 LH/RHS, 2010 U.S. Dist. LEXIS 151605, at *33 (D. N.M., Jan. 28, 2010) (denying leave where the court had no personal jurisdiction over the new parties).

Defendants have not—and cannot—meet that burden. Instead, they state conclusively: "The Court has personal jurisdiction over the Defendants because, as set forth herein, they purposely availed themselves of the protections of Utah law and purposefully directed tortious conduct toward Utah." Motion, Ex. B at 11. This is insufficient. *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 917 (10th Cir. 2017) (affirming dismissal for failure to "allege facts supporting [plaintiff's] conclusory claim" that defendant purposefully targeted the forum state). To establish personal jurisdiction under the tortious injury requirement there must be a showing that the tortious injury was *caused* in Utah. *See, e.g.*, *Pohl Inc. of Am. v. Webelhuth*, 2008 UT 89, *P17, 201 P.3d 944 (Sup. Ct.) (citing *Harnischfeger Eng'rs, Inc. v. Uniflo Conveyor, Inc.*, 883 F. Supp. 608 (D. Utah 1995)) (personal jurisdiction is not established where although "the economic consequences of the tortious injury may have been *felt* in Utah, the tortious injury itself was not *caused* in Utah") (emphasis in original). "A plaintiff cannot claim that a tortious injury has been 'caused' in Utah by showing a diminished bank account in Utah when the tortious activity was not directed toward Utah." *Pohl*, 2008 UT 89 at *P18.

Defendants fail to show that Kappeler or Hueser "purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1276 (10th Cir. 2005). Neither Kappeler nor Hueser ever "purposefully avail[ed] [him]self of the benefits of conducting business" in Utah, nor did they purposefully direct tortious activity towards Utah. *Fenn v. MLeads Enters.*, 2006 UT 8, 137 P.3d 706, 712 (Sup. Ct.); *see also Calder v. Jones*, 465 U.S. 783, 790 (1984). They have *no* contacts with Utah.

Kappeler is outside legal counsel for AmeriMark Automotive and counsel to Capana Swiss Advisors AG. *See* Dkt. No. 180-1. Kappeler is a Swiss citizen, living in Switzerland, with *no* contacts with Utah. Diamond Decl. at ¶ 4. Defendants have not and cannot establish that Kappeler had sufficient minimum contacts with Utah or directed tortious conduct towards Utah.

Similarly, Hueser is a former officer of AmeriMark Group, who resigned from AmeriMark Group before January 25, 2022.  He resides in Germany; he is a German citizen.  Diamond Decl. at ¶ 5.  In his September 4, 2024 deposition, Bernhardt explained that Hueser formed AmeriMark Deutschland specifically to do "whatever activities were expected or planned for the AmeriMark group of companies … to undertake in Europe."  Motion, Ex. 1 at 47.  Bernhardt also testified that Hueser's conduct "was generally related to whatever AmerMark Deutschland was doing or planning to do. If it related to the market *in Europe*, that would also generally be Mr. Hueser."  Motion, Ex. 1 at 14 (emphasis added).  In other words, there is no evidence *whatsoever* indicating that Hueser had minimum contacts with Utah or directed tortious conduct towards Utah such that this Court has jurisdiction over him.  All evidence, in fact, points to the opposite conclusion.

## B.     Defendants' Proposed Additional Claims Fail as A Matter of Law

Leave to amend is properly denied if the proposed amendment is futile or would be subject to dismissal.  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Minter*, 451 F.3d at 1204.  Defendants' proposed third and fourth causes of action for "violations of Utah Code § 61-1-1 *et seq*" and "violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78J(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10B-5B," fail as a matter of law because: 1) Kappeler—AmeriMark Automotive AG's attorney—cannot be held liable for aiding and abetting; and 2) ***it is undisputed that any and all trades of AmeriMark stock occurred on the Vienna Stock Exchange*** (a foreign stock exchange).  *See, e.g.*, Dkt. No. 138 (Am. Counterclaim) ¶¶ 86-88.

### i.     *Kappeler Cannot Be Liable for Aiding and Abetting*

Incredulously, Defendants seek to add Kappeler, a Swiss lawyer and notary public, as a party to this action for acting in his capacity as a lawyer.  This is patently improper.  Lawyers cannot be held liable in a private action for aiding and abetting under federal securities laws.[3]  *See generally Cent. Bank, N.A. v. First Interstate Bank, N.A.*, 511 U.S. 164 (1994)

---

[3] Defendants seek to impute illegality on Kappeler for acting as a lawyer.  While not expressly pled, Defendants claim Kappeler "made a litany of false representations and omissions in connecting with various press releases," or "wrote, edited, or directed the writing of the press releases in question with the knowledge that they were false."  Motion, Ex. B at 60, 61, 64.

