R. Jeremy Adamson (12818) (jadamson@kba.law)
Chad S. Pehrson (12622) (cpehrson@kba.law)
Robert P. Harrington (12541) (rharrington@kba.law)
Stephen Richards *(*19332*)* (srichards@kba.law)
**KB & A**
50 West Broadway Ste 1000
Salt Lake City Utah 84101
Telephone: (801) 994-4646

*Attorneys for Defendants, Counter Claimants and Third-Party Plaintiffs*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CAPANA SWISS ADVISORS AG, a Swiss corporation; AMERIMARK AUTOMOTIVE AG, a Swiss corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>RYMARK, INC., a Utah corporation; NICHOLAS THAYNE MARKOSIAN, an individual; JOHN KIRKLAND, an individual; and VICKY SMALL, an individual,<br><br>Defendants. | **DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE SECOND AMENDED COUNTERCLAIM AND AMENDED THIRD-PARTY COMPLAINT [DKT. 180]**<br><br>Case No.: 2:23-cv-00467<br><br>Judge Ted Stewart<br>Magistrate Judge Cecilia M. Romero |
| RYMARK, INC., a Utah corporation; and NICHOLAS THAYNE MARKOSIAN, an individual,<br><br>Counter Claimants,<br><br>vs.<br><br>CAPANA SWISS ADVISORS AG, a Swiss corporation, and Amerimark Automotive AG, a Swiss Corporation,<br><br>Counter Defendants. | **EXPEDITED HEARING REQUESTED** |

| |
|---|
| RYMARK, INC., a Utah corporation; and NICHOLAS THAYNE MARKOSIAN, an individual,<br><br>        Third-Party Plaintiffs,<br><br>vs.<br><br>SHAEN BERNHARDT, an individual; ASHLEY MIRON LESHEM, an individual; DAVID HESTERMAN, an individual; NICOLAI COLSHORN, an individual; STEFAN KAMMERLANDER, an individual; ALEXANDER COENEN, an individual; MARTIN FASSER HEEG, an individual; AMERIMARK GROUP AG, a Swiss corporation; and PHILOMAXCAP AG, a German corporation,<br><br>        Third-Party Defendants. |

    Plaintiffs' Opposition (Dkt. 187, "Opp'n") fails to carry their burden to show why justice does not require amendment.

    First, there is no undue delay because Counterclaimants and Third-Party Defendants ("Rymark") moved for leave to amend within the time limits and did so based on newly-discovered information. Plaintiffs took *three years* to prepare this lawsuit.[1] The Court should reject their opportunistic argument that Rymark should not be permitted to amend its claims via a motion filed in November 2024 to reflect information Rymark learned in September 2024. Second, Plaintiffs cannot establish undue prejudice. They misconstrue the standard and overlook that the proposed amendment relates to the core issues and allegations that Rymark has asserted all along. Finally,

---

[1] *Compare* Opp'n at 1 (describing September 2020 letter) *with* Dkt. 1 (filed in July 2023).

2

the amendment is not futile. Kappeler and Hueser are subject to personal jurisdiction given their involvement in a conspiracy to loot Rymark (a Utah-based car dealership ) and deprive it and its owners of value. They and others are directly liable under securities laws for their own actions and their efforts to steal securities from this local company. Leave to amend should be granted.

I. **THERE IS NO UNDUE DELAY BECAUSE RYMARK MOVED WITHIHN THE TIME LIMITS AND BECAUSE THE AMENDMENT IS BASED ON NEWLY-DISCOVERED INFORMATION.**

As the Court previously explained, a party's "ability to amend its pleadings is not restricted to a particular stage in the action," "[l]ateness does not of itself" justify denial of leave, and only when the moving party has "no adequate explanation" for delay or "kn[ew] or should have known" of the facts underlying the amendment should leave be denied. (Dkt. 137 at 9–10 (internal quotation marks and citation omitted).) And when it comes to the specific scheme at issue here, the Court previously explained that Plaintiffs can only establish undue delay if they could "demonstrate that Defendants were long aware of the specific conduct of each third-party in the alleged" scheme. (*Id.* at 10–11.) Plaintiffs have the burden to make that showing, *e.g.*, *nCAP Licensing, LLC v. Apple Inc.*, Case No. 2:17-cv-905, 2019 WL 8137713, at *3 (D. Utah June 7, 2019) (not reported). They cannot do so.

