R. Jeremy Adamson (12818) jadamson@kba.law
Chad S. Pehrson (12622) cpehrson@kba.law
Robert P. Harrington (12541) rharrington@kba.law
Stephen Richards (19332) srichards@kba.law
**KUNZLER BEAN & ADAMSON, PC**
50 W Broadway, Ste 1000
Salt Lake City Utah 84101
Telephone: (801) 994-4646

*Attorneys for Defendants, Counter Claimants
And Third-Party Plaintiffs*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CAPANA SWISS ADVISORS AG, a Swiss corporation; AMERIMARK AUTOMOTIVE AG, a Swiss corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>RYMARK, INC., a Utah corporation; NICHOLAS THAYNE MARKOSIAN, an individual; JOHN KIRKLAND, an individual; and VICKY SMALL, an individual,<br><br>Defendants. | **DEFENDANTS' REPLY IN SUPPORT OF RULE 4(m) EXTENSION OF TIME TO SERVE ASHLEY MIRON LESHEM**<br><br>Case No.: 2:23-cv-00467-TS-CMR<br><br>Judge: Hon. Ted Stewart<br>Magistrate Judge: Hon. Cecilia M. Romero |
| RYMARK, INC., a Utah corporation; and NICHOLAS THAYNE MARKOSIAN, an individual,<br><br>Counter Claimants,<br><br>vs.<br><br>CAPANA SWISS ADVISORS AG, a Swiss corporation, and Amerimark Automotive AG, a Swiss Corporation,<br><br>Counter Defendants. | |

1

| | |
|---|---|
| RYMARK, INC., a Utah corporation; and NICHOLAS THAYNE MARKOSIAN, an individual,<br><br>    Third-Party Plaintiffs,<br><br>vs.<br><br>SHAEN BERNHARDT, an individual; ASHLEY MIRON LESHEM, an individual; DAVID HESTERMAN, an individual; NICOLAI COLSHORN, an individual; STEFAN KAMMERLANDER, an individual; ALEXANDER COENEN, an individual; MARTIN FASSER HEEG, an individual; AMERIMARK GROUP AG, a Swiss corporation; and PHILOMAXCAP AG, a German corporation,<br><br>    Third-Party Defendants. | |

This Court is empowered to grant both mandatory ("good cause") and permissive extensions of time to effectuate service. Under the circumstances presented in the Motion, and in the interests of justice, Rymark should receive the extension under either prong. "The general attitude of the federal courts is that the provisions of Federal Rule 4 should be liberally construed in the interest of doing substantial justice and the propriety of service in each case should turn on its own facts within the limits of the flexibility provided by the rule itself." 4A Fed. Prac. & Proc. Civ. §1083 (4th ed.).

Rymark believes it should receive a simple extension here, and it was surprised not only by the fact that Plaintiffs opposed Rymark's motion, but the tone with which Plaintiffs did so. In reality, Rymark exercised reasonable diligence in trying to serve Mr. Leshem, including by hiring two separate process server companies and two different former FBI agent private detectives.

Nonetheless, this team has not yet located the mercurial Mr. Leshem, who works primarily on transactions outside of the United States after being barred by the SEC. But regardless of the nature of that diligence, which itself is relevant only to the mandatory extension prong, Rymark should receive a permissive extension.

Capana opposes the extension request under either the mandatory or permissive options; its arguments include the following:

1) Rymark did not act diligently in attempting to serve Mr. Leshem including because
    a. Rymark waited until the presumptive Rule 4(m) service deadline to request an extension [Dkt. No. 190, p. 2.];
    b. process servers made their first attempt at Mr. Leshem's surveilled residence one month after the filing of the Cross-Claim [Dkt. No. 190, p. 2.];
    b. Rymark "failed to provide any evidence" that Mr. Leshem is evading service [Dkt. No. 190, p. 2.];
    c. "It is unclear why it would take two former FBI agents almost two months to track down a domestic party's address or whereabouts." [Dkt. No. 190, p. 4.]
    d. Process servers' affidavits do not establish that the residence surveilled for Mr. Leshem's presence is his actual residence;

2) Rymark's Motion did not adequately address "required" factors for a permissive extension; and

3) Plaintiffs will be prejudiced by an extension to serve Mr. Leshem.

