R. Jeremy Adamson (12818) (jadamson@kba.law)
Chad S. Pehrson (12622) (cpehrson@kba.law)
Robert P. Harrington (12541) (rharrington@kba.law)
Stephen Richards (19332) (srichards@kba.law)
KUNZLER BEAN & ADAMSON, PC
50 West Broadway Ste 1000
Salt Lake City Utah 84101
Telephone: (801) 994-4646

*Attorneys for Defendants, Counter-Claimants, and Third-Party Plaintiffs*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CAPANA SWISS ADVISORS AG, a Swiss corporation; AMERIMARK AUTOMOTIVE AG, a Swiss corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>RYMARK, INC., a Utah corporation; NICHOLAS THAYNE MARKOSIAN, an individual; JOHN KIRKLAND, an individual; and VICKY SMALL, an individual,<br><br>Defendants. | **DEFENDANTS' MOTION TO DISQUALIFY COUNSEL**<br><br>Case No.: 2:23-cv-00467<br><br>Judge: Ted Stewart<br>Magistrate Judge: Cecilia M. Romero |
| RYMARK, INC., a Utah corporation; and NICHOLAS THAYNE MARKOSIAN, an individual,<br><br>Counter Claimants,<br><br>vs.<br><br>CAPANA SWISS ADVISORS AG, a Swiss corporation; AMERIMARK AUTOMOTIVE AG, a Swiss corporation.<br><br>Counter Defendants | |

1

| |
|---|
| RYMARK, INC., a Utah corporation; and NICHOLAS THAYNE MARKOSIAN, an individual, |
| Third-Party Plaintiffs, |
| vs. |
| SHAEN BERNHARDT, an individual; ASHLEY MIRON LESHEM, an individual; DAVID HESTERMAN, an individual; NICOLAI COLSHORN, an individual; STEFAN KAMMERLANDER, an individual; ALEXANDER COENEN, an individual; MARTIN FASSER HEEG, an individual; FELIX KAPPELER, an individual; FRANK HUESER, an individual; AMERIMARK GROUP AG, a Swiss corporation; and PHILOMAXCAP AG, a German corporation, |
| Third-Party Defendants. |

Defendants, Counterclaimants, and Third-Party Plaintiffs Rymark, Inc. ("**Rymark**") and Nicholas Thayne Markosian (together, "**Defendants**") respectfully move to disqualify counsel for Plaintiffs, Counter-Defendants, and Third-Party Defendants, Venable LLP ("**Venable**") and Parsons Behle & Latimer ("**Parsons Behle**").

## I.   SUMMARY OF REQUESTED RELIEF

In a dispute over control of a corporation between warring shareholder factions, a lawyer cannot represent both the corporation and one group of shareholders. The corporation's interests are separate from the interests of the different groups of shareholders, so a conflict of interest exists between the corporation and either shareholder group. If the corporation's lawyers pick sides in the shareholder fight, they cannot adequately advise the corporation without bias. And the dual

2

representation threatens to subordinate the corporation's interests in favor of the desires of a particular shareholder.

That is what is occurring here. This lawsuit is, among other things, a dispute over who controls two Swiss corporations: Third-Party Defendant AmeriMark Group AG ("**AmeriMark Group**") and its subsidiary, Plaintiff AmeriMark Automotive AG ("**AmeriMark Automotive**" and together, with AmeriMark Group, "**AmeriMark**"). Plaintiff Capana Swiss Advisors AG ("**Capana**") claims that it is the largest shareholder in AmeriMark Group, with a 65% stake, and that Defendant Mr. Markosian owns only 32% of AmeriMark Group. But Mr. Markosian has alleged that Capana's 65% stake in AmeriMark Group – some 13,000,000 shares – was stolen from him, and that in fact he is by far the largest shareholder in AmeriMark Group.

In the ordinary course, AmeriMark would be agnostic as to the dispute between Capana and Mr. Markosian over the 13,000,000 shares. And the evidence of the theft is so overwhelming that AmeriMark would almost certainly be advised by independent counsel to credit Mr. Markosian's claims. But in this litigation, AmeriMark is represented by the same attorneys representing Capana – and these attorneys also represent (1) Capana's owner, Shaen Bernhardt; (2) Capana's CFO, Stefan Kammerlander; and (3) AmeriMark's director, Martin Fasser Heeg. Those attorneys are being *paid by Capana*, not AmeriMark. The upshot is that AmeriMark is essentially at the mercy of Capana and Capana's attorneys. It is not receiving independent or unbiased legal advice.

