Erik A. Christiansen (USB 7372)
Hannah J. Ector (USB 17980)
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: (801) 532-1234
Facsimile: (801) 536-6111
EChristiansen@parsonsbehle.com
HEctor@parsonsbehle.com

John S. Worden (CA SBN 142943) (*Admitted Pro Hac Vice*)
Sarah E. Diamond (CA SBN 281162) (*Admitted Pro Hac Vice*)
**VENABLE LLP**
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
Telephone: (310) 229-9900
Facsimile: (310) 229-9901
JSWorden@venable.com
SEDiamond@venable.com

*Attorneys for Plaintiffs Capana Swiss Advisors AG and AmeriMark Automotive AG, and Third-Party Defendants Shaen Bernhardt, Martin Fasser Heeg, Stefan Kammerlander, and AmeriMark Group AG*

## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| CAPANA SWISS ADVISORS AG, a Swiss corporation; AMERIMARK AUTOMOTIVE AG, a Swiss corporation,<br><br>Plaintiffs,<br><br>v.<br><br>RYMARK, INC., a Utah corporation; NICHOLAS THAYNE MARKOSIAN, an individual; JOHN KIRKLAND, an individual; and VICKY SMALL, an individual,<br><br>Defendants. | **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISQUALIFY COUNSEL [ECF 211]**<br><br>Case No. 2:23-cv-00467<br>Judge: Hon. Ted Stewart<br>Magistrate Judge: Hon. Cecilia M. Romero |

I.    INTRODUCTION

Defendants' Motion to Disqualify fails: (1) there is no conflict and therefore no basis for disqualification – period; (2) Defendants waited 18 months (!) to raise it; and (3) disqualification would cause Plaintiffs' extreme and undue prejudice.

It is well-settled that disqualification of counsel is a drastic measure to be imposed only when absolutely necessary. Courts disfavor motions to disqualify not only because they subvert a party's fundamental right to choose its counsel, but also because they are often used as a tactical device designed to delay litigation. Defendants' Motion is exactly that and only that: an untimely and transparent stunt to avoid trial based on patently false statements.

In September 2020 Chad Pehrson, counsel for Defendants, wrote to multiple parties stating *Markosian had no relationship whatsoever with AmeriMark Automotive AG and AmeriMark Group AG*. They claimed this even though Markosian signed, and in multiple instances notarized, dozens of documents (in addition to dozens of emails, financial disclosures, *etc*. Markosian sent precisely to and regarding the AmeriMark entities). Now Defendants do an about-face and claim Markosian actually was a shareholder, but his shares were somehow stolen by Whitetree, an entity he had no association with whatsoever—or so he claimed. But this is not true either. Two weeks before they filed this Motion (on December 19, 2024), Pehrson received a package of documents from Whitetree with emails from Markosian to Whitetree (and vice versa), meetings the parties had regarding the disposition of his shares and more, all the way back to 2018. Pehrson withheld these documents until six-days ago, when counsel for Plaintiffs heard about them and forced him to hand them over.

One can only wonder what Defendants' new theory will be in their reply brief, but this is not a legitimate motion. On July 18, 2023, counsel for *both* Capana Swiss Advisors AG and AmeriMark Automotive AG filed their complaint against Defendants. Defendants waited a year to name AmeriMark Group AG and waited eighteen months to file this Motion based on the very same arguments that apply to AmeriMark Automotive AG; and only *after Defendants themselves added non-party AmeriMark Group AG* as a party did they file their Motion the day after

1

AmeriMark Group AG answered.[1]  This Motion is a set up and should never have been filed.  Venable and Parsons, Behle & Latimer respectfully request that the Court deny it.

## II.     FACTUAL BACKGROUND

### A.     Plaintiffs Filed Their Complaint with the Same Counsel in July 2023

The relevant facts began in early 2016 when Markosian flew to Florida to meet with David Hesterman and Miron Leshem to take Rymark public on a foreign stock exchange.  *See* Declaration of Sarah Diamond ("Diamond Decl.") Ex. 1.[2]  Markosian paid them $125,000 to do just that, and efforts to list the company began.  *Id.*  Four years later Markosian had injected 100% of Rymark's shares into AmeriMark Automotive AG ("Automotive"), and then injected 100% of those shares into AM Group, eventually retaining approximately 24% of AmeriMark Group AG ("AM Group") for himself.[3]  *See* ECF No. 16 at 4-5.  Despite four years of effort with AM Group and Automotive, in late 2020 Markosian enlisted the help of Chad Pehrson, counsel for Defendants.  Pehrson—despite having been in direct communication with Automotive's Maltese auditor in pursuit of a listing on the Malta Stock Exchange—sent a letter disavowing any connection to the people and entities Rymark and its legal counsel had communicated with for years, including Hesterman, Leshem, and AM Group. Ex. 3.  Pehrson claimed that "Markosian Auto, Mr. Kirkland, and Mr. Markosian have no connection or relationship with you, and no connection or relationship with the putative entity AmeriMark AG," a representation both Mr. Markosian and Pehrson knew was flat out untrue.[4]  *Id.*

