# EXHIBIT 1

| | |
|---|---|
| **From:** | donotreply@markosianauto.com on behalf of Markosian Auto <donotreply@markosianauto.com> |
| **Sent:** | Monday, May 9, 2016 11:10:07 AM |
| **To:** | Nick Markosian <Nick@beenjerkedaround.com> |
| **Subject:** | Scanned image from MX-M503N |
| **Attachments:** | Markosian Auto_20160509_120807.pdf |

Reply to: Markosian Auto <donotreply@markosianauto.com>
Device Name: Markosian AutoDevice Model: MX-M503N
Location: sales floor
File Format: PDF MMR(G4)Resolution: 400dpi x 400dpi
Attached file is scanned image in PDF format.Use Acrobat(R)Reader(R) or Adobe(R)Reader(R) of Adobe Systems Incorporated to view the document.
Adobe(R)Reader(R) can be downloaded from the following URL:Adobe, the Adobe logo, Acrobat, the Adobe PDF logo, and Reader are registered trademarks or trademarks of Adobe Systems Incorporated in the United States and other countries.
http://www.adobe.com/

RYMARK071390

EXHIBIT
38

DATED: May 9th 2016

(1) AMERIMARK AUTOMOTIVE AG

(2) SHAREHOLDER OF RYMARK INC

---

**SHARE EXCHANGE AGREEMENT**
---

1

RYMARK071391

## CONTENTS

| Heading Number | | Page |
|---|---|---|
| 1 | Definitions and Interpretation | 3 |
| 2 | Sale of Shares | 5 |
| 3 | Consideration | 5 |
| 4 | Completion | 5 |
| 5 | Additional Obligations of the Shareholder | 6 |
| 6 | Warranties | 7 |
| 7 | Matters Pending Completion | 7 |
| 8 | Notices | 7 |
| 9 | ~~Costs~~ | ~~8~~ |
| 10 | General | 8 |
| Schedule 1 – Shareholder | | 12 |
| Schedule 2 – Particulars of the Company | | 14 |
| Schedule 3 – Share Register and Consideration Shares | | 15 |
| Schedule 4 – Shareholder's Warranties | | 16 |
| Schedule 5 - Purchaser's Warranties | | 18 |
| Schedule 6 - Completion Requirements | | 19 |

RYMARK071392

AGREEMENT dated May 9th, 2016

PARTIES:

(1) **AMERIMARK AUTOMOTIVE AG** a company (in the course of incorporation) in the Swiss Canton of Appenzell Ausserrhoden, whose registered office shall be situated at c/o Säntis Treuhand GmbH, Fadenrainstrasse 7, 9053 Teufen, Switzerland ("**the Purchaser**");

(2) **SHAREHOLDER OF RYMARK INC** as set out in Schedule 1 of this Agreement being the registered owner of the entire issued and outstanding share capital of Rymark Inc ("**the Shareholder**").

INTRODUCTION:

(A) The Shareholder is the issued and outstanding legal and beneficial owner of the Shares.

(B) The Shareholder is willing to sell the Shares to the Purchaser, and the Purchaser is willing to purchase them, on the terms and conditions of this Agreement.

(C) Pursuant to Completion, the Shareholder will transfer the Shares to the Purchaser as provided herewith.

(D) Details of Rymark Inc are set out in Schedule 2.

**IT IS AGREED as follows**:

1   **Definitions and Interpretation**

   1.1   The definitions and interpretation provisions set out in this clause shall apply in this Agreement:

"Agreement"           this agreement including its schedules, appendices and attachments;

"Business Day"        a day (not being a Saturday or Sunday) when banks are open for general business in Canton St. Gallen, Switzerland;

"Company"             Rymark Inc, a company incorporated in the State of Utah, USA under corporation number 4727158-0142 and with registered office at 3899 S. Redwood Rd. West Valley City UT, USA, 84119, the particulars of which are set out in Schedule 2 of this Agreement;

3

| | |
|---|---|
| "Completion" | the performance by the parties of the obligations (to the extent not previously waived in terms of this Agreement) assumed by them respectively under clause 4 of this Agreement; |
| "Consideration" | the consideration provided by the Purchaser to the Shareholder for the Shares, payable in accordance with clause 3 of this Agreement; |
| "Consideration Shares" | the aggregate amount of bearer shares in the capital of the Purchaser to be issued to the Shareholder at a ratio of 18,000.000 bearer shares of CHF 0.05 par value in the Purchaser for common shares with no par value in the Company as set out in Schedule 3 of this Agreement; |
| ~~"Encumbrance"~~ | ~~any interest or equity of any person (including, without limitation, any right to acquire, option, right of pre-emption or right of conversion) or any mortgage, charge, pledge, lien, assignment or any other encumbrance, priority or security interest or arrangement of whatever nature over or in the relevant property;~~ |
| "Notice" | notices as set out in clause 8 of this Agreement; |
| "Shares" | the entire issued and outstanding share capital of the Company comprising 1'300 common shares with no par value; |
| "Shareholder" | the beneficial owner of the entire issued and outstanding share capital of the Company as set out in Schedule 1 of this Agreement; and |
| "Warranty" and "Warranties" | the warranties, representations and undertakings contained or referred to in clause 6 and Schedules 4 and 5 of this Agreement. |

