# EXHIBIT 2

# LISTING AGREEMENT

This Listing Agreement (herein the "Agreement") is entered into this 1st day of April 2015 by and between **RYMARK, INC.** a State of Utah corporation having its registered offices at 4238 South Redwood Road, Taylorsville, Utah 84123 and **Ananda Capital Partners, Inc.**, (herein the Consultant") a Florida corporation having its registered offices at 7824 La Mirada dr. Boca Raton FL 33433.

## RECITALS

**Whereas** the Company desires to form a corporation to be a listed public company as described herein (herein the "Listing") on the Marché Libre standard of the Euronext Exchange (hereinafter the "Exchange" or the "Marché Libre);

and

**Whereas** The Company and its principals have presented the business activities of the Company, its operations, financial condition and capital structure, and various agreements and documents related thereto;

**Now, therefore**, in consideration of the mutual covenants and promises contained herein, the sufficiency of which is hereby acknowledged by each of the parties, the Company and the Consultant hereby agree as follows:

## I. ENGAGEMENT OF ANANDA CAPITAL PARTNERS, INC.

The Company hereby engages and retains the Consultant as a business consultant to the Company to perform the Services (as defined in Section IV below) for the Company during the Term (as defined in Section VII below and the Consultant hereby accepts such appointment on the terms and subject to the conditions hereinafter set forth, and agrees to exert its best efforts in providing the Services during the Term.

## II. COMPENSATION

The Company hereby agrees to pay the Consultant the sum of US$ 125,000 which sum shall cover any and all listing costs and expenses as follows:

(a) US$ 40,000.00 upon the date hereof which is 31 March 2016.
(b) US$ 22,500.00 on 15 April 2016

(c) US$ 62,500.00 Upon submission of a complete listing application to the Marché Libre, but, in any case, no sooner than 4 weeks from the date hereof.

## III. INDEPENDENT CONTRACTOR

(a) The Consultant is, and in all respects deemed to be, an independent contractor in the performance of its duties hereunder, any law of any jurisdiction to the contrary notwithstanding.

(b) The Consultant will not, by reason of this Agreement or the performance of the Services or the payment of Listing Expenses, be or be deemed to be, an employee, agent, partner, co-venture partner or controlling person of the Company. Notwithstanding any provision of this Agreement to the contrary, the Consultant has and shall have no power to enter into any agreement on behalf of, or otherwise bind, the Company.

(c) The Consultant will be free to pursue, conduct and carry on for its own account (or for the account of others) such activities, employment ventures, businesses and other pursuits as the Consultant in its sole, absolute and unfettered discretion may elect.

(d) The Consultant is not a registered broker-dealer or associated person of such, and is not purporting to act in any capacity requiring registration as a broker-dealer or associated person.

(e) Notwithstanding the above or any other provision of this Agreement to the contrary, Consultant will not undertake any activity or pursuit that (1) conflicts with the Consultant's obligations under this Agreement, (2) is, or could reasonably be, averse to the Company's interests during the Term, or (3) would require any license, permit or registration from a governmental authority which the Consultant does not have at the time of such activity or pursuit.

(f) As an independent contractor, Consultant shall be entirely responsible to pay all taxes associated with the Funding Amount and neither the Company nor the Consultant shall be responsible to pay any such taxes or provide any benefits to Consultant other than the Funding Amount and the Stock Fee (both if and when due).

## IV. SERVICES

IV.1 During the Term, subject to the other express terms and conditions of this Agreement, the Consultant agrees to provide the following consulting services to the Company (hereafter collectively referred to as the "Services"):

(a) Assist the Company in applying for and completing the Listing on the MARCHÉ LIBRE, including without limitation:

(ii) Preparation of draft listing applications, board resolutions and any and all additional listing documents for submission to the MARCHÉ LIBRE.

(iii) Assistance in formation and capitalization of a Swiss Holding Company to act as the listing vehicle.

