Chad S. Pehrson (12622) (cpehrson@kba.law)
Robert P. Harrington (12541) (rharrington@kba.law)
Stephen Richards (19332) (srichards@kba.law)
KUNZLER BEAN & ADAMSON, PC
50 West Broadway Ste 1000
Salt Lake City Utah 84101
Telephone: (801) 994-4646

*Attorneys for Defendants, Counter-Claimants, and Third-Party Plaintiffs*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CAPANA SWISS ADVISORS AG, a Swiss corporation; AMERIMARK AUTOMOTIVE AG, a Swiss corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>RYMARK, INC., a Utah corporation; NICHOLAS THAYNE MARKOSIAN, an individual; JOHN KIRKLAND, an individual; and VICKY SMALL, an individual,<br><br>Defendants. | **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISQUALIFY COUNSEL**<br><br>Case No.: 2:23-cv-00467<br><br>Judge: Ted Stewart<br>Magistrate Judge: Cecilia M. Romero |
| RYMARK, INC., a Utah corporation; and NICHOLAS THAYNE MARKOSIAN, an individual,<br><br>Counter Claimants,<br><br>vs.<br><br>CAPANA SWISS ADVISORS AG, a Swiss corporation; AMERIMARK AUTOMOTIVE AG, a Swiss corporation.<br><br>Counter Defendants | |

1

| |
|---|
| RYMARK, INC., a Utah corporation; and NICHOLAS THAYNE MARKOSIAN, an individual, |
| Third-Party Plaintiffs, |
| vs. |
| SHAEN BERNHARDT, an individual; ASHLEY MIRON LESHEM, an individual; DAVID HESTERMAN, an individual; NICOLAI COLSHORN, an individual; STEFAN KAMMERLANDER, an individual; ALEXANDER COENEN, an individual; MARTIN FASSER HEEG, an individual; FELIX KAPPELER, an individual; FRANK HUESER, an individual; AMERIMARK GROUP AG, a Swiss corporation; and PHILOMAXCAP AG, a German corporation, |
| Third-Party Defendants. |

## I. INTRODUCTION

Plaintiffs' Opposition (Dkt. 220, "**Opp'n**") to Rymark's motion to disqualify counsel (Dkt. 211, "**Mot.**") argues that no disqualifying conflict exists because Capana disposed of its AmeriMark Group shares by sending them to another company under Capana's control, and that Defendants waited too long to file the Motion. These arguments are wrong for the reasons set forth below. The Court should grant the Motion.

## II. DISCUSSION

### A. Venable and Parsons Behle's Concurrent Representation Creates A Conflict Under Rule 1.7

Plaintiffs do not attempt to distinguish the cases Rymark cited for the proposition that a single law firm generally should not represent both a corporation and one faction of shareholders

2

in a control dispute.[1] (*See* Mot. at 8.) Instead, Plaintiffs direct the Court to *Vicidiem, Inc. v. Christiansen*, a case that – as Rymark already explained – supports Rymark. *See* 2020 WL 5107636 (D. Utah Aug. 31, 2020); *see also* Mot. at 10 n.4 (discussing *Vicidiem*). In *Vicidiem*, the court *acknowledged* an apparent conflict in a corporate control dispute but concluded that the conflict would be "waivable" if one shareholder exercised its right under Utah law to buy out a dissenting shareholder's shares. 2020 WL 5107636, at *3. The Court explained that because the company had "elected to purchase [the adverse shareholder's] shares in the company," "then any alleged conflicts . . . will be remedied by the conflict waivers signed by the remaining shareholders . . . ." *Id.* at *4. Here, by contrast, Capana itself alleges that Mr. Markosian remains a minority shareholder in AmeriMark Group, Dkt. 16 ¶ 53, and he has not consented to the conflict.

