Christopher M. Von Maack (10468)
  vonmaack@mvmlegal.com
**MCNEILL | VON MAACK**
236 South 300 East
Salt Lake City, Utah 84111
Telephone: 801.823.6464

Andrew B. Peretz (*pro hac vice*)
  aperetz@peretzlapa.com
**LAW OFFICES OF ANDREW B. PERETZ P.A.**
One East Broward Boulevard, Suite 700
Fort Lauderdale, Florida 33301
Telephone: 954.558.8829

Attorneys for Third-Party Defendant Ashley Miron Leshem

---

### IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **CAPANA SWISS ADVISORS AG**, a Swiss corporation; and **AMERIMARK AUTOMOTIVE AG**, a Swiss corporation, | **THIRD-PARTY DEFENDANT ASHLEY MIRON LESHEM'S MOTION TO DISMISS** |
| Plaintiffs, | |
| v. | |
| **RYMARK, INC.**, a Utah corporation; **NICHOLAS THAYNE MARKOSIAN**, an individual; **JOHN KIRKLAND**, an individual; and **VICKY SMALL**, an individual, | |
| Defendants. | |
| **RYMARK, INC.**, a Utah corporation; and **NICHOLAS THAYNE MARKOSIAN**, an individual, | |
| Counterclaim Plaintiffs, | |
| v. | |
| **CAPANA SWISS ADVISORS AG**, a Swiss corporation; and **AMERIMARK AUTOMOTIVE AG**, a Swiss corporation. | **Case No. 2:23-cv-00467-TS-CMR** |
| Counterclaim Defendants. | **District Judge Ted Stewart** |
| | **Magistrate Judge Cecilia M. Romero** |

**RYMARK, INC., a Utah corporation; and NICHOLAS THAYNE MARKOSIAN, an individual,**

      **Third-Party Plaintiffs,**

**v.**

**SHAEN BERNHARDT, an individual; ASHLEY MIRON LESHEM, an individual; DAVID HESTERMAN, an individual; NICOLAI COLSHORN, an individual; STEFAN KAMMERLANDER, an individual; ALEXANDER COENEN, an individual; MARTIN FASSER HEEG, an individual; AMERIMARK GROUP AG, a Swiss corporation; and PHILOMAXCAP AG, a German corporation,**

      **Third-Party Defendants.**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. 5

RELIEF REQUESTED AND GROUNDS THEREFOR ................................................ 7

INTRODUCTION ............................................................................................. 7

RELEVANT FACTS ......................................................................................... 10

Personal Jurisdiction ...................................................................................... 10

The Listing Agreement ................................................................................... 15

The Subject Shares ........................................................................................ 16

The TPC ....................................................................................................... 16

STANDARDS ................................................................................................ 17

I.      PERSONAL JURISDICTION ..................................................................... 17

II.     INSUFFICIENT SERVICE OF PROCESS ..................................................... 17

III.    FAILURE TO STATE A CLAIM ................................................................. 18

ARGUMENT .................................................................................................. 19

I.      THIS COURT LACKS PERSONAL JURISDICTION OVER LESHEM. ................... 19

        A.      Leshem Does Not Have the Requisite Minimum Contacts with Utah. ......... 19

        B.      Exercising Personal Jurisdiction Over Leshem Would Violate Due
                Process. ........................................................................................ 25

II.     THIRD-PARTY PLAINTIFFS FAILED TO STATE A CLAIM AGAINST
        LESHEM UPON WHICH RELIEF CAN BE GRANTED. ................................... 26

        A.      Third-Party Plaintiffs' Claims Agaisnst Leshem Are Barred by The
                Economic Loss Rule. ....................................................................... 26

        B.      Third Party Plaintiffs' Failed to Plead an Essential Element of Civil
                Conspiracy. ................................................................................... 29

        C.      Third-Party Plaintiffs' Fraudulent Inducement Claim Fails for Lack of
                Requisite Particularity. .................................................................... 30

D.    The Civil Theft Statute Does Not Apply Here........................................................ 30

E.    Third-Party Plaintiffs Failed to Plead an Essential Element of their Conversion Claim. ................................................................................................ 31

III.    THIRD-PARTY PLAINTIFFS DID NOT PROVIDE LESHEM WITH SUFFICIENT SERVICE OF PROCESS. ................................................................ 32

CONCLUSION................................................................................................................ 33

WORD COUNT CERTIFICATION .............................................................................. 34

CERTIFICATE OF SERVICE ....................................................................................... 35

# TABLE OF AUTHORITIES

**Cases**

*All Am. Sec. Corp. v. Borealis Mining Co., LLC*, No. 2:15-CV-00582, 2015 WL 9581761 (D. Utah Dec. 30, 2015)............................................................................................................ 24

*Am. Express Travel RelatedServs. Co. v. Sevier Cnty. Bank*, No. 2:10-CV-841-TS, 2011 WL 673912 (D. Utah Feb. 17, 2011) ................................................................................... 17

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................... 18, 19

*Behagen v. Amateur Basketball Ass'n of the United States*, 744 F.2d 731 (10th Cir.1984)......... 17

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................... 18

*Bigpayout, LLC v. Mantex Enterprises, Ltd.*, 2014 WL 5149301 (D. Utah Oct. 14, 2014) ......... 27

*Butterfield v. Intermountain Homecare & Hospice*, No. 2:22-CV-00768-DBB-JCB, 2024 WL 3541372 (D. Utah June 27, 2024)...................................................................... 17

*CE Providers v. Stearns Bank*, No. 2:18-CV-100 TS, 2018 WL 3448335 (D. Utah July 17, 2018) ....................................................................................................................... 26, 27

*ClearOne Commc'ns, Inc. v. Bowers*, 643 F.3d 735 (10th Cir. 2011).................................... 17

*Clifford v. Dewbury Homes*, No. 2:18-cv-00522-RJS-EJF, 2018 WL 11584099 (D. Utah Oct. 1, 2018) ................................................................................................................... 32

*Combs v. SafeMoon LLC*, No. 2:22-cv-00642-DBB-JCB, 2024 WL 1347409 (D. Utah Mar. 29, 2024)...................................................................................................................... 31

*Donner v. Nicklaus*, 778 F.3d 857 (10th Cir. 2015) ...................................................... 27

*Far W. Cap., Inc. v. Towne*, 828 F. Supp. 909 (D. Utah 1993) ....................................... 24

*Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991) ......................................................... 32

*Israel Pagan Estate v. Cannon*, 746 P.2d 785 (Utah Ct. App. 1987).................................. 29

*Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210 (10th Cir. 2011) ............................... 18

*Khalik v. United Air Lines*, 671 F.3d 1188 (10th Cir. 2012) .......................................... 18

