Christopher M. Von Maack (10468)
  vonmaack@mvmlegal.com
**MCNEILL | VON MAACK**
236 South 300 East
Salt Lake City, Utah 84111
Telephone: 801.823.6464

Andrew B. Peretz (*pro hac vice*)
  aperetz@peretzlapa.com
**LAW OFFICES OF ANDREW B. PERETZ PA**
One East Broward Boulevard, Suite 700
Fort Lauderdale, Florida 33301
Telephone: 954.558.8829

Attorneys for Third-Party Defendant Ashley Miron Leshem

### IN THE UNITED STATES DISTRICT COURT

### DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **CAPANA SWISS ADVISORS AG**, a Swiss corporation; and **AMERIMARK AUTOMOTIVE AG**, a Swiss corporation,<br><br>  Plaintiffs,<br><br>v.<br><br>**RYMARK, INC.**, a Utah corporation; **NICHOLAS THAYNE MARKOSIAN**, an individual; **JOHN KIRKLAND**, an individual; and **VICKY SMALL**, an individual,<br><br>  Defendants. | **DECLARATION OF ASHLEY MIRON LESHEM** |
| **RYMARK, INC.**, a Utah corporation; and **NICHOLAS THAYNE MARKOSIAN**, an individual,<br><br>  Counterclaim Plaintiffs,<br><br>v.<br><br>**CAPANA SWISS ADVISORS AG**, a Swiss corporation; and **AMERIMARK AUTOMOTIVE AG**, a Swiss corporation.<br><br>  Counterclaim Defendants. | Case No. 2:23-cv-00467-TS-CMR<br><br>District Judge Ted Stewart<br><br>Magistrate Judge Cecilia M. Romero |

| |
|---|
| **RYMARK, INC., a Utah corporation; and NICHOLAS THAYNE MARKOSIAN, an individual,** |
| **Third-Party Plaintiffs,** |
| v. |
| **SHAEN BERNHARDT, an individual; ASHLEY MIRON LESHEM, an individual; DAVID HESTERMAN, an individual; NICOLAI COLSHORN, an individual; STEFAN KAMMERLANDER, an individual; ALEXANDER COENEN, an individual; MARTIN FASSER HEEG, an individual; AMERIMARK GROUP AG, a Swiss corporation; and PHILOMAXCAP AG, a German corporation,** |
| **Third-Party Defendants.** |

I, Ashley Miron Leshem, hereby declare as follows:

1. I am over 18 years of age and have personal knowledge of the statements contained in this declaration. If called to testify, I would and could testify as set forth herein.

2. Since late 1994, I have been a full-time resident of Florida and, specifically, Boca Raton, Florida.

3. I obtained my Bachelor of Arts Degree from Columbia University in New York City in 1985.

4. I began my professional career at Bear, Stearns & Co., Inc. in New York City on or about September 3, 1985. At that time, I was the youngest institutional sales representative. Thereafter, I worked with other well-established investment firms, including Dean Witter Reynolds Inc., working with institutional and retail customers.

5. I currently provide consulting services to an array of companies, ranging from development-stage to middle-market companies. These services include assisting companies in obtaining admission to trading on certain European-based exchanges, advising companies on structuring financing transactions, and assisting companies in developing their overseas business by identifying potential strategic alliances, acquisition targets, and business partnerships.

6. After I moved to Florida in 1994, I founded the firm of Ananda Capital Partners, Inc., a Florida corporation ("Ananda"), on or about 1999, which was authorized and registered to do business in Florida.

7. I was the founder, sole shareholder, sole officer, sole director, and sole employee of Ananda.

8. It was solely through Ananda and from my Florida-based office, that I provided consulting and advisory services on behalf of Ananda.

9. Subsequent to Ananda's dissolution in September of 2018, Grantchester Equity, Inc., a Delaware corporation ("Grantchester"), became the successor corporation to Ananda.

10. I am the founder, sole shareholder, sole officer, sole director, and sole employee of Grantchester.

11. It is solely through Grantchester and from my Florida-based office, that I provide consulting and advisory services on behalf of Grantchester.

12. On April 1, 2016, Ananda entered into a contract with Rymark, Inc. ("Rymark") styled "Listing Agreement." Attached hereto as Exhibit "1" is a true and correct copy of the Listing Agreement.

