Eric G. Benson, eric@pbp.law
Loren Washburn, loren@pbp.law
Brennan Moss, brenann@pbp.law
Parkinson Benson Potter
2750 Rasmussen Rd., Suite H-107
Park City, UT 84098

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CAPANA SWISS ADVISORS AG, a Swiss corporation; AMERIMARK AUTOMOTIVE AG, a Swiss corporation,<br>Plaintiffs,<br>vs.<br>RYMARK, INC., a Utah corporation; NICHOLAS THAYNE MARKOSIAN, an individual; JOHN KIRKLAND, an individual; and VICKY SMALL, an individual,<br>Defendants. | **SUPPLEMENTAL FILING**<br><br>**RE: EXPERTS' DEPENDENCY ON DISCOVERY FROM LESHEM, COLSHORN, AND AMERIMARK GROUP** |
| RYMARK, INC., a Utah corporation; and NICHOLAS THAYNE MARKOSIAN, an individual,    Counter Claimants,<br>vs.<br>CAPANA SWISS ADVISORS AG, a Swiss corporation, and Amerimark Automotive AG, a Swiss Corporation, Counter Defendants. | Case No.: 2:23-cv-00467<br><br>Judge Ted Stewart<br>Magistrate Judge Cecilia M. Romero |
| RYMARK, INC., a Utah corporation; and NICHOLAS THAYNE MARKOSIAN, an individual,<br>Third-Party Plaintiffs,  vs.<br>SHAEN BERNHARDT, an individual; ASHLEY MIRON LESHEM, an individual; DAVID HESTERMAN, an individual; NICOLAI COLSHORN, an individual; STEFAN KAMMERLANDER, an individual; ALEXANDER COENEN, an individual; MARTIN FASSER HEEG, an individual; AMERIMARK GROUP AG, a Swiss corporation; and PHILOMAXCAP AG, a German corporation,<br>Third-Party Defendants. | |

In response to the Court's request for additional detail regarding the basis for extending

expert discovery, Defendants Rymark, Inc. and related defendants respectfully submit the

following explanation of the critical facts that must be obtained from Mr. Leshem, Mr. Colshorn, and AmeriMark Group before expert analysis can be completed.

Discovery from these individuals is essential because Mr. Leshem is the central figure in the events underlying Plaintiffs' claims. According to the evidence, he fabricated and forged key documents, provided those forged documents to Plaintiffs for inclusion with their Complaint, engineered fraudulent transactions and dilution schemes, and misled regulators, exchanges, and investors.[1] Similarly, Mr. Colshorn served as the singular 'of record' individual responsible for the problematic actions of the Swiss entities, making his testimony equally critical.[2]

---

[1] Leshem's role is explained in various filings in this case, including the current operative cross-claim pleading, Dkt. No. 139, ¶¶1 1–3 (Leshem as co-architect of the pump-and-dump scheme); ¶4–6 (Leshem's failed listing attempts and alleged share theft); ¶7–8 (Leshem's misrepresentations to European regulators); ¶9–10 (Leshem's role in concealing cease-and-desist letter); ¶13–14 (false press releases issued under Leshem's direction); ¶20 (reference to Leshem's listing fee and Markosian's loss); ¶44–47 (Leshem's introduction, fraud background, and promises to Markosian); ¶¶51–52 (Leshem's urgency tactics to extract funds from Markosian); ¶¶54–56 (Leshem's failed listings and collaborators); ¶58–66 (Leshem's reverse merger and forged documentation); ¶¶68–70 (Leshem joking about forging signatures); ¶75–84 (Leshem's fabrication of subscription forms and concealment of theft); ¶85–88 (collaboration with Bernhardt to list in Vienna); ¶¶89–91 (Leshem's efforts to maintain illusion of operations); ¶¶97–98 (plan to inject liquidity and salvage scheme); ¶¶101 (Leshem is sent cease-and-desist letter); ¶¶104–107 (continued pressure tactics by Leshem and others); ¶108 (directed application to list bearer shares); ¶113 (participated in renewed pumping via false press releases); ¶¶123–124 (linked to false press release about AutoScout24); ¶¶130–131 (post-collapse effort to profit via Philomaxcap); ¶¶159–161 (named co-conspirator in civil conspiracy); ¶165–167 (named in stolen property claim); ¶174–176 (named in conversion claim); ¶182 (named in fraudulent inducement claim).

