IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| CAPANA SWISS ADVISORS AG, a Swiss corporation; AMERIMARK AUTOMOTIVE AG, a Swiss corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>RYMARK, INC., a Utah corporation; NICHOLAS THAYNE MARKOSIAN, an individual; JOHN KIRKLAND, an individual; and VICKY SMALL, an individual,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' MOTION TO DISQUALIFY COUNSEL FOR PLAINTIFFS [ECF 211]<br><br>Case No. 2:23-cv-00467-TS-CMR<br><br>District Judge Ted Stewart<br><br>Magistrate Judge Cecilia M. Romero |

This matter is referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) (ECF 7). Before the court is Defendants Rymark, Inc. (Rymark) and Nicolas Markosian's (Markosian) (collectively, Defendants) Motion to Disqualify Counsel for Plaintiffs (Motion) (ECF 211). The Motion seeks to disqualify Venable LLP (Venable) and Parsons Behle & Latimer (Parsons), both of whom have appeared as counsel for Plaintiffs Capana Swiss Advisors AG (Capana) and AmeriMark Automotive AG (AmeriMark Automotive) (collectively, Plaintiffs) since this matter began (ECF 1), and then later for Third-party Defendant AmeriMark Group AG (AmeriMark Group). Having carefully considered the relevant filings (ECF 211, 220, and 231[1]), the court finds that oral argument is not necessary and decides this matter on the written memoranda. *See* DUCivR 7-1(g). For the reasons below, the court DENIES the Motion.

---

[1] On May 19, 2025, Plaintiffs filed "Supplemental Authority in Support" (ECF 275) of their opposition to the Motion, but the "authority" is actually a Declaration addressing factual matters and not legal authority, filed five months after their Opposition. Local Rule 7-1(d) allows supporting exhibits to be filed contemporaneously with the document, not months after. *See* DUCivR 7-1(d). Given that Plaintiffs did not provide any authority for the untimely filing, the court does not consider it.

## I. LEGAL STANDARDS

Disqualification "is a drastic measure and a court should hesitate to impose it except when necessary." *Flying J Inc. v. TA Operating Corp.*, No. 1:06-CV-30TC, 2008 WL 648545, at *6 (D. Utah Mar. 10, 2008) (quoting *Proctor & Gamble Co. v. Haugen*, 183 F.R.D. 571, 574 (D. Utah 1998)). "The moving party bears the burden of establishing that disqualification is necessary." *You Li v. Lewis*, No. 1:20-CV-00012-TS-JCB, 2020 WL 3217268, at *1 (D. Utah June 15, 2020). "Additionally, the moving party must diligently pursue the remedy of disqualification once that party learns of the alleged basis for disqualification." *Id*.

Motions to disqualify are governed by the local rules of the court in which the attorneys appear and by applying standards developed under federal law. *Brigham Young Univ. v. Pfizer, Inc.*, No. 2:06-CV-890 TS BCW, 2010 WL 11414472, at *3 (D. Utah Aug. 24, 2010). In support of their Motion, Defendants cite two local rules from the Utah Rules of Professional Conduct, Rule 1.7(a)(2)[2] and Rule 1.8(f).[3] Rule 1.7(a) addresses concurrent conflicts of interest and states, "[e]xcept as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest." Utah R. Prof'l Conduct 1.7(a). A concurrent conflict of interest exists if:

> (1) The representation of one client will be directly adverse to another client; or
> (2) There is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

*Id*. Notwithstanding a concurrent conflict of interest, Rule 1.7(b) explains an attorney may still represent a client if "the lawyer reasonably believes that the lawyer will be able to provide

---

[2] Defendants did not directly identify which subsection of the Rule they rely on, but argue the alleged conflict creates a "'significant risk' that Venable and Parsons Behle's representation of AmeriMark [Automotive] will be 'materially limited' by their responsibilities to Capana" (ECF 211 at 9).

[3] In a footnote, Defendants argue counsel must also "abide by Rule 1.6," but they fail to make any argument in support as to this Rule, and therefore the court does not consider it as a separate basis under the Motion.

competent and diligent representation to each affected client; . . . [and] each affected client gives informed consent, confirmed in writing." *Id*. at R. 1.7(b).

    Rule 1.8 addresses compensation and indicates:

> A lawyer shall not accept compensation for representing a client from one other than the client unless:
>
> (1) the client gives informed consent;
>
> (2) there is no interference with the lawyer's independence of professional judgment or with the client-lawyer relationship; and
>
> (3) information relating to representation of a client is protected as required by Rule 1.6.

*Id.* at R. 1.8(f).

    Under federal guidance, motions to disqualify should be viewed with extreme caution and measured by the facts of each particular case. *Brigham Young Univ.*, 2010 WL 11414472, at *7. "Factors to consider include: (1) the egregiousness of the violation, (2) the presence or absence of prejudice to the other side, (3) whether and to what extent there has been a diminution of effectiveness of counsel, (4) hardship to the other side, and (5) the stage of trial proceedings." *Id.* "The essential issue to be determined in the context of litigation is whether the alleged misconduct taints the lawsuit." *Id.* (quoting *Parkinson v. Phonex Corp.*, 857 F. Supp. 1474, 1480 (D. Utah 1994)).

