# EXHIBIT 2



101 CALIFORNIA STREET   SUITE 3800   SAN FRANCISCO, CA 94111
T 415.653.3750   F 415.653.3755   www.Venable.com

June 2, 2025

**John S. Worden**
**t** 415.653.3713
**f** 415.653.3755
JSWorden@Venable.com

**VIA ELECTRONIC MAIL**
*eric@pbp.law*
*brennan@pbp.law*
*loren@pbp.law*

Mr. Brennan Moss
Mr. Loren Washburn
Mr. Eric Benson
Parkinson Benson Potter
2750 Rasmussen Rd., Ste. H-107
Park City, Utah 84098

      **Re:**   *Capana Swiss Advisors AG et al. v. Rymark Inc., et al.*, **Case No. 2:23-cv-00467**

Dear Counsel:

      We appreciate your most recent production and recognize the efforts you are making as the new counsel of record to correct long-standing discovery deficiencies in this case. However, as you must realize, the documents produced on May 22 (the "May 22 Production") have arrived rather "late in the game." Now that we have completed our initial analysis of the 2,823 documents (201 natives and 8,766 pages) produced nearly *four months* after the January 28, 2025 close of fact discovery, we find that some of the newly-produced documents highlight significant and serious issues we would like you to address.

      As a preliminary matter, we note that none of the documents in your May 22 Production was designated as "CONFIDENTIAL." Given that a number of these documents appear to involve confidential issues as defined by the governing protective order, we assume the complete lack of any confidentiality designations was in error. As a precaution, we are designating the May 22 Production as "CONFIDENTIAL." Please provide us with a time frame by which you will be able to advise as to which documents (if any) can be de-designated.

      **A.**      **Origins of the Latest Production / Additional Evidence of Perjury**

      It is not clear where the May 22 Production came from or why the newly-produced documents were not produced *two years ago*. Mr. Moss' May 22, 2025 transmittal email states that "[t]hese docs were located by an outside expert who spent the last few months conducting extensive forensic repair and search of previously collected and searched files and devices."



Mr. Brennan Moss
Mr. Loren Washburn
Mr. Eric Benson
June 2, 2025

    First, we note that the search appears to be limited to "previously collected and searched files and devices." We interpret this to mean that no "new" devices or platforms have been searched, in which case the May 22 Production does not address Plaintiffs' Motion for Short Form Discovery re: Search of *Additional Communication Platforms* (Dkt, No. 232) (emphasis added). In addition, it does not appear that the bulk of May 22 Production originates from "devices." Instead, it appears that these documents are not from any other communications platforms, but primarily from Rymark's Microsoft Exchange server, especially from Messrs. Kirkland and Gardiner and Ms. Small's mailboxes. Assuming for a moment that the non-production of these documents in earlier productions was inadvertent, a very generous assumption in our view, this immediately raises the question: Why were these documents missing from the Rymark's Exchange Server in the first place? We understand that Rymark is subject to document retention requirements from, for example, the Utah Department of Transportation and the U.S. Department of Transportation. As such, we do not understand how so many corporate communications can be missing.

    In Defendants' September 18, 2023 Answer and Counterclaim (Dkt. No. 11) Defendants alleged: "Following this inquiry, counsel investigated the transaction, including a complete review of all correspondence sent and received from Rymark's outlook email servers."

    In Defendants' October 24, 2023 Amended Answer (Dkt. No. 20) Defendants doubled down on this claim: "Following this inquiry, counsel investigated the transaction, including a complete review of all correspondence sent and received from Rymark's outlook email servers."

    We find it difficult to explain these claims unless Defendants attempted to delete responsive and damning material from Rymark's email system prior to the "complete review of all correspondence sent and received" from that email system prior to review by Defendants' legal counsel, or Defendants' legal counsel, presumably Mr. Pehrson, was not accurate in his statements to Plaintiffs and the Court (a common theme since September 2020).

    On this point, our early analysis of the May 22 Production confirms what we have long suspected: After denying for months that any responsive material existed, defendants were forced to acknowledge *some* of the documents following third-party Mr. Hesterman's production in response to Plaintiff's subpoena, still cherry-picking to exclude responsive material not explicitly proven to exist by the Hesterman production.

