Eric Benson (10414)
Loren Washburn (10993)
Brennan Moss (10267)
**PARKINSON BENSON POTTER**
2750 Rasmussen Rd., Suite H-107
Park City, UT 84098
Telephone:
Email: eric@pbp.law
      loren@pbp.law
      brennan@pbp.law

*Attorneys for Defendants Rymark, Inc.,
Nicholas Markosian, John Kirkland, and Vicky Small*

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| CAPANA SWISS ADVISORS AG, a Swiss corporation; AMERIMARK AUTOMOTIVE AG, a Swiss corporation,<br><br>     Plaintiffs,<br><br>vs.<br><br>RYMARK, INC., a Utah corporation; NICHOLAS THAYNE MARKOSIAN, an Individual, JOHN KIRKLAND, an individual; and VICKY SMALL, an individual,<br><br>     Defendants.<br><br>And Related Counterclaims and Third-Party Claims. | **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL THIRD-PARTY FORENSIC INSPECTION OF DEFENDANTS' ELECTRONIC DEVICES**<br><br>Case No. 2:23-cv-00467<br><br>Judge: Hon. Ted Stewart<br><br>Magistrate Judge: Hon. Cecilia M. Romero |

     Defendants hereby file their Opposition to Plaintiffs' Motion to Compel Third-Party Forensic Inspection of Defendants' Electronic Devices (Dkt. No. 298) (hereinafter, the

"Motion").[1]  For the reasons outlined below, Defendants respectfully request that this court deny Plaintiffs' Motion.

## I.   INTRODUCTION

At the bottom of this dispute is Plaintiffs' effort to circumvent regular discovery processes. Each of Plaintiffs' requests for relief constitutes something that could have been acquired through regular discovery processes. But plaintiffs have deviated from regular discovery procedures, and now find they want additional information. Having exhausted their depositions and failed to request the desired information through written discovery, they seek an order from the Court giving them the information they want. For the reasons set forth below, the motion should be denied.

## II.   RELEVANT FACTS

The history of the discovery process for electronically stored information in this case is long. However, Defendants reproduce the relevant facts in a manner helpful for the disposition of this Motion.

### A.   *Defendants Have Made Diligent Efforts to Search and Produce ESI to Plaintiffs*

Plaintiffs have collected and searched more than a decade's worth of emails—many hundreds of gigabytes in all—in their efforts to completely and responsively produce information and documents requested by Plaintiffs. Defendants' effort has required hours upon hours of time and required extensive assistance from Defendant Rymark's internal expert and outside professionals.[2]

---

[1] Defendants note that Plaintiffs' Motion is longer than the allotted 10 pages for "all other motions" under DUCivR 7-1(4)(D)(i). Defendants presume that Plaintiffs understood the courts permission to file a "longer brief" in the Transcript of the October 2, 2024 Hearing (Ex. 1 to Plaintiffs' Motion) to be permission to file an overlength memo. Consequently, Defendants' Opposition to Plaintiffs' Motion is similarly slightly overlength.

[2] *See* Decl. of Chris Adams, attached hereto as Ex. 1, Decl. of Shane Bawden, attached hereto as Ex. 2, Decl. of Scott Tucker, attached hereto as Ex. 3.

2

As an initial step, Defendant Rymark's IT manager, Chris Adams, undertook the challenging task of exporting the work mailboxes of Defendants Nick Markosian, John Kirkland, and Vicky Small (together called, the "Personal Defendants") to an external server.[3] Mr. Adams also has the mailboxes stored in a Google drive.[4] Mr. Adams exported data from the relevant time period, and which would contain data responsive to Plaintiffs' discovery requests, to a well-known eDiscovery Vendor in Salt Lake City, Premier Legal Technologies ("Premier"). At that point, Premier facilitated the search of the data in coordination with Mr. Adams and Defendants.

Mr. Adams also searched for emails from former Rymark employee, Eric Gardiner. Mr. Adams did search for the mailbox but was unable to locate it. It appears that Mr. Gardiner's mailbox was not preserved after he left Rymark in 2017—which occurred well before this dispute and any accompanying duty to preserve documentation.