(prohibiting private actions for aiding and abetting under §10(b)).  Instead, a lawyer can only be held liable as a "primary violator" of Section 10(b),[4] which requires proof that a lawyer *himself* made the false statement, not merely participated in drafting a statement that turned out to be false.  *SEC v. Wolfson*, 539 F.3d 1249, 1357-58 (10th Cir. 2008) (citing *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1226 (10th Cir. 1996)).  The "maker" of a statement is the entity "with ultimate authority over the statement," not "one who prepares or publishes a statement *on behalf of another*."  *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011) (emphasis added).  A lawyer who merely reviews and edits a press release—as Kappeler did here—cannot be held liable.  *Id.*  Alternatively, a lawyer may be held liable for aiding and abetting when he "willfully associate[s] himself with the criminal venture and seek[s] to make it succeed through some action on his part."  *U.S. v. McKneely*, 69 F.3d 1067, 1072 (10th Cir. 1995) (citing *U.S. v. Esparsen*, 930 F.2d 1461, 1470 (10th Cir. 1991)).  This requires proof that the lawyer "knowingly and substantially" assisted another party in committing a criminal act.  *Holmes v. Young*, 885 P.2d 305, 308 (Colo. App. 1994) (citing *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983)).  Moreover, "willful[]" behavior is required, not merely negligent behavior.  *U.S. v. Phillips*, 543 F.3d 1197, 1209 (10th Cir. 2008) (quoting *U.S. v. DeLuna,* 10 F.3d 1529, 1533–34 (10th Cir. 1993)).

> ii.    *The Proposed Claims for Violation of the Utah and Federal Securities Acts Fail Because All Trades Were Made Outside the U.S.*

Defendants' third and fourth claims fail because it is undisputed that the foreign securities in question were never traded in the United States.  Defendants' third claim fails because "it is well-established that 'foreign plaintiffs' suits under anti-fraud provisions of the securities laws [will] be heard only when substantial acts in furtherance of the fraud were committed within the United States."  *Galindo v. Asset Recovery Trust*, No. 2:07CV878-DS, 2008 U.S. Dist. LEXIS 61495, *3-4 (D. Utah. Aug. 12, 2008) (citing *Psimenos v. E.F. Hutton & Co.*, 722 F.2d 1041, 1045 (2d Cir. 1983)).  The *Galindo* case is instructive.  In *Galindo*, this

---

[4] Defendants try to conceal this by grouping Kappeler with other parties.

Court explained that Utah courts will only entertain suits by foreigners "where conduct material to the completion of the fraud" occurred in a domestic jurisdiction.  *Id.* at *4.  The *Galindo* Court concluded that there *was* sufficient conduct in Utah because of the following pertinent facts: "many of the defendants in this case are residents of Utah or conduct business in the state of Utah."  Here, the opposite is true, particularly as to the allegations against Bernhardt, Kappeler, Hueser, AmeriMark Automotive, and AmeriMark Group.  Defendants do not allege any action in furtherance of any "pump and dump scheme" that occurred in Utah.  To the contrary, the allegations relate to sales of stocks in Vienna, with funds procured from Swiss entities, and press releases largely issued in German.  Utah's Uniform Securities Act simply cannot apply.

Defendants' fourth claim also fails because the case involves no securities listed on a domestic exchange or sold domestically.  *See generally Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247 (2010).  Again—it is undisputed that AmeriMark Group is a Swiss corporation and that any alleged trades were on a foreign exchange or otherwise conducted internationally.  *See, e.g.*, Dkt. No. 138 ¶¶ 86-88.  In *Morrison*, the Supreme Court held that Section 10(b) applies only to transactions in securities listed on domestic exchanges and domestic transactions in other securities.  The Court based their conclusion on the "longstanding principle of American law 'that legislation of Congress . . . is meant to apply only within the territorial jurisdiction of the United States.'"  *Id.* (citing *EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 248 (1991)); *see also City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173 (2d Cir. 2013) ("Supreme Court's decision in *Morrison* precludes claims brought pursuant to the Securities Exchange Act of 1934 by purchases of shares of a foreign issuer on a foreign exchange, even if those shares were cross-listed on a United States exchange").  Defendants' legally untenable claims are an attempt to delay trial.  The Motion should be denied.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny the Motion on any of the three independent grounds of undue delay, undue prejudice, or futility.

DATED: December 10, 2024

VENABLE LLP
John S. Worden (*Admitted Pro Hac Vice*)
Sarah E. Diamond (*Admitted Pro Hac Vice*)

PARSONS BEHLE & LATIMER
Erik A. Christiansen
Hannah J. Ector

By:  */s/ Sarah E. Diamond*
    *Attorneys for Plaintiffs Capana Swiss*
    *Advisors AG and AmeriMark Automotive*
    *AG, and Third-Party Defendants Shaen*
    *Bernhardt, Martin Fasser Heeg, and Stefan*
    *Kammerlander*

## CERTIFICATE OF SERVICE

I hereby certify that on December 10, 2024, I caused a true and correct copy of the foregoing **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR LEAVE TO FILE SECOND AMENDED COUNTERCLAIM AND AMENDED THIRD-PARTY COMPLAINT** to be filed on CM/ECF and accordingly electronically served to the parties of record.

*/s/ Hannah Ector*
Hannah Ector

12