A. **Rymark's motion is timely.**

Rymark moved to amend before the court-ordered deadline for such motions. Plaintiffs suggest that there was undue delay because Rymark moved to amend "*two days* before the deadline to move to amend[.]" (Opp'n at 5 (emphasis in original)). But the fact that Rymark moved before a deadline establishes timeliness, not untimeliness. As this Court and others have explained, if Plaintiffs "had objections" to a potential amendment, they "should not have agreed

3

to . . . the deadline for filing such motions." (Dkt. 137 at 10, n.57 (quoting *J White, L.C. v. Wiseman*, No. 2:16-cv-01179, 2019 WL 4393297, at *2 (D. Utah Sept. 13, 2019)*"); see also J White*, 2019 WL 4393297, at *2 (motion for leave to amend that was "filed prior to the relevant deadline . . . was not unduly delayed"). After all, the whole point of the deadline for motions to amend pleadings is to establish a date before which those motions are presumptively timely.

### B. The proposed amendment is premised on information recently obtained.

Nor is there merit to Plaintiffs' suggestion that Rymark had discovered the bases for these claims as of July 15, 2024. (Opp'n at 4.) Plaintiffs cherry-pick one email produced on that date, which makes a passing reference to Kappeler's involvement in approving, not drafting, a 2020 press release (*i.e.*, not one of the press releases involved in the 2021 pump-and-dump). (*Id.*) But Plaintiffs' document production spans tens of thousands of pages, and the single passing reference to Kappeler did not reveal the true scope of Kappeler's involvement in the litany of misleading press releases.[2] It raised questions about Kappeler's involvement, so Rymark promptly investigated those questions in Bernhardt's deposition. It was only as a result of that deposition that Kappeler's apparent role in actually writing the pump-and-dump press releases came to light.[3] And Plaintiffs fail to acknowledge that recent document productions have also

---

[2] Plaintiffs did not even bother to attach the email to their Opposition. They also did not attach the February 2020 email that they say "described" "Hueser's involvement in European operations." (Opp'n at 4.) In fact, neither of these emails disclosed Kappeler and Hueser's apparently important roles in the pump-and-dump; that is presumably why Plaintiffs omitted them.

[3] Plaintiffs also fault Rymark for not moving for leave to amend immediately after Bernhardt's deposition. Of course, it takes weeks for deposition transcripts to be finalized and subsequent drafting (of both an amended complaint and a motion for leave) to occur. Plaintiffs also previously argued that Rymark's *prior* motion to amend – which came *before* the July 15, 2024

4

established that Kappeler lied to the Head of Listings for the Vienna exchange to advance the pump-and-dump scheme. (Dkt. 180–2 ¶¶ 7, 92.) In other words, Rymark was not, and could not have been, "aware of the specific conduct" of Kappeler and Hueser in support of the scheme. (Dkt. 137 at 10.)

### C. Rymark does not wish to delay trial and would support an expedited "dual track" discovery schedule.

Plaintiffs characterize the proposed amendment as "clear attempts to delay." (Opp'n at 5.) This is wrong. Rymark is *not* seeking a blanket extension of fact discovery and is hopeful that any additional discovery needed as a result of the amendment would be limited and narrow in scope. Rymark is amenable to an approach to scheduling that would permit any needed limited discovery to run in tandem with general expert discovery in this action. Rymark is eager to proceed to trial.

## II. PLAINTIFFS CANNOT ESTABLISH UNDUE PREJUDICE.

### A. Additional discovery is not unduly prejudicial.

Nor can Plaintiffs show that they will be *unduly* prejudiced.[4] Plaintiffs argue the amendment would (1) add parties and claims, and (2) require additional discovery. (Opp'n at 5–6.) The Court has already rejected these exact arguments, Dkt. 137 at 11, and it should do so again. "[T]he expenditure of time, money, and effort alone is not grounds for a finding of prejudice." *Id.*

---

document production and Bernhardt's September 2024 deposition – was, somehow, also the product of undue delay. (Dkt. 125.) Plaintiffs have yet to meet a motion for leave to amend that they think is timely.