The above legal flotsam scarcely merits the Court's attention. However, Capana's contention of putative prejudice *to Plaintiffs* is worth further discussion. On this point, Capana omits some interesting context, including that Mr. Leshem sent or received 31 separate email communications as to which Capana has claimed attorney-client privilege. Thus, Capana's own privilege log establishes that Capana views Mr. Leshem as part of its control group for purposes of managing this litigation. (Understandably, Capana to date has downplayed its years-long affiliation with Mr. Leshem, given Mr. Leshem's serial involvement in delisted penny stock schemes and regulator-sanctioned market manipulations.)

In short, through straightforward application of Rule 4(m), Rymark's Motion should be granted.  Furthermore, from a pragmatic standpoint, even if Capana's legal arguments carried any logic, a dismissal under Rule 4(m) would not serve the interests of justice as it would simply require re-filing.

I. **The Court May Grant the Requested Extension of Time to Serve Mr. Leshem Under Rule 4(m)'s Mandatory Provisions.**

Rule 4(m) itself does not define "good cause."  The Tenth Circuit has "interpreted the phrase narrowly, rejecting inadvertence or neglect as 'good cause' for untimely service." *Id.* (citations omitted)..

As set forth above, Capana argues several points as to Rymark's putative lack of diligence. First, Capana states that Rymark's process servers did not make a first attempt at the surveilled home for one month.  The relevance of this timing not immediately clear.  Rymark's process was simple and standard: retain process servers who proceed first by consulting expert investigation of databases containing address information.  In this case, as in any other, that process proceeded deliberately and properly.

Second, Capana argues that Rymark waited until the presumptive Rule 4(m) service deadline to request an extension [Dkt. No. 190, p. 2.]  This contention bewilders.  As shown in the Motion, Rymark continued its efforts at service through the presumptive deadline.  Obviously, had those efforts been successful, there would have been no need for the instant Motion. And in any event, making a motion in advance of a deadline shows *timeliness and diligence*, not *untimeliness and neglect*.

Third, Capana claims that Rymark "failed to provide any evidence" that Mr. Leshem is evading service [Dkt. No. 190, p. 2.]  This is a false statement. Counsel can quibble with

4

the evidence or argue about its weight, but the claim of failure to provide evidence is false. As set forth in the declaration accompanying the Motion, AMS United, the first process server, reported:

> *10/7/2024 @ 11:05am – Upon arrival the server saw a man was standing in the driveway as I pulled up to the residence.  The man went inside the house as I was getting out of the car. No answer at the door. White utility van parked in driveway. Can see another car parked in garage. May be avoiding service.*

[Pehrson Decl. ¶ 6.]

Finally, Capana argues that the process servers' affidavits do not establish that the residence surveilled for Mr. Leshem's presence is his actual residence.  [Dkt. No. 190, p. 4.] Here again, Capana's legal argument bewilders.  Whether the address is in fact Mr. Leshem's or not bears no real relevance to the Rule 4(m) analysis.  (As set forth in the Motion, Rymark hired professionals whose job is to track down evasive penny stock advocates like Mr. Leshem; those professionals believe that Mr. Leshem resides in that home and that the home is owned by his mother.  That hiring itself—not the efficacy of those hired—demonstrates any required diligence.)

II.     **The Court May Also Grant the Requested Extension of Time to Serve Mr. Leshem Under Rule 4(m)'s Permissive Provisions.**

Alternatively, if the Court finds there is not "good cause" for an extension, the Court may still grant a permissive extension of time.  In opposition to the permissive request, Capana argues that Rymark's Motion did not adequately address "required" factors for a permissive extension; and that Plaintiffs will be prejudiced by an extension to serve Mr. Leshem.

On the first point, the Rule itself does not list any factors, and no law dictates that any

specific factors are "required."  Rather, in the exercise of its discretion, a court may potentially examine – but is not required to examine – various factors. *See Petrashov v. Hit Web Design*, No. 2:14-cv-269, 2015 WL 8541660, *1-2 (D. Utah Nov. 12, 2015) (noting that in exercising its discretion, the Court "generally" considers factors including statute of limitations, efforts at service, notice to the defendant, prejudice to the defendant and complexity of the rules).