This dual representation violates two separate Utah Rules of Professional Conduct: Rule 1.7, which prohibits concurrent conflicts of interest, and Rule 1.8(f), which prohibits a lawyer receiving "compensation for representing a client from one other than a client" without consent or

when doing so will "interfere[] with the lawyer's independence of professional judgment." The Court should enforce these rules by issuing an order disqualifying Venable and Parsons Behle from representing AmeriMark Group, AmeriMark Automotive, and Mr. Heeg.

## II. BACKGROUND

### A. Rymark

Defendant Rymark is a Taylorsville-based used car dealership. In mid-2020, Rymark personnel began receiving complaints from people who said they were European shareholders who had lost money trading stock in AmeriMark Group, a Swiss corporation that, at the time, was listed on a public stock exchange in Vienna. This perplexed Rymark personnel, including Rymark's owner, Mr. Markosian. In early 2016, Mr. Markosian had paid two individuals $125,000 to raise money for Rymark in Europe. But no money had ever come of these efforts. Although AmeriMark Group was, apparently, claiming to own Rymark, and although AmeriMark Group was publicly listed, Mr. Markosian had never received one dime for any portion of Rymark and had certainly never sold any shares of Rymark, let alone AmeriMark Group. Obviously, fraud was afoot. So, on September 16, 2020, counsel for Rymark, Chad Pehrson, sent a cease-and-desist letter demanding that AmeriMark Group stop representing that it owned Rymark.

### B. Venable and Parsons Behle's Representation

Less than a week later, a lawyer from Venable – John Worden – contacted Pehrson and asked to discuss the letter. Worden said that he represented AmeriMark. (Declaration of Chad S. Pehrson ("**Pehrson Decl.**") ¶¶ 3-4 & Ex. 1 ("We represent AmeriMark.").) But Worden was otherwise cagey about AmeriMark. When Pehrson asked Worden to identify the "principals" of AmeriMark who had retained him, Worden did not say. Instead, Worden introduced Shaen

4

Bernhardt, whom Worden said "works with AmeriMark." (*Id.* ¶ 6 & Ex. 2.) (Actually, Bernhardt controls Capana.) On an ensuing call, Pehrson asked for AmeriMark's capitalization table; Rymark wanted to see who supposedly owned AmeriMark. (*Id.* ¶ 7 & Ex. 3.) But Worden and Bernhardt would not provide the table. Instead, Worden acknowledged that although Rymark was "waiting for some information," Mr. Pehrson's letter was "still out there," and Worden wanted it "withdraw[n]." (*Id.*)

Rymark refused to withdraw the letter, even after years of periodic requests from Worden and Bernhardt. So in July 2023, AmeriMark Automotive and Capana sued Rymark, alleging that Capana was AmeriMark Group's majority shareholder. ([Dkt. 1.](#)) Venable, along with local counsel Parsons Behle, has represented both AmeriMark Automotive and Capana throughout this lawsuit. Subsequently, Rymark pleaded in AmeriMark Group, which is supposedly a holding company above AmeriMark Automotive. Venable initially insisted that it did not represent AmeriMark Group and refused to accept service on its behalf. But after Rymark served AmeriMark Group, Venable and Parsons Behle appeared on AmeriMark Group's behalf as well.

Although AmeriMark Automotive is a plaintiff, it is Capana and Bernhardt that have been calling the shots in this litigation. Capana is paying Plaintiffs' counsel's fees. (The AmeriMark companies are empty shells.) Plaintiffs' privilege log has more than 2000 entries, yet only **seven** of these entries involve (1) an email from a Venable or Parsons Behle attorney to an AmeriMark director or (2) an email from an AmeriMark director to a Venable or Parsons Behle attorney. Bernhardt, by contrast, is on **hundreds** of emails with Venable or Parsons Behle. In other words, Bernhardt has managed to commandeer AmeriMark to advance Capana's – and his own – interests in this litigation.