---

[1] **Tellingly, Defendants' counsel is engaged in the *very* conduct challenged in their Motion**.  Kunzler, Bean & Adamson represents Rymark; Rymark's management; ***and*** one of purported "warring shareholder factions" asserting ownership of a stake in Rymark, Markosian.
[2] Citations to exhibits ("Ex.") throughout refer to those attached to the Diamond Declaration.
[3] Markosian signed a listing agreement, term sheet, and Share Exchange Agreement.  *See* ECF No. 16 at 7-13.  Defendants claim these signatures were forged as part as a fraudulent enterprise to steal shares, but Markosian admits that the signature is his and the signed copies were scanned at his office printer.  Ex. 1 (Markosian Dep. Tr. at 167:3-168-20).
[4] Markosian has similarly denied an ownership interest in AM Group, Automotive, or any foreign entity to third parties.  For example, Rymark, at Markosian's specific direction, elected Subchapter-S "passthrough taxation" status in Utah and in its federal tax returns from 2016-2022.  Ex. 4 (Breedlove Dep. Tr. at 170:19-171:9).  With limited exceptions that do not apply to

Faced with this patently false assertion, Shaen Bernhardt (consultant for Capana Swiss Advisors ("Capana") and Automotive), represented by Venable, reached out to Defendants. ECF No. 16 at 33. Capana developed a restructuring plan for AM Group, and even acquired a substantial share in AM Group to save the company, which was nearly insolvent in 2019-2020, as it had been starved of cash by its founder Markosian, who wrongfully diverted over one million dollars in dividends due to Automotive between 2016 and today. *Id.* at 15. Still, Pehrson and Defendants continued to disavow any connection to Automotive or AM Group. Left with no other choice, Capana and Automotive—represented by Venable and Parsons, Behle & Latimer ("Venable/PB&L")—filed suit on July 18, 2023. *See* ECF No. 1. At the time the Complaint was filed, the relevant entities were related as follows: Capana owned 48.56% of AM Group; AM Group owned 100% of Automotive; and Automotive owned 100% of Rymark. *Id.* at 2-3.[5]

### B. Defendants Waited a Year to Name AM Group and Then Four More Months to Attempt Service

Despite being in a dispute over its ownership since September of 2020, Defendants did not ask for leave to add AM Group as a party until July 13, 2024. *See* ECF No. 107. Defendants filed their Third-Party Complaint naming AM Group—the same entity they now claim ownership interest in—as a party on September 3, 2024. ECF No. 139. Defendants made no effort to serve AM Group until Martin Fasser Heeg appeared in Salt Lake City on November 26, 2024 for a deposition related to Automotive. When Defendants attempted to serve Mr. Worden and Mr. Heeg, Mr. Worden immediately objected that "neither he nor Mr. Heeg were authorized to accept service on behalf of AmeriMark Group." *See* ECF No. 207 at 3. Venable/PB&L were *later* retained by AM Group to file a 12(b)(5) Motion for improper service, and to file AM Group's

---

Rymark, corporations are only entitled to this election if they have no foreign shareholders. *See* 26 USC § 1361 (b)(1)(B)-(C). These representations are fundamentally incompatible with the claims, necessary to Defendants' Motion, that Markosian holds a controlling stake in AM Group—a foreign entity.

[5] In February 2024, Philomaxcap purchased 13,000,000 shares in AM Group, and was the only voting shareholder to vote at the most recent shareholder meeting, making it the effective controlling shareholder. ECF No. 221 (RJN), Ex. 1.