1.2   References to statutes or statutory provisions include those statutes or statutory provisions as amended, extended, consolidated, re-enacted or replaced from time to time and any orders, regulations, instruments or other subordinate legislation made under them.

1.3   Unless specified to the contrary, use of the singular is deemed to include the plural, use of any gender is deemed to include every gender and any reference to a person is deemed to include a corporation, a partnership and other body or entity; and (in each case) vice versa.

4

1.4 Any undertaking by any of the parties not to do any act or thing shall be deemed to include an undertaking not to permit or suffer or assist the doing of that act or thing.

1.5 The headings shall not affect interpretation.

## 2 Sale of Shares

The Shareholder shall sell the Shares with full title guarantee and free from Encumbrances and the Purchaser shall purchase the Shares pursuant to this Agreement.

## 3 Consideration

3.1 The Consideration shall be the issue and allotment of the Consideration Shares credited as fully paid by the Purchaser to the Shareholder in the proportions set out in Schedule 3.

3.2 The Consideration Shares shall be issued credited as fully paid up and shall rank pari passu in all respects with the existing ordinary shares of the Shareholder and shall carry the right to receive in full all dividends declared, made or paid after the date of Completion.

## 4 Completion

4.1 Completion shall take place at such time, place and date as the Shareholder and the Purchaser may agree.

4.2 Completion and the obligations of the parties to this Agreement are subject to and do not become binding until the parties comply with their respective obligations under Schedule 6 of this Agreement.

4.3 If any of the requirements of Schedule 6 (to the extent not previously waived in accordance with the terms of this Agreement) are not complied with on the date fixed for Completion by the parties in accordance with clause 4.1 herein, the party not in default may (without prejudice to its other rights and remedies including the right to claim damages for the breach):

   4.3.1 proceed to Completion so far as practicable (without prejudice to its rights under this Agreement); or

   4.3.2 rescind this Agreement without liability to any other party and in the event of such rescission it is agreed that the parties rights and obligations shall cease immediately on termination but their accrued rights and obligations shall not be affected; or

RYMARK071395

    4.3.3    waive all or any of the unfulfilled obligations of the other party.

4.4    Each party shall execute such further documents and perform and do such further acts and things following Completion as the other party may reasonably request in writing in order to carry the provisions of this Agreement into full effect. The party making the request will pay the costs and expenses incurred in carrying out any such request.

4.5    Each party agrees to co-operate with and assist the other parties in the taking of all steps necessary or appropriate to complete the transactions contemplated by this Agreement.

## 5    Additional Obligations of the Shareholder

5.1    The Shareholder warrant and represent to the Purchaser that they are entitled to sell and transfer to the Purchaser the full legal and beneficial ownership of the Shares free from any Encumbrances on the terms of this Agreement.

5.2    The Shareholder shall not before Completion dispose of any interest in the Shares or grant any Encumbrance over the Shares.

5.3    The Shareholder shall sell the Shares with all rights now and in the future attaching to them.

5.4    The Shareholder waive, and agree to procure the waiver of, any restrictions on transfer which may exist in relation to the Shares under the existing constitution of the Company or otherwise.

5.5    For so long after Completion as they remain the issued and outstanding holder of any of the Shares the Shareholder shall hold them and any distributions, property and rights deriving from them in trust for the Purchaser and shall deal with the Shares and any distributions, property and rights deriving from them as the Purchaser directs.

5.6    The Shareholder shall provide or procure to be provided to the Purchaser and its agents and advisers all information in their possession or under their control concerning the business, accounts, finance or contractual arrangements or other dealings, transactions or affairs of the Company and the Shareholder will give or procure to be given to the Purchaser and its agents and advisers such access (including the right to take copies) to such documents.

5.7    The Shareholder agrees to become a member of the Purchaser and to take the Consideration Shares on and subject to the memorandum and articles of association of the Purchaser.