(iv) Recommending and facilitating engagement of a primary stock transfer agent(s) for the Company for both the MARCHÉ LIBRE;

(v) Recommending and facilitating engagement of a stock transfer agent for the Company pursuant to the statutory requirements of the MARCHÉ LIBRE;

(vi)     Recommending and facilitating engagement of a Listing Sponsor to list the Company on the MARCHÉ LIBRE;

(vii)    Upon listing of the Company Stock on the MARCHÉ LIBRE, advising and assisting the Company in (A) depositing shares of Company Stock into Euroclear the French Common Depository, and (B) coordinating an initial trade in shares of the Company Stock at a per share price as indicated by the Company upon consultation with the Consultant; and

(b)    Advise Company management regarding the capital structure of the Company Listing in light of the anticipated Institutional Investment;

(c)    Assist and advise the Company in delivering shares of the Company Stock to the owners of the Company,

(d)    Identify and introduce the Company to qualified, accredited institutional investors and/or conduits to such institutional investors in order to effect an Institutional Investment;

(e)    Advise Company management regarding the terms of an Institutional Investment; and

(f)    Advise Company management regarding the establishment and promotion of a healthy and active public market for shares of Company Stock following the Listing, including without limitation recommending and facilitate engagement of one or more analysts and/or other parties qualified to foster a healthy and active public market.

IV.3    Without limiting the generality of any other provision of this Agreement, the Consultant hereby agrees that it will devote such time and best efforts to the performance of the Services as is reasonable and adequate to render such Services.

IV.4    The Consultant is not responsible for the performance of any services that may be rendered hereunder without the Company providing the necessary information in writing prior thereto, nor will the Consultant include any services that constitute the rendering of any legal opinions or performance of work that is in the ordinary purview of a Certified Public Accountant. The Consultant cannot guarantee results on behalf of the Company but will pursue all reasonable avenues available through its network of contacts. At such time as an interest is expressed by a third party in the financial needs of the Company, the Consultant will notify Company management and advise it as to the source of such interest and any terms and conditions of such interest.

IV.5    Without limiting the generality of any other provision of this Agreement, the Consultant hereby agrees that, in conjunction with the Services, the Consultant will:

(a)    Be available to the officers and their designated representatives of the Company and/or the Company at mutually agreed-upon place(s) during normal business hours for reasonable periods of time;

(b)    Be available for telephone conferences with the principal financial, sales and/or operating officer(s) of the Company during normal business hours;

(c)    Advise management of the Company in corporate finance; and

(d)     Advise management of the Company in evaluating proposals and participating in negotiations with prospective investors, investor groups or their agents.

IV.6 Aid the Company in seeking private placement and institutional sources of capital. The Company shall compensate consultant 7.5% of the cash proceeds of the capital invested in the Company as a result of these efforts. Such compensation is in addition to other costs which might be associated with such efforts.

V.  REPRESENTATIONS, WARRANTIES AND COVENANTS

    A.  **Execution.** The Execution, delivery and performance of this Agreement, in the time and manner herein specified, will not conflict with, result in a breach of, or constitute a default under any existing agreement, indenture, or other instrument to which either entity may be bound or affected.

    B.  **Non-Disclosure and Non-Circumvention.** Both Parties hereby irrevocably agrees not to circumvent, avoid, bypass, or obviate, directly or indirectly, the intent of this Agreement, to avoid payment of fees, such as accounting fees or finder's fees in the event of consummation of a financing transaction, or in any transaction with any corporation, partnership or individual, introduced by the by either to the other Party, in connection with any project, any loans or collateral, or other transaction involving any products, transfers, or services, or addition, renewal extension, rollover, amendment, renegotiations, new contracts, parallel contracts/agreements, or third party assignments thereof. Both the Consultant and the Company understand and acknowledge that their obligations under this Non-Disclosure and Non-Circumvention Agreement are for the benefit of the both Parties and its successors and that the either Parties' failure or delay in exercising any right, power and privilege hereunder shall not operate as a waiver thereof, nor shall any single or partial exercise thereof or the exercise of any other right, power and privilege hereunder operate as a waiver. The obligations of this Agreement shall remain in effect for a period of eighteen (18) months following the expiration of the term of this Agreement.

    C.  The Consultant shall not divulge to others, any trade secret or confidential information, knowledge, or data concerning or pertaining to the business and affairs of the Company, obtained by the Consultant as a result of its engagement hereunder, unless authorized, in writing, by the Company.

VI.  COMPANY'S RESPONSIBILITIES AND UNDERTAKINGS

The Company shall undertake any and all actions to cause the Company, or any successor Company to be listed on the Primary and Secondary Exchanges, including, but not limited to assisting the Consultant in obtaining any and all material required for fulfillment of the Services as described herein, such as a comprehensive business plan, the maintenance of a corporate website in both English, German and French that accurately and adequately describes the business of the Company, its history, management etc. and providing the

Consultant with financial statements for the period ending no earlier than December 31, 2015.

    1. The Company shall promptly notify the Consultant of the threat or filing of any suit, arbitration or administrative action, injunction, lien, claim or complaint and promptly forward a copy of all related documentation directly to the Consultant or at the Consultant's option to the Consultant's counsel.