Plaintiffs' other authority has little in common with this case. *Field v. Freeman* denied a motion to disqualify only because the corporation in question was "defunct" and therefore had no "interest adverse" to shareholders. 527 F. Supp. 935, 940 (D. Kan. 1981). And in *Li v. Lewis*, 2020 WL 3217268, at *3 (D. Utah June 15, 2020), the court determined that no conflict existed because the law firm in question never represented the corporation at all. *Id.* ("Ray Quinney never actually represented Akirix, but instead only represented Larry personally").

---

[1] In a footnote, Plaintiffs say that Rymark's counsel, too, represents both a corporation (Rymark) and a shareholder (Mr. Markosian) in a control dispute over Rymark. (Opp'n at 2 n.1.) But the nature of the two disputes is fundamentally different. The dispute over AmeriMark Group is a classic control dispute; Plaintiffs allege that Mr. Markosian is a shareholder in AmeriMark Group, and the parties simply dispute what Mr. Markosian's proper shareholdings should be (*i.e.*, a control position, or something less). Rymark and Mr. Markosian, by contrast, assert that the AmeriMark entities were fraudulently created as part of a securities fraud scheme and should be disregarded.

### B. Capana's Disposal Of The 13,000,000 Shares To Philomaxcap Does Not Cure The Conflict

Plaintiffs argue that any conflict under Rule 1.7 was cured because in February 2024, Plaintiffs transferred the 13,000,000 disputed shares of AmeriMark Group to Third-Party Defendant Philomaxcap AG. (Opp'n at 5.) But what Plaintiffs do not acknowledge in their Opposition is that Philomaxcap is under Capana's control. Capana holds more than 92% of Philomaxcap's shares. (Dkt. 221-2 at 11 (corporate diagram); *see also* Dkt. 221-3 at 5 (identifying Capana as the "new majority shareholder" of Philomaxcap "with more than 90%"). So it is incorrect for Capana to suggest that there is no longer any conflict because Capana has taken the nominal step of transferring the shares from *one* place it controls (its own brokerage account) to *another* place it controls (the brokerage account of a company for which it holds 92% of the stock). Capana's interests are aligned with Philomaxcap's, and the conflict between Capana and the AmeriMark entities remains.

### C. AmeriMark's Failure To Investigate The Whitetree Shares Demonstrates That The Conflict Has Affected The Representation

The Opposition also asserts that in fact, Whitetree's shares were "properly transferred" from Mr. Markosian, and as a result, no genuine conflict as to Capana's ownership stake exists. This is so, Plaintiffs say, because documents recently produced by Whitetree appear to show that Mr. Markosian had a call with Whitetree in 2018 and that an (unsigned) term sheet was circulated – though, not to Mr. Markosian. (Opp'n at 6.) And Plaintiffs insist that they are not obligated to investigate Rymark's claims of forgery when it comes to Whitetree documents because the allegations "do not warrant investigation." (*Id.* at 9.)

None of this is correct. Here are the relevant facts:

- The parties dispute whether Mr. Markosian transferred 13,000,000 shares of AmeriMark Group to Whitetree.

- In early 2024, Rymark discovered documents in Plaintiffs' document production relating to Whitetree that were obviously doctored. Someone had changed share figures on subscription forms for – among others – Mr. Markosian. The doctoring is described at length in Rymark's Amended Counterclaim, Dkt. 139 ¶¶ 75–82. But essentially, the share figures on a form for Mr. Markosian were reduced by roughly 13,000,000 on the doctored version of the form. The signatures and dates on the forms are identical, but someone appears to have laid a new piece of paper over the original to make a doctored photocopy:

> 19'441'667 bearer shares with a nominal value of CHF 0.05 each
> (total nominal value CHF 972'083.35)
>
> I herewith commit myself to an unconditional contribution in kind of 17'497'500 shares of AmeriMark Automotive AG, in Frauenfeld, Switzerland, for 19'441'667 newly issued bearer shares of AmeriMark Group AG (former: 4Service Cloud Tech AG).
>
> SLC UT 5/10/18
> Place, date
>
> For Nicholas T. Markosian:
>
> Nicholas T. Markosian



(Dkt. 139 ¶¶ 79–80.)