*KTM Health Care Inc. v. SG Nursing Home LLC*, 2018 UT App 152, 436 P.3d 151................. 29

*Labertew v. WinRed, Inc.*, No. 2:21-CV-555-TC, 2022 WL 1568924 (D. Utah May 18, 2022) 30, 31

*Mayfield v. Bethards*, 826 F.3d 1252 (10th Cir. 2016)................................................... 18

*Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895 (10th Cir. 2017)................. 17, 19, 20

*OMI Holdings v. Royal Ins. Co. of Can.*, 149 F.3d 1086 (10th Cir. 1998)............................. 26

*REI Holdings, LLC v. LienClear - 0001, LLC*, No. 2:17-CV-00564, 2019 WL 498356 (D. Utah Feb. 8, 2019) .......................................................................................................... 22

*Shipp v Int'l. Auto Group of South Florida, Inc.* No. 2:16-CV-24 TS, 2016 WL 3951079, (D. Utah July 20, 2016)................................................................................................ 23, 26

*Vega v. Hastens Beds, Inc.*, 339 F.R.D. 210 (S.D.N.Y. 2021) ......................................... 18

*Walden v. Fiore*, 571 U.S. 277 (2014)....................................................... 17, 20, 22, 23

*Zero Down Supply Chain Sols., Inc. v. Glob. Transp. Sols., Inc.*, No. 2:07-CV-400-TC, 2008 WL 4642975 (D. Utah Oct. 17, 2008) ............................................................... 29, 30

*Zurich Am. Ins. Co. v. Ascent Constr., Inc.*, 2022 WL 36878 (D. Utah Jan. 3, 2022)................. 27

**Statutes**

UTAH CODE ANN. § 76-6-408 ................................................................................... 31

5

**Rules**

DUCivR 7-1 .................................................................................................................. 7, 34

Fed. R. Civ. P. 4 ............................................................................................................... 32

Fed. R. Civ. P. 10 ............................................................................................................. 32

Fed. R. Civ. P. 12 ....................................................................................................... passim

Pursuant to Rule 12(b)(2), (5), and (6) of the Federal Rules of Civil Procedure and DUCivR 7-1, Third-Party Defendant Ashley Miron Leshem ("Leshem"), by and through his counsel of record, respectfully submits Third-Party Defendant Ashely Miron Leshem's Motion to Dismiss. *See* Fed. R. Civ. P. 12(b)(2), (5), (6); DUCivR 7-1.

## RELIEF REQUESTED AND GROUNDS THEREFOR

Leshem respectfully requests that the Court grant this motion and dismiss the claims asserted against him by Third-Party Plaintiffs Rymark, Inc. ("Rymark") and Nicholas Thayne Markosian ("Markosian") (collectively, "Third-Party Plaintiffs").

The grounds for the requested relief are that (1) this Court lacks personal jurisdiction over Leshem; (2) Third-Party Defendants provided Leshem with insufficient process; and (3) the Third-Party Complaint (Dkt. 139) (the "TPC") fails to state a claim upon which relief can be granted because: (a) Third-Party Plaintiffs' claims are barred by operation of the economic loss rule, (b) Third-Party Plaintiffs failed to plead an essential element of their statutory stolen property claim, (c) Third Party Plaintiffs failed to plead an essential element of their conversion claim, (d) Third-Party Plaintiffs failed to plead their fraudulent inducement claim with particularity, and (e) Third-Party Plaintiffs failed to plead their civil conspiracy claim, which sounds in fraud, with particularity.

## INTRODUCTION

In or about April 2016, Third-Party Plaintiffs, both residents of Utah, were seeking to raise capital for Rymark. They, therefore, contacted Leshem, a long-time Florida resident, experienced financial consultant and advisor, and the sole owner, officer, and employee of Ananda Capital Partners, Inc, a Florida corporation ("Ananda"). Rymark, on the one hand, and Ananda, on the

other hand, entered into a contract styled "Listing Agreement" that set forth the terms of the business relationship and the advisory and financial services Leshem would provide to Rymark. Critically, the Listing Agreement provided that any disputes arising from that contract would be governed by Florida law, and the parties agreed and consented to the jurisdiction and venue of the courts of Florida for any such dispute.

A dispute has arisen between the parties. But rather than suing Ananda in Florida, Third-Party Plaintiffs sued Leshem here, in Utah, alleging that Leshem was part of an elaborate international "pump-and-dump" stock scheme with the very parties that initiated this action against Third-Party Plaintiffs and others. While Leshem denies wrongdoing, several threshold issues preclude Third-Party Plaintiffs from pursuing their claims against Leshem by way of this action.

First, Leshem is not subject to personal jurisdiction in Utah. Leshem is a Florida resident, without ties to Utah. Ananda's consulting and advisory services were focused on getting Rymark through a Swiss holding company listed on a European exchange as expressly contemplated by the Listing Agreement. Ananda/Leshem's services utilized numerous European-based professionals, including listing sponsors, capital market coaches, auditors, and attorneys to apply for and obtain the desired listing on a foreign exchange. Indeed, the TPC makes clear that the subject conduct related to and was directed at Europe and European actors. [*See, e.g.*, TPC ¶¶ 161, 182 (Dkt. 139).] Aside from the conclusory allegation that Leshem purposely directed his conduct to Utah, [*see id.* ¶ 38 (Dkt. 139)], Third-Party Plaintiffs' allegations and the concurrently filed Declaration of Ashely Miron Leshem ("Leshem Decl.") make clear that Ananda/Leshem's services were directed, if at all, towards Europe. The motion should be granted on this point alone.

Moreover, the only link between Leshem and this forum is Third-Party Plaintiffs' domiciliary in Utah.  The United States Supreme Court, the Utah Supreme Court, and Tenth Circuit have all held that, in adjudicating personal jurisdiction cases where fraudulent conduct is alleged, the mere economic injury or impact to the forum defendant is insufficient to establish the requisite minimum contacts.  That is, the in-state plaintiff must allege and demonstrate that the out-of-state defendant's contacts with the forum are sufficient *on their own* to create the requisite jurisdictional link.  Under the facts of this case, the Third-Party Plaintiffs do not even allege, much less demonstrate that, exercising personal jurisdiction over Leshem arises from his contacts with Utah. Even if Third Party Plaintiffs can overcome their burden to demonstrate that Leshem has sufficient minimum contacts with Utah (which he does not), hailing Leshem into this Utah court would not satisfy any of the applicable Fourteenth Amendment due process protections afforded Leshem, which are underscored by fair play and substantial justice.

Second, Third-Party Plaintiffs did not provide Leshem sufficient service of process, as the TPC was served upon Leshem without any of the numerous exhibits referenced therein.