13. Pursuant to the Listing Agreement, Ananda, and later Grantchester, provided the following services:

(a) Formed Swiss holding entities—AmeriMark Automotive AG in 2016 and AmeriMark Group AG in 2018;

(b) Completed materials related to the application of those Swiss entities to have their shares admitted to trading on the Marche Libre exchange in Paris, France and other exchanges in Malta and Austria in 2017 through 2019;

(c) Identified and caused foreign consultants to be retained, including vendors, and advisors to the Swiss entities, all of whom were based outside the United States; and

(d) Raised capital outside the United States for the Swiss entities to fund their day-to-day operations in Switzerland.

14. It was solely through Ananda, and later Grantchester, and solely from my Florida based location that I performed any Services under the Listing Agreement.

15. I am not a resident of Utah and have never lived in Utah.

16. I am not, and never have been, an employee, officer, director, member, or shareholder of a Utah entity.

17. I do not own or lease, and have never owned or leased, real property in Utah.

18. I do not own or lease, and have never owned or leased, personal property in Utah.

19. I do not have any legal or beneficial ownership of any bank or other financial accounts in Utah.

20. I do not market or advertise, and have never marketed or advertised, my services in Utah.

21. I do not solicit, and have never solicited, business in Utah.

22. Aside from this lawsuit, I have never been a party to a lawsuit in Utah.

23. With respect to my consulting and advisory services related to this lawsuit, I did not solicit Nicholas Thayne Markosian ("Markosian") or anyone at Rymark. Rather, it was Markosian (the owner of Rymark at the time) who approached me to discuss whether Rymark (which Markosian represented was seeking to raise capital) was a suitable or eligible candidate to be admitted to trading on a foreign exchange. I responded to Markosian that any admission to a foreign exchange could only be done through the medium of a foreign holding company. At the time, I suggested that a Swiss domiciled company would be the optimal vehicle to have shares admitted to a foreign exchange.

24. Subsequently, Markosian and David Hesterman ("Hesterman") travelled to Florida in early 2016 to meet with me in Fort Lauderdale. That was my only physical meeting with Markosian or anyone else at Rymark. All other communications with Rymark in connection with Ananda/Grantchester's services, were through email or telephone calls from my Florida office. There were no in-person meetings in Utah.

25. After discussing with Rymark the benefits, requirements, and the process of a foreign-based exchange listing, Rymark retained Ananda and executed the Listing Agreement.

26. I performed all of my services related to Rymark as an employee of Ananada or Grantchester.

27. Pursuant to the Listing Agreement, I used my best efforts to attempt to get the shares of the Swiss holding entities admitted for trading on a foreign exchange, namely, the Marché Libre (a multilateral trading facility that is part of the Euronext network of securities exchanges) and, later, the Malta and Vienna Stock exchanges.

28. At no time did my services with respect to Rymark include any attempt to list Rymark or any other entity on any U.S.-based exchange or trading platform.

29. My very first action subsequent to the execution of the Listing Agreement, was to introduce Rymark to Swiss counsel, Gysi & Partners located in St. Gallen, Switzerland. I understand that Rymark directly retained that Swiss law firm and contributed 100% of its shares in-kind to capitalize the new Swiss entity, AmeriMark Automotive AG, whose formation was formally registered in the Swiss commercial registry on June 6, 2016.

30. To my knowledge, all documents pertinent to the formation of AmeriMark Automative and the subject contribution in-kind were executed by lawyers domiciled in Switzerland, having a power of attorney to do so in Switzerland on behalf of Rymark. To my knowledge, each of those documents were executed in Switzerland and provided that they would be governed under the sole and exclusive jurisdiction, and under the laws, of Switzerland. To my knowledge, Markosian first appointed lawyers at Gysi & Partners in Switzerland via power of attorney agreements between Markosian and such foreign lawyers in 2016 (to effectuate the formation of AmeriMark Automotive and the contribution in-kind of 100% Rymark shares to AmeriMark Automotive) and then again in in 2018 (to effectuate the contribution of AmeriMark Automotive shares to AmeriMark Group to capitalize a second class of shares of the Swiss entity that came to be re-named AmeriMark Group AG).

31. To my knowledge, execution of the transactions creating the Swiss entity AmeriMark Automotive AG, which came to hold 100% of Rymark, was effectuated by Swiss legal counsel physically located in Switzerland and performed and governed under Swiss law.