[2] Colshorn's role is explained the current operative cross-claim pleading, Dkt. No. 139, ¶¶ 9–10 (Colshorn received cease-and-desist letter and participated in efforts to suppress it); ¶55 (Leshem installed Colshorn as director of AmeriMark Automotive on counsel's recommendation); ¶59 (Colshorn was also director of 4Service Cloud Tech AG, Leshem's prior shell); ¶62 (Colshorn "certified" the reverse merger as director); ¶75 (Colshorn participated in fabricating share subscription forms to cover theft); ¶78 (Leshem and/or Colshorn fabricated documents to legitimize stolen shares); ¶82 (Colshorn helped fabricate other altered subscription forms); ¶¶90–91 (Colshorn worked with Leshem to maintain illusion of operations and rerouted phone calls); ¶¶93–94 (Colshorn forwarded investor complaints to Bernhardt and coordinated a response); ¶¶95–96 (Colshorn coordinated with Bernhardt to mislead Vienna authorities and proposed

The following chart presents the key issues in summary form:

| Expert Category | Description | Leshem | Colshorn |
|---|---|---|---|
| Securities Regulation | Pump-and-dump stock manipulation<br><br>False disclosures to regulators<br><br>Unauthorized issuance of shares | Conceived and executed the entire pump-and-dump operation through Whitetree Capital, a shell entity he controlled.<br><br>Secretly issued 13 million Rymark shares without approval, transferring them to entities he or his associates controlled.<br><br>Misrepresented ownership and valuation details to European regulators and stock exchanges, critical to inflating stock value and facilitating the scheme.<br><br>Only he can provide direct evidence of the intent, execution, and scope of these violations—essential for proving scienter and regulatory fraud. | As director of AmeriMark Automotive AG, authorized or failed to question the improper transfers initiated by Leshem.<br><br>Communicated with regulators and investors in support of Leshem's false representations, lending an air of legitimacy to the scheme.<br><br>Can testify to what AmeriMark internally believed and reported, exposing the extent to which misleading disclosures were knowingly propagated.<br><br>His dual role as a corporate gatekeeper and participant makes his perspective indispensable for assessing compliance failures. |
| Forensic Accounting / Fraud | Complex inter-company share transfers<br><br>Falsified ledgers and transaction | Structured fictitious transactions to transfer equity without consideration, using forged documents and sham entities like Whitetree and Orbital AG. | Responsible for AmeriMark's financial oversight and records, including accounting for purported investments by Whitetree and Capana. |

taking over Rymark); ¶¶97 (Leshem proposed Capana role in scheme in email to Colshorn); ¶¶98 (Colshorn forwarded complaints about shell office signage); ¶¶101–102 (received and reacted to cease-and-desist letter, knew it triggered disclosure obligation); ¶¶103–104 (chose concealment rather than disclosure); ¶¶106–107 (Colshorn warned of impending delisting and pushed Capana to act); ¶108 (submitted application to list 6.8M bearer shares with Leshem and Bernhardt); ¶¶113 (Colshorn involved in "pumping" stock via false press releases); ¶118 (Colshorn engaged with Wenzl to downplay falsehoods in disclosures); ¶122 (Wenzl confronted Colshorn with disclosure failures); ¶¶125–126 (Wenzl challenged Colshorn over AutoScout24 release and Rymark governance); ¶128 (Colshorn complained about AmeriMark's failures and faced backlash from Bernhardt); ¶131 (pressured by Bernhardt to sign false affidavit in European litigation); ¶¶159–161 (named as co-conspirator in civil conspiracy); ¶162 (alleged to be agent of AmeriMark entities as director)