## II.    DISCUSSION

### A. Defendants have not Demonstrated that Disqualification is Necessary Under Rules 1.7 and 1.8.

    Defendants argue Rule 1.7 is violated because in a dispute over control of a corporation between shareholders, a lawyer cannot represent both the corporation and one group of shareholders. Defendants argue that is what is happening here as this lawsuit is a "dispute over who controls two Swiss corporations:" Third-party Defendant AmeriMark Group and its

3

subsidiary, Plaintiff AmeriMark Automotive (ECF 211 at 3). Said another way, the parties dispute who is the controlling shareholder of AmeriMark Group (and, thereby, who can control AmeriMark Automotive) (*id.* at 9). Defendants argue that Capana has claimed that it is the largest shareholder in AmeriMark Group by owning 65% of the shares and Markosian only 34% of the shares. But Markosian argues that Capana's 65% in AmeriMark Group (or 13,000,000 shares) was stolen from him by a nonparty called Whitetree Capital (Whitetree) (*id.*).

Citing to a Louisiana case, *Brennan v. Brennan*, No. CIV.A. 13-2491, 2013 WL 1897126, at *3 (E.D. La. May 6, 2013), Defendants argue that because the parties dispute who is the controlling shareholder of AmeriMark Group and thereby AmeriMark Automotive, AmeriMark Group's interests may not be aligned with its purported shareholders which creates a "significant risk" that Venable's and Parsons' representation will be materially limited by their responsibilities to Capana (ECF 211 at 9).

Plaintiffs disagree arguing that "on February 21, 2024, Capana divested essentially its entire stake" in AmeriMark Group to Third-Party Defendant Philomaxcap AG (Philomaxcap) (ECF 220 at 6). Philomaxcap is not represented by Venable and Parsons. Plaintiffs therefore argue Rule 1.7 is inapplicable because Philomaxcap is the "effective controlling shareholder" in AmeriMark Group. Plaintiffs also argue there is no Utah case law that contains a blanket prohibition on representing a corporation and its shareholder and cites to Utah Rule of Professional Conduct 1.13(g) that indicates such representation may be possible under certain circumstances.

Defendants reply arguing that Philomaxcap is under Capana's control as Capana holds more than 92% of Philomaxcap's shares (ECF 231 at 4). As a result, Defendants argue Philomaxcap and Capana's interests are aligned, and the conflict between Capana and AmeriMark Group and AmeriMark Automotive remains.

With respect to Rule 1.7, the court notes Defendants have represented there is no controlling case law to support its position. Instead, Defendants cite to the Louisiana case, which appears to contain some factual similarities to the dispute before this court. The court also acknowledges, however, the factual determination of the present Motion is intertwined with the merits of the underlying claims—who is the controlling shareholder(s) of AmeriMark Group and its subsidiary, AmeriMark Automotive.

While the *Brennan* case, which is not controlling case law, has some factual similarities to the facts before this court, it also has some important factual dissimilarities to the present matter. Namely, in *Brennan*, there were four alleged shareholders involved and only two sets of alleged owners of the company—*i.e.*, Ted and Bridget Brennan versus Blake and Clark Brennan. *See* 2013 WL 1897126, at *1. In the present matter, however, there are many different business entities, ownership of controlling shares, and the need to determine whether or not ownership of shares equals control. Specifically, Plaintiffs argue that Philomaxcap owns the 13,000,000 shares, not Capana. Defendants argue that should not change any conflict under Rule 1.7 because Philomaxcap is under Capana's control. Defendants' argument, while perhaps accurate in terms of the logistics of who owns the shares, is factually different from the *Brennan* case for this reason. For these reasons, the court finds the facts in support of this Motion are not clear or as straightforward as those in *Brennan* and are intertwined with the merits of the underlying litigation. The court therefore finds Defendants have not met their burden of demonstrating a conflict under Rule 1.7.

Turning to Rule 1.8, there does not appear to be a dispute that Capana is paying Plaintiffs' counsel's fees on behalf of AmeriMark Automotive. Defendants argue this is impermissible for two reasons under Rule 1.8: (1) there was no informed consent as Markosian's consent was never

sought; and (2) even if consent were obtained, payment interferes with the firms' independence of professional judgment and with the client-lawyer relationship (ECF 211 at 11). While the court agrees on the first point, it disagrees on the latter in that Defendants merely made argument of an interference. They do not demonstrate there has been an interference and therefore the court is unable to find Defendants have demonstrated a violation of Rule 1.8.