    Throughout this case Defendants have repeatedly withheld responsive emails in which no third-party had been copied. The May 22 Production raises even more serious questions. The wealth of new communications between Ms. Small and Mr. James Ellul, the Maltese auditor charged by the Defendants with facilitating the listing of AmeriMark Automotive on the Malta

2



Mr. Brennan Moss
Mr. Loren Washburn
Mr. Eric Benson
June 2, 2025

Stock exchange, makes it clear that Ms. Small (who professed total ignorance of any listing project, and explicitly claimed she didn't know anything about Malta at all during her testimony) repeatedly and materially perjured herself during her deposition.

Likewise, the new material in the production from Mr. Gardiner, including extensive communications with Mr. Ellul, is equally concerning. Mr. Markosian is also seen in produced emails directing his employees every step of the way regarding the Malta listing effort, seriously challenging the veracity of both his sworn testimony and Defendants' representations to the Court.

We have good reason to re-open the Rymark 30(b)(6) deposition as well as the depositions of Mr. Markosian, Ms. Small, and Mr. Gardiner given these facts. On this point, please confirm whether you presently represent Eric Gardiner or if he has separate counsel?

**B.     Missing or Destroyed Production from Messaging Platforms**

None of the documents in the May 22 Production seems to include communications from messaging platforms (e.g. WhatsApp, Slack, Signal, etc.). As you may be aware, Mr. Pehrson indicated that, despite clear evidence including Defendants' sworn testimony indicating that WhatsApp and Slack were in widespread and continuous use by Defendants and employees of Rymark during relevant periods, Defendants had not and would not search such platforms for material responsive to Plaintiffs' requests for production. His refusal occasioned our Motion currently before the Court. *See* Dkt. No. 232. Please provide a timeframe by which Defendants intend to complete a search of these platforms or a written statement that the Defendants do not intend to conduct such a search.

In this same context, the record suggests that, despite that it was used pervasively by Rymark employees including the Defendants for years during periods directly relevant to the case at hand, the entirety of material on the Slack messaging platform was destroyed. We would appreciate a clarification by the Defendants as to the status of the material on the Slack messaging platform and, if it was in fact destroyed, the details regarding the date it was destroyed, any backups or archives that may exist, and an explanation as to why it was not preserved given the present and ongoing litigation.

**C.     Defendants' Withholding or Destruction of Critical Documents**

The May 22 Production includes the July 2020 invitations to the annual general meeting of AmeriMark Group, documents that show Mr. Markosian's stake in AmeriMark Group 6,441,655 shares. These documents are of particular note. These invitations are official shareholder communications, constitute legal notice according to corporate governance practice and the statutes of AmeriMark Group (which Mr. Markosian oversaw and approved) and make it clear that



Mr. Brennan Moss
Mr. Loren Washburn
Mr. Eric Benson
June 2, 2025

Mr. Markosian knew in July 2020 that his shareholding in AmeriMark Group was 24%, not a supermajority stake.  We note however that, despite the fact that all other emails and attachments sent to Rymark's email server by Mr. Colshorn in this period have been produced by the Defendants, including the invitations sent on the same day to Ms. Small and Mr. Kirkland, still missing from Defendants' production is Mr. Colshorn's July 13, 2020 email sent directly to Mr. Markosian.  It is increasingly clear that this email, containing yet more confirmation of Mr. Markosian's 24% stake in AmeriMark Group and his early knowledge thereof, was destroyed to avoid providing the Plaintiffs with evidence debunking the Defendants' "stolen shares" theory and evidence demonstrating that the Defendants' Counterclaims are time-barred.  Please promptly provide an explanation.

Likewise, the sudden appearance of Mr. Gardiner's emails is concerning.  Despite the fact that we have repeatedly told Defendants' prior counsel that a number of emails to and from Mr. Gardiner's Rymark email box had been produced by third parties but not the Defendants, Defendants' counsel repeatedly claimed they had no access to Mr. Gardiner's email box and refused to produce any material from it.