In the course of meet-and-confer efforts, Defendants disclosed to Plaintiffs the 73 search terms initially utilized to find emails responsive to Plaintiffs' various requests for production.[5] When Plaintiffs' requested that 34 additional search terms be added to these,[6] Defendants incorporated them into their search. Defendants made this accommodation, even though the parties did not have an ESI discovery agreement.

And when Plaintiffs alleged that a certain document provided by Whitetree was missing from Defendant Nick Markosian's production, specifically Ex. 6 to Plaintiffs' motion (WHITETREE000029-WHITETREE000031), Defendants hired a digital forensics expert Scott Tucker of Aptegra Consulting, to try to determine why the document could not be found in

---

[3] *See* Ex. 1, Adams Decl., at ¶¶ 6-7.  Mr. Gardiner's departure thus preceded this dispute by roughly three years and prior to any retention obligations.
[4] Ex. 1, Adams Decl., at ¶7.
[5] *See* January 17, 2024 Letter from Chad Pehrson to Erik Christiansen and Sarah Diamond, at 6-8, attached hereto as Ex. 4.
[6] *See* January 24, 2024, Letter from Erik Christiansen to Chad Pehrson, at 2-3, attached hereto as Ex. 5.

3

Defendants production.[7] Mr. Tucker was also retained to address concerns raised by Plaintiffs' about emails alleged to be missing that had been sent from Mr. Markosian's iPad. Incidentally, Mr. Tucker was unable to locate the email identified as Ex. 6 to Plaintiffs' Motion.[8] However, through his extensive forensic work, he was able to find additional documents that Defendants used to supplement their production.

Similarly, when Plaintiffs requested a search of other email addresses for Mr. Markosian including "markosianauto1@gmail.com," Defendants' earlier counsel investigated and "determined that the address is used for Rymark's software subscriptions, which have nothing to do with this case."[9]

In all, these efforts to respond to Plaintiffs' discovery requests have required countless hours and have cost Rymark Defendants tens of thousands of dollars.

### B. Plaintiffs Depose Witnesses Prior to the Disposition of This and Other Discovery Disputes.

Plaintiffs made the strategic decision to depose several individuals prior to the disposition of various discovery disputes, including those presently before the court. For instance, they took the deposition of Defendant Nicolas Markosian on August 8, 2024.[10] Plaintiffs took Defendant John Kirkland's deposition on August 26, 2024.[11] They took Defendant Vicky Small's deposition on August 20, 2024.[12] Finally, Plaintiffs took Rymark's 30(b)(6) deposition on

---

[7] *See* Tucker Decl., attached as Ex. 3.
[8] It should be noted that alleged missing email was provided via a third-party subpoena to Whitetree, which for reasons unexplained, refused to provide native copies and instead delivered its production on printed paper, conspicuously depriving the parties of meta-data. Indeed, at the heart of Defendants' counterclaims are allegations of forgery and deceptive practices by Whitetree. So, Defendants naturally view Whitetree's alleged email, in non-native format and without metadata, with suspicion.
[9] Defs.' Opp. To Pls.' Short Form Mot. to Compel Search of Additional Communication Platforms, (ECF No. 244), at 2.
[10] *See* Caption Page of Dep. Tr. of Def. Nicholas Markosian, attached hereto as Ex. 6.
[11] *See* Caption Page of Dep. Tr. of Def. John Kirkland, attached hereto as Ex. 7.
[12] *See* Caption Page of Dep. Tr. of Def. Vicky Small, attached hereto as Ex. 8.

January 15, 2025.[13] Each of these depositions could have been scheduled after document and ESI requests.

Plaintiffs now find themselves in the position where they would like additional information from these deponents, such as inventories of devices and servers. However, they seek this information in violation of the Rules because they have exhausted their time to depose the witnesses.