[4] There is "invariably some practical prejudice resulting from an amendment, but this is not the test for refusal of an amendment." *Patton v. Guyer*, 443 F.2d 79, 86 (10th Cir. 1971). Instead, the prejudice must threaten "a grave injustice." *Id.*

(citation omitted). If Plaintiffs' arguments carried the day, leave to amend would *never* be granted, when in fact it is often granted far later that Rymark has requested it here. *See, e.g.*, *Developers Surety and Indemnity Co. v. Boswell-Olsen Enters, Inc.*, Case No. 2:12-cv-367, 2013 WL 12182107, at *1 (D. Utah Aug. 27, 2013) (having to engage in additional discovery "is not the type of prejudice that would justify denial of leave to amend") (not reported); *Bylin v. Billings*, 568 F.3d 1224, 1227–28 (10th Cir. 2009) (motion for leave filed day before final pretrial conference).

### B. The Amendments do *not* raise significant new factual issues.

Plaintiffs also suggest that the amendments raise a host of new issues or theories. (Opp'n at 6–10.) But the proposed amendment seeks only to add two additional parties after the scope of their involvement in the pump-and-dump scheme has come to light, and to add two additional causes of action of securities fraud under state and federal statutes that relate to the same scheme. Nothing about the amendment is a moving target; on the contrary, as the Court found on Rymark's prior amendment, Rymark has *always* "alleged a fraudulent scheme." (Dkt. 137 at 11.) Rymark simply alleges that fraudulent scheme in more detail, and against more wrongdoers, than it was able to do before.

### C. Letters rogatory have no bearing on undue prejudice and there is no need for this amendment to delay trial.

Plaintiffs mention letters rogatory that Rymark has issued to receive discovery from European entities, but they fail to connect the dots on how those letters establish prejudice. (Opp'n at 5–6.) Instead, Plaintiffs seem more interested in lobbing (unfounded) accusations of delay at Rymark. In fact, Mr. Markosian is anxious to get this action to trial as soon as possible.

### III. AMENDMENT IS *NOT* FUTILE BECAUSE RYMARK HAS SUFFICIENTLY PLEADED THE CLAIMS UNDER RULE 12.

"A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *U.S. ex rel. Barrick v. Parker-Migliorini Int'l, LLC*, 878 F.3d 1224, 1230 (10th Cir. 2017). "A futility objection should not turn into a mini-trial or summary judgment proceeding, without the safeguards normally present for maturation and merits-based resolution of claims." *Clearone Comms., Inc. v. Chiang*, Civil No. 2:07-cv-00037, 2007 WL 2572380, at *1 (D. Utah Sept. 5, 2007) (not reported). The question is not whether the movant "will ultimately prevail," but whether the movant "is entitled to offer evidence to support its claims." *SnapRays, LLC v. Ontel Prods. Corp.*, Case No. 2:16-cv-01198, 2017 WL 2241506, at *3 (D. Utah May 22, 2017) (not reported). The amendment is not futile.

### A. Hueser and Kappeler have purposely availed themselves and have caused injury in Utah—this entire action revolves around Rymark.

Plaintiffs suggest that Kappeler and Hueser are not subject to personal jurisdiction in Utah. (Opp'n 6–8). But that suggestion misses the mark for at least three reasons.

*First*, the correct vehicle for Messrs. Kappeler and Hueser to dispute personal jurisdiction would be a motion filed *by them*, contesting jurisdiction. Plaintiffs' arguments about personal jurisdiction boil down, remarkably, to two statements made in an attorney declaration, on information and belief, about Kappeler and Hueser. (Dkt. 187-1 ¶¶ 5–6.)

*Second*, Plaintiffs overlook that Kappeler and Bernhardt are subject to personal jurisdiction in Utah under a conspiracy theory of jurisdiction. The Utah Supreme Court has expressly "adopt[ed] a conspiracy theory of jurisdiction." *Raser Techs., Inc., v. Morgan Stanley & Co.*, 2019 UT 44, ¶ 85. This theory focuses on minimum contacts, "but recognizes that these contacts may be through a third party." *Id.* ¶ 76. The Tenth Circuit, too, has recognized personal

7

jurisdiction based on conspiracy. *See, e.g.*, Newsome v. Gallacher, 722 F.3d 1257, 1265–66 (10th Cir. 2013). Here, the proposed amendment *expressly* (1) alleges that Kappeler and Hueser were members of a "civil conspiracy" and (2) describes a litany of actions by Kappeler, Hueser, and their co-conspirators (none of whom have contested personal jurisdiction) in furtherance of the conspiracy. (Dkt. 180–2 at 67–70.) Those actions include material misrepresentations and omissions in communications to Mr. Markosian, in Utah. (Dkt. 180–2 at 5–13.) Those actions include the failure to inform Rymark that those proposing to assist with the fundraise had been subject to securities actions. (Dkt. 180–2 at 11–13.) And they include an effort to brazenly steal 13,000,000 of Markosian's shares in AmeriMark. (Dkt. 180–2 at 5–10, 29–31.) Construing the allegations in the light most favorable to Rymark, there is no question that Kappeler and Hueser could have anticipated their co-conspirators' actions would connect the conspiracy to Utah.