Nonetheless, in the Motion, Rymark adequately presented information relevant to the Court's exercise of its discretion under the permissive, no good cause prong.  That information, relevant to one or more of the permissive factors, is summarized as follows in brief:

- **Efforts at Service:** Rymark engaged in extensive efforts to find and serve Mr. Leshem, including retaining two process servers and two former FBI investigators.  [Pehrson Decl. ¶¶ 1-8.] According to those process servers, Mr. Leshem appears to have evaded service, including by hiding within the home owned by his mother and presumed to be his residence, after being spotted in the driveway.  [Pehrson Decl. ¶ 6.]

- Since the filing of the Motion, one of the former FBI investigators issued a report detailing his tracking of Mr. Leshem.  That report is attached hereto as Exhibit A and will also serve as part of the basis for a forthcoming Motion for Alternative Service.

- **Notice/Prejudice to the Defendant.**  Mr. Leshem assuredly has notice of the Cross-Complaint against him, given his close connections with Plaintiffs in this case. This connection is not conjectural.  Mr. Leshem communicated regarding this litigation using a Capana email address.  And in Capana's own privilege log in this litigation, Mr. Leshem received or sent 31 putatively privileged communications.  These communications to and from Mr. Leshem included multiple emails that were sent to/from Venable and Parsons Behle.  In other words, Capana has expressly asserted that Mr. Leshem is part of its control group or an agent to whom disclosure of attorney-client communications does not pierce the privilege.  Given this, it is highly reasonable to infer that Mr. Leshem is fully advised of the claims against him.  Capana's privilege log is attached hereto as Exhibit B (filed under seal consistent with this Court's procedures).

Finally, Capana makes some arguments as to how *it* will be prejudiced as a result of the addition of Mr. Leshem as a cross-Defendant occurring some weeks later than the Court initially

contemplated when granting Rymark's leave to amend.  Exhibit B shows that Capana purports to employ Mr. Leshem, including as part of its putatively privileged litigation communications and efforts.  Given that intimate relationship, Capana would presumably be able to take some simple actions to promptly relieve itself of this supposed prejudice.

## CONCLUSION

Rymark finds the opposition puzzling.  First, as indisputably shown by Capana's own privilege log, Mr. Leshem was included on correspondence with Venable and Parsons Behle, purportedly on a privileged basis.  Presumably, any upstanding Boca Raton citizen so intimately engaged in this litigation might accept service—or at least not run inside his mother's house and not answer the door—rather than force months of investigative work tracking cars, houses, and individuals.  Yet in fact, Plaintiffs have attempted to obscure Mr. Leshem's role in this dispute, and protect Mr. Leshem from responsibility, from the outset of this litigation. Plaintiffs' Amended Complaint names Mr. Leshem only in two footnotes, even though he was indisputably at the center of the events in this case – and even though he operated from a Capana email address for years.  Then, when Rymark attempted to add Mr. Leshem as a third-party defendant, Plaintiffs actively opposed Rymark's motion (which the Court granted). Now, on this motion too, Plaintiffs are apparently attempting to shield Mr. Leshem from litigation. The Court should view this exercise with great suspicion.

Moreover, the Opposition's arguments are not pertinent to the simple tests laid out in Rule 4(m).  That Rule does not invite mindless disputations on topics as to where exactly Mr. Leshem resides or doesn't, whether the process servers did a good enough job on research, whether they should have finished their research faster, and whether Rymark's former FBI

investigators are capable or "necessary."  Rather, the query is simply whether Rymark merits an extension through either a mandatory or permissive prong.  Rymark submits that either option works just fine, and thanks the Court kindly for its patience.  If the Court finds these issues merit further discussion, Rymark respectfully requests an evidentiary hearing wherein the four process servers and former FBI investigators can relay their diligence directly and in full.

DATED this 26th Day of December 2024.

**KUNZLER BEAN & ADAMSON, PC**

*/s/ Chad S. Pehrson*
R. Jeremy Adamson
Chad S. Pehrson
Robert P. Harrington
Stephen Richards

*Attorneys for Defendants,
Counter Claimants and
Third-Party Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of December 2024, I filed the foregoing **DEFENDANTS' REPLY IN SUPPORT OF RULE 4(m) EXTENSION OF TIME TO SERVE ASHLEY MIRON LESHEM** via the Court's CM/ECF system, which provided notice of such filing to all counsel of records.

*/s/Chad S. Pehrson*