5

### C. Capana's Stolen AmeriMark Group Shares

When discovery began, Rymark began investigating Capana's claim that it was AmeriMark Group's majority shareholder. Capana says it received 13,000,000 shares of AmeriMark Group stock – a 65% stake – from a nonparty called Whitetree Capital ("**Whitetree**"), which in turn got the 13,000,000 shares from Mr. Markosian. But it turns out that there is no evidence for any transfer from Mr. Markosian to Whitetree. Instead, Plaintiffs' own document productions showed beyond doubt that Miron Leshem – the original architect of the scheme at issue here – stole the 13,000,000 shares, gave them to Whitetree, and then forged documents to make it appear as if Whitetree had gotten the shares honestly. The forgeries are clumsy and obvious; Plaintiffs have never disputed them. (Pehrson Decl. ¶¶ 9-110; *see also* Dkt. 139 ¶¶ 79–82.)

In January 2024, Rymark told Venable and Parsons Behle it had discovered that the 13,000,000 shares were stolen. (Pehrson Decl. ¶ 11.) Rymark and Mr. Markosian then filed a Third-Party Complaint that expressly alleged that the 13,000,000 shares were stolen and requested a declaratory judgment that "Mr. Markosian is the rightful holder of title to [the 13,000,000] shares." (Dkt. 139 ¶ 157.) Mr. Markosian has also sought to unwind AmeriMark Group entirely, since – as set forth in the Third-Party Complaint – it was created as part of a fraudulent pump-and-dump scheme. But regardless, if the Court grants Mr. Markosian's request for a declaratory judgment as to the stolen 13,000,000 shares, Mr. Markosian will control both AmeriMark Group and AmeriMark Automotive.

### III. LEGAL STANDARD

Federal courts have the "inherent power to disqualify counsel where necessary to preserve

the integrity of the adversary process." *Vicidiem, Inc. v. Christensen*, No. 19-358, 2020 WL 5107636, at *2 (D. Utah. Aug. 31, 2020). The Local Rules of this Court provide that attorneys who appear in this Court are bound by the Utah Rules of Professional Conduct. DUCivR 83-1.7.

Utah Rule of Professional Conduct 1.7(a) prohibits representations that "involve[] a concurrent conflict of interest." A concurrent conflict exists if the representation of one client will be "directly adverse to another client," or if there is a "significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer."

Utah Rule of Professional Conduct 1.8(f) provides that a lawyer "shall not accept compensation for representing a client from one other than the client" unless the "the client gives informed consent" and there is "no interference with the lawyer's independence of professional judgment or with the client-lawyer relationship."

In this District, courts consider a nonexhaustive list of factors on motions to disqualify, including "the egregiousness of the violation," the "presence or absence of prejudice to the other side," "whether and to what extent there has been a diminution of effectiveness of counsel," "hardship to the other side," and "the stage of trial proceedings." *Brigham Young Univ. v. Pfizer, Inc.*, No. 06-890, 2010 WL 11414472, at *7 & n.55 (D. Utah Aug. 24, 2010) (citing *Parkinson v. Phonex Corp.*, 857 F. Supp. 1474, 1476 (D. Utah 1994)). "Because the interests to be protected are critical to the judicial system, doubts are resolved in favor of disqualification." *Koch v. Koch Indus.*, 789 F. Supp. 1525, 1531 (D. Kan. 1992).

IV. ARGUMENT

A. Venable and Parsons Behle's Dual Representation Violates Rule 1.7

Counsel for a corporation should "refrain from taking part in any controversies or factional differences among shareholders as to control of the corporation, so that he or she can advise the corporation without bias or prejudice." *Metro-Goldwyn-Mayer, Inc. v. Tracinda Corp.*, 36 Cal.App.4th 1832, 1842 (1995)[1]; *see also In re Ent'm't Inc.*, 225 B.R. 412, 424 (Bankr. N.D. Ill. 1998) ("In a struggle between shareholders for control of a corporation, the corporation's counsel cannot represent either side without a potential for conflict of interest."). This is because counsel's "direct duty is to the client corporation, not to the shareholders individually." *Metro-Goldwyn-Mayer*, 36 Cal.App.4th at 1842 (citation omitted). As a result, "concurrent representation" of a corporation and a shareholder in a control dispute "presents a serious conflict of interest" and warrants disqualification. *Brennan v. Brennan*, No. 13-2491, 2013 WL 1897126, at *1 (E.D. La. May 6, 2013).