3

Answer to preserve its rights.[6]  ECF No. 207 at 2, fn. 1.  Defendants filed this Motion on January 2, 2025, just 26 days before the close of discovery, alleging *for the first time*, that Venable/PB&L's representation of Plaintiffs violates Ethical Rules 1.7 and 1.8(f).  **It is undisputed that AM Group is the 100% owner of Automotive.**  ECF No. 16, Ex. 60 (Share Ledger).  ***Therefore, for the purpose of alleged conflicts, Automotive and AM Group are one and the same***.[7]  Automotive has been a party to this claim, alongside Capana, since July 18, 2023.  *See* ECF No. 1.  Defendants' argument that representation of AM Group is unethical necessarily implicates Automotive, yet Defendants provide *no* explanation as to why they delayed eighteen months to seek relief.

### III.   LEGAL STANDARD

Disqualification is a severe remedy reserved for the most egregious circumstances.  *See, e.g.*, *Parkinson v. Phonex Corp.*, 857 F. Supp. 1474, 1480 (D. Utah 1995) (disqualification motions "should rarely be granted"); *Christensen v. Graco Fishing & Rental Tools, Inc.*, No. 2:20-cv-00888-HCN-JCB, 2021 U.S. Dist. LEXIS 41849, *3-4 (D. Utah Mar. 4, 2021) ("disqualification of counsel is a drastic measure" that courts should "hesitate to impose").  Motions to disqualify are governed by the local rules of the court and by applying standards developed under federal law.[8]  *Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1383 (10th Cir. 1994).  The moving party bears the burden of establishing the necessity of disqualification.  *Parkinson*, 857 F. Supp. at 1480.  "Conclusory allegations or speculative conflicts" are insufficient to satisfy that burden.  *Li v. Lewis*, No. 1:20-cv-00012-TS-JCB, 2020 U.S. Dist. LEXIS 105167, *4 (D. Utah Jun. 15, 2020).  Whether to disqualify counsel is analyzed on a case-by-case basis, subject to several factors, including "the egregiousness of the violation, the presence or absence of prejudice to the other side, and whether and to what extent there has been a diminution of effectiveness of counsel," as

---

[6] The 12(b)(5) Motion is pending before this Court.  If granted, the alleged conflict will be moot.
[7] Defendants implicitly acknowledge this by defining both "AmeriMark Group" and "AmeriMark Automotive" as "AmeriMark" in their Motion, and by seeking disqualification of counsel from representing AM Group, Automotive, and Mr. Heeg.  *See* Mot. at 3.
[8] Defendants' Motion relies on cases outside this Circuit.  Though Defendants argue Utah's Rule 1.7 "is identical in material respects" to the rules they rely on, the law analyzing these Rules is *not* consistent with Tenth Circuit precedent.

4

well as "equitable considerations such as the hardship to the other side and the stage of trial proceedings." *Parkinson*, 857 F. Supp. at 1476. Courts *only* disqualify counsel when, upon weighing these factors, "the offending attorney's conduct threatens to taint the underlying trial with a serious ethical violation." *Field v. Freedman*, 527 F. Supp. 935, 940 (D. Kan. Dec. 8, 1981).

## IV. THERE IS NO BASIS FOR DISQUALIFICATION

Defendants' Motion fails because: there is no conflict of interest; Defendants' unjust delay amounts to waiver; and disqualification would result in extreme and undue prejudice to Plaintiffs.

### A. There Is No Conflict Between Capana, AM Group, Automotive, or Heeg

Defendants' allegation that a conflict exists is relies on two patently false premises: (1) Markosian and Capana are vying for control over AM Group; and (2) that Markosian's 13,000,000 shares of AM Group were stolen by Whitetree. Each statement is false.

#### 1. Philomaxcap—Not Capana—Is the Largest Shareholder in AM Group

By Defendants' own admission, Venable/PB&L would have to represent "the corporation and one group of [warring shareholder factions]" for a conflict to exist. Mot. at 2. Simply put, they do not. Neither Plaintiffs nor Capana presently "claim[] that it is the largest shareholder in AmeriMark Group, with a 65% stake," as Defendants suggest. *Id.* at 3. To the contrary, *there is no dispute that Capana is **not** the largest shareholder in AM Group*. *See* ECF No. 221, Ex. 1 (Philomaxcap's company register showing it owns 13,000,000 shares in AM Group). Indeed, on February 21, 2024, Capana divested essentially its entire stake in AM Group to Philomaxcap. *Id.* at Ex. 2 (Dow Jones publication announcing Capana's divestment in AM Group). Defendants know this and say so in their pleadings. *See, e.g.*, ECF No. 139 ¶ 138 ("In February 2024 … Capana contributed [shares] to Philomaxcap in exchange for a controlling stake in that company"). Thus, to the extent that there are "warring shareholder factions," they are *Philomaxcap* and Markosian. Venable/PB&L do not represent Philomaxcap. Diamond Decl. ¶ 7. Thus, Defendants' allegation that Venable/PB&L inappropriately represent "the corporation and one group of [warring shareholder factions]" is false.