RYMARK071396

6. **Warranties**

   6.1   The Shareholder warrant, represent and undertake with the Purchaser in the terms of Schedule 4. The Shareholder shall be held jointly and severally liable for any breach of the Warranties set out in Schedule 4 and/or for any breach of a term or condition of this Agreement.

   6.2   The Purchaser warrants, represents and undertakes with the Shareholder in the terms of Schedule 5.

   6.3   The Warranties are deemed to be repeated on each day up to and including the day of Completion and any reference made to the date of this Agreement (whether express or implied) in relation to any Warranty shall be construed, in relation to any such repetition, as a reference to each such day.

   6.4   Each party to this Agreement acknowledges that the other parties are entering into this Agreement in reliance on the Warranties.

7. **Matters Pending Completion**

   7.1   The Shareholder shall immediately disclose to the Purchaser in writing any of the following that may become known to them or any of them after the date of this Agreement and before Completion:

       7.1.1   any breach of any of the Warranties; and

       7.1.2   any breach by the Shareholder of any obligation on their part under this Agreement.

   7.2   If any such disclosure shall be made as set out in this Clause 7, or if the Purchaser otherwise becomes aware of any such matter or thing, the Purchaser may at any time before Completion, by written notice to the Shareholder, rescind this Agreement.

8. **Notices**

   8.1   Every notice given or required to be given under this Agreement shall be in writing and in the English language. A Notice shall be sent to the issued and outstanding office of the recipient or at such other address as the Shareholder or Purchaser shall have notified to the other party in accordance with this clause.

   8.2   Every Notice shall be sent by courier, or by first class recorded delivery post (if within Switzerland ), or by prepaid airmail (if elsewhere), or by facsimile transmission. A Notice addressed to a corporation shall be marked for the attention of its chief executive (or equivalent officer). To be valid a Notice must be despatched on a Business Day.

7

RYMARK071397

8.3 A Notice shall be deemed to be served, if by courier, at the time of delivery and, if posted, at 10.00 a.m. on the second Business Day after the day it was put in the post if sent within Switzerland or at 10.00 a.m. (local time at the place of destination) on the fifth Business Day after the day it was put in the post if sent by airmail. If sent by facsimile transmission or via email it shall be deemed to be served at the expiration of two hours after the time of despatch, if despatched before 3.00 p.m. (local time to the sender), and in any other case at 10.00 a.m.(local time to the sender) on the first Business Day after the date of despatch.

8.4 In proving service of a Notice it shall be sufficient to prove that delivery was made or that the envelope containing the Notice was properly addressed and posted (either by prepaid first class recorded delivery post or by prepaid airmail, as the case may be) or that the sender's facsimile transmission report confirmed receipt.

## 9. Costs

The Company will meet all costs of preparing and completing this Agreement.

## 10. General

10.1 None of the rights or obligations of either party under this Agreement may be assigned or transferred without the prior written consent of the other party.

10.2 This Agreement and the documents referred to in it constitute the entire agreement between the parties relating to their subject matter, and supersede all previous agreements between the parties relating to that subject matter. There shall be deemed to be comprised in this Agreement all letters and acknowledgements exchanged between the parties contemporaneously with and expressed to be ancillary to this Agreement.

10.3 The provisions of this Agreement may be varied by the parties, however any variation or waiver of any of the terms of this Agreement shall not be binding unless set out in writing, expressed to amend this Agreement and signed by or on behalf of each of the parties.

10.4 This Agreement shall be governed by the laws of the Swiss Confederation.

10.5 If any provision of this Agreement, or any part of a provision of this Agreement, is found to be illegal, invalid or unenforceable the remaining provisions, or the remainder of the provision concerned, shall continue in effect.

8

RYMARK071398

10.6  A failure or delay in enforcing compliance with any term of this Agreement shall not be a waiver of that or any other term of this Agreement.

10.7  The express rights and remedies provided in this Agreement do not exclude any other rights or remedies provided by law, except to the extent that the rights and remedies of a party are expressly excluded or restricted by the terms of this Agreement.

10.8  This Agreement may be executed in any number of counterparts and all the counterparts when taken together will constitute one agreement. Each party may enter into this Agreement by executing a counterpart.

10.9  Each individual signing this Agreement on behalf of a party represents that he has been fully empowered by that party to execute this Agreement, that all necessary action to authorise execution of this Agreement by him has been taken by such party, that the party on whose behalf he executes this Agreement has full authority, power and capacity to enter into this Agreement and that all necessary actions have been taken to enable that party lawfully to enter into this Agreement.