    2. The Consultant shall keep all documents and information confidential as described in the section below titled, "CONFIDENTIAL".

A. Until termination of the engagement, the Company will notify the Consultant promptly of the occurrence of any event, which might materially affect the condition (financial or otherwise), or prospects of the Company.

B. The Company hereby agrees that, upon completion of the Listing, the Company shall engage or cause to be engaged an investment advisory group whose function shall be to encourage or assist the formation of trading activity of the Company's shares on the Listing Exchange. Notwithstanding the foregoing, the Company shall have no obligation hereunder to incur out of pocket expenses in causing the liquidity program to be initiated.

## VII. TERM AND TERMINATION

A. This Agreement shall be effective upon its execution and shall remain in effect for One (1) year, but may be terminated by the Company after sixty days upon written notice.

B. In no event shall any termination be effective until the expiration of at least sixty days after the signing of this agreement.

C. At any time, after sixty days from the date hereof, the Company shall have the right to terminate engagement of Ananda Capital Partners hereunder by furnishing the Consultant with a 30-day written notice of such termination. Upon such Termination all materials relating to the Company in the possession of the Consultant shall be returned.

## VIII. OTHER MATERIAL TERMS AND CONDITIONS:

A. **Additional Instruments.** Each of the parties shall, from time to time, at the request of others, execute, acknowledge and deliver to the other party any and all further instruments that may be reasonably required to give full effect and force to the provisions of this Agreement.

B. **Entire Agreement.** Each of the parties hereby covenants that this Agreement is intended to, and does contain and embody herein, all of the understandings and

        Agreements, both written or oral, of the parties hereby with respect to the subject matter of this Agreement, and that there exists no oral agreement or understanding expressed or implied liability, whereby the absolute, final and unconditional character and nature of this Agreement shall be in any way invalidated, empowered or affected. There are no representations, warranties or covenants other than those set forth herein.

C.    **Governing Law.** This Agreement shall be deemed to be made in, governed by and interpreted under and construed in all respects in accordance with the laws of the State of Florida irrespective of the country or place of domicile or residence of either party. In the event of controversy arising out of the interpretation construction, performance or breach of this Agreement, the parties hereby agree and consent to the jurisdiction and venue of the courts of the State of Florida.

D.    **Originals.** This Agreement may be executed in any number of counterparts, each of which so executed shall be deemed an original and constitute one and the same agreement. Facsimile copies with signatures shall be given the same legal effect as an original.

E.    **Addresses of Parties.** Each party shall, at all times, keep the other informed of its principal place of business if different from that stated herein, and shall promptly notify the other of any change, giving the address of the new place of business or residence.

F.    **Notices.** All notices that are required to be or may be sent pursuant to the provision of this Agreement shall be sent by certified mail, return receipt requested, or by overnight package delivery service to each of the parties at the address appearing herein, and shall count from the date of mailing or the validated air bill.

G.    **Modification and Waiver.** A modification or waiver of any of the provisions of this Agreement shall be effective only if made in writing and executed with the same formality as this Agreement. The failure of any party to insist upon strict performance of any of the provisions of this Agreement shall not be construed as a waiver of any subsequent default of the same or similar nature or of any other nature.

H.    **Attorneys' Fees.** If any arbitration, litigation, action, suit, or other proceeding is instituted to remedy, prevent or obtain relief from a breach of this Agreement, in relation to a breach of this Agreement or pertaining to a declaration of rights under this Agreement, the prevailing party will recover all such party's attorneys' fees incurred in each and every such action, suit or other proceeding, including any and all appeals or petitions there from. As used in this Agreement, attorneys' fees will be deemed to be the full and actual cost of any legal services actually performed in connection with the matters involved, including those related to any appeal or the enforcement of any judgment calculated on the basis of the usual fee charged by attorneys performing such services.

I.    **Corporate Authority.** Both the Company and the Consultant have full legal authority to enter into this Agreement and to perform the same in the time and manner contemplated.

CONFIDENTIAL     PL_0000000008

J. **Individual Authority.** The individuals whose signatures appear below are authorized to sign this Agreement on behalf of their respective corporations.

IN WITNESS WHEREOF the parties have duly executed this Listing Agreement this _____ day of March 2015

RYMARK, INC.

_____  4/1/16
Nicholas Markosian, CEO          Dated

ANANDA CAPITAL PARTNERS, INC.

_____  MARCH 31, 2016
Miron Leshem, President          Dated