- Then, the same person created a subscription form for Whitetree that – conveniently – made it appear as if Whitetree had 13,000,000 shares of AmeriMark Group as of May 2018:



(Dkt. 139 ¶ 81.)

- These documents – in Rymark's view – definitely disprove the idea that Whitetree came by

6

the 13,000,000 shares legitimately. Even Plaintiffs now say that Whitetree did not have shares in May 2018. But they have never been able to provide an explanation of why the doctored subscription forms exist. If Mr. Markosian really agreed in late 2018 or early 2019 to sell a huge portion of AmeriMark Group to Whitetree, then who created the doctored forms – and why? Plaintiffs have never said.

- Whitetree produced documents in December 2024 in response to an international letter of request issued by Rymark. The documents, which Plaintiffs attached to the Opposition, appear to include an email indicating that Mr. Markosian agreed to attend a call with Whitetree personnel (among others) in October 2018. They also include drafts of a term sheet between Whitetree and AmeriMark Group for the transfer of shares, but the term sheets are not signed and do not even have a signature line for Mr. Markosian. Whitetree produced no documents indicating that the term sheets were ever sent to Mr. Markosian. Rymark's position remains that there is no evidence that Mr. Markosian ever transferred shares to Whitetree, and that the doctored subscription forms establish that when it comes to Whitetree, fraud is afoot.[2]

Rymark has been asking Plaintiffs to explain the doctored subscription forms for nearly a year. But it was not until the Martin Fasser Heeg deposition in November 2024 that it became clear that even the AmeriMark entities – who should have every interest in verifying their shareholders

---

[2] Plaintiffs have elsewhere suggested to Rymark that additional Whitetree documents may eventually come to light, or that a signed agreement between Whitetree and Mr. Markosian exists. But Plaintiffs have produced no such document, and Rymark's counsel (despite a diligent search) have located no such document. Rymark, for its part, has been investigating the Whitetree issue for more than a year, going so far as to request an international letter of request to Whitetree for documents. (*See* Dkt. 53.) So Plaintiffs' current suggestion that actually, Rymark is trying to conceal the facts regarding Whitetree, makes little sense. It is *Rymark* that has been chasing the Whitetree issue all along, and Plaintiffs who have been (largely) ignoring it.

7

and confirming the fidelity of their own documents – are not going to investigate or explain the forms. And the Opposition appears to give an explanation for why this is: because Capana's counsel have decided that despite being obviously fabricated, the documents "do not warrant investigation." (Opp'n at 9.)

To be clear, the Motion does *not* ask the Court to resolve the question of who is right when it comes to the 13,000,000 shares. It is sufficient that there is a *bona fide* dispute between the parties and that the AmeriMark entities – by admission of their sole director – are doing nothing to investigate that dispute. That is the upshot of the conflict of having Capana and AmeriMark share common representation.

### D. Plaintiffs Do Not Adequately Address The Rule 1.8(f) Conflict

The Motion argued that Venable and Parsons Behle are also violating Rule 1.8(f) because Capana is financing the litigation on behalf of not only itself, but also AmeriMark Group, AmeriMark Automotive, and others. Yet Plaintiffs address Rule 1.8(f) only in a footnote, Opp'n at 9 n.10, and their arguments are conclusory: namely, that Defendants have not identified an "interference." Actually, Defendants have: the wholesale failure of the AmeriMark entities to even investigate the stolen Whitetree shares. The fact that Mr. Heeg will not even investigate the issue shows that Capana, through its counsel, is using the fact that it is paying AmeriMark's bills to interfere with the positions AmeriMark is taking in this lawsuit and the investigative work AmeriMark is willing to do into Rymark's claims.[3]

---

[3] In fact, Capana's takeover of the AmeriMark entities is so complete that when AmeriMark Automotive appeared for its Rule 30(b)(6) deposition in January 2025, it designated Capana's owner – Mr. Bernhardt – as its corporate designee.