Third, the TPC fails to state claims upon which relief can be granted.  Each of Third-Party Plaintiffs' claims against Leshem are barred by operation of the economic loss rule.  Moreover, Third-Party Plaintiffs failed to plead essential elements of their statutory stolen property and conversion claims.  Finally, Third-Party Plaintiffs failed to plead their fraud-based claims with the required particularity.  Accordingly, the Court should dismiss the claims asserted against Leshem.

# RELEVANT FACTS

## Personal Jurisdiction

1.      Leshem is not a resident of Utah and has never lived in Utah.  [*See* Leshem Decl. ¶ 15.]

2.      At all relevant times and since late 1994, Leshem has been a full-time resident of Florida and, specifically, Boca Raton, Florida.  [*See id.* ¶ 2.]

3.      Leshem is not, and never has been, an employee, officer, director, member, or shareholder of a Utah entity.  [*See id.* ¶ 16.]

4.      Leshem does not own or lease, and has never owned or leased, real property in Utah.  [*See id.* ¶ 17.]

5.      Leshem does not own or lease, and has never owned or leased, personal property in Utah.  [*See id.* ¶ 18.]

6.      Leshem does not have any legal or beneficial ownership of any bank or other financial accounts in Utah.  [*See id.* ¶ 19.]

7.      Leshem does not market or advertise, and has never marketed or advertised, his services in Utah.  [*See id.* ¶ 20.]

8.      Leshem does not solicit, and has never solicited, business in Utah.  [*See id.* ¶ 21.]

9.      Aside from this lawsuit, Leshem has never been a party to a lawsuit in Utah.  [*See id.* ¶ 22.]

10.       After he moved to Florida in 1994, Leshem founded Ananda in about 1999, which was authorized and registered to do business in Florida.  [*See id.* ¶ 6.]

11.    Leshem was the sole founder, shareholder, officer, director, and employee of Ananda.  [*See id.* ¶ 7.]

12.    It was solely through Ananda and from his Florida-based office, that Leshem provided consulting and advisory services on behalf of Ananda.  [*See id.* ¶ 8.]

13.    Subsequent to Ananda's dissolution in September of 2018, Grantchester Equity, Inc., a Delaware corporation ("Grantchester"), became the successor corporation to Ananda. [*See id.* ¶ 9.]

14.    Leshem is the sole founder, shareholder, officer, director, and employee of Grantchester.  [*See id.* ¶ 10.]

15.    It is solely through Grantchester and from his Florida-based office, that Leshem provides consulting and advisory services on behalf of Grantchester.  [*See id.* ¶ 11.]

16.    It was solely through Ananda, and later Grantchester, and solely from his Florida-based office, that Leshem provided consulting and advisory services pursuant to the Listing Agreement.  [*See id.* ¶ 14.]

17.    With respect to his consulting and advisory services related to this lawsuit, Leshem did not solicit Markosian or anyone at Rymark.  Rather, it was Markosian (the owner of Rymark at the time) who approached Leshem to discuss whether Rymark (which Markosian represented was seeking to raise capital) was a suitable or eligible candidate to be admitted to trading on a foreign exchange.  Leshem responded to Markosian that any admission to a foreign exchange could only be done through the medium of a foreign holding company.  At the time, Leshem suggested that a Swiss domiciled company would be the optimal vehicle to have shares admitted to a foreign exchange.  [*See id.* ¶ 23.]

18.    Subsequently, Markosian and David Hesterman ("Hesterman") travelled to Florida in early 2016 to meet with Leshem in Fort Lauderdale.  That was Leshem's only physical meeting with Markosian or anyone else at Rymark.  All other communications with Rymark in connection with Ananda/Grantchester's services, were through email or telephone calls from Leshem's Florida office.  There were no in-person meetings in Utah.  [*See id.* ¶ 24.]

19.    After discussing with Rymark the benefits, requirements, and process of a foreign-based exchange listing, Rymark retained Ananda and executed the Listing Agreement. [*See id.* ¶ 25.]

20.    Leshem performed each of his services related to Rymark as an employee of Ananada or Grantchester.  [*See id.* ¶ 26.]

21.    Pursuant to the Listing Agreement, Leshem used his best efforts to get the shares of the Swiss holding entities admitted for trading on a foreign exchange, namely, the Marché Libre (a multilateral trading facility that is part of the Euronext network of securities exchanges) and, later, the Malta and Vienna Stock exchanges.  [*See id.* ¶ 27.]

22.    At no time did Leshem's services with respect to Rymark include any attempt to list Rymark or any other entity on any U.S.-based exchange or trading platform. [*See id.* ¶ 28.]

23.    Leshem's very first action subsequent to the execution of the Listing Agreement was to introduce Rymark to Swiss counsel, Gysi & Partners located in St. Gallen, Switzerland. Rymark directly retained that Swiss law firm and contributed 100% of its shares in-kind to capitalize the new Swiss entity, AmeriMark Automotive AG, whose formation was formally registered in the Swiss commercial registry on June 6, 2016.  [*See id.* ¶ 29.]

24.    All documents pertinent to the formation of AmeriMark Automative and the subject contribution in-kind were executed by lawyers domiciled in Switzerland, having a power of attorney to do so in Switzerland on behalf of Rymark.  Each of those documents were executed in Switzerland and provided they would be governed under the sole and exclusive jurisdiction, and under the laws, of Switzerland.  Markosian first appointed lawyers at Gysi & Partners in Switzerland via power of attorney agreements between Markosian and such foreign lawyers in 2016 (to effectuate the formation of AmeriMark Automotive and the contribution in-kind of 100% Rymark shares to AmeriMark Automotive) and then again in in 2018 (to effectuate the contribution of AmeriMark Automotive shares to AmeriMark Group to capitalize a second class of shares of the Swiss entity that came to be re-named AmeriMark Group AG).  [*See id.* ¶ 30.]

25.    Execution of the transactions creating the Swiss entity AmeriMark Automotive AG, which came to hold 100% of Rymark, was effectuated by Swiss legal counsel physically located in Switzerland and performed and governed under Swiss law.  [*See id.* ¶ 31]

26.    Execution of the transactions creating the Swiss entity AmeriMark Group AG which came to hold 100% of AmeriMark Automotive was effectuated by Swiss legal counsel retained by Rymark and Markosian, which counsel was physically located in Switzerland and performed their legal services under Swiss law.  [*See id.* ¶ 32.]

27.    As such, the documents forming the foreign entities AmeriMark Automotive and AmeriMark Group were executed in Switzerland and not in Utah, or the United States for that matter, and Leshem's role, from his office in Florida, was only as an advisor and consultant. [*See id.* ¶ 33.]

28.     Since June 6, 2016, Rymark has been a wholly-owned subsidiary of AmeriMark Automotive AG, and this ownership is a matter of public record pursuant to the commercial register in Switzerland, which is the official record of Swiss corporate formation.  [*See id.* ¶ 34.]