32. To my knowledge, execution of the transactions creating the Swiss entity AmeriMark Group AG which came to hold 100% of AmeriMark Automotive was effectuated by Swiss legal counsel retained by Rymark and Markosian, which counsel was physically located in Switzerland and performed their legal services under Swiss law.

33. As such, to my knowledge, the documents forming the foreign entities AmeriMark Automotive and AmeriMark Group were executed in Switzerland and not in Utah or the United States for that matter, and my role, from my office in Florida, was only as an advisor and consultant.

34. Since June 6, 2016, Rymark has been a wholly-owned subsidiary of AmeriMark Automotive AG, and this ownership is a matter of public record pursuant to the commercial register in Switzerland, which is the official record of Swiss corporate formation.

35. As set out above, all of my consulting and advisory services were "foreign focused" and directed at Europe; they were not directed at Utah.

36. Indeed, all of the relevant professional service providers (*e.g.*, listing sponsors, capital market coaches, auditors, and other professional service providers necessary to apply for and obtain listing on a foreign exchange) were based in Europe. All such service providers were retained by Rymark through its authorized agents. To my knowledge, those providers' services were contracted for and effectuated under agreements made in Europe and under foreign law. To my knowledge, Rymark (including Markosian) knew and understood at all times the nature of

7

those agreements, approved all such agreements, and approved all of the foreign professionals and other individuals that were retained to effectuate the agreements and other transactions in Europe.

37. As to payment for the services rendered under the Listing Agreement, Rymark caused monies to be paid to Ananda in Florida.

38. My communications with Rymark and its representatives were limited to email and telephone calls with Rymark and, specifically, Markosian (Rymark's founder and CEO), Eric Gardner (Rymark's CFO), Vicky Small (Rymark's Controller), and John Kirkland (Rymark's COO). Other than the initial meeting between myself, Hesterman, and Markosian in Fort Lauderdale, no other meetings ever took place between me, on the one hand, and Rymark, or anyone at Rymark, on the other hand, and no such meetings occurred in Utah.

39. Rymark and Markosian allege that I was part of a scheme to "pump and dump" shares for my benefit. However, at no time did I or any entity I controlled ever own any shares of Rymark, AmeriMark Group, AmeriMark Automotive, or any other party named in the Third-Party Complaint (Dkt. 139) (the "TPC"). Therefore, I could not and did not benefit from any such alleged scheme.

40. As to Rymark and Markosian's claim that there was a so-called "meeting of the minds" as to the alleged "pump and dump" scheme, the parties named as so-called co-conspirators, were a completely unaffiliated, disparate group of service advisors, most of whom likely had never heard of each other prior to their engagement by Rymark, and each of whom were engaged at different times over a four-and-a-half-year period to provide one or more

different tasks in an international effort to have the shares of the Swiss holding companies admitted for trading on a foreign exchange.

41. At the end of the day, Ananda/Grantchester was successful in causing AmeriMark Group AG, the Swiss holding entity, to have its shares admitted for trading on the Vienna Direct Multi-Lateral Trading Facility, a segment of the Austrian based Vienna Stock Exchange—a foreign exchange—on August 22, 2019.

42. In the Listing Agreement, Rymark (through its owner and officer Markosian) and Ananda agreed and consented that if any dispute arose from such Agreement, the parties would file suit in a Florida state court and that Florida law would apply.

43. When I was served with a summons and the TPC in this action, the TPC did not contain any of the numerous exhibits cited in the TPC.

I declare under criminal penalty of the law of Utah that the foregoing is true and correct. Signed on the 25th day of February 2025, in Bocca Raton, Florida.

/s/ Ashley Miron Leshem
(with permission via email)
Ashley Miron Leshem

## CERTIFICATE OF SERVICE

  I hereby certify that I am employed by the law firm of MCNEILL VON MAACK, 236 South 300 East, Salt Lake City, Utah 84111, and that, pursuant to Rule 5(b) of the Federal Rules of Civil Procedure, a true and correct copy of the foregoing **DECLARATION OF ASHLEY MIRON LESHEM** was delivered this 27th day of February, 2025, via CM/ECF to all parties and counsel registered to receive email notices of filings.

            /s/ Camille Coley