| Expert Category | Description | Leshem | Colshorn |
|---|---|---|---|
| | records<br><br>Asset misappropriation and self-dealing | Backdated a 2019 Option Agreement to create a false narrative of legitimate share acquisition by Capana, when in fact no funds were exchanged.<br><br>Only Leshem can explain the design and execution of these transactions, and whether any actual value changed hands—essential for tracing the path of misappropriated assets. | Can confirm the absence (or presence) of internal documentation reflecting real consideration, which goes directly to the legitimacy of share transfers.<br><br>Knowledge of financial irregularities and conversations with Leshem regarding how to mask or justify these fabricated transactions. |
| Document Forensics | Authenticity of key agreements and certificates<br><br>Detection of forgery and document tampering | Created or altered multiple versions of critical documents (e.g., May 2018 Subscription Agreements), bearing inconsistent terms and signatures.<br><br>Used identical digital signatures across documents bearing different dates, and edited text manually to alter quantities and dates.<br><br>Only he can account for the creation, evolution, and intent behind these documents, enabling experts to assess whether they reflect real transactions or retrospective cover-ups.<br><br>Crucial for assessing document authenticity and identifying fraudulent paperwork. | Received and stored suspect documents in his capacity as a corporate officer and acted upon their contents without apparent scrutiny.<br><br>Can testify about the document chain-of-custody, when discrepancies were noticed, and whether he inquired about obvious irregularities.<br><br>May have participated in the legitimization of false records by filing or referencing them in official proceedings.<br><br>His statements will help determine whether the internal actors blindly accepted forgeries or knowingly aided their use. |
| Corporate Governance | Compliance with corporate formalities<br><br>Approval of | Orchestrated bypass of standard approval mechanisms by appointing puppet directors and forming offshore entities. | As an AmeriMark director, either negligently permitted or actively enabled breaches of duty by failing to question irregular transactions. |

4

| Expert Category | Description | Leshem | Colshorn |
|---|---|---|---|
| | significant transactions<br><br>Director duties and oversight responsibilities | Backdated instruments to support self-dealing transactions after-the-fact.<br><br>His actions strike at the heart of governance norms, and only he can reveal how these transactions were conceived and executed outside proper oversight. | Can explain what approvals, if any, were sought, granted, or deliberately ignored.<br><br>May have direct knowledge of Leshem's efforts to manipulate governance processes or suppress dissent.<br><br>Whether corporate checks and balances were intentionally circumvented or merely overlooked. |
| Economics | Loss quantification<br><br>Economic substance and consequences of transactions<br><br>"But-for" market analysis | The architect of the scheme, only he can clarify the economic purpose (or lack thereof) behind share issuances and option agreements.<br><br>His account of trading timing, investor recruitment, and market impact is necessary to distinguish real market dynamics from manipulation.<br><br>Experts need his input to model damages accurately and assess whether the Plaintiffs' losses are genuine or a product of self-inflicted fraud. | The senior figure on Plaintiffs' side, capable of testifying about what Plaintiffs believed they were giving or getting in the deals.<br><br>Whether Plaintiffs paid anything or benefited unfairly from shares acquired without value.<br><br>Quantify harm and determine whether damages claimed are economically valid and have a loss causation basis. |

For the foregoing reasons, completion of expert discovery cannot reasonably proceed without first obtaining the testimony and document production from Mr. Leshem, Mr. Colshorn, and AmeriMark Group. Their unique knowledge of the alleged fraudulent scheme is indispensable to any meaningful expert analysis, and attempting to complete expert reports without this foundational discovery would result in incomplete and potentially misleading opinions.

DATED:  May 19, 2025

PARKINSON BENSON POTTER

/s Brennan H. Moss
Eric G. Benson
D. Loren Washburn
Brennan H. Moss

**CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of May 2025 I filed the foregoing via the Court's

CM/ECF system, which provided notice of such filing to all counsels of record.

*/s/ Brennan H. Moss*