### B. Defendants did not Diligently Pursue Disqualification.

Even assuming Defendants demonstrated a violation of Rules 1.7 and 1.8, the court finds that Defendants did not diligently pursue disqualification. *See, e.g.*, *You Li*, 2020 WL 3217268, at *2 (finding defendant did not diligently pursue disqualification when he waited three months to file the motion). The Complaint in this matter was filed on July 18, 2023 by Capana and AmeriMark Automotive (ECF 1), which was later amended on October 10, 2023 (ECF 16). The Amended Complaint alleges that Defendants (as well as others), who filed the present Motion, launched a scheme to transfer ownership of Rymark into AmeriMark Automotive so that Defendants could list it on the foreign stock exchange (*id*. ¶¶ 12–13). Once AmeriMark Automotive owned all shares of Rymark, the President of Rymark, Markosian, allegedly transferred AmeriMark Automotive's shares into AmeriMark Group, which was listed on the Vienna Stock Exchange, and investors bought its shares based on allegedly false statements in financial materials (*id*. ¶¶ 13–14). AmeriMark Group's share prices collapsed, and Markosian "attempted to disavow entirely the . . . transaction . . . which made Rymark a 100% subsidiary of AmeriMark Automotive" (*id*. ¶ 17). Defendants' Answer and Counterclaim, filed on September 18, 2023, alleges a "foreign shell entity penny stock scheme" in which Markosian entrusted third parties to find European investors for Rymark, who allegedly fraudulently prepared documents transferring the car dealership into a new Swiss entity (ECF 11 ¶ I at 26).

6

On September 3, 2024, Defendants were granted leave to file an Amended Counterclaim and Third Party Complaint against AmeriMark Group, among others (ECF 137). That same day, the Amended Counterclaim and Third-Party Complaint was filed wherein AmeriMark Group was added as a party (ECF 139). The above background identifies without question AmeriMark Group has been a party to this dispute since September 3, 2024. Defendants themselves recognize that at least by September of 2024 "Rymark's claim for theft of the 13,000,000 became genuinely live" (ECF 231 at 10). Notwithstanding, the present Motion was not filed until four months later on January 2, 2025 (ECF 211). The justification Defendants offer is that "Plaintiffs' Complaint did not clearly put control of AmeriMark Group—let alone AmeriMark Automotive—at issue" and that Capana was "coy" about its ownership interest in AmeriMark Group (ECF 231 at 10). The court disagrees as a reading of the October 10, 2023, Amended Complaint identifies both parties in the first two paragraphs, and the General Allegations detail involvement of AmeriMark Automotive and AmeriMark Group (ECF 16 ¶¶ 1–2, 12–13).

However, even assuming Defendants' argument is correct, that the issue was not "live" initially until September 2024, that does not explain why it took four additional months to file the present Motion. Defendants also argue the present Motion is timely filed because they "believed Plaintiffs would investigate the documents [from Whitetree which Defendants allege demonstrate doctored forms]," but in November 2024 they learned no one investigated and then this Motion followed six weeks later (ECF 231 at 10). Defendants' argument is basically that they wanted to give Plaintiffs time to investigate and while not entirely clear, the inference is perhaps Plaintiffs would change course. Defendants argue considering "[m]otions to disqualify are serious business," no blame should come to Defendants for waiting (*id.*). This position is undercut however by the filing of the Third-Party Complaint. As of September 2024, Defendants filed a Third-Party

7

Complaint, hence it was apparent as of this date that litigation was necessary. At best it is strange to argue filing a complaint was necessary but then a "wait and see" approach was justified on the present Motion given the requirement to pursue such motions with diligence.

Finally, Defendants argue they could not have moved for disqualification any earlier than when AmeriMark Group submitted its Answer which was on January 2, 2025 (ECF 210). The present Motion was then filed the same day (ECF 211). While the court acknowledges the timing of these filings, the court disagrees with Defendants as it was apparent that Parsons and Venable were representing AmeriMark Automotive and AmeriMark Group at least as demonstrated on the docket as of December 17, 2024, when the parties filed a stipulated motion to extend the deadline for AmeriMark Group to respond to the Third Party Complaint (ECF 193).[4] All of this weighs in favor of finding Defendants did not timely pursue disqualification.

### C. Some Federal Factors Also Weigh in Favor of Denying the Motion.

Given that the court has not found Defendants met their burden in proving a violation of either Rule 1.7 or 1.8, the court does not find any alleged violation to be egregious. In terms of prejudice and hardship to Plaintiffs, the court finds, even if there was a violation of the rules, there would be significant prejudice and hardship to Plaintiffs in granting the Motion. As the docket reflects, this case has been litigated heavily, much discovery conducted, and Parsons and Venable have represented both AmeriMark Group and AmeriMark Automotive since each was named as a party. Granting the Motion would cause prejudice and hardship to Plaintiffs for these reasons. The court is unable to find diminution of effectiveness of counsel, given no violation of Rule 1.7 or 1.8 was demonstrated by Defendants. Finally, this matter is not set for trial, and even though much discovery has been conducted, there are outstanding motions to allow more discovery, which have

---

[4] Plaintiffs argue they have represented the parties for four years (ECF 220).

not yet been addressed by the court. Standing alone, this factor weighs in favor of granting the Motion. However, when considering all of the above, including the untimeliness of the Motion, the court DENIES the Motion.

### III.  CONCLUSION AND ORDER

For the foregoing reasons, the court hereby ORDERS that the Motion is DENIED.

DATED this 6 June 2025.

*Cecilia M. Romero*
Magistrate Judge Cecilia M. Romero
United States District Court for the District of Utah