The May 22 Production makes clear that Defendants had Mr. Gardiner's email box in their custody and control the entire time, and that Mr. Gardiner, a Rymark employee at the time, was intimately and pervasively involved in efforts to list Rymark's Swiss holding company, was perfectly aware that Rymark had been contributed into the Swiss holding entity AmeriMark Automotive in 2016, repeatedly told Mr. Markosian and the Malta auditors and lawyers that Rymark would no longer be able to claim "Subchapter S" passthrough taxation treatment because it had a foreign shareholder (AmeriMark Automotive) after 2016 and would instead have to be converted into a normal "C-Corp" subject to corporate level tax at the Federal and Utah state level.  Mr. Markosian ignored these income tax regulations in order to conceal the foreign shareholding from Rymark's lenders, improperly count Rymark as a personal asset of his to improperly inflate the value of his personal guarantee to Rymark's lenders, conceal from his lenders, accountants, and auditors an international structure that would trigger additional due diligence or cause his lenders to decline to lend to Rymark at all, and perpetuate his tax fraud scheme by continuing to improperly claim Subchapter S status for Rymark at both the state and federal levels and failing to disclose his foreign assets and controlled bank accounts to tax authorities.

Beyond the obvious discovery issues presented, the Defendants' actions have materially prejudiced the Plaintiffs as, just for starters, had Defendants properly produced this material as required, Plaintiffs would likely have added Mr. Gardiner as a party to their complaint, changed the entire complexion of his deposition, and made additional requests for production to follow up on his complicity in the AmeriMark scheme, all discovery efforts which would have had a material impact on Plaintiffs' subsequent 30(b)(6) deposition of Rymark.

4



Mr. Brennan Moss
Mr. Loren Washburn
Mr. Eric Benson
June 2, 2025

**D.     The May 22 Production Does Not Appear to Include Many of Mr. Markosian's Personal Devices**

During the tenure of Defendants' former counsel of record we have also repeatedly pointed out that most emails sent from Mr. Markosian's iPad and iPhone, communications which have been revealed directly or indirectly by third party productions, have not been produced by the Defendants. Revisiting Mr. Moss' description of the most recent production, it does not appear that this production materially corrects that lapse.

We are forced to ask for an inventory of Mr. Markosian's personal devices from 2016 to the present, particularly his iPhones and iPads, along with a description of which (if any) were inspected, and an indication if those devices were disposed of or destroyed and when. This is clearly a critical issue as a number of the Defendants' new claims and defenses appear to rely on the absence in Defendants' productions of emails or documents sent to or from Mr. Markosian, documents which third-party production shows were sent from or received by his iPad or iPhone.

**E.     Destruction of Original Signature Documents by Rymark**

Mr. Pehrson has indicated that Rymark habitually destroyed original documents after scanning, including after the onset of this dispute and after Defendants were served with Plaintiffs' First Verified Complaint. Our requests for clarification as to which original documents were destroyed and why Defendants' production has not included any original documents, particularly those signed by the Defendants in connection with the AmeriMark project, have been ignored thus far. We note that none of the material produced in the Defendants' belated May 22 Production appears to include original documents. We request a material update on these points.

We are also still waiting for the return of the hard copy signed documents we provided to Mr. Richards at the Capana 30(b)(6) deposition along with any details of analysis of these documents done by Defendants, as agreed with Mr. Richards.

**F.     Defendants' Deficient Privilege Log**

    **1.     Communications with David Hesterman**

To date, Defendants have submitted a privilege log containing a staggeringly low *eighty entries* that purports to cover a period between 2016-2022. This seems even more unlikely given that to date, Defendants have produced 72,206 non-privileged documents, primarily communications and attachments.

5



Mr. Brennan Moss
Mr. Loren Washburn
Mr. Eric Benson
June 2, 2025

The material produced by Mr. Hesterman pursuant to Plaintiffs' subpoena makes it clear that, prior to choosing to vilify Mr. Hesterman in support of their latest theory of defense, Mr. Pehrson and his colleagues Mr. Goodwin and Mr. Toone at Parr Brown were in regular communication with Mr. Hesterman on a variety of topics including in his capacity as a Rymark employee.