### III.    ARGUMENT

Plaintiffs now argue that Defendants have not met their obligation to conduct a reasonable search for responsive information" required by the Federal Rules. *Denson v. Corp. of President of the Church of Jesus Christ of Latter-day Saints*, No. 2:18-CV-00284, 2020 WL 3507410, at *4 (D. Utah). Consequently, Plaintiffs argue that they are entitled to an independent forensic inspection of various Rymark platforms and *personal* platforms belonging to Mr. Markosian. Plaintiffs also argue that Defendants should be compelled to answer a number of questions under oath. Neither request should be granted.

### A. Defendants Have Engaged in Reasonable and Diligent Efforts to Search for and Produce Responsive Information

Contrary to Plaintiffs' assertions in their motion, Defendants have engaged in diligent efforts to collect and produce discovery. Indeed, Defendants' efforts have been more than reasonable. As described in Section II.A, *supra*, Defendants have employed internal and external experts to collect and search vast amounts of data. Defendants have collaborated with Plaintiffs on search terms and have hired forensic experts to address Plaintiffs' concerns about allegedly missing emails and whether data has been fully retrieved from devices. While discovery disputes have remained, it cannot be said that Defendants have failed "to conduct a reasonable search for

---

[13] *See* Caption Page of Dep. Tr. of Def. Rymark's 30(b)(6), attached hereto as Ex. 9.

5

responsive information" as required by the Federal Rules. *Denson*, 2020 WL 3507410, at *4 (D. Utah). Indeed, Defendants have gone above and beyond to retain a forensic expert to look into Plaintiffs concerns regarding emails missing from mailboxes or devices. Furthermore, as mentioned above, Defendants have spent roughly tens of thousands of dollars. At some point, these efforts need to be deemed enough—indeed the rules have deemed them enough.

### B.  An Independent Forensic Examination is Inappropriate in this Case.

Notwithstanding Defendants' good faith efforts outlined above, Plaintiffs assert Defendants have not done enough. They now seek an independent forensic search of Mr. Markosian's Apple devices, Mr. Markosian's and Rymark, Inc.'s Microsoft Exchange mail servers and any file servers or back-up files; Mr. Markosian's personal email accounts; and the Slack messaging channel used by Rymark Inc. and Mr. Markosian." This motion should be denied because (1) these disputes could have been avoided if Plaintiffs' sought an ESI Search Agreement early in discovery, (2) the circumstances of this case don't warrant forensic imaging under the case law of this jurisdiction, and (3) forensic imaging is not proportional to the needs of the case.

#### 1. *Plaintiffs' attempts to micromanage searches at this late stage is discovery in reverse.*

Plaintiffs' demands that new sources be searched and that searched sources be independently searched are, frankly, the types of issues that could have, and should have, been headed off in an ESI Search Agreement. However, rather than seek such an agreement early on in discovery, Plaintiffs first sought an order to search additional platforms in January 2025, well into discovery.[14] Plaintiffs' demand is similar to their request to have their own search terms run

---

[14] *See*, Pls.' Short Form Mot. to Compel Search of Additional Communication Platforms, (ECF No. 232).

through Defendants' data *only after* deciding they weren't satisfied with Defendants' production. As a courtesy in that instance, Defendants added Plaintiffs' requested search terms. However, what was sought then through a meet-and-confer letter, and what is sought now by motion to the Court, are things that could easily have been agreed to in an ESI Search Agreement. The result is that Plaintiffs are conducting discovery backwards. If Plaintiffs wanted to micromanage the terms and platforms to be searched, they could have, and should have, negotiated an ESI Search Agreement.

## 2. *The Circumstances in this case do not warrant forensic imaging under case law.*

Contrary to Plaintiffs' assertions, Defendants have met, and continue to meet, their discovery obligations. Consequently, forensic inspection of devices and sources are not justified under the case law of this Court.

In support of their position, Plaintiffs cite *Denson v. The Corp. of the President of the Church of Jesus Christ of Latter-day Saints*, where the court ordered forensic inspection of certain devices and accounts in a case where the court held a party had clearly failed in her discovery obligations. 2020 WL 3507410. That case featured unique circumstances in which a recording was alleged to exist, but the story of where it was stored changed over time. The Court ultimately concluded that in such "circumstances [] which include[d] the loss of evidence, the changing stories of Plaintiff concerning this evidence and how it was stored" and erratic, conflicting representations to the court, an independent forensic analysis was warranted. *Id.*, at *5. No such circumstances exist in the present case. Instead, Defendants have engaged in good faith efforts to provide responsive information.