*Third*, Plaintiffs ignore the reality that the entire effort behind the underlying scheme was to fleece a car dealership *located in Taylorsville, Utah*. The proposed amendment (and the current operative pleading) make clear that the entire scheme was directed toward Utah. Rymark was the only operating entity. (Dkt. 180–2 at 46–47 (referring to Rymark as "AmeriMark Group's 'operating subsidiary[]'".) AmeriMark Automotive and AmeriMark Group were simply holding companies. They had no European operations. (Dkt. 180–2 at 6, 35–38, 45.) Those points are critical because "to satisfy the long-arm statute requirement, a plaintiff must allege only that the defendants caused a tortious injury in Utah and that the plaintiff's claims arise out of the tortious injury." Pohl, Inc. of Am. v. Webelhuth, 2008 UT 89, ¶ 20, 201 P.3d 944, 952. The plaintiff in *Pohl* "satisfied this requirement by alleging that it was the target of a civil conspiracy to commit tortious interference with Pohl's contract and to interfere with Pohl's prospective

economic relations." *Id.* Rymark's claims are similar—Kappeler and Hueser were part of an effort to cause tortious injury here in Utah and are subject to personal jurisdiction. As the Tenth Circuit colorfully put it, if "three Kansans conspired to fire a cannonball into Oklahoma," the Constitution would not "foreclose Oklahoma courts from exercising jurisdiction over the conspirators simply because they confined themselves to Kansas." Newsome, 722 F.3d at 1266. So too here: whether or not Kappeler and Hueser undertook their roles in the conspiracy is beside the point; the important thing is that Mr. Markosian and Rymark were harmed *in Utah*, which is precisely what the conspirators intended.

### B. Kappeler is directly liable for his affirmative misstatements to the Austrian regulator and for the misleading press releases he drafted and oversaw.

Plaintiffs argue that Kappeler cannot be liable under Section 10(b) or Rule 10b-5, but in doing so they misstate the law and misconstrue the nature of Rymark's claims. Plaintiffs suggest that the federal securities claims against Kapper are claims of *aiding and abetting*. (Opp'n at 8–10.) They are not. Rymark alleges direct liability by Kappeler. (Dkt. 180–2 at 65–67.) Plaintiffs also misstate the law regarding personal liability under Rule 10b-5. They assert that "[t]he 'maker' of a statement is *the entity* 'with ultimate authority over the statement.'" (Opp'n at 9 (quoting Janus Cap. Grp., Inc. v. First Derivative Traders, 564 U.S. 135, 142 (2011) (emphasis added)). But they conveniently omit that a "person" may also be liable. *Janus* explained that a either a "person" or "entity" can face liability: "For purposes of Rule 10b–5, the maker of a statement *is the person* or entity with ultimate authority over the statement, including its content and whether and how to communicate it." Janus, 564 U.S. 135 at 142 (emphasis added). Section 10(b) provides for liability for a "person" like Kappeler, and Plaintiffs' selective quotations do not alter that reality.

The proposed amendment easily states a claim against Kappeler under these standards. It alleges that Kappeler lied to Austrian regulator, Martin Wenzl, in order to facilitate and maintain AmeriMark Group's listing. (Dkt. 180–2 at 36, ¶¶ 92–93.) Specifically, it alleges that "Kappeler lied" about why the Euronext delisting of AmeriMark was not disclosed, "telling Wenzl that the issue was that Euronext had been unhappy with the complexity of AmeriMark's structure." (*Id.* ¶ 92.) But that "[t]his just wasn't true." (*Id.*) "[I]n fact, the Euronext explained that it had found 'market abuse and reputational risks' – *read*, a pump-and-dump scheme – in the reverse merger." (*Id.*) Kappeler lied, plain and simple.