*Brennan* is particularly instructive. There, the parties disputed *who* the shareholders of a particular corporation were. One set of alleged shareholders filed suit, alleging that they were the only shareholders; another set of shareholders countersued along with the corporation (represented by a single law firm), alleging that no, *they* were the only shareholders. The court disqualified the corporation's counsel, explaining that a "corporation cannot take a position in a dispute involving the status of individuals as shareholders, officers, and directors," and thus the common

---

[1] Utah's Rule 1.7 is identical in material respects to the corresponding rules in California, Illinois, and Louisiana: the other three states from which Rymark cites authority. *Compare* Utah R. Prof. Cond. 1.7 *with* Cal. R. Prof. Cond. 1.7, La. R. Prof. Cond. 1.7, and Ill. R. Prof. Cond. 1.7. All are based on the Model ABA Rules.

representation "present[ed] a clear conflict of interest" or, at least, "'a significant risk' that the firm's representation" of the shareholders "will materially limit its representation of the corporation." *Id.* at *3 (quoting La. R. Prof. Cond. 1.7).

The same is true here. The parties dispute who is the controlling shareholder of AmeriMark Group (and, thereby, who can control AmeriMark Automotive). But because AmeriMark Group is "an entity independent of any of its purported shareholders," it "has interests not necessarily aligned with those purported shareholders." *Brennan*, 2013 WL 1897126, at *3. This creates a "significant risk" that Venable and Parsons Behle's representation of AmeriMark will be "materially limited" by their responsibilities to Capana, which has skin in the game when it comes to the control dispute. This is a concurrent conflict under Rule 1.7.

### B. The Conflict Is Not Waivable

Rule 1.7(b) provides that a lawyer "may represent a client" notwithstanding a concurrent conflict so long as (1) "the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client"; and (2) "each affected client gives informed consent, confirmed in writing."[2] Rymark respectfully submits that lawyers in Venable and Parsons Behle's position could not *reasonably* believe that they can provide competent and diligent representation in light of the conflict here and – especially – the fact that Capana, not AmeriMark, is paying them.

Regardless, however, Venable and Parsons Behle could not have obtained informed written consent from AmeriMark given that control of AmeriMark is disputed. If Mr. Markosian is right

---

[2] Counsel must also abide by Rule 1.6, which prohibits sharing confidential communications among clients absent informed consent. Venable and Parsons Behle are in violation of this rule, as well – no one has been able to give informed consent as to AmeriMark's documents.

9

about the stolen shares, then he controls AmeriMark and is entitled to determine what it will and will not consent to.[3] For this reason, as *Brennan* explained, a corporation's waiver of the conflict may not be based on the assumption that one set of shareholders is right about control. Waiver cannot be "based on an assertion that has yet to be proven." *Brennan*, 2013 WL 1897126, at *2.[4] Otherwise, the rule against common representation of a corporation and one group of shareholders in a control dispute would have no teeth; counsel could always just get the (meaningless) "consent" of the shareholders with whom they are friendly. The ethical rules require more.

### C. Venable And Parsons Behle Are Violating Rule 1.8(f)

Venable and Parsons Behle should separately be disqualified for violating Rule 1.8(f), which prohibits lawyers from accepting "compensation for representing a client from one other than the client" unless there is *both* "informed consent" *and* the compensation threatens "no interference with the lawyer's independence of professional judgment or with the client-lawyer relationship."

Plaintiffs' witnesses have made clear that that Capana is financing this litigation. Capana's CFO testified that Capana was paying Venable's invoices. (Pehrson Decl. ¶ 13 & Ex. 5 at 242:7–9 (Q: "[D]oes Capana pay Venable's invoices? A: Yes.")). Similarly, Martin Fasser Heeg – the only director of either AmeriMark entity – testified that AmeriMark Automotive had no money, that it was "not paying the bills" for Venable and Parsons Behle, and that he assumed it "must be

---

[3] *See* Utah R. Prof. Cond. 1.13.

[4] *Vicidiem* confronted a similar problem: a corporation that needed to waive a conflict, and a shareholder that would not consent to waiver. 2020 WL 5107636, at *3. But there, the corporation was empowered under Utah law to purchase the holdout shareholder's shares, which resolved the waiver issue, since "any alleged conflicts" would be "remedied by the conflict waivers signed by the remaining shareholders." *Id.* at *3–4.

Capana" who was paying. (Pehrson Decl. ¶ 12 & Ex. 4.) This is not surprising; AmeriMark Automotive and AmeriMark Group are both shell companies with no assets and no operations.