5

### 2.     Markosian's 13,000,000 Shares Were Properly Transferred

Similarly, for Defendants to allege a conflict of interest, they must allege that there is a legitimate "dispute over who controls two Swiss corporations." Mot. at 3. To do so, Defendants claim that Markosian's shares were stolen by Whitetree, and he therefore has a cognizable claim to those same shares. *Id.* To bolster this false claim, Defendants spent the last two years denying any knowledge of Whitetree. *See* ECF No. 11, ⁋ 52 ("Defendant had not heard of White Tree Capital, Ltd. until this lawsuit was filed"). As his deposition, Markosian testified as follows:

> Q: Do you know what Whitetree Capital Limited is? A: I do now.
> Q: What is it? A: I don't really know what it is. I just heard the name. I should have – I misspoke. I don't know what it is. I've just heard the name."

Ex. 1 at 291:25–292:6. Defendants argue that the evidence of the "theft is so overwhelming that AmeriMark would almost certainly be advised by independent counsel to credit Mr. Markosian's claims"; and "there is no evidence for any transfer from Mr. Markosian to Whitetree." Mot. at 3, 6. This, again, is patently false.

On January 9, Plaintiffs discovered that Pehrson was withholding documents from Whitetree that *directly* controvert Defendants' claims that Markosian's shares were stolen. Diamond Decl. ⁋ 6. That same day, counsel for Plaintiffs John Worden spoke with Defendants' counsel Robert Harrington, and told him about the missing documents. Those documents were produced the next day. Documents sent *directly* to Pehrson (the attorney who signed the Motion and filed a Declaration in support thereof)[9] arrived at his office on December 19, 2024—two weeks *before* he filed the Motion. *Id.*; Ex. 5. Nonetheless, Defendants did not produce these documents until January 10, 2025, presumably because counsel for Plaintiff Mr. Worden alerted Defendants' counsel Robert Harrington about the documents. *Id.* As demonstrated below, these make clear that ***Markosian directly communicated with Whitetree in 2018***; owned Whitetree stock; and that Whitetree owned 13,000,000 shares in AM Group. Ex. 6

---

[9] Misrepresentations to the court are sanctionable. *Fish v. Kobach*, 2017 U.S. Dist. LEXIS 103369, at *5-7 (D. Kan. Jul. 5, 2017); Fed. R. Civ. P. 11; Utah R. Prof. Cond. 3.3(a) ("lawyer shall not knowingly or recklessly: (1) make a false statement of fact or law to a tribunal").

```
-------- Weitergeleitete Nachricht --------
Betreff: Re: New Opportunity High Importance!!
Datum: Wed, 31 Oct 2018 16:20:03 +0100
Von: Nick Markosian <Nick@beenjerkedaround.com>
An: Miron Leshem <anandacapital@comcast.net>
Kopie (CC): a.keller@whitetreecapital.ltd, andreavoss@vossreedstein.com,
mr@vossreedstein.com <mr@vossreedstein.com>

This is fine with me.

-Nick

Sent from my iPad

    On 31 Oct 2018, at 14:23, Miron Leshem <anandacapital@comcast.net> wrote:

    Gentlemen:

    We will hold a call tomorrow to introduce AmeriMark to VossReedstein and White Tree
    Capital at 16:00 hours CET, 10:00am ET, 8:00amMT.

    Participants: Nick Markosian, Martin Reedstein, Andrew Keller, Miron Leshem

    The bridge number is: +1 605 475 4120
    Use the access code 905 9822

    Miron Leshem
```

Moreover, in March of 2020, Rymark's controller (Vicky Small) disclosed Whitetree to Rymark's auditors *and Markosian* in repeated emails regarding a payment of $30,000 *to Rymark from Whitetree.* Ex. 7. These documents destroy Defendants' claims because ***if the shares were not stolen, there is no controversy over ownership.*** Thus, even if "controversy over ownership" was grounds for disqualification as Defendants claim (it is not), there is no controversy.

### 3. Factors Analyzed by Utah Courts Weigh Against Disqualification

Analysis of the *Parkinson* factors also supports the conclusion that there is no conflict. Specifically, two key factors weigh against disqualification: Defendants fail to show an egregious violation and fail to show diminution in the effectiveness of counsel. 857 F. Supp. at 1476.