*[Signature Page to follow]*

RYMARK071399

EXECUTED by

AMERIMARK AUTOMOTIVE AG

Nicholas Markosian, Founder

SHAREHOLDER OF EMISSION & POWER SOLUTIONS INC

Nicholas Markosian,

10

RYMARK071400

## Schedule 1

| Shareholder of the Company | Shareholder address |
|---|---|
| Nicholas Markosian | 2979 Warr Rd. Salt Lake City, UT 84109 USA |

11

RYMARK071401

## Schedule 2 - Particulars of the Company

1. Corporation Number: 4727158-0142

2. Place of Incorporation: State of Utah, USA

3. Date of Incorporation: February 28, 2000

4. Registered office: 3899 S. Redwood Rd. West Valley City, Utah USA 84119

5. Director: Nicholas Markosian

6. Nature of business: engaged in the purchase, sale and leasing of automobiles to consumers.

7. Tax residence: USA

RYMARK071402

## Schedule 3 – Shareholder of the Company

| Shareholder Name | No. of Shares issued in the Company | No. of Consideration Shares to be issued in the Purchaser on Completion | Percentage Shareholding in the Purchaser after Share Exchange in % |
|---|---|---|---|
| Nicholas Markosian | 1,300 | 18,000,000 | 100 |

13

## Schedule 4 – Shareholders' Warranties

**A  GENERAL**

1. **Capacity**

    1.1  The Shareholder has full power to enter into and perform his obligations under this Agreement that will, when executed, constitute lawful and binding obligations of the Shareholder in accordance with its terms.

    1.2  The Shareholder is the legal and beneficial owner of, or is otherwise entitled to sell and transfer to the Purchaser the full legal and beneficial ownership of the Shares on the terms of this Agreement.

2. **Effect of Agreement**

    2.1  Compliance with the terms of this Agreement does not require the consent or agreement of any person who is not a party to this Agreement.

3. **Disputes and litigation**

    3.1  There are no court orders, injunctions or unsatisfied judgments outstanding against the Company nor is it party to any undertaking or assurance given to a court, tribunal, regulatory authority, governmental agency or any other person in connection with the determination or settlement of any claim or proceedings.

    3.2  Neither the Company nor any of its officers nor any person for whose acts or defaults the Company may be liable is involved in any civil, criminal or arbitration proceedings and no such proceedings and no claims of any nature are pending or threatened by or against the Company and there are no facts likely to give rise to any such proceedings.

4. **Consents, Encumbrances and Compliance with Laws**

    4.1  There is no Encumbrance on, over or affecting any of the Shares.

    4.2  The Company has performed all obligations required to be performed with respect to or affecting its business, employees and assets and is not now and will not be, following the execution and performance of this Agreement, in default under any laws, regulations, orders, decrees, judgments, contracts, agreements, licences, obligations or restrictions of whatever nature binding upon it or which affect its assets or employees or the operations of its business.

14

RYMARK071404

4.3   The Shareholder is entitled to the issue of the Consideration Shares under the laws of all relevant jurisdictions which apply to him and each Shareholder has fully observed such laws.

15

RYMARK071405

## Schedule 5 – Purchaser's Warranties

1. The Purchaser has full power to enter into and perform its obligations under this Agreement which will, when executed, constitute lawful and binding obligations on the Purchaser in accordance with its terms.

2. The Purchaser is duly authorised and entitled to issue to the Shareholders the Consideration Shares which will be fully paid up bearer shares free from Encumbrances.

16

RYMARK071406

## Schedule 6 – Completion requirements

On Completion the parties will comply with the following requirements:

**Shareholders' Requirements:**

1. The Shareholders shall deliver to the Purchaser or its nominated representative:

    1.1 definitive share certificates in respect of the Shares;

    1.2 a copy of the share register of the Company indicating transfers of the Shares duly executed by the issued and outstanding holders of such Shares in favour of the Purchaser in the proportions set out in Schedule 3 of this Agreement; and

    1.3 to the extent that they are capable of doing so, the certificate of incorporation or similar documents, (and, if applicable any certificates of incorporation on change of name) any common seal, any securities seal, statutory minute books and registers (duly made up to the date of Completion), share certificate book and copies of the memorandum and articles of association of the Company.

**Purchaser's obligations:**

2. Against compliance with the above provisions of this Schedule the Purchaser shall:

    2.1 allot and issue the Consideration Shares to the Shareholders;

    2.2 procure the entry of the names of the Shareholders in the register of members of the Purchaser;

    2.3 deliver to the Shareholders respectively or to nominated representatives definitive share certificates in respect of the Consideration Shares; and

    2.4 procure that there shall be held a meeting of the directors of the Purchaser attended by a quorum of the directors, at which this agreement and the transaction entailed is approved and consented to and that a copy of the board minutes of such meeting is provided to the Shareholders.

17