### E. Plaintiffs Cannot Show Prejudice, And The Motion Is Not Tactical

Plaintiffs argue that they will suffer "extreme and undue prejudice" if the AmeriMark entities and Mr. Heeg are required to hire separate counsel. But AmeriMark Group only just appeared, and even Plaintiffs concede that a "reasonable remedy" in the presence of a conflict might be for AmeriMark Group and Mr. Heeg "to obtain separate counsel." (Opp'n at 10 n.11.) Defendants sought an extension of fact discovery for the limited purpose of taking discovery from AmeriMark Group (and Miron Leshem), Dkt. 219, and if this extension is granted, it is sensible that AmeriMark Group should have separate counsel during this extended discovery period. And it is also sensible that AmeriMark Automotive and AmeriMark Group should share the same counsel.

Plaintiffs also characterize the Motion as an "untimely and transparent stunt to avoid trial based on patently false statements," or a "transparent attempt to harass Plaintiffs and delay trial." (Opp'n at 1.) Actually, the Motion stems from Rymark's inability to ever obtain an explanation for why Plaintiffs' document production includes obviously doctored documents. And Rymark does not seek to avoid a timely trial of its claims; on the contrary, Mr. Markosian is eager to get back to the business of running his car dealership.

### F. The Motion Is Timely

Finally, Defendants did not waive their right to seek disqualification through undue delay. Defendants could not have moved to disqualify counsel for AmeriMark Group any earlier; they filed the Motion the same day that AmeriMark Group answered. So Plaintiffs instead argue that Defendants should have moved to disqualify counsel for AmeriMark *Automotive* when the Complaint was filed in July 2023. This is wrong for two reasons.

9

*First*, the Complaint did not clearly put control of AmeriMark Group – let alone AmeriMark Automotive – at issue. Instead, Capana was coy about where its (supposed) ownership interest in AmeriMark Group had come from, saying that an entity called "White Tree" had "demanded a significant stock grant" in AmeriMark Group (Capana did not say from whom, give a specific date for the transaction, or say how much "White Tree" paid), and that shares from "White Tree" eventually made their way to Capana. (Dkt. 16 ¶¶ 52, 62, 78.) It was not until discovery commenced that Defendants discovered Whitetree's stake in AmeriMark Group had been stolen. And it was not until the Court granted Rymark's motion for leave to amend in September 2024 that Rymark's claims for theft of the 13,000,000 became genuinely live. Plaintiffs complain – again – that Rymark waited too long to name AmeriMark Group. (Opp'n at 3.) But the Court already heard, and already rejected, these arguments when it granted Rymark's motion for leave to amend. (Dkt. 137 at 11 ("The Court finds Defendants did not unduly delay in bringing the Motion to Amend.").)

*Second*, after raising the doctored Whitetree documents, Rymark and its lawyers believed that Plaintiffs would investigate the documents and provide some sort of explanation. Motions to disqualify are serious business, and Rymark can hardly be blamed for not filing one the moment it discovered that Whitetree's stake was, apparently, stolen. Yet it did not become clear that AmeriMark did not intend to investigate the doctored forms until November 2024, when Martin Fasser Heeg was, to Defendants' genuine surprise, entirely dismissive of the idea:

10

```
10      Q.   Have you investigated this at all --
11      A.   No.
12      Q.   -- these different forms?  No?
13      A.   No.
14      Q.   Has anyone asked you to?
15      A.   No.
16      Q.   Why haven't you investigated them?
17      A.   Why should I?
```

(Dkt. 211-5 (Heeg Deposition Transcript) at 113:10–17.) And the Motion followed less than six weeks later. So Plaintiffs' accusations of delay are unwarranted.

### III. CONCLUSION

The Motion should be granted.

DATED: January 30, 2025

**KUNZLER BEAN & ADAMSON, PC**

/s/ *Chad S. Pehrson*
Chad S. Pehrson
Robert P. Harrington
Stephen Richards

*Attorney for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of January, 2025, I filed the foregoing **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISQUALIFY COUNSEL** via the Court's CM/ECF system, which provided notice of such filing to all counsel of record.

*/s/Chad S. Pehrson*