29.     As set out above, all of Leshem's consulting and advisory services were "foreign focused" and directed at Europe; they were not directed at Utah.  [*See id.* ¶ 35.]

30.     All of the relevant professional service providers (*e.g.*, listing sponsors, capital market coaches, auditors, and other professional service providers necessary to apply for and obtain listing on a foreign exchange) were based in Europe.  All such service providers were retained by Rymark through its authorized agents.  Those providers' services were contracted for and effectuated under agreements made in Europe and under foreign law.  Rymark (including Markosian) knew and understood at all times the nature of those agreements, approved all such agreements, and approved all of the foreign professionals and other individuals that were retained to effectuate the agreements and other transactions in Europe.  [*See id.* ¶ 36.]

31.     As to payment for the services rendered under the Listing Agreement, Rymark caused monies to be paid to Ananda in Florida. [*See id.* ¶ 37.]

32.     Leshem's communications with Rymark and its representatives were limited to email and telephone calls with Rymark and, specifically, Markosian (Rymark's founder and CEO), Eric Gardner (Rymark's CFO), Vicky Small (Rymark's Controller), and John Kirkland (Rymark's COO).  Other than the initial meeting between Leshem, Hesterman, and Markosian in Fort Lauderdale, Florida, no other meetings ever took place between Leshem, on the one hand, and Rymark, or anyone at Rymark, on the other hand, and no such meetings occurred in Utah. [*See id.* ¶ 38.]

33.     The parties named as so-called co-conspirators in the TPC were a completely unaffiliated, disparate group of professional service advisors, most of whom likely had never heard of each other prior to their engagement by Rymark, and each of whom were engaged at different times over a four-and-a-half-year period to provide one or more different tasks in an international effort to have the shares of  the Swiss holding companies admitted for trading on a foreign exchange.  [*See id.* ¶ 40.]

34.     At the end of the day, Ananda/Grantchester was successful in causing AmeriMark Group AG, the Swiss holding entity, to have its shares admitted for trading on the Vienna Direct Multi-Lateral Trading Facility, a segment of the Austrian based Vienna Stock Exchange—a foreign exchange—on August 22, 2019.  [*See id.* ¶ 41.]

**The Listing Agreement**

35.     On April 1, 2016, Ananda entered into the Listing Agreement with Rymark.  [*See id.* ¶ 12; Listing Agreement, Ex. 1 to Leshem Decl.]

36.      Pursuant to the Listing Agreement, Ananda, and later Grantchester, provided the following services to Rymark:

(a)     Formed Swiss holding entities—AmeriMark Automotive AG in 2016 and AmeriMark Group AG in 2018;

(b)     Completed materials related to the application of those Swiss entities to have their shares admitted to trading on the Marche Libre exchange in Paris, France and other exchanges in Malta and Austria in 2017 through 2019;

(c)     Identified and retained foreign consultants, vendors, and advisors to the Swiss entities, all of whom were based outside the United States; and

(d)     Raised capital outside the United States for the Swiss entities to fund their day-to-day operations in Switzerland.  [*See* Leshem Decl. ¶ 13; Listing Agreement § IV, Ex. 1 to Leshem Decl.]

37.     In the Listing Agreement, Rymark (through its owner and CEO Markosian) and Ananda agreed and consented that if any dispute arose from such Agreement, the parties would file suit in a Florida state court and that Florida law would apply.  [*See id.* ¶ 42; Listing Agreement § VIII(C), Ex. 1 to Leshem Decl.]

### The Subject Shares

38.     At no time did Leshem or any entity he controlled ever own any shares of Rymark, AmeriMark Group, AmeriMark Automotive, or any other party named in the TPC. [*See* Leshem Decl. ¶ 39.]

### The TPC

39.     When Leshem was served with a summons and the TPC in this action, the TPC did not contain any of the numerous exhibits cited in the TPC.  [*See id.* ¶ 43.]

40.     With respect to personal jurisdiction, Third-Party Plaintiffs allege that, "The Court has personal jurisdiction over the Defendants because, as set forth herein, they purposefully availed themselves of the protections of Utah law and purposefully directed tortious conduct toward Utah." [TPC ¶ 38 (Dkt. 139).]

41.     Third-Party Plaintiffs assert four claims against Leshem: (1) civil conspiracy (Third Cause of Action), (2) statutory theft (Fourth Cause of Action), (3) conversion (Fifth Cause of Action), and (4) fraudulent inducement (Sixth Cause of Action).  [*See id.* ¶¶ 158–86 (Dkt. 139).]

16

## STANDARDS

### I.   PERSONAL JURISDICTION

"'The Due Process of the Fourteenth Amendment constrains a State's authority to bind a non-resident defendant to a judgment of its courts.'" *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017) (quoting *Walden v. Fiore*, 571 U.S. 277, 283 (2014)). "The law of the forum state and constitutional due process limitations govern personal jurisdiction in federal court." *Id.* Because Utah's long arm statute "'authorizes jurisdiction to the full extent of the federal constitution,'" *ClearOne Commc'ns, Inc. v. Bowers*, 643 F.3d 735, 763 (10th Cir. 2011) (citation omitted), the personal jurisdiction analysis in this case is "a single due process inquiry." *Old Republic*, 877 F.3d at 903. "'Due process requires both that the defendant 'purposefully established minimum contacts within the forum State' and that the 'assertion of personal jurisdiction would comport with fair play and substantial justice.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476) (additional quotations and citations omitted).

"In resolving challenges to this Court's personal jurisdiction, '[t]he plaintiff bears the burden of establishing personal jurisdiction over the defendant.'" *Am. Express Travel RelatedServs. Co. v. Sevier Cnty. Bank*, No. 2:10-CV-841-TS, 2011 WL 673912, at *3 (D. Utah Feb. 17, 2011) (unpublished) (alteration in original) (quoting *Behagen v. Amateur Basketball Ass'n of the United States*, 744 F.2d 731, 733 (10th Cir.1984)).

### II.   INSUFFICIENT SERVICE OF PROCESS

"Rule 12(b)(5) permits a defendant to move to dismiss a plaintiff's complaint based upon 'insufficient service of process.'" *Butterfield v. Intermountain Homecare & Hospice*, No. 2:22-CV-00768-DBB-JCB, 2024 WL 3541372, at *2 (D. Utah June 27, 2024) (unpublished)

(recommending dismissal of complaint), *report and recommendation adopted*, No. 2:22-CV-00768-DBB-JCB, 2024 WL 3540886 (D. Utah July 25, 2024) (unpublished). "When a defendant moves for dismissal for inadequate service of process pursuant to Rule 12(b)(5), the plaintiff bears the burden of establishing that service was sufficient." *Vega v. Hastens Beds, Inc.*, 339 F.R.D. 210, 215 (S.D.N.Y. 2021).