Curiously, after insisting Mr. Hesterman was a central malefactor in this case, we find nothing on the docket addressing Defendants' claims regarding Mr. Hesterman or seeking redress for his failure to file an answer to the complaint against him. It is difficult to imagine in this context that there have been no communications with Mr. Hesterman, no attempt to request discovery from him, and no attempt to depose him in the interim. We also struggle to understand why Defendants have produced so few communications with Mr. Hesterman, during his multi-year tenure as a Rymark employee, much of which touched the AmeriMark project, or logged *any* of his privileged communications with legal counsel.

2. **Defendants' Previously Withheld Communications with Mr. Ellul and Communications Pertaining to AmeriMark**

Emails and testimony from Mr. Gardiner demonstrate that Mr. Pehrson, still at Parr Brown at the time, represented Rymark in connection with the 2017 efforts to list Rymark's Swiss parent AmeriMark Automotive on the Malta Stock Exchange and that Mr. Pehrson was in direct contact with Mr. Ellul, the auditor reviewing the proposed listing, facts confirmed by the 30(b)(6) testimony of Mr. Martinez, Rymark's designated representative, and the deposition testimony of Mr. Leshem.

When Plaintiffs requested Mr. Pehrson's correspondence with Mr. Ellul, which was alluded to in emails from Mr. Gardiner that Plaintiffs only initially discovered through Mr. Hesterman's production, Mr. Pehrson and Mr. Richards vehemently denied any such letter or correspondence existed, going so far as to accuse Plaintiffs' counsel of some unwarranted vendetta against Mr. Pehrson, forcing the Plaintiffs to subpoena Parr Brown to attempt to obtain the letter and the communications surrounding it. Finally, after Plaintiffs obtained the letter independently, Mr. Pehrson was forced to admit its existence and produce his copy of the January 25, 2017 letter he wrote to Mr. Ellul, and an email with the body redacted that he had sent to Mr. Markosian, Mr. Gardiner, and Mr. Kirkland, confirming that he had corresponded with Ellul on behalf of Rymark. Mr. Pehrson's email attached the letter itself, making it crystal clear that Mr. Pehrson was representing Rymark's management at their direction in connection with the AmeriMark project in Malta. *See* RYMARK208299.



Mr. Brennan Moss
Mr. Loren Washburn
Mr. Eric Benson
June 2, 2025

  Clearly, the entire management of Rymark was working with Mr. Pehrson on the AmeriMark Malta effort. The May 22 Production includes even more evidence that Defendants knowingly filed false pleadings to the effect that they had no idea what the AmeriMark entities were and attempted to conceal the early involvement of Mr. Pehrson in the effort to hide this deception from the Plaintiffs' and the Court. Given his status as an officer of the Court, Mr. Pehrson's filing of any pleadings he knew were false is quite concerning. To this date, no emails or documents related to Mr. Pehrson's involvement with Mr. Ellul and AmeriMark's Malta listing have been added the Defendants' privilege log, including the redacted communication in RYMARK208299.

  **3.  Communications with Keddington & Christensen**

  In mid-2017 Mr. Pehrson was involved with Rymark accountant Ted Jenkins in the backdating of legal documents by Mr. Markosian to fabricate a consideration-less contribution of Mr. Markosian's NTM Meineke entity in Rymark. These documents were backdated to falsely claim passthrough taxation for that entity and to cover up the false representation made by the Defendants, including to Swiss auditor Beat Weibel, that NTM Meineke had been a Rymark subsidiary in 2016.

  These documents, prepared by Mr. Pehrson in close coordination with Mr. Markosian and Mr. Ted Jenkins of Keddington & Christensen (and discovery shows that all of them were aware of the Malta efforts), were submitted to the United States Internal Revenue Service to support the false filing. During his deposition testimony Mr. Jenkins acknowledged that the backdating was "illegal." Prior to the backdating scheme, in April-June 2016, NTM Meineke LLC was falsely and repeatedly listed by Ms. Small and Mr. Markosian as a subsidiary of Rymark to induce Swiss auditor Beat Weibel and later Mr. Kammerlander to inflate the value of Rymark to fraudulently increase the share capital of its Swiss parent AmeriMark Automotive.