Plaintiffs also cite *Eagle Air Med Corp. v. Sentinal Air Med. All.* in support of their position. Case No. 2:16-cv-00176-TC-EJF, 2018 WL 6304835 (D. Utah Dec. 3, 2018). *Eagle*

7

featured a party who admitted in deposition that he "chose not to produce documents because, in short, he did not think [the other parties] deserved to have the information." *Id.*, at *2. The case here could not be more different. Here Defendants have responded to repeated requests for expansion of search terms and more intrusive searches. Defendants have spent tens of thousands of dollars to have third parties search the very devices Plaintiffs want searched. Defendants are not unwilling to produce documents; it is simply apparent that the documents Plaintiffs think should be found[15] simply do not exist. Unlike *Eagle*, here Defendants have not refused to produce documents, much less admitted in depositions that they deliberately failed to produce documents. Rather, Plaintiffs simply refuse to accept the results of Defendants reasonable and extensive searches; in such circumstances neither *Eagle* nor any other case cited by Plaintiffs justifies a court-ordered additional forensic search.

Finally, Plaintiffs cites *Jacobsen v. Starbucks Coffee Company*, from the District of Kansas, in support of their position. Case No. 05-1338-JTM, 2006 WL 3146349 (D. Kan. Oct. 31, 2006). In that case, the court ordered production of a computer, or mirror image thereof, that was not timely searched, and that when searched, was searched with only 4 terms. The court found the forensic search justified because "the record before the court reflect[ed] a history of incomplete and inconsistent responses to plaintiffs' production requests." *Id.*, at *7. No such record has been established before this Court. Moreover, in this case multiple data sources were searched with 73 initial search terms, and then an additional 34 at the request of Plaintiffs. When

---

[15] Plaintiffs fairly explicitly argue that the reason they believe the documents they are seeking must be on the Defendants devices is that a third-party corporation that is no longer in existence, White Tree, produced a hard copy of an email, containing no meta-data. However fervently they believe this document must exist does not change the fact that third party searches that would have found it if it did exist have not uncovered the email on the Defendants' servers or devices.

even that would not satisfy Plaintiffs, Defendants hired expensive third-party consultants to search again.

None of the cases cited by Plaintiffs justify an independent forensic investigation of the data sources requested by Plaintiffs. Plaintiffs have identified no evidence that there has been any deletion of relevant emails during the discovery period.

### 3. *Plaintiffs' requested forensic searches are not proportional to the needs of the case.*

In light of the extensive efforts to find and produce responsive discovery outlined in Section II.A above, an independent forensic search of the data sources requested by Plaintiffs is simply not "proportional to the needs of the case." *United States v. Talmage,* Case No. 1:16-cv-19-DN-PMW, 2017 WL 1047315, *2 (D. Utah March 17, 2017). The "proportionality concept seeks to eliminate unnecessary or wasteful discovery and to impose careful and realistic assessment of actual need." *Swasey v. W. Valley City,* Case No. 2:13-cv-768-DN, 2016 WL 6947021, at *1 (D. Utah Sept. 6, 2016) (internal quotation marks omitted).

For instance, Plaintiffs have already gone to extensive lengths to alleviate Plaintiffs concerns about Mr. Markosian's iPad. When Plaintiffs' originally raised concerns about whether emails had been retained from Mr. Markosian's iPad, Plaintiffs retained a forensic expert to look into the issue. Additional efforts on this front, when weighed against Federal Rule 26's factors for proportionality, would result in "unnecessary and wasteful discovery" and are not calibrated against a "realistic actual need." [16]

---

[16] The full list of factors to be weighted on a proportionality question are: "[1] the importance of the issues at stake in the action, [2] the amount in controversy, [3] the parties' relative access to relevant information, [4] the parties' resources, [5] the importance of the discovery in resolving the issues, and [6] whether the burden or expense of the proposed discovery outweighs its likely benefit." *Talmage*, 2017 WL 1047315, at*1 (quoting Fed. R. Civ. P. 26(b)(1).