The proposed amendment also alleges that Kappeler personally drafted press releases, and it explains that this allegation is based on testimony from Kappeler's confederates in the scheme. "At deposition, Bernhardt placed the responsibility for these press releases on Felix Kappeler, AmeriMark Group's attorney, saying that Kappeler would have drafted the press releases or, at least, passed them to Bernhardt." (*Id.* at 45, ¶ 119.) Rymark's amendment reiterates that point by alleging that *Kappeler* and others "made a litany of false representations and omissions in connection with various press releases issued as described more fully herein." (*Id.* at 66, ¶ 183.f.) The takeaway is clear—Kappeler exercised a degree of control over misleading press releases and faces direct liability.

Finally, Kappeler is also liable under a theory of civil conspiracy. Plaintiffs themselves acknowledge "a lawyer may be held liable for aiding and abetting when he 'willfully associate[s] himself with the criminal venture and seek[s] to make it succeed through some action on his part.'" (Opp'n at 9 (quoting *U.S. v. McKneely*, 69 F.3d 1067, 1072 (10th Cir. 1995)). The myriad allegations against Kappeler satisfy this standard as well.

### C. Rymark is not a "foreign plaintiff" and the securities claims relate to "domestic transactions in other securities."

Finally, Plaintiffs argue that there can be no liability under securities laws because AmeriMark was listed on a foreign exchange instead of a domestic exchange. (Opp'n at 9–10.) As an initial matter, Plaintiffs brought their own claims under Utah and federal securities laws related to AmeriMark's listing, Dkt. 16 ¶¶ 206–49, and they nowhere explain why *their* Utah and federal securities claims should succeed but *Rymark*'s claims are so futile that Rymark should not be allowed to even plead them. In any case, Plaintiffs' argument is flawed twice over.

First, Plaintiffs cite *Galindo v. Asset Recovery Trust*, No. 2:07-cv-868, 2008 WL 3851434 (D. Utah Aug. 12, 2008) to argue that U.S. courts will only hear securities claims involving *foreign plaintiffs* in limited circumstances. (Opp'n at 9–10.) Plaintiffs, of course, actually *are* foreign plaintiffs but do not explain why this does not bar their own securities claims.) In any case, as to Rymark's claims, the "plaintiffs" are Rymark and Mr. Markosian, neither of whom is "foreign." *Galindo* would also weigh in favor of the amendment in any event given that so much of the "conduct material to the completion of the fraud occurred in the United States." *Galindo*, 2008 WL 385143, *1; *see also* Dkt. 180-2 ¶¶ 42–50 (solicitation in Utah); *id.* ¶ 54 (false statements to a Utah resident); *id.* ¶¶ 67–71 (forgeries by Leshem and Hesterman, both Americans); *id.* ¶¶ 118, 140–41 (more false representations to Utahns).

Second, Plaintiffs' reliance on *Morrison v. Nat'l Austl Bank Ltd.*, 561 U.S. 247 (2010) is equally misplaced. (*See* Opp'n at 10). *Morrison* might be applicable if someone who purchased the shares on the foreign exchange as a result of the pump-and-dump scheme asserted claims. But that is not the nature of these claims. Rymark was not duped into purchasing its own shares from a foreign exchange. It was duped into dealing with Plaintiffs in advance of any such listing,

and the scheme included securities transactions in which Markosian purportedly swapped his interest in a *domestic* company—Rymark—for an interest in AmeriMark Group (which was subsequently stolen from him).

## CONCLUSION

The Motion should be granted.  Defendants respectfully ask for an expedited hearing.

DATED:  December 23, 2024

                                                        **KB&A**

                                                    /s/ *Chad S. Pehrson*
                                                    R. Jeremy Adamson
                                                    Chad S. Pehrson
                                                    Robert P. Harrington
                                                    Stephen Richards

                                                    *Attorney for Defendants*

## **WORD COUNT CERTIFICATATION**

I, Robert P. Harrington, certify that according to Microsoft Word's "Word Count" function, this Reply Memorandum contains 3,042 words and complies with DUCivR 7–1(a)(4).

/s/ *Robert P. Harrington*
Robert P. Harrington

## CERTIFICATE OF SERVICE

I hereby certify that on this ___ day of December 2024, I filed the foregoing **DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE SECOND AMENDED COUNTERCLAIM AND AMENDED THIRD-PARTY COMPLAINT [DKT. 180]** via the Court's Cm/ECF system, which provided notice of such filing to all counsel of records.

*/s/Chad S. Pehrson*