Plaintiffs' financing arrangement is impermissible for two reasons. First, Venable and Parsons Behle could not have obtained informed consent from either AmeriMark for the financing arrangement, as required by Rule 1.8(f), since they never sought to obtain Mr. Markosian's consent, and Mr. Markosian is the largest (rightful) shareholder in AmeriMark Group. To the extent Plaintiffs argue that they were only required to obtain the consent of Capana (or directors Capana installed), because Capana was the largest shareholder in AmeriMark Group, this is disputed and cannot form the basis of proper waiver. *See Brennan*, 2013 WL 1897126, at *2.

*Second*, even if Venable and Parsons Behle did go through the motions of obtaining "consent," and even if this "consent" were legitimate, that would still not cleanse the financing arrangement here, since the conflict and payment terms threaten to "interfere[]" with those firms' "independence of professional judgment [and] with the client-lawyer relationship." Utah R. Prof. Cond. 1.8(f). This is not meant as an insult to specific attorneys. It is simply an acknowledgement of the practical realities present when a lawyer represents two entities with divergent interests and only one of the entities is paying. Attorneys who are being paid by Capana to represent AmeriMark just cannot be expected to see clearly when – for instance – incontrovertible evidence comes to light showing that Capana's stake in AmeriMark Group was stolen.

### D. Disqualification Is Warranted

The factors regularly considered by courts in this District all weigh in favor of disqualification. *First*, the violations of the professional rules here are egregious. Those rules clearly preclude accepting payment from Capana on AmeriMark's behalf, given that AmeriMark's

control is disputed, precluding its ability to consent. Similarly, the prohibition against a lawyer concurrently representing a corporation and a shareholder in a control dispute is well-known, and the motivation behind the rule is obvious. Moreover, Venable was duplicitous with Rymark about who exactly it represented in 2020, telling Rymark that it represented *AmeriMark*, when it is now obvious that Venable was actually advocating for *Capana*'s interests.

*Second*, Rymark and Mr. Markosian have been prejudiced by the conflict. This would be a very different lawsuit if AmeriMark were interested in protecting its own interests rather than Capana's. Among other things, once AmeriMark learned of the 13,000,000 stolen shares, it should have begun taking its orders from Mr. Markosian. Mr. Markosian also cannot seek a potential resolution with AmeriMark (separate from Capana), since AmeriMark is being controlled by Capana, Venable, and Parsons Behle.

*Third*, there is no question that counsel's effectiveness has been diminished by the conflict. Rymark has been beating the drum of the 13,000,000 stolen shares since January 2024. Plaintiffs' counsel have never proffered *any* response. And they are admittedly not advising AmeriMark with respect to the theft: when AmeriMark's sole director was asked at deposition whether he had investigated forged documents related to the theft, his response was: "Why should I?" (Pehrson Decl. ¶ 12 & Ex. 4.) He also testified that no one had asked him to investigate the forged documents – even though the theft is at the center of a civil conspiracy claim against AmeriMark.

*Fourth*, Plaintiffs face no meaningful hardship. AmeriMark Group has only just appeared, and AmeriMark Automotive scarcely participated in run-up to the lawsuit (and, presumably, has scarcely participated in the lawsuit itself). Moreover, Plaintiffs should not be heard to complain of

12

hardship given that these ethical issues should have been plain to Plaintiffs' counsel all along, who must have understood the dual representation was a gamble.

*Fifth*, trial is not yet scheduled. Although Rymark does not seek delay, fact discovery has not closed, and no trial has been set.

## V. CONCLUSION

The Court should issue an order disqualifying Venable and Parsons Behle from representing AmeriMark Automotive, AmeriMark Group, and Mr. Heeg.

DATED: January 2, 2025

        **KB&A**

        /s/ *Chad S. Pehrson*
        R. Jeremy Adamson
        Chad S. Pehrson
        Robert P. Harrington
        Stephen Richards

        *Attorney for Defendants*

## WORD COUNT CERTIFICATATION

  I, Chad S. Pehrson, certify that according to Microsoft Word's "Word Count" function, and excluding the caption page, signature blocks, and the like, this brief contains 3072 words and complies with DUCivR 7–1(a)(4).

<u>/s/ <em>Chad S. Pehrson</em></u><br>Chad S. Pehrson