***First,*** Defendants allege egregious violations of Rules 1.7 and 1.8(f), which prohibit "a lawyer concurrently representing a corporation and shareholder in a control dispute," and "preclude accepting payment from Capana and AmeriMark's behalf." Mot. at 11-12. Not so. Rule 1.7 is inapplicable because *Venable/PB&L do not concurrently represent a corporation and shareholder in a control dispute.* Venable/PB&L represent Capana, Automotive, AM Group, Mr. Bernhardt, Mr. Kammerlander, and Mr. Heeg. Venable/PB&L ***do not*** represent Philomaxcap, which is the effective controlling shareholder in AM Group. *See supra* IV(A)(i).

However, even if this Court finds that Rule 1.7 is applicable (it is not), Rule 1.7 prohibits "representation that involves a concurrent conflict of interest," which exists *only* where

7

"representation of one client will be directly adverse to another client," or, "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client." U.R.P.C. 1.7. Defendants cite to out-of-Circuit case law to argue that representation of a corporation and its shareholders necessarily violates of Rule 1.7. The problem with this argument is that case law from *this* Circuit says otherwise.

The Utah Rules of Professional Conduct do not contain any blanket prohibition on representing a corporation and its shareholders. On the contrary, Rule 1.13(g) expressly states that this is permissible in certain circumstances. *See* Utah R. Prof'l Cond. 1.13(g) ("A lawyer representing an organization may also represent any of its directors, officers, employees, members, shareholders or other constituents, subject to the provisions of Rule 1.7."). Rather, the Court's analysis must focus on whether there is any actual adversity between the corporation and shareholder's position in the litigation. *See, e.g.*, *Vicidiem, Inc. v. Christiansen*, No. 2:19-cv-358 DBB DBP, 2020 U.S. Dist. LEXIS 158080, *6 (D. Utah. Aug. 31, 2020) (denying motion to disqualify where there was a concurrent conflict of interest because the court was "not convinced that the representation of one client … w[ould] be directly adverse to another" when there were "other plausible positions that undermine the examples given" as evidence of a so-called conflict); *see also Field v. Freedman*, 527 F. Supp. 935, 940 (D. Kan. Dec. 8, 1981) (denying motion to disqualify even where counsel represented corporation directors and the corporation because the allegedly conflicting parties had no adverse interest). Here, ***the parties represented by Venable/PB&L do not have adverse interests***. Defendants admit this. Defendants claim only that there is a vague "'significant risk' that [Venable/PB&L's] representation of AmeriMark will be 'materially limited' by their responsibilities to Capana." Mot. at 9. This falls far short of the standard requiring them to demonstrate that the offending attorney's conduct threatens to "taint" the underlying trial with a serious ethical violation. *Vicidiem, Inc.*, 2020 U.S. Dist. LEXIS 158080, *12; *Field*, 527 F. Supp. at 939. Moreover, even if there was a conflict (there is not), any conflict is waivable (and has been waived). Ex. 8. Defendants falsely claim that "[Venable/PB&L] could not have obtained informed written consent from AmeriMark given that control of AmeriMark is

disputed" (citing to *Brennan v. Brennan*, No. 13-2491, 2013 WL 1897126, at *1 (E.D. La. May 6, 2013)). Not so. *See, e.g.*, *Vicidiem, Inc.*, 2020 U.S. Dist. LEXIS 158080 at *7, 11 (denying a motion to disqualify and accepting signed conflict waivers from only two out of four shareholders, even though a third shareholder, the Defendant, "obviously w[ould] not sign any conflict waiver."). This reasoning applies here. AM Group, Automotive, and Heeg each signed declarations waiving any potential conflict of interest. *See* Ex. 8. Any potential conflict is waived.[10]

**Second,** Defendants fail to show the requisite diminution of effectiveness of counsel. *See Parkinson*, 857 F. Supp. at 1476. Defendants' only claim that "counsel's effectiveness has been diminished by the conflict" is the allegation that AmeriMark has not investigated documents that Defendants claim are forged. Mot. at 12. Evidence supporting this claim is simply non-existent. Markosian admits that the signature is his own, and that the signed copies were sent from his own office printer. Ex. 1 (Markosian Dep. Tr. at 167:3-168-20); Ex. 2. Indeed, before signing one such document, Markosian told attorney Daniel Gysi and Leshem that his name was spelled incorrectly. *Id.*, Ex. 9. Defendants' forgery allegations fail, and do not warrant investigation.