## III.    FAILURE TO STATE A CLAIM

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, a complaint must allege facts, accepted as true and interpreted in the light most favorable to the plaintiff, to state a claim to relief that is plausible on its face. *See Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016).  A plausible claim is one that allows the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In assessing a claim's plausibility, legal conclusions contained in the complaint are not entitled to the assumption of truth. *See Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).  Thus, mere "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" will not suffice, and in examining a complaint under Rule 12(b)(6), this Court should "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do," nor "does a complaint suffice if it tenders naked assertion[s] devoid of further factual

enhancement." *Iqbal*, 556 U.S. at 678 (alteration in original) (internal quotations and citations omitted).

## ARGUMENT

### I.    THIS COURT LACKS PERSONAL JURISDICTION OVER LESHEM.

Leshem should be dismissed from this action because this Court lacks personal jurisdiction over him. *See* Fed. R. Civ. P. 12(b)(2). Third-Party Plaintiffs seek to hail Florida resident Leshem into this Court based solely on the bare-bones allegation that he availed himself "of the protections of Utah law and purposely directed tortious conduct toward Utah." [TPC ¶ 38 (Dkt. 139).] In doing so, Third-Party Plaintiffs impliedly admit that (a) this Court does not have general jurisdiction over Leshem and (b) any personal jurisdiction over Leshem would be specific jurisdiction and based on the alleged harmful effects of Leshem's conduct.

"Specific jurisdiction calls for a two-step inquiry: (a) whether the plaintiff has shown that the defendant has minimum contacts with the forum state; and, if so, (b) whether the defendant has presented a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Old Republic*, 877 F.3d at 904 (additional quotations and citations omitted). Here, Leshem lacks the requisite minimum contacts with Utah and other considerations would render the exercise of personal jurisdiction unreasonable.

### A.    Leshem Does Not Have the Requisite Minimum Contacts with Utah.

"The minimum contacts test for specific jurisdiction encompasses two distinct requirements: (i) that the defendant must have purposefully directed its activities at residents of the forum state, and (ii) that the plaintiff's injuries must arise out of the defendant's forum-related activities." *Id.* (citations and quotations omitted).

Third-Party Plaintiffs allege that Leshem engaged in tortious conduct, including common law actions for civil conspiracy, fraudulent inducement, conversion and a state a statutory claim of civil theft. [*See* TPC ¶¶ 158–86 (Dkt. 139).] In the context of such intentional torts, courts adjudicating questions of personal jurisdiction apply the "effects" test, which has "three elements: "(a) an intentional action ... , that was (b) expressly aimed at the forum state ... , with (c) knowledge that the brunt of the injury would be felt in the forum state." *Id*. at 907 (additional quotations and citations omitted).

As a threshold matter, Third-Party Plaintiffs have only alleged elements numbers one and two and have failed to make any allegation under the third element. On this point alone, this Court should grant this motion.

However, even had Third-Party Plaintiffs alleged that they were harmed in Utah by the alleged tortious conduct this motion should still be granted. As stated by the Supreme Court, "mere injury to a forum resident is not a sufficient connection to the forum" to establish personal jurisdiction. *Walden*, 571 U.S. at 290. Thus, even had Third-Party Plaintiffs alleged that they had suffered economic injury, suffering of alleged financial or economic injury is not sufficient to establish that the Court has personal jurisdiction over Leshem.

To satisfy minimum contacts, "the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State … not the defendant's contacts with persons who reside there." *Id*. at 284–85. "[T]he plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id*. at 285. The "plaintiff's contacts with the defendant and forum [cannot] drive the jurisdictional analysis." *Id*. at 289. "The proper

question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* at 290 (emphasis added).

"[T]he 'minimum contacts' inquiry principally protects the liberty of the nonresident defendant, not the interests of the plaintiff." *Id.* at 290 n.9. "[I]t is the defendant, not the plaintiff or third parties, who must create contacts with the forum State." *Id.* at 291.

Applying these legal principles to the facts of the instant case should result in this motion being granted. As demonstrated through the Leshem Declaration, all of Leshem's actions and services were performed in, arose from and were connected to his office in Florida—none of his services arose from his contacts with Utah, and he did not utilize any resources located in Utah in performing his services. [*See* Leshem Decl. ¶¶ 11, 14, 16–21, 23–24, 26, 28, 33, 35–36, 38.] Rather, all of Leshem's services (which were expressly set out in the Listing Agreement) were focused on obtaining for the benefit of Third-Party Plaintiffs a listing on a foreign exchange and central to obtaining such a listing was Third Party Plaintiffs' retention and use of professional service providers. [*See id.* ¶ 36.] These service providers were all based in Europe. [*See id.*]

What's more, each of the services of these European service providers was contracted for and effectuated under agreements made in Europe and governed under foreign law. [*See id.* ¶¶ 29–32, 36.] In that regard, and at all times, Third-Party Plaintiffs knew and understood the nature of all these agreements, approved all such agreements, and approved all of the foreign service professionals that were retained to effectuate the agreements and related transactions in Europe. [*See id.* ¶ 36.] It is the foreign "loci" of all these transactions, agreements, and professionals that connected Leshem, if at all, to Europe and, critically, not to Utah whatsoever. Leshem, simply, did not purposely avail himself of the protections of Utah. In fact, Leshem never travelled to Utah

to consummate the Listing Agreement or any of the services he provided to Third-Party Plaintiffs. [*See id.* ¶ 24.] Thus, Leshem was not connected to Utah in any "meaningful" or "substantial manner," *Walden*, 570 U.S. at 290, and Defendant clearly did not direct or aim any of his conduct—tortious or otherwise—to Utah. Concomitantly, none of Leshem's alleged tortious conduct arose from his contacts with Utah, and Third-Party Plaintiffs fail to make any such allegation on this key point. This fact is fatal to Third-Party Plaintiffs' attempt to hail Leshem into this Utah court. *See id.* at 284 (holding that the defendant's suit-related conduct must create a "substantial connection" with the forum State and the alleged relationship "must arise" from the Utah contacts that Defendant himself creates).

The only fact that connects Leshem to Utah is that Third-Party Plaintiffs are Utah residents. This is insufficient. As stated by the Court in *Walden*, the focus must be on the *defendant's* contacts with the forum, not with the Utah residents attempting to hail the defendant into the State. *Id.* at 284–85.