  Documents produced owing to these material misrepresentations were used to induce shareholders of 4Service Cloud Tech AG to purchase Mr. Markosian's shares of AmeriMark Automotive, and to induce financial services firms to onboard the AmeriMark entities as clients, and to open bank accounts in Switzerland, Germany, and Liechtenstein. Plaintiffs were only able to uncover this tax and securities fraud scheme and Mr. Pehrson's involvement via third party subpoenas to Keddington & Christensen and Rymark accountants White & Associates. No communications related to the fraudulent NTM Meineke transaction and backdating, central to Plaintiffs' claims that Defendants participated in wholesale tax fraud, and fraudulently inflated the value of Rymark to in turn fraudulently inflate the value of AmeriMark Automotive, appear in the Defendants' privilege log.



Mr. Brennan Moss
Mr. Loren Washburn
Mr. Eric Benson
June 2, 2025

### 4. Communications with Plaintiffs

Plaintiffs first began conversations regarding the dispute over ownership of Rymark with Defendants' legal counsel Mr. Pehrson and Mr. Schefer immediately after receiving Mr. Pehrson's false letter of September 16, 2020. These continued until April of 2021 when Mr. Pehrson left Parr Brown to join Kunzler Bean & Adamson and then continued until Plaintiffs filed their complaint in July of 2023. No client correspondence from Parr Brown or KBA email servers regarding these discussions, a period spanning nearly three years, appears in the Defendants' privilege log.

Given the complexity, materiality, and duration of the issues in this dispute, we find it difficult to accept that essentially no communications between Defendants and their legal counsel have taken place in that span. Mr. Pehrson's history of attempting to improperly withhold such communications and documents, even where not privileged, and failing to list them in the Defendants' privilege log when arguably privileged, does not give us confidence that Defendants' have met their discovery requirements in this connection.

Given the May 22 Production, we request an updated privilege log from Defendants including the "Parr Brown and KBA eras," and a statement that all relevant communications and documents have in fact been logged. We would also like a formal statement that all non-privileged communications between present or formal legal counsel to Rymark and third parties like Mr. Ellul, Main Street Limited, foreign attorneys, etc., have been produced.

### G. These Serious Issues Require Serious Consideration

Please understand that the serious issues described herein were directly caused by Defendants and their prior legal counsel. These actions have caused Plaintiffs to expend many hundreds of thousands of dollars of capital and resources. While we continue to hope there is a reasonable explanation for the most egregious issues, the May 22 Production makes this rather unlikely.

We ask that you, as Defendants' new counsel, promptly address these issues in good faith. Only a few of the most egregious examples are listed below:

- There is no possible interpretation of the discovery record to support any contention that Mr. Markosian or Mr. Pehrson believed the words in or the plain meaning of Mr. Pehrson's September 16, 2020 letter;

- It is simply not possible to believe that Mr. Pehrson was not familiar with the AmeriMark project when he wrote the letter;

8



Mr. Brennan Moss
Mr. Loren Washburn
Mr. Eric Benson
June 2, 2025

- It is simply not possible to believe that Mr. Markosian never communicated with his Swiss attorneys at Gysi & Partner in St. Gallen, Switzerland;

- Likewise, it seems impossible to credit the assertion, including in deposition testimony, that no one at Rymark had heard of Whitetree Capital Limited or its signatory Ms. Zorkadi "before the present litigation;" and

- It is clear that, contrary to Defendants' representations to the Court, Defendants may have forged the documents they attribute to others, and did so on their own scanners in their Utah offices and circulated the draft and final versions amongst each other with their own email accounts. Further, it appears Defendants may have destroyed several original signature copies.

We look forward to meeting and conferring about these serious and concerning issues on June 12, 2025.

Despite the serious discovery issues highlighted above, we are still willing to continue discussions to explore if there is any possibility for a resolution before trial.

Sincerely,

John S. Worden

cc: sediamond@venable.com
echristiansen@parsonsbehle.com
Zoe Gallagher

9