Similarly, searching Mr. Markosian's personal email addresses at markosianauto1@gmail.com or nickwvap@netscape.com is also not proportional to the needs of the case. *Talmage,* Case No., 2017 WL 1047315, *2. As described in Defendants Opposition to Plaintiffs' Short Form Discovery Motion to Compel Search of Additional Communication Platforms (EFC No. 244, at 2), "Defendants' [earlier] counsel investigated and determined that the address [markosianauto1@gmail.com] is used for Rymark's software subscriptions, which have nothing to do with this case."[17] Similarly, productions "do not even contain a hint that Mr. Markosian's Netscape email address will contain responsive documents."[18] Consequently, a forensic search of these sources would ultimately result in "additional and wasteful discovery." *Swasey*, 2016 WL 6947021, at *1.

Likewise, Plaintiffs' late-coming demand that Defendants allow a forensic search of their slack channels is not "proportional to the needs of the case." *Talmage,* Case No., 2017 WL 1047315, *2. Defendants have represented that their clients, upon being interviewed, indicated that Slack was never used for the financing matters at issue in this litigation, but rather for the day-to-day running of Rymark's used car business.[19] The documents that Plaintiffs point to indicating that the Defendants used slack at all,[20] each indicate that slack was being used only for the day-today business of Rymark's care sales. For instance, RYMARK124143 attached as Ex. 7 to Plaintiffs' Motion states, "Create a slack channel or Key word to alert Nick when specific cars are having multiple issues, so he does not keep buying cars with these issues." Such clues that Slack was used hardly indicate that it was used to discuss the financing issue at the heart of this

---

[17] ECF No. 244, at 2.
[18] *Id.*
[19] *See* Defs.' Opp'n to Pls.' Short Form Disc. Mot. to Compel Search of Additional Communication Platforms (ECF No. 244), at 2.
[20] *See* Ex. 7 to Plaintiffs' Motion.

10

litigation. On balance, when considering the factors that weigh on proportionality, a search of Slack is not likely to result in "resolving the issues." *Talmage*, 2017 WL 1047315, at*1. Furthermore, the "burden and expense of the proposed discovery outweighs its likely benefit" after all the other discovery that has been done. *Id*. Plaintiffs' request regarding a search this late in the game of Defendants' Slack should be denied.

Ultimately, the same proportionality argument applies to a forensic search of Mr. Markosian's and Rymark's Microsoft Exchange mail servers and any file servers and back up files. The repositories that would have responsive information have been searched at great time and expense by Plaintiffs as outlined above. Their forensic inspection is not justified and would not be the result of "careful and realistic assessment of actual need." *Swasey*, 2016 WL 6947021, at *1.

### C. Questions Under Oath

Finally, Plaintiffs ask the court to compel Defendants to answer seven specific questions under oath. This part of the Motion should be denied because (1) it attempts to do discovery out of order and (2) it seeks discovery on discovery.

> **1. *The questions proposed by Plaintiffs for Defendants to answer under oath could have, and should have, been asked at deposition.***

Most of the questions Plaintiffs ask the Court to compel Defendants to answer under oath would have been more appropriately asked under oath at deposition. For instance, the demand for "[a] detailed explanation of where the documents from the May 22, 2025, production were recovered from" would have been more appropriately posed to Rymark as part of its 30(b)(6) deposition. However, since Plaintiffs took that deposition 8 months ago, they now seek a work-around that should be denied.