### B. Defendants' Undue Delay Amounts to Waiver

The Motion should be also denied based on Defendants' undue delay. "An unjustified delay in filing a motion to disqualify alone is sufficient grounds for denying the request." *Coffeyville Res. Ref. & Mktg. v. Liberty Surplus Ins. Corp.*, 261 F.R.D. 586, 589 (D. Kan. Sep. 16, 2009) (citing *Redd v. Shell Oil Company*, 518 F.2d 311 (10th Cir. 1975) (six-month delay in bringing an alleged ethical violation before the court was "fatal" to the motion); *see also Li*, 2020 U.S. Dist. LEXIS 105167 at *6 (moving party's "lack of diligence in pursuing the remedy of disqualification by itself doom[ed] his motion"). Disqualification motions must be "diligently

---

[10] Rule 1.8(f) allows for "compensation for representing a client from one other than the client" where there is "informed consent," and the compensation threatens "no interference with the lawyer's independence of professional judgment or with the client-lawyer relationship." Both requirements are met. Defendants do not provide a single example of an "interference." Instead, they claim there is a "practical realit[y] present when a lawyer represents two entities with divergent interests and only one of the entities is paying." This argument fails. *See Li*, 2020 U.S. Dist. LEXIS 105167, at *4.

pursued to avoid waiver and may not be used a strategic litigation tactics." *Hewlett v. Utah State Univ.*, No. 2:16:cv:01141-DN, 2019 U.S. Dist. LEXIS 51242, *13-14 (D. Utah, Mar. 26, 2019) (denying motion to disqualify where plaintiff waited seventeen months to file, concluding that "[p]laintiff's delay tactics in filing the motion weigh[ed] against disqualification."). Defendants' motion is a transparent attempt to harass Plaintiffs and delay trial. This is improper.

There could be absolutely no question who Venable/PB&L represented when Plaintiffs filed their Complaint on July 18, 2023. Now, just days before the close of discovery, after the deadline to serve discovery has passed, Defendants seek disqualification of Plaintiffs' counsel. *See* ECF No. 88 (Scheduling Order). Defendants attempt to do precisely what courts forbid: "delay[ing] in filing a motion to disqualify in order to use the motion later as a tool to deprive his opponent of counsel of his choice after substantial preparation of the case has been completed." *Coffeyville*, 261 F.R.D. at 589. The Motion should be denied on this basis alone.[11]

### C. Disqualification Would Cause Plaintiffs Extreme and Undue Prejudice

There can be no question that Plaintiffs would suffer extreme and undue extreme hardship should Defendants' baseless Motion be granted.[12] In *Hewlett v. Utah State Univ.*, the court denied a motion to disqualify, finding that "the hardship disqualification would inflict on [Defendant] would be significant" where defendants' counsel represented them "since the inception" of the case two years prior and "handled discovery and motion practice to date." No. 2:16-cv-01141-DN, 2019 U.S. Dist. LEXIS 51242, at *13. Here too Venable/PB&L have represented Plaintiffs for *four years* and conducted extensive discovery. This prejudice weighs against disqualification.

### II. CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that Defendants' Motion be denied.

---

[11] If the Court was inclined to find a conflict (there is not), the only reasonable remedy is for AM Group and Heeg to obtain separate counsel. Venable/PB&L have only represented AM Group and Heeg for a short period, while they have represented Plaintiffs for four years.

[12] Defendants argue prejudice because "once AmeriMark learned of the 13,000,000 stolen shares, it should have begun taking its orders from Mr. Markosian." Mot. at 12. In sum, they argue the AmeriMark entities should have done *exactly* what they claim is improper about Capana.

10

Dated:  January 16, 2025

VENABLE LLP

*/s/ Sarah Diamond*
John Worden (*Admitted Pro Hac Vice*)
Sarah E. Diamond (*Admitted Pro Hac Vice*)

PARSONS BEHLE & LATIMER
Erik A. Christiansen
Hannah Ector
*Attorneys for Plaintiffs Capana Swiss Advisors AG and AmeriMark Automotive AG, and Third-Party Defendants Shaen Bernhardt, Martin Fasser Heeg, Stefan Kammerlander, and AmeriMark Group AG*

## CERTIFICATE OF SERVICE

I hereby certify that on **January 16, 2025**, I caused a true and correct copy of the foregoing **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISQUALIFY COUNSEL** to be filed on CM/ECF and accordingly electronically served to the parties of record.

*/s/ Hannah Ector*
Hannah Ector