What's left is whether the phone calls and or emails between Leshem and Third-Party Plaintiffs are sufficient to invoke this Court's personal jurisdiction. It is noteworthy that Plaintiffs fail to support their claim of personal jurisdiction on any such communications. In an abundance of caution, however, Leshem submits that any such communications are insufficient to establish the requisite substantial and meaningful grounds to establish personal jurisdiction. *See REI Holdings, LLC v. LienClear - 0001, LLC*, No. 2:17-CV-00564, 2019 WL 498356, at *8 (D. Utah Feb. 8, 2019) (unpublished) (granting defendants' motion to dismiss and finding that defendant's "phone calls and emails" directed to the Utah plaintiff failed to establish personal jurisdiction over the out-of-state defendants in Utah).

Under facts substantially similar to the instant case, this Court in *Shipp v Int'l. Auto Group of South Florida, Inc.* granted the plaintiff's motion to dismiss for lack of personal jurisdiction. No. 2:16-CV-24 TS, 2016 WL 3951079, (D. Utah July 20, 2016) (unpublished).  In *Shipp,* the Utah plaintiff "reached out to" the Florida defendants to purchase a collectible automobile.  *Id.* at *1.  When the plaintiff discovered that the condition of the subject vehicle was not as represented by the defendants, he sued, alleging that (a) the defendants—in their email and telephonic communications—had fraudulently misrepresented the condition of the car, *see id.* at *1, and (b) such tortious conduct aimed at Utah was sufficient for this Court to invoke personal jurisdiction. *See id.* at *8.  In granting the defendants' motion to dismiss for lack of personal jurisdiction, this Court found that the plaintiff "mistakenly placed[d] weight on the relationship and contact between Plaintiff and Defendant instead of Defendants' contacts with the forum." *Id.* at *3.  Citing *Walden*, this Court noted that, "actions directed at a resident rather than the forum State, do not constitute sufficient grounds for the forum State to exercise jurisdiction over non-resident defendants.  *Id.* Additionally, this Court found further support its ruling on the parties' forum selection/choice of law clause contained in their Retail Order contract, which made clear that the parties intended that Florida law would apply and would hear any disputes arising from the private party contract.  *See id.* at *4.  As such, this Court concluded that, "Defendants did not express or act in a way to show a desire to benefit or be protected by Utah law, thus not satisfying the purposeful direction requirement for minimum contacts."  *Id.*

Here, just as in *Shipp*, Third-Party Defendants reached out to Leshem, all of the communications between Leshem and Rymark were limited to emails and telephone calls, and the parties' agreement contained a Florida form selection/choice of law clause.  [*See* Leshem Decl. ¶

42; Listing Agreement § VIII(C), Ex. 1 to Leshem Decl.]  As it did in *Shipp*, this Court should grant the motion to dismiss for lack of personal jurisdiction.

The bottom line is that Third-Party Plaintiffs seek to hail Leshem into Utah simply on the grounds that Third-Party Plaintiffs reside in Utah and suffered harm in Utah.  That is insufficient for Utah to have personal jurisdiction over Leshem.  *See Far W. Cap., Inc. v. Towne*, 828 F. Supp. 909, 915 (D. Utah 1993) (granting motion to dismiss for lack of personal jurisdiction where underlying transaction was governed by Nevada law, was to be performed in Nevada utilizing Nevada resources, and defendant's alleged wrongful conduct had no connection to Utah beyond the plaintiff's corporate domicile), *aff'd*, 46 F.3d 1071 (10th Cir. 1995); *All Am. Sec. Corp. v. Borealis Mining Co., LLC*, No. 2:15-CV-00582, 2015 WL 9581761, at *4 (D. Utah Dec. 30, 2015) (unpublished) (granting defendant's motion to dismiss for lack of personal jurisdiction and stating that, [j]ust like *Far West Capital*, there is no evidence to suggest Borealis's alleged wrongful conduct had any connection to Utah beyond All American's corporate domicile.  The contracts between Borealis and All American are likely governed by Nevada law, the contracts utilized Nevada resources, and the contracts were performed exclusively in Nevada." (internal footnote omitted)).

In the instant case: (A) All of Leshem's consulting services were performed in and from Florida, never from Utah or using any of Utah's resources; (B) Leshem's services related to (i) getting the necessary Swiss entity (AmeriMark Automotive AG) created by and for the benefit of Rymark and listed on a European exchange and (ii) causing Plaintiffs (through the Swiss entity) to utilize numerous service professionals that were all located and based in Europe; and (C) The Listing Agreement between the parties was governed by Florida law (not Utah law), and the parties

agreed and consented that any suits arising from such agreement were to be initiated in a Florida court.

The fact that the parties agreed in the Listing Agreement that Florida law and venue would apply further demonstrates that Utah was neither the intended nor the actual focal point of the relationship and that Leshem did not avail himself of the protection of Utah, contrary to the conclusory allegation by Third-Party Plaintiffs. Moreover, as shown above, and in the Leshem Declaration, Leshem simply did not have any physical contacts with Utah either directly or through an agent. Critically, none of Leshem's contacts or course of conduct occurred within Utah and clearly none of the alleged tortious acts arose from such contacts. Because Third-Party Plaintiffs cannot rely on any alleged impact or harm that occurred in Utah from Leshem's conduct outside of Utah, Leshem does not have sufficient "minimum contacts" to be hailed into a Utah court. The only link between the lawsuit and Utah is that Third-Party Plaintiffs are Utah residents. As discussed above, such a link is insufficient link for personal jurisdiction purposes.

### B.    Exercising Personal Jurisdiction Over Leshem Would Violate Due Process.

Because Third-Party Plaintiffs have failed to satisfy the grounds for this Court to exercise personal jurisdiction over him, Leshem need not demonstrate that such exercise would violate Defendant's due process protections guaranteed under the Fourteenth Amendment. However, in an abundance of caution, Leshem submits that hailing him into this Court would be improper on due process grounds as well.

In determining whether the exercise of jurisdiction is so unreasonable as to violate fair play and substantial justice, the Tenth Circuit considers:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving

> convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.

*OMI Holdings v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1095 (10th Cir. 1998).

There would be a significant burden in requiring Leshem to litigate in a forum to which he has no connection. Moreover, given that Leshem is not a Utah resident, the forum state has scant interest in this dispute, and a more efficient resolution would be to dismiss the claims against Leshem and have Third-Party Plaintiffs refile them in Florida. This would also satisfy the interest of interstate comity. Moreover, the Court should not disturb the parties' choice of Florida courts and Florida law to govern their dispute. *See Shipp*, 2016 WL 3951079, at *10. As a result, fair play and substantial justice warrants dismissal from this forum.

## II.    THIRD-PARTY PLAINTIFFS FAILED TO STATE A CLAIM AGAINST LESHEM UPON WHICH RELIEF CAN BE GRANTED.

Each of Third-Party Plaintiffs' four causes of action against Leshem should be dismissed for failure to state a cause of action. *See* Fed. R. Civ. P. 12(b)(6).