Similarly, the demand for "[a] list of all data backup systems utilized by Rymark and affiliated entities…" would be more appropriately asked in depositions, which again, were taken 8 months to a year ago. The same is true of the demand for a statement of "inventory of email server log files … covering the period 2016-2023" and "[a]n explanation as to why the mailbox 'scanner@markosianautocom' was deleted and the date of such deletion." Importantly, Defendants note that this demand misrepresents the actual facts, as this mailbox was not deleted, and has, in fact been examined by inside and outside experts for Defendants. The scanner data was retained, it just does not contain the information Plaintiffs wish it does. Instead, it contains error messages. But that aside, these questions could also have been posed as interrogatories. However, having failed to seek this information properly, Plaintiffs now ask the Court to compel a statement under oath on this issue as a work-around. The Court should deny this portion of the motion.

The requests for inventories of devices from Mr. Markosian, Ms. Small, and Mr. Kirkland should have been asked in each Defendants' deposition, or at least in an interrogatory. But again, having failed to seek this information in the appropriate manner, Plaintiffs now ask the Court to create a work-around to rehabilitate Plaintiffs' failures earlier in discovery.

For this reason alone, Plaintiffs' motion on this request should be denied.

### 2. The Statements under oath sought by Plaintiffs impermissibly seeks discovery on discovery, without actually using the proper discovery tools.

As demonstrated in Section III.C.1, supra, Plaintiffs have failed to employ usual discovery methods to acquire the discovery on discovery they seek. Even when properly conducted, "discovery on discovery…is permitted only where there is reasonable doubt about the sufficiency of a party's response." *Podium Corp. Inc. v. Chekkit Geolocations Servs, Inc.*, Case No. 2:20-cv-00352, 2022 WL 1773016, at *5 (D. Utah June 1, 2022). Generally, discovery on

discovery is conducted through traditional discovery tools, such as depositions, interrogatories, or requests for admission.[21] Plaintiffs have failed to use any of the generally accepted discovery tools to seek their discovery on discovery, but rather move the Court to compel statements under oath. Plaintiffs' effort to circumvent the regular discovery process to acquire discovery on discovery, which is already generally disfavored by the courts, should not be permitted.

The *Podium* court notes that verification of a reasonably diligent search could be required where a parties "counsel admitted he made no effort to verify whether his clients conducted an adequate search." *Id.*, at *5. However that is not the case here, where as Section II.A, *supra*, describes, Defendants engaged in a time-consuming, costly, and involved effort to execute a reasonably diligent search. For this reason as well, Plaintiffs' efforts to acquire discovery on discovery should be denied.

## IV.     CONCLUSION

Plaintiffs motion should be denied for the reasons outlined above. Plaintiffs have used this Motion, and the meet-and-confer process preceding it, to circumvent the normal discovery process. For that reason alone the motion should be denied. Additionally, Plaintiffs' requested relief fails the proportionality test under Federal Rule 26 and impermissibly seek discovery on discovery.

It is understandable that Plaintiffs want to leave no stone unturned; however, in this case every reasonable stone has been turned by Defendants. Defendants have done everything the rules require – and more – to search for and produce relevant information. Plaintiffs chose not to pursue additional discovery through agreed protocols or timely questions, and now ask this Court

---

[21] *See* Stephanie A Blair, Lorraine M. Casto, and Jennifer Mott Williams, *Discovery on Discovery*, Practical Law (Thomson Reuters 2014) available at https://www.morganlewis.com/-/media/files/publication/outside-publication/article/practicallaw_discoveryondiscovery_march2014.pdf ("The most common forms of discovery on discovery include interrogatories, requests for admission and depositions.").

to intervene without any evidence of a discovery violation. Equity and the law do not support such relief. Accordingly, the motion should be denied.

DATED this 12th day of August 2025

**PARKINSON BENSON POTTER**

*s/ Brennan H. Moss*
Brennan H. Moss
Eric G. Benson
D. Loren Washburn
2750 Rasmussen Rd, Suite H-107
Park City, UT 84098
(415) 534-7970
brennan@pbp.law
eric@pbp.law
loren@pbp.law

*Attorneys for Rymark, Inc. Nicolas Thayne Markosian, John Kirkland, and Vicky Small*

## CERTIFICATE OF SERVICE

I hereby certify that on August 12, 2025, I electronically filed the foregoing with the Court using the electronic filing system, which sent notification of such filing to the other attorneys of record.

   /s/ *Brennan H. Moss*