### A.    Third-Party Plaintiffs' Claims Agaisnst Leshem Are Barred by The Economic Loss Rule.

Third-Party Plaintiffs' claims against Leshem are barred by operation of the economic loss rule and, thus, fail to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6); *CE Providers v. Stearns Bank*, No. 2:18-CV-100 TS, 2018 WL 3448335, at *4 (D. Utah July 17, 2018) (unpublished) (dismissing plaintiff's claim for breach of fiduciary duty under Rule 12(b)(6) because claim was barred by the economic loss rule).

As reiterated by this Court:

> The economic loss rule is a judicially created doctrine that marks the fundamental boundary between contract law, which protects expectancy interests created through agreement between the parties, and tort law, which protects individuals and their property from physical harm by imposing a duty of reasonable care. The economic loss rule requires that a contract claim provide the remedy for an 'economic loss. Economic losses are those that arise from breach of contract.
>
> ....
>
> The proper focus in an analysis under the economic loss rule is on the source of the duties alleged to have been breached. Thus, our formulation of the economic loss rule is that a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law.

*CE Providers*, 2018 WL 3448335, at *4 (quotations, citations, alterations, and emphasis omitted). The economic loss rule extends to pre-contract misrepresentations, intentional torts, and non-parties to a contract. *See Donner v. Nicklaus*, 778 F.3d 857, 875 n.8 (10th Cir. 2015) ("The Utah Supreme Court has never recognized an exception for pre-contract misrepresentations."); *Zurich Am. Ins. Co. v. Ascent Constr., Inc.*, 2022 WL 36878, at *5 (D. Utah Jan. 3, 2022) (unpublished) (reiterating "that Utah's common law does not recognize an exception to the economic loss rule for intentional torts" (footnote omitted)); *Bigpayout, LLC v. Mantex Enterprises, Ltd.*, 2014 WL 5149301, at *6 n.81 (D. Utah Oct. 14, 2014) (unpublished) ("Plaintiffs briefly argued that the economic loss rule does not extend to non-parties to a contract. This is not so.").

In this action, Third-Party Plaintiffs assert the following four claims against Leshem: (1) civil conspiracy (Third Cause of Action), (2) receiving/retaining/withholding/disposing of stolen property (Fourth Cause of Action), (3) conversion (Fifth Cause of Action), and (4) fraudulent inducement (Sixth Cause of Action). [*See* TPC at ¶¶ 158–86 (Dkt. 139).] These claims all sound

in tort and arise out of Leshem's alleged misconduct in connection with his services to cause Rymark through the Swiss entities to become listed on a foreign exchange to raise money for their benefit. [*See id.* ¶¶ 159–161, 167, 176, 182 (Dkt. 139).] Because Leshem's duties relating to his attempts to raise money in Europe were established by contract (*i.e.*, the Listing Agreement), Third-Party Plaintiff's tort claims are barred by the economic loss rule.

The Listing Agreement was entered into on April 1, 2016, and signed by Markosian, on behalf of Rymark, and Leshem, on behalf of Anada. [*See* Listing Agreement at 1, 7, Ex. 1 to Leshem Decl.] Under the terms of the Listing Agreement, Rymark was to pay Ananda $125,000 in exchange for a suite of services (the "Services"), which included assisting Rymark to form a Swiss holding entity and have the Swiss shared admitted to trading on a European exchange and deliver shares. [*See id.* §§ II, IV.1, Ex. 1 to Leshem Decl.] The Listing Agreement further provides that Ananda would be an independent contractor of Rymark, would not have any power to bind Rymark, and would not take any action adverse to Rymark's interests. [*See id.* § III, Ex. 1 to Leshem Decl.]

Examining the allegations in the TPC, Third-Party Plaintiffs' claims are grounded in the same duties that exist by virtue of the Listing Agreement. Third-Party Plaintiffs allege that Leshem wrongfully bought a Swiss shell corporation in furtherance of the listing, stole 13 million shares of the shell company, forged documents related to the securities transaction, lied to European securities regulators in furtherance of the listing, sold the listed shares, made false statements about Rymark's operations in furtherance of the listing, and received the $125,000 called for under the Listing Agreement. [*See* TPC ¶¶ 3, 5–8, 13, 20, 46–47, 51–52, 54–65, 75–92, 108, 113–114, 137 (Dkt. 139).] Of particular relevance is Third-Party Plaintiffs' central thesis that Leshem never

intended to perform under the Listing Agreement.  [*See id.* ¶¶ 46, 51–52 (Dkt. 139).]  Those are precisely the type of tort claims that are barred by the economic loss rule.  *See KTM Health Care Inc. v. SG Nursing Home LLC*, 2018 UT App 152, ¶ 78, 436 P.3d 151 (affirming district court's dismissal of plaintiff's fraud-based claims where plaintiff alleged that defendant "never intended to honor the contract and instead was simply using its contractual negotiations with [plaintiff] to leverage a better deal").  Further, Third-Party Plaintiffs do not allege that Leshem owed an independent legal duty.  Accordingly, Third-Party Plaintiffs' claims against Leshem are barred by the economic loss rule and should be dismissed.

**B.    Third Party Plaintiffs' Failed to Plead an Essential Element of Civil Conspiracy.**

A cause of action for civil conspiracy under common law comprised of "the following elements: (1) a combination of two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof."  *Israel Pagan Estate v. Cannon*, 746 P.2d 785, 790 (Utah Ct. App. 1987) (citations omitted).  The fourth element "is of particular note as it requires a civil conspiracy plaintiff to prove that one of the conspirators actually committed an unlawful act—referred to as the underlying tort."  *Zero Down Supply Chain Sols., Inc. v. Glob. Transp. Sols., Inc.*, No. 2:07-CV-400-TC, 2008 WL 4642975, at *8 (D. Utah Oct. 17, 2008) (unpublished).  Although civil conspiracy is not one of the listed causes of action under federal rules which must meet the elevated pleading requirement of Rule 9(b), where, as here, "the unlawful act underlying the civil conspiracy is a fraud-based tort, both the underlying tort and the conspiracy claim must be pleaded with particularity."  *Id.* at *9.  In this case, Third-Party Plaintiffs root their civil conspiracy count on fraudulent inducement—a fraud-based claim.  "Under Rule 9(b), in alleging

fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.  Simply stated, a complaint must set forth the time, place and contents of the false representations, the identity of the party making the false statements and the consequences thereof."  *Id.* at *10 (cleaned up).

In the instant case, Third-Party Plaintiffs allege that numerous of the Third-Party Defendants, including Leshem, had an alleged "meeting of the minds" to perpetrate a fraud on Third Party Defendants by making numerous alleged fraudulent representations.  [*See* TPC ¶ 160 (Dkt. 139).]  However, in violation of Rule 9(b), Third-Party Plaintiffs failed to set forth the "time, place and contents" of each of the alleged false representations made by Leshem.  Accordingly, the Court should dismiss Third-Party Plaintiffs' civil conspiracy claim.

### C.    Third-Party Plaintiffs' Fraudulent Inducement Claim Fails for Lack of Requisite Particularity.

For the same reasons identified in the preceding section, Third-Party Plaintiffs have failed to plead their fraudulent inducement claim with the requisite Rule 9(b) particularity.  As such, that claim should be dismissed.

### D.    The Civil Theft Statute Does Not Apply Here.

"The theft statute [(*i.e.*, Utah Code section 76-6-408)] is primarily designed to address situations where an individual gives stolen property to a business dealing in secondhand goods." *Labertew v. WinRed, Inc.*, No. 2:21-CV-555-TC, 2022 WL 1568924, at *8 (D. Utah May 18, 2022) (unpublished) (dismissing claim brought under Utah Code section 76-6-408).  Not surprisingly, then, the statute is titled "Receiving stolen property – Duties of pawnbrokers, secondhand businesses, and coin dealers," and prohibits a person from committing certain acts "knowing that

the property is stolen," "believing that the property is probably stolen," or "knowing or believing the property to be stolen." UTAH CODE ANN. § 76-6-408(2). As a result, the civil theft statute does not address any alleged act of theft itself, but rather "refers to property that has already been stolen by someone else." *Labertew*, 2022 WL 1568924, at *8. Just like in *Labertew*, the Third-Party Plaintiffs' do "not allege that [Leshem] received [Third-Party Plaintiffs'] money from third parties" and instead simply alleges that Leshem "affirmatively stole [Third-Party Plaintiffs' property] through its <u>direct</u> solicitation of" Third-Party Plaintiffs. *Id.* (emphasis in original). [*See* TPC ¶¶ 5, 75, 77, 82, 137, 161(c), 167, 176 (Dkt. 139).] "Because the statute does not cover such conduct," Third-Party Plaintiffs have "not set forth facts establishing an essential element of his theft claim" and, just as in *Labertew*, this Court should dismiss this cause of action." *Id.*

### E. Third-Party Plaintiffs Failed to Plead an Essential Element of their Conversion Claim.

In their Fifth Cause of Action, Third-Party Plaintiffs bring an alternative claim for Conversion. [*See* TPC ¶¶ 181–86 (Dkt. 139).] "The elements of conversion under Utah law are: [1] an act of willful interference with property, [2] done without lawful justification, [3] by which the person entitled to property is deprived of its use and possession, and [4] that the party is entitled to immediate possession of the property at the time of the alleged conversion." *Combs v. SafeMoon LLC*, No. 2:22-cv-00642-DBB-JCB, 2024 WL 1347409, at *35 (D. Utah Mar. 29, 2024) (unpublished) (quotations and citations omitted) (dismissing conversion claim for failure to plead required element). Here, Third-Party Plaintiffs failed to allege the second element of this cause action—lack of lawful justification. This claim should therefore be dismissed.

III.    **THIRD-PARTY PLAINTIFFS DID NOT PROVIDE LESHEM WITH SUFFICIENT SERVICE OF PROCESS.**

Third-Party Plaintiffs' service of process on Leshem was defective and is subject to dismissal under Rule 12(b)(5) because Third-Party Plaintiffs, in the TPC served with the summons, failed to attach any of the numerous exhibits that Rymark made part of that pleading.  [*See* Leshem Decl. ¶ 43.]  Under Rule 4(c), the "summons must be served ***with a copy of the complaint***" and the plaintiff "is responsible for having the summons ***and complaint*** served within the time allowed by Rule 4(m)."  Fed. R. Civ. P. 4(c) (emphasis added).  Rule 10 of the Federal Rules of Civil Procedure addresses pleadings generally, and states that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."  Fed. R. Civ. P. 10(c); *see also Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir. 1991) ("A written document that is attached to the complaint as an exhibit is considered part of the complaint.").

Thus, the exhibits to a pleading like a complaint are part and parcel of that pleading, and under Rule 4(c) the plaintiff makes defective service of process if it does not serve the summons and the entire complaint (including its exhibits) on the defendant.  This is exactly what occurred here.  In its TPC, Plaintiffs refer to thirty-five separate exhibits, but ***none*** of these exhibits were attached with the TPC served on Defendant.  [*See* Leshem Decl. ¶ 43.]  The District of Utah has explicitly held that "service of a complaint without exhibits" renders that service "ineffective." *Clifford v. Dewbury Homes*, No. 2:18-cv-00522-RJS-EJF, 2018 WL 11584099, at *1 (D. Utah Oct. 1, 2018) (unpublished).  This being the case, the Court should dismiss the TPC against Leshem based on this critical defect or, at least, quash the summons upon Leshem as insufficient.

## CONCLUSION

For all of the foregoing reasons, Leshem respectfully requests that the Court dismiss him from this action because (A) this Court does not have personal jurisdiction over Leshem, (B) Third-Party Plaintiffs failed to state a cause of action against Leshem, and (C) service of process upon Leshem was insufficient.

DATED this 27th day of February, 2025.

LAW OFFICES OF ANDREW B. PERETZ P.A.

/s/ Andrew B. Peretz
Andrew B. Peretz (*admitted pro hac vice*)
*Attorneys for Third-Party Defendant Ashley Miron Leshem*

MCNEILL VON MAACK

/s/ Christopher M. Von Maack
Christopher Von Maack
*Attorneys for Third-Party Defendant Ashley Miron Leshem*

## WORD COUNT CERTIFICATION

I, Christopher M. Von Maack, certify that this motion to dismiss contains 7,536 words and complies with DUCivR 7-1(a)(4).  *See* DUCivR 7-1(a)(4) (permitting 7,750 words for a motion filed under Fed. R. Civ. P. 12(b)); DUCivR 7-1(a)(6)(B) ("The caption, face sheet, table of contents, table of authorities, signature block, certificate of service, and exhibits do not count toward the page or word limit.").

DATED this 27th day of February, 2025.

MCNEILL VON MAACK

/s/ Christopher M. Von Maack
Christopher Von Maack
*Attorneys for Third-Party Defendant Ashley Miron Leshem*

**CERTIFICATE OF SERVICE**

I hereby certify that I am employed by the law firm of MCNEILL VON MAACK, 236 South 300 East, Salt Lake City, Utah, and that, pursuant to Rule 5(b) of the Federal Rules of Civil Procedure, a true and correct copy of the foregoing **THIRD-PARTY DEFENDANT ASHLEY MIRON LESHEM'S MOTION TO DISMISS** was delivered this 27th day of February, 2025, via CM/ECF to all parties and counsel registered to receive email notices of filings.

/s/ Camille Coley