Christopher M. Von Maack (10468)
   vonmaack@mvmlegal.com
**MCNEILL | VON MAACK**
236 South 300 East
Salt Lake City, Utah 84111
Telephone: 801.823.6464

Andrew B. Peretz (*pro hac vice*)
   aperetz@peretzlawpa.com
**LAW OFFICES OF ANDREW B. PERETZ P.A.**
One East Broward Boulevard, Suite 700
Fort Lauderdale, Florida 33301
Telephone: 954.558.8829

Attorneys for Third-Party Defendant Ashley Miron Leshem

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **CAPANA SWISS ADVISORS AG**, a Swiss corporation; and **AMERIMARK AUTOMOTIVE AG**, a Swiss corporation,<br><br>          Plaintiffs,<br><br>v.<br><br>**RYMARK, INC.**, a Utah corporation; **NICHOLAS THAYNE MARKOSIAN**, an individual; **JOHN KIRKLAND**, an individual; and **VICKY SMALL**, an individual,<br><br>          Defendants. | **REPLY MEMORANDUM SUPPORTING THIRD-PARTY DEFENDANT ASHLEY MIRON LESHEM'S MOTION TO DISMISS AMENDED THIRD-PARTY COMPLAINT**<br><br>**HEARING REQUESTED** |
| **RYMARK, INC.**, a Utah corporation; and **NICHOLAS THAYNE MARKOSIAN**, an individual,<br><br>          Counterclaim Plaintiffs,<br><br>v.<br><br>**CAPANA SWISS ADVISORS AG**, a Swiss corporation; and **AMERIMARK AUTOMOTIVE AG**, a Swiss corporation.<br><br>          Counterclaim Defendants. | **Case No. 2:23-cv-00467-TS-CMR**<br><br>**District Judge Ted Stewart**<br><br>**Magistrate Judge Cecilia M. Romero** |

**RYMARK, INC., a Utah corporation; and NICHOLAS THAYNE MARKOSIAN, an individual,**

  **Third-Party Plaintiffs,**

**v.**

**SHAEN BERNHARDT, an individual; ASHLEY MIRON LESHEM, an individual; DAVID HESTERMAN, an individual; NICOLAI COLSHORN, an individual; STEFAN KAMMERLANDER, an individual; ALEXANDER COENEN, an individual; MARTIN FASSER HEEG, an individual; AMERIMARK GROUP AG, a Swiss corporation; and PHILOMAXCAP AG,  a German corporation,**

  **Third-Party Defendants.**

2

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ 4

OBJECTIONS................................................................................................... 6

ARGUMENT .................................................................................................... 6

INTRODUCTION ............................................................................................. 6

I.      The Exchange Act Does Not Provide Sufficient Basis to Invoke Personal
        Jurisdiction over Leshem. ..................................................................... 10

II.     The State Securities Law Claim Should be Dismissed.......................... 18

III.    Conspiracy Theory Does Not Convey Personal Jurisdiction Over Leshem. ................... 19

IV.     Third-Party Plaintiffs Failed to Satisfy Their Burden Under Traditional
        Jurisdiction Tests to Hale Leshem into Utah. ....................................... 21

V.      Exercising Personal Jurisdiction Over Leshem Would Violate Due Process................. 26

VI.     Jurisdictional Discovery Should Not be Permitted................................ 26

VII.    Third-Party Plaintiffs Fail to Show that the Economic Loss Rule Is Inapplicable.......... 27

VIII.   Third-Party Plaintiffs Failed to Adequately Plead Civil Conspiracy.............................. 28

IX.     Third-Party Plaintiffs' Fraudulent Inducement Claim Fails for Lack of
        Particularity............................................................................................. 29

X.      Third-Party Plaintiffs' Civil Theft Count Should Be Dismissed. .................................... 29

XI.     Third-Party Plaintiffs Failed to Plead an Essential Element of Conversion..................... 31

CONCLUSION................................................................................................. 31

WORD COUNT CERTIFICATION .............................................................. 32

CERTIFICATE OF SERVICE ....................................................................... 33

# TABLE OF AUTHORITIES

## Cases

*Absolute Activist Value Master Fund, Ltd. v. Ficeto*, 677 F.3d 60 (2d Cir. 2012) ...................... 14

*Applied Predictive Techs., Inc. v. MarketDial, Inc.*, 598 F. Supp. 3d 1264 (D. Utah 2022)........ 26

*Archangel Diamond Corporation Liquidating Trust v. OAO Lukoil*, 75 F. Supp. 3d 1343 (D. Colo. 2014) ........................................................................................................................... 17

*Brereton v. Bountiful City Corp.*, 434 F.3d 1213 (10th Cir.2006)................................................ 17

*Calder v. Jones*, 465 U.S. 783 (2006)........................................................................................... 21

*Das v. Rio Tinto PLC.*, 332 F. Supp. 3d 786 (S.D.N.Y. 2018) ...................................................... 16

*GeometWatch Corp. v. Hall*, No. 114-cv-60-JNP-PMW, 2017 WL 1136946 (D. Utah Mar. 27, 2017) ........................................................................................................................................ 28

*Hanks v. Anderson*, No. 2:19-cv-999-DBB-DAO, 2023 WL 4137327 (D. Utah June 22, 2023) 27

*Labertew v. WinRed, Inc.*, No. 2:21-CV-555-TC, 2022 WL 1568924 (D. Utah May 18, 2022) 28, 30

*Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247 (2010)....................................................... passim

*Nelson v. Phillips*, 2024 UT 30, 554 P.3d 1075........................................................................ 19, 24

*Raser Techs., Inc. v. Morgan Stanley & Co., LLC*, 2019 UT 44, 449 P.3d 150.................... 18, 19

*Red River Resources, Inc. v. Mariner Systems, Inc.*, 2012 WL 2507517 (D. Ariz. June 29, 2012) ................................................................................................................................................. 16

*REI Holdings, LLC v. LienClear - 0001, LLC*, No. 2:17-CV-00564, 2019 WL 498356 (D. Utah Feb. 8, 2019) ............................................................................................................................. 23

*Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935 (11th Cir.1997).......... 17

*SEC v. Scoville*, 913 F.3d 1204 (10th Cir. 2019)........................................................................ 10

*Shipp v. Int'l Auto Grp. of S. Fla., Inc.*, No. 2:16-CV-24 TS, 2016 WL 3951079 (D. Utah July 20, 2016) .................................................................................................................................... 25

*State v. Stevens*, 2011 UT App 366, 264 P.3d 555 ...................................................................... 30

*Thorp v. Charlwood*, 2021 UT App 118, 501 P.3d 1166............................................................. 26

*Walden v. Fiore*, 571 U.S. 277 (2014).......................................................................... 21, 22, 23

*Ward v. McGarry*, 2022 UT App 62, ¶ 22, 511 P.3d 1213, *reh'g denied* (July 6, 2022), *cert. denied*, 526 P.3d 828 (Utah 2022) ............................................................................................ 27

Wenz v. Memery Crystal, 55 F.3d 1503 (10th Cir. 1995)............................................................. 23

*XMission, L.C. v. PureHealth Research*, 105 F.4th 1300 (10th Cir. 2024) ................................. 24

*Younique, L.L.C. v. Youssef*, No. 2:15–CV–00783–JNP–DBP, 2016 WL 6998659 (D. Utah Nov. 30, 2016) .................................................................................................................................... 21

## Statutes

UTAH CODE ANN. § 76-6-404 ....................................................................................................... 29

UTAH CODE ANN. § 76-6-405 ....................................................................................................... 29

UTAH CODE ANN. § 76-6-406 ....................................................................................................... 29

UTAH CODE ANN. § 76-6-407 ....................................................................................................... 29

UTAH CODE ANN. § 76-6-408 ................................................................................................. 27, 29

UTAH CODE ANN. § 78B-3-205....................................................................................................... 25

## Other Authorities

17A Am. Jur. 2d Contracts § 17 .................................................................................................... 27

**Rules**

DUCivR 7-1 ................................................................................................................... 5

Fed. R. Evid. 602 .......................................................................................................... 5

Fed. R. Evid. 901 .......................................................................................................... 5

Pursuant to DUCivR 7-1, Leshem respectfully submits this reply memorandum supporting his motion to dismiss (ECF 301) ("Motion").[1]  *See* DUCivR 7-1.

## OBJECTIONS

Leshem objects to Paragraphs 5–20, 22, 25, and the second sentence of Paragraph 22 of the Moss Declaration (ECF 312-1) as lacking personal knowledge.  *See* Fed. R. Evid. 602.  Leshem objects to Exhibits A–N of the Moss Declaration as lacking adequate foundation or authentication.  *See* Fed. R. Evid. 901(a).  Mr. Moss neither authored nor received (outside of his capacity as counsel in this matter) Exhibits 6–25, 29–31, and 33 which he purports to authenticate.

## <u>ARGUMENT</u>

### INTRODUCTION

Third-Party Plaintiffs present nothing in their Opposition (ECF 312) that is sufficient to overcome their burden to demonstrate that (1) this Court has personal jurisdiction over Leshem and (2) their causes of action have properly been pleaded.  The Motion should be granted.

As to personal jurisdiction, Third-Party Plaintiffs recently added a new Fourth Cause of Action in their Amended Third-Party Complaint ATPC, alleging federal securities violations under the Exchange Act.  From here, Third-Party Plaintiffs argue that, because the Exchange Act allows for nationwide service of process, Third-Party Plaintiffs were not required to demonstrate that Leshem has "minimum contacts" with Utah.  However, the Exchange Act cause of action must be dismissed as a matter of law because none of the transactions involve the purchase and sale of securities listed on a **domestic** exchange or involve **domestic** transactions in "other securities" as

---

[1] Except where otherwise noted, capitalized terms in this reply have the same meaning set forth in the Motion.

required under the U.S. Supreme Court's seminal decision in *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247 (2010) (Scalia, J). Moreover, Third-Party Plaintiffs admit in the ATPC that they never sold any shares in Rymark. ATPC ¶ 20. Thus, they contradict their own concocted argument that there were domestic transactions in other securities.

Because the Exchange Act cause of action fails here, Third-Party Plaintiffs were still required, but failed, to demonstrate that this Court has personal jurisdiction over Lesham under the traditional minimum contacts test. Indeed, as shown below, Third-Party Plaintiffs fail to properly analyze the personal jurisdiction test according to binding U.S. Supreme Court and Tenth Circuit precedent, which requires this Court to consider only the contacts that Leshem *himself* has made with Utah – and not those of Third-Party Plaintiffs. This is a critical failure by Third-Party Plaintiffs. Third-Party Plaintiffs' insistence in their Opposition that they simply can rely on Leshem's alleged, mere mentions of or reference to Rymark's assets or to Utah's raw resources and economic or marketplace attributes to establish personal jurisdiction over Leshem is incorrect.

Third Party Plaintiffs do not dispute that Leshem, solely from his office in Florida and pursuant to a Listing Agreement executed by Third-Party Plaintiffs and Leshem, provided consulting services to Third-Party Plaintiffs. The goal of these services, requested by Third-Party Plaintiffs, was to allow Third-Party Plaintiffs to raise critical capital in Europe by *their* retention of a cadre of foreign-based legal and financial professionals that were successful in getting two new foreign entities capitalized and listed on a European exchange that would financially benefit Third-Party Plaintiffs because they were the true owners of such new entity. Third-Party Plaintiffs failed to inform the Court that these new entities – AmeriMark Automotive AG and AmeriMark Automotive Group– were successfully created and capitalized in Switzerland and their shares were

successfully admitted to trading on a European exchange. [*See* Leshem Decl. ¶¶ 21—28 (ECF 253).] Only after a year later, Third-Party Plaintiffs sought to disavow anything having to do with the AmeriMark entities, the foreign professionals that were retained by Third-Party Plaintiffs, and any of the foreign transactions Third-Party Plaintiffs approved in Europe. Rather, now, after the dust has settled, Third-Party Plaintiffs seek to vilify Leshem at every turn. It is noteworthy that Third-Party Plaintiffs did not sue Leshem initially – they only did so almost four years later in response to *Plaintiffs'* lawsuit against Defendants (which include Third-Party Plaintiffs).

Stripped to its core, and ignoring the hyperbole against Leshem in Third-Party Plaintiffs' ATPC and Opposition, Third-Party Plaintiffs have no basis to bring the Exchange Act (or any of the other causes of action against Leshem). In their Opposition, Third-Party Plaintiffs failed to refute or even distinguish the transactional based, bright-line test established by *Morrison.* The subject transactions were plead vaguely at best in the ATPC. Only now, in their Opposition (an improper platform to do so) do Third-Party Plaintiffs attempt to allege that the subject transactions involved domestic transactions in other securities, as required by *Morrison*. They fail miserably here.

One thing is now clear: No shares owned by Third-Party Plaintiffs were ever admitted for sale on a domestic exchange, a point never disputed by Third-Party Plaintiffs. The only question remaining for this Court on the Exchange Act claim is whether the subject transactions, all foreign-based, can properly be characterized as transactions in securities that occurred in the U.S. Applying the presumption against extraterritoriality, a standard established by *Morrison* and again ignored by Third-Party Plaintiffs, Third-Party Plaintiffs failed to carry their burden to demonstrate that the subject transactions were domestic securities. As such, both the federal securities cause

of action (Fourth Cause of Action) and Utah securities cause of action (Third Cause of Action) should be dismissed as a matter of law. Applying the traditional minimum contacts test – one that applies to all remaining causes of action – Third-Party Plaintiffs failed to sustain their burden to show that the Court has personal jurisdiction over Leshem.

As to personal jurisdiction for the remaining claims brought by Third-Party Plaintiffs, they fail to meet their burden here too. Leshem never set foot in Utah and only made phone calls and sent emails to Third-Party Plaintiffs in Utah – contacts that are insufficient to establish minimum contacts. In their Opposition, Third-Party Plaintiffs fail to distinguish the numerous, instructive cases cited by Leshem in his Motion that such calls or emails cannot confer personal jurisdiction. Perhaps recognizing their failure here, Third-Party Plaintiffs spent considerable time at the very outset of their Opposition alleging, among other things, that (a) the "scheme" has "Utah connections," was of "deep importance" to Utah, and (b) that an application to start the process of getting the Swiss entity AmeriMark Automotive Group listed on a European stock exchange "mentions Utah dozens of times," refers to other companies that reside in and outside of Utah and refers to a map that shows distances between two Utah cities, all in an effort to try and demonstrate that Utah has an interest in haling Leshem into Court here. However, Third-Party Plaintiffs' arguments are all in vain. All of these mere references, even if true, are irrelevant to the personal jurisdiction analysis. None of them show (nor any of the other allegations demonstrate) that Leshem sought the all-important protections from Utah. Only the *defendant* himself or *his actions* can serve as a basis properly to hail the out of state resident into Utah.

Now that the stock of AmeriMark Automotive Group apparently tanked in Europe after its listing on a foreign exchange, leaving its alleged owners Third-Party Plaintiffs scrambling, they

are on a mission to hold everyone (including Leshem) but themselves responsible for their dire economic consequences. In an attempt to divert this Court's attention, they have attempted to vilify Leshem by raising scandalous and impertinent allegations that truly have no place in the record and certainly not at this stage of the proceedings, if at all.

Third-Party Plaintiffs failed to carry their burden to establish this Court has personal jurisdiction over Leshem. And, as shown below, they have failed to demonstrate that all of their causes of actions are properly plead and otherwise state a valid cause of action.

## I.    THE EXCHANGE ACT DOES NOT PROVIDE SUFFICIENT BASIS TO INVOKE PERSONAL JURISDICTION OVER LESHEM.

In their Opposition, Third-Party Plaintiffs argue first that that the Court has personal jurisdiction because the Exchange Act cause of action permits nationwide service of process without the need to establish jurisdiction under the traditional "minimum contacts" test under Utah law. [Opposition at 13–14 (ECF 312).] Whatever the merits of that argument, it is irrelevant. For numerous reasons, the Exchange Act cause of action should be dismissed as a matter of law, their argument that nationwide service applies rejected and they cannot bypass the traditional "minimum contacts" test.

For ease of organization, Leshem will present his "Exchange Act" reply all in one section here. First, Third-Party Plaintiffs have failed to state a cause of action under the Exchange Act because, as a threshold matter, there are no domestic transactions in securities, or securities listed on a domestic exchange. In fact, Third Party Plaintiffs admit there are no securities listed on any U.S. exchange. Second, Third-Party Plaintiffs have failed to adequately plead for relief under the Exchange Act.

Contrary to Third-Party Plaintiffs' argument, dispensing with the traditional minimum contacts test here would be improper and otherwise contrary to settled law.  First, Third-Party Plaintiffs do not dispute that they have they have the "burden of establishing personal jurisdiction" over Leshem.  [Opposition at 12 (ECF 312); Motion at 28 (ECF 301).]  Third-Party Plaintiffs fail to refute or even acknowledge that there is a "presumption against extraterritoriality" (*i.e.*, which disfavors the application of the Exchange Act to securities transactions occurring outside the U.S.**)** that must be overcome before a claim under Section 10(b) and Rule 10b-5 can be asserted.  *See Morrison,* 561 U.S. at 266; *see also SEC v. Scoville*, 913 F.3d 1204, 1215 (10th Cir. 2019) (recognizing the presumption).  Against this background, Third-Party Plaintiffs' arguments in favor of finding the presence of "domestic transactions in other securities" fail.

Nowhere in their ATPC do Third-Party Plaintiffs allege that domestic transactions were involved, which is odd given that Third-Party Plaintiffs go to great lengths in their ATPC to allege all aspects of the so-called international "pump and dump" scheme, including acts that took place in Utah and in Europe.  On this pleading failure alone, the Motion should be granted.

Second, Third-Party Plaintiffs admit, as they must, that the Exchange Act applies only to transactions in securities "listed in an American stock exchange" or "the purchase or sale of any other security in the United States."  [Opposition at 22 (ECF 312).]  See *Morrison*, 561 U.S. at A273 (emphasis added).  *Morrison* set forth a bright-line, transactional-based test that must be satisfied before the Exchange Act can be utilized by Third-Party Plaintiffs here.  To get around this bright-line test, Third-Party Plaintiffs concoct an argument – relying on three supposed allegations in the ATPC – they believe satisfied their duty to allege the presence of "domestic securities" under *Morrison.*  [*See* Opposition at 22–23 (ECF 312).]  (Not only do Third-Party

11

Plaintiffs allege in their Opposition that domestic transactions were involved in this case; they allege that "only domestic securities" were involved. [*Id.* (ECF 312).]). However, a review of these "allegations" demonstrates that Third-Party Plaintiffs' argument is misplaced and availing. As a threshold matter that applies to and refutes each of Third-Party Plaintiffs' arguments here, Third-Party Plaintiffs admitted that "Markosian never sold any shares in Rymark to anyone." [ATPC ¶ 20 (ECF 290).] This admission is fatal to any argument that the subject transactions were domestic transactions in other securities. The three "allegations" by Third-Party Plaintiffs are presented below, along with Leshem's corresponding refutations; to wit:

> "(1) the purported exchange of Markosian's (domestic) Rymark stock for AmeriMark Automotive Stock, ATPC ¶ 55;"

However, that allegation does not support Third-Party Plaintiffs' contention. First, in the ATPC, Third-Party Plaintiffs ascribe or base these *purported* transactions on allegations that "Plaintiffs" [Capana Swiss Advisors AG and AmeriMark Automotive AG] made and not what Third-Party Plaintiffs alleged. [*See id.* at 1, 4 (ECF 312) ("according to Plaintiffs" and "Plaintiffs say.").] So, for Third-Party Plaintiffs to allege that these transactional-based allegations are *their* allegations is false. Second, the transactions described in Paragraph 55 of the ATPC all involved foreign-based transactions and were not "only domestic" as Third-Party Plaintiffs erroneously contend. Importantly, the inclusion of the parenthetically added term "domestic" above and in each of the other two paragraphs noted below was not alleged in the ATPC; this novel "domestic" notation only appeared in the Opposition as a sort of "self-help" tool manufactured by Third-Party Plaintiffs in conjunction with their misconstrued reasoning of *Morrison*. Equally important, whether a security itself is "domestic" or not plays no part in the *transactional* test articulated in *Morrison* which requires the *transaction* in that security take place domestically.

12

> "(2) the alleged reverse merger involving Markosian exchanging his (domestically held) AmeriMark Automotive shares for AmeriMark shares, *id.* at ¶ 80;"

However, this transaction involved the two "AmeriMark" entities that are European-based and European-created entities (created by Markosian himself through a power of attorney he executed that empowered and set in motion the regulatory actions and professionals in Europe to first capitalize and then list successfully list the AmeriMark entities on a European exchange). Nowhere in Paragraph 80 of the ATPC is it alleged that the *transaction* was domestic or that Markosian exchanged his "domestically held" (a term that appears nowhere in *Morrison* and which Third-Party Plaintiffs do not allege via reference to any domestic bank, brokerage, or custodian purportedly controlled by either Third-Party Plaintiff) AmeriMark Automotive shares for AmeriMark Group shares. Rather, while not necessary to establish -- because the *Morrison* test is whether only *domestic transactions* in other securities are at issue -- the transactions offer an admission by Third-Party Plaintiffs that the transactions (as in point #2 above) are foreign-based.

> "(3) the supposed transfer of 13,000,000 of Markosian's shares (domestically held) of AmeriMark Group shares to Whitetree, *id.* at ¶ 78."

However, this allegation (like the previous two above) is at odds with the substance of the allegations made in Paragraph 78 of the ATPC. First, nowhere is it alleged in the ATPC that the subject "transaction" involved a domestic securities transaction. Second, in fact, Third-Party Plaintiffs allege that Leshem stole shares from Markosian and gave them to Whitetree Capital, a Cyprus (foreign) based entity. But the point is that this transaction cannot serve as a basis to allege or demonstrate that the transaction was a domestic securities transaction as Third-Party Plaintiffs insist in their Opposition. In addition, Third-Party Plaintiffs offer no proof that the shares were ever domestically held by Third-Party Plaintiffs, either in some custodial, banking, or other

account in the U.S., or otherwise – and any such showing would be at odds with the foreign domiciliary of the subject transactions.

Third-Party Plaintiffs failed to plead in the ATPC that the transactions identified therein were domestic transactions. Doing so in their Opposition is procedurally improper and any attempt to do allege at this juncture is a nullity, as noted above, and should result in the granting of the Motion on this point alone. As noted above, even if this Court were to accept their un-pleaded allegation at this stage the allegations fall woefully short of pleading that the transactions at issue were domestic.

Third-Party Plaintiffs contend that *Leshem* did not identify on what basis the transactions were "foreign." [Opposition at 23 (ECF 312).]. Third-Party Plaintiffs, of course, have erroneously and tellingly reversed the burdens that govern the adjudication of the Motion. Third-Party Plaintiffs had the burden to demonstrate that the subject transactions were domestic transactions. Because Third-Party Plaintiffs have failed to do so, this Court can and should grant the Motion.

Undeterred, Third-Party Plaintiffs continue their "domestic securities" argument by offering another perspective. This is equally unavailing. Third-Party Plaintiffs contend that, because Leshem does not (and cannot) contest Markosian's allegation that Markosian neither bought nor sold shares on a foreign exchange, "[a]ny transactions by Markosian in Rymark, AmeriMark Automotive or AmeriMark Automotive Group stock, then are "necessarily domestic." [*Id.* at 23 (ECF 312).] Ignoring, however, that Markosian denies these transactions took place, Third-Party Plaintiffs' logic is wrong. First, as shown above, none of the subject transactions were domestic nor did Third-Party Plaintiffs properly make such allegation. Second, the tautology set up by Third-Party Plaintiffs is flawed: Even if Markosian's allegation is true that *Markosian* did

not purchase the shares in the afore-mentioned companies on a foreign exchange, it does not necessarily follow that the transactions to create or capitalize these foreign companies or list its shares on an exchange in these companies' stock are necessarily domestic. The focus on Markosian's actions – whether true or not – is irrelevant. Whether the transactions are domestic or not is determined by examining the inherent nature of the transactions themselves and Markosian's role is not determinative of such characterization and Third-Party Plaintiffs have not alleged the specifics of any transaction in this regard. Third-Party Plaintiffs simply presented a flawed straw argument.[2]

Moreover, Third-Party Plaintiffs fail to adequately rebut Leshem's reliance on several cases that are instructive and provides further support that the subject transactions were not domestic securities. [See Motion at 29 (ECF 301) (citing to several cases: (a) dismissing U.S.-based investors' claims of misrepresentation and fraud based on Morrison where such investors purchased shares of a foreign company on Swiss stock exchange despite plaintiffs' argument that the alleged wrongful conduct caused harm to them in the U.S. and involved some acts in the United States in furtherance of the purchase or sale; (b) collecting cases rejecting the position that "a

---

[2] Third-Party Plaintiffs' attempt to persuade this Court to use the "irrevocable liability" test to determine whether a securities transaction is domestic should be soundly rejected. [See Opposition at 23 n.5 (ECF 312).] As Third-Party Plaintiffs themselves note, this test has not been adopted by the Tenth Circuit. As such, the U.S. Supreme Court's bright-line, transactional test enunciated in Morrison represents the binding precedent here. Neither the Second Circuit's use of the "irrevocable liability" test in Absolute Activist Value Master Fund, Ltd. v. Ficeto, 677 F.3d 60 (2d Cir. 2012), nor one lower district court in this district as noted by Third-Party Plaintiffs (not "multiple courts" as mistakenly offered by Third-Party Plaintiffs), offers any basis, of course, to divert from applying Morrison in this case. Third-Party Plaintiffs' comment that "Leshem appears to concede that [the irrevocable liability test] applies in this case is baseless and should be disregarded.

transaction qualifies as a 'domestic transaction' under Morrison whenever the purchaser or seller resides in the United States, even if the transaction itself takes place entirely over a foreign exchange"; (c) holding that in its *Morrison* decision, "the Supreme Court clearly sought to bar claims based on purchases and sales of foreign securities on foreign exchanges, even though the purchasers were American").

There is no doubt that in adjudicating cases such as the instant matter, the Courts may observe, as Third-Party Plaintiffs have, that there is some domestic activity present in the transactions under scrutiny. However, Third-Party Plaintiffs failed to refute the general rule that the presence of some domestic activity does not render the transaction a domestic one in applying *Morrison*, especially given the presumption against extraterritoriality.

Finally, Third-Party Plaintiffs rely on three cases for the alleged proposition that, so long as their Exchange Act claim is not "non-frivolous," then the Court must find personal jurisdiction at this stage of the proceedings. [Opposition at 14 (ECF 312).] However, Third-Party Plaintiffs' reliance on these cases is misplaced. First, these cases are all lower district court cases, not from the Tenth Circuit court itself, and none are from Utah – thus they are not controlling. Second, none of the cases involved, as here, an Exchange Act claim where the court was required to determine as a threshold matter whether the Exchange Act applied to the securities transactions at issue. Third, none of the cases, as here, presented a clear case that the securities at issue were not listed on a domestic exchange or involved securities transactions in the U.S. As such, and as discussed in this Reply, there is no basis for, nor a colorable claim under, the Exchange Act *as a matter of law*. Third-Party Plaintiffs simply failed to show under the *Morrison* bright-line, transactional test that domestic transactions in other securities are involved in this case. Third-

Party Plaintiffs' Exchange Act claim is without merit.  Fourth, each of three cases is easily distinguishable.

In the case of *Das v. Rio Tinto PLC*., 332 F. Supp. 3d 786 (S.D.N.Y. 2018), the defendant, although residing in Australia, was the CEO of a company that was listed on the New Stock Exchange, and the defendant executed the subject SEC filings.  *See id.* at 801.  As such, the *Das* case did not deal with the threshold question of the extraterritorial application of the Exchange Act, as here.

Likewise, in *Red River Resources, Inc. v. Mariner Systems, Inc.*, 2012 WL 2507517 (D. Ariz. June 29, 2012) (unpublished), the court did not deal with the threshold question regarding the extraterritorial or domestic application of securities.  Rather, the court found, without providing any details for its conclusion, that plaintiff had personal jurisdiction because the plaintiff had made a "colorable claim."  *Id.* at *3.

Finally, the case of *Archangel Diamond Corporation Liquidating Trust v. OAO Lukoil*, 75 F. Supp. 3d 1343 (D. Colo. 2014) is misused.  There, the Court found that "a determination of the merits of the Trust's claim was inappropriate before determining whether the Court had personal jurisdiction to decide the claim."  *Id.* at 1361.  The *Archangel* court merely held that, if the jurisdictional motion depends on a right created by a federal statute, the court should dismiss for lack personal jurisdiction only if the federal right claimed is "'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise devoid of merit as not to involve a federal controversy.'"  *Id.* (quoting *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 941 (11th Cir.1997)).  In the instant case, Third-Party Plaintiffs' Exchange Act claim is,

among the other factors, foreclosed by prior decisions, including *Morrison*, and "otherwise devoid of merit as not to involve a federal controversy." *Id.*

 "[O]nce a court determines it lacks jurisdiction over a claim, it lacks jurisdiction to make any determination of the merits of the underlying claim." *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1217 (10th Cir.2006).

In the alternative, if this Court does not dismiss the Exchange Act count outright as a matter of law for the reasons stated above, Third- Party Plaintiffs' pleading deficiencies render the count dismissible.  First, Third-Party Plaintiffs failed to respond to Leshem's argument that Third-Party Plaintiffs were required but failed to meet a "heightened pleading standard" with regard to first and third elements of its securities fraud claim.  [*See* Motion at 41 ECF 301).]  Second, Third-Party Plaintiffs failed to address Leshem's argument that the Exchange Act cause of action should be dismissed for failure to plead with particularity.  [*See id*. (ECF 301).]  Third, Third-Party Plaintiffs failed to rebut Leshem's argument that they failed to allege which transactions constituted the all-important securities transactions, or which ones constituted the "purchase and sale" of securities.  All of Leshem's arguments in his Motion in this regard were ignored and, therefore, conceded by Third-Party Plaintiffs.  Third-Party Plaintiffs' attempt to cure these pleading deficiencies in the Opposition is improper and should be ruled a nullity.

## II.    THE STATE SECURITIES LAW CLAIM SHOULD BE DISMISSED.

In his Motion, Leshem argues that Third-Party Plaintiffs' state securities law claim (Third Cause of Action) should be dismissed for the same reasons that the Court should dismiss their Exchange Act claim (Fourth Cause of Action).  Leshem's argument is based on the fact that the two statutory schemes are substantively identical.  Third-Party Plaintiffs do not dispute this

conclusion.  Yet, Third-Party Plaintiffs contend that Leshem provides no independent basis for dismissal of the state securities claim and, in so doing, submit without any authority that an independent basis is needed.  This is not true, and Third-Party Plaintiffs offer no rule or caselaw to the contrary.  Simply, because Third-Party Plaintiffs have failed to meet their burden to establish or even plead that there are domestic securities transactions at issue, and because the federal and state statutory schemes are substantively identical, the state cause of action should be dismissed on the same grounds.  [*See supra* § I.]

## III.     CONSPIRACY THEORY DOES NOT CONVEY PERSONAL JURISDICTION OVER LESHEM.

Third-Party Plaintiffs do not allege conspiracy theory of personal jurisdiction in the ATPC. That theory was first advanced in the Opposition and should be rejected outright.

The Utah Supreme Court adopted the conspiracy theory of personal jurisdiction "warily" and expressed its intent "to prevent a broad extension of long-arm jurisdiction."  *Raser Techs., Inc. v. Morgan Stanley & Co., LLC*, 2019 UT 44, ¶ 86, 449 P.3d 150 (additional quotations and citation omitted).  The *Raser* court was so concerned with potential misuse of the new theory that it went out of its way to caution courts "to carefully assess the relationship between each individual defendant and the conspiracy to assess whether that individual defendant's relationship with the conspiracy and forum is such that she could reasonably anticipate being haled into court in the state."  *Id.*  Accordingly,

> the plaintiff must plead with particularity that (1) the defendant is a member of a conspiracy, (2) the acts of the defendant's co-conspirators create minimum contacts with the forum, and (3) the defendant could have reasonably anticipated that her co-conspirator's actions would connect the conspiracy to the forum state in a meaningful way, such that she could expect to defend herself in that forum.

*Id.* ¶ 85; *see also Nelson v. Phillips*, 2024 UT 30, ¶ 88, 554 P.3d 1075.

The ATPC does not allege all elements set forth above, let alone with the requisite individualized particularity. Instead, Third-Party Plaintiffs base personal jurisdiction over Leshem solely on the conclusory allegation that Leshem "purposely availed [himself] of the protections of Utah law and purposely directed tortious conduct toward Utah." [ATPC ¶ 41 (ECF 290).] While Third-Party Plaintiffs allege that Leshem and others were part of a conspiracy, they fail to allege elements two and three. [*See generally id.* (ECF 290).] Those failures are fatal to Third-Party Plaintiffs' (unpleaded) conspiracy theory of personal jurisdiction over Leshem. *See, e.g.*, *Nelson*, 2024 UT 30, ¶ 61.

Perhaps recognizing the defects in their ATPC, Third-Party Plaintiffs argue that the Court can impute personal jurisdiction over Leshem because other alleged co-conspirators submitted to the jurisdiction of this Court by filing a complaint or otherwise appearing in this case. However, this Court's personal jurisdiction over *other* parties does not permit Third-Party Plaintiffs to sidestep the individualized personal jurisdiction analysis to which Leshem is entitled. Indeed, Third-Party Plaintiffs argue that certain of the co-conspirators consented to personal jurisdiction in this Court by filing this lawsuit. But, to take advantage of this new basis of jurisdiction Third-Party Plaintiffs were required to show, and this Court is required to find, that "the defendant could have reasonably anticipated that [his] co-conspirator's actions would connect the conspiracy to the forum state in a meaningful way, such that [he] could expect to defend herself in that forum." *Raser*, 2019 UT 44, ¶ 85. This test is even more critical in the instant case given that the co-conspirators represent a disparate class of people that are allegedly participated in the conspiracy, if at all, from different cities around the world and during different times over the course of four

20

years.   Leshem would submit that, because Third-Party Plaintiffs did not present this Court with the facts to allow this Court to "carefully assess" the relationship among Leshem and these purported co-conspirators, haling Leshem into Utah would not be reasonable.

Finally, Third-Party Plaintiffs' argument that Leshem did not address conspiracy jurisdiction in the Motion is a red herring.   The ATPC does not allege conspiracy jurisdiction.   Third-Party Plaintiffs have the burden to establish personal jurisdiction over Leshem and their failure to allege the conspiracy theory of personal jurisdiction in their ATPC prevents them from relying on that theory here.

## IV.   THIRD-PARTY PLAINTIFFS FAILED TO SATISFY THEIR BURDEN UNDER TRADITIONAL JURISDICTION TESTS TO HALE LESHEM INTO UTAH.

For at least seven reasons, none of Third-Party Plaintiffs' arguments overcome their burden to show that this Court has traditional personal jurisdiction over Leshem.   First, Third-Party Plaintiffs do not dispute that this Court can grant the Motion solely on the ground that Third-Party Plaintiffs failed to satisfy the three-prong "effects test."

Second, Third-Party Plaintiffs do not contest that they failed to plead or make any allegation in the ATPC regarding the third prong of the effects test.

Third, Third-Party Plaintiffs disregard the United States Supreme Court's ruling "that mere injury to a forum resident is not a sufficient connection to the forum," even in intentional tort cases. *Walden v. Fiore*, 571 U.S. 277, 290 (2014).   Rather, Third-Party Plaintiffs rely on the older, pre-*Walden* case of *Calder v. Jones*, 465 U.S. 783 (2006).   Numerous courts (including *Walden* itself) acknowledged that *Walden* narrowed the effects test discussed in *Calder*.   *See, e.g.*, *Younique, L.L.C. v. Youssef*, No. 2:15–CV–00783–JNP–DBP, 2016 WL 6998659, at *7 (D. Utah Nov. 30,

2016) (unpublished) (recognizing "that *Walden*'s clarification may significantly narrow otherwise broad readings of *Calder*'s 'effects' test" and citing cases).

The impact of *Walden* on *Calder* is relevant and important here.  In *Calder*, the Supreme Court found that California's exercise of personal jurisdiction over the Florida defendants was appropriate because the Florida defendants wrote and published a libelous article about the California plaintiff that defendants knew would be read by California residents and harm the California plaintiff.  *See* 465 U.S. at 788–90.  In *Walden*, the Supreme Court distinguished *Calder*, explaining that the "crux of *Calder* was that the reputation-based 'effects' of the alleged libel connected the defendants to California, not just to the plaintiff" and, thus, "the defendants intentional tort actually occurred in California."  *Walden*, 571 U.S. at 287, 288.

Here, Third-Party Plaintiffs have not shown a basis to hail Leshem into this Utah court. The Opposition relies on numerous, unsupported allegations absent from the ATPC that Leshem sent materials to Utah, contacted Utahns, and drafted documents.  Those allegations are unavailing. For instance, Third-Party Plaintiffs fail to challenge Leshem's case law that holds that sending emails or communicating from Florida to a Utah-resident is insufficient to establish personal jurisdiction.  [*See* Motion at 22–23 (ECF 301).]  Lesham's alleged actions did not connect him to Utah "in a meaningful way."  *Walden*, 571 U.S. at 290.

Additionally, Third-Party Plaintiffs fail to rebut the fact that each of Leshem's services to Third-Party Plaintiffs were all foreign based and foreign focused.  [*See* Leshem Decl. ¶¶ 15–17, 19–28, 32 (ECF 253).]  Leshem's services were undertaken to allow Third-Party Plaintiffs to get listed on a foreign exchange through Third-Party Plaintiffs' retention of professional service providers, all located in Europe and retained by, and governed under written agreements approved

by, Third-Party Plaintiffs, including powers of attorney (executed by Third-Party Plaintiffs) to effectuate actions falsely attributed to Leshem.  [*See id.* (ECF 253).]  Each of the foreign agreements and related transactions was performed in Europe and governed under foreign law—key facts ignored by Third-Party Plaintiffs.  Third-Party Plaintiffs' attempt to use their Utah residence, and to ignore the true focal point of Leshem's contacts (*i.e.*, Florida), to establish personal jurisdiction has been soundly rejected by the courts.  [*See* Motion at 20–22 (collecting cases) (ECF 301).]  In this regard, Third-Party Plaintiffs again disregard U.S. Supreme Court precedent, here *Walden* and the key holdings from *Walden*. [*See id.* at 20 ("To satisfy minimum contacts, 'the relationship must arise out of contacts that the "defendant himself" creates with the forum State … not the defendant's contacts with persons who reside there' and 'plaintiff's contacts with the defendant and the forum [cannot] drive the jurisdictional analysis.'" (quoting *Walden*, at 284–85) (ECF 301).]

Third-Party Plaintiffs' Utah residence cannot be a factor in this case; otherwise, jurisdiction would be available to and in any state where a plaintiff resides.  This is the type of "random, fortuitous, or attenuated contacts" to the forum state that the courts have found insufficient to establish personal jurisdiction.  *Walden*, 571 U.S. at 286 (additional quotations and citation omitted).

The aforementioned financial and other documents referenced by Third-Party Plaintiffs do not warrant hailing Leshem into Utah.  Even if such documents refer to Utah (even dozens of times) or refer to Rymark's operations in Utah, none of those documents connected Leshem to Utah in a substantial or meaningful way for jurisdictional purposes and do not show Leshem seeking the protections, or benefiting from the resources, of Utah, especially considering all of the

transactions and related documents were foreign based and governed by foreign law.  Moreover, Third-Party Plaintiffs fail to cite any case where the mere reference to a state's resources was sufficient to satisfy the minimum contacts test.

Third-Party Plaintiffs' contention that their causes of action "arise from" Leshem's contacts with Utah is incorrect.  Such suit-based connections with Utah must create a "substantial connection" with Utah.  *Walden*, 571 U.S. at 284.  As shown above, they do not.  None of Leshem's alleged conduct arose from his contacts with Utah.

Fourth, as noted in the Objections section above, numerous of the documents relied upon Third-Party Plaintiffs in their Opposition are inadmissible for want of proper foundation and authentication.  [*See supra* Objections.]  This Court can only accept the well-plead allegations "'to the extent they are uncontroverted by the defendant's affidavits.'"  *REI Holdings, LLC v. LienClear - 0001*, LLC, No. 2:17-cv-00564, 2019 WL 498356, at *3 (D. Utah Feb. 8, 2019) (unpublished) (quoting W*enz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995)).  As such, the Court has only Leshem's evidentiary submissions before it, [*see* Leshem Decl. (ECF. 253)], and this Court may not consider the ATPC's challenged jurisdictional allegations.  *See Nelson*, 2024 UT 30, ¶¶ 92–93 (reversing district court's denial of defendants' motions to dismiss for lack of  personal jurisdiction where defendants contradicted plaintiff's conspiracy jurisdictional allegations with declarations and plaintiff "failed to introduce evidence to support his jurisdictional allegations").

Fifth, Third-Party Plaintiffs' reliance on footnote 12 from *XMission, L.C. v. PureHealth Research*, 105 F.4th 1300 (10th Cir. 2024), is misplaced.  *XMission* is consistent with settled law and supports Leshem's position—"The proper focus of the purposeful-direction inquiry is thus on

[the defendant's] conduct in Utah and not the conduct of the email recipients who reside in the state." *Id.* at 1311.

Sixth, Third-Party Plaintiffs fail to refute Leshem's argument that the Listing Agreement supports granting the Motion. The Listing Agreement demonstrates the intent of the parties that Utah was neither the intended nor the actual focal point of the transaction at issue and that Leshem was not availing himself of the protections of Utah. [*See* Motion at 16 (ECF. 301)]. In fact, in the Listing Agreement the parties agreed that Florida and Florida law were to be the situs of any lawsuit and applicable law, respectively.[3]

Finally, Third-Party Plaintiffs' attempt to use the Listing Agreement or Utah Code section 78B-3-205 to establish personal jurisdiction fails for at least two reasons (a) Third-Party Plaintiffs admit that "only specific jurisdiction is at issue," and (b) Third-Party Plaintiffs never pleaded general personal jurisdiction or Section 78B-3-205.

---

[3] Third-Party Plaintiffs attempt to undermine Leshem's use of the Listing Agreement is not well taken for the following reasons. [*See* Opposition at 19 n.4 (ECF 312).] Third-Party Plaintiffs themselves attempt to rely on the Listing Agreement. Any expiration of the Listing Agreement by its terms is undermined by the rule that the parties' performance of the Listing Agreement, in whole or in part, renders the Listing Agreement operative. Moreover, the Listing Agreement would still apply to resolve any disputes, as in the case of a breach for example, that accrued even well after any supposed running of a limitations period; and for the same reasons in such a case the Listing Agreement could be used to determine the applicable venue and choice of law, here Florida. Finally, Leshem's reliance on the Listing Agreement, as noted in his Motion and Reply, is at least in part to establish the intent of the parties as reflected in the Listing Agreement itself and to underscore that Third-Party Plaintiffs understood, and agreed, that the subject transactions were foreign based.

## V.    EXERCISING PERSONAL JURISDICTION OVER LESHEM WOULD VIOLATE DUE PROCESS.

Each of Third-Party Plaintiffs' responses to Leshem's due process arguments presupposes allegations that have been challenged with evidence or makes redundant, immaterial, impertinent, and/or scandalous accusations against Leshem.

As to the choice-of-law and venue provisions in the Listing Agreement, Third-Party Plaintiffs fail to meaningfully address Leshem's argument that these provisions have been used successfully by non-resident defendants to avoid being hailed into a Utah court from Florida.  *See Shipp v. Int'l Auto Grp. of S. Fla., Inc.*, No. 2:16-cv-24 TS, 2016 WL 3951079, at *9–10 (D. Utah July 20, 2016) (unpublished).

This case does not require the application of Utah law, and the Listing Agreement establishes that Utah law does not apply.  As to Utah itself, any interest in protecting its residents can be fully and fairly accomplished in Florida and by a Florida court.  While Third-Party Plaintiffs may prefer that this complex dispute involving parties domiciled around the world be tried in this Court, the parties to the instant Motion bargained for Florida law and venue to adjudicate their claims.  Having made that agreement, Third-Party Plaintiffs cannot ask this Court to re-write the parties' agreement or otherwise object to a Florida forum because it is more convenient or better for them to try this case in Utah.

## VI.    JURISDICTIONAL DISCOVERY SHOULD NOT BE PERMITTED.

The Court should deny Third-Party Plaintiffs' request to permit discovery on the personal jurisdiction issue.  Since Third-Party Plaintiffs did not submit admissible evidence to refute the Leshem Declaration and did not identify any factual issues that would need clarification or resolution through additional discovery, the request has no legitimate basis and should be denied.

VII.    **THIRD-PARTY PLAINTIFFS FAIL TO SHOW THAT THE ECONOMIC LOSS RULE IS INAPPLICABLE.**

Third-Party Plaintiffs incorrectly claim that the economic loss rule does not apply here. First, the Court may consider the Listing Agreement because it was referenced in the Third-Party Complaint (albeit not by name), is central to Third-Party Plaintiffs' claims against Leshem, and its authenticity is not challenged. [*See* ATPC ¶ 54 (ECF 290).] *See Applied Predictive Techs., Inc. v. MarketDial, Inc.*, 598 F. Supp. 3d 1264, 1277 n.5 (D. Utah 2022) (considering employment agreement for purposes of motion to dismiss).

Second, it matters not that Third-Party Plaintiffs did not assert a claim for breach of the Listing Agreement. The economic loss rule still operates to bar tort claims that overlap with the rights and obligations of the Listing Agreement. *See Thorp v. Charlwood*, 2021 UT App 118, ¶ 31, 501 P.3d 1166 (ruling that economic loss rule barred tort claim even though plaintiff did not plead breach of contract claim).

Third, Leshem's conduct at issue was performed pursuant to the terms of the Listing Agreement, which was impliedly extended through the parties' continued performance thereunder. [*See generally* ATPC (ECF 290).] *See* 17A Am. Jur. 2d Contracts § 17 ("If, after the expiration of a contract, the parties to the contract continue to perform under the contract's terms, the parties' relationship is generally governed by a new, implied in fact contract that incorporates the terms, or substantially the same terms, of the expired contract." (footnotes omitted)).

Finally, Third-Party Plaintiffs misconstrue the independent-duty exception. As reiterated by Judge Barlow, "[i]f the tort alleges a breach of a duty that the contract itself imposes ... the plaintiff can sue only for contract-based remedies." *Hanks v. Anderson*, No. 2:19-cv-999-DBB-DAO, 2023 WL 4137327, at *8 (D. Utah June 22, 2023) (unpublished) (alteration and omission in

original) (quoting *Ward v. McGarry*, 2022 UT App 62, ¶ 22, 511 P.3d 1213, *reh'g denied* (July 6, 2022), *cert. denied*, 526 P.3d 828 (Utah 2022)).  Statutory claims that sound in tort are subject to preclusion under the economic loss rule.  *See id.* (ruling that statutory theft claim under Utah Code section 76-6-408 (i.e., the same statute at issue here) was barred by economic loss rule).  All of Third-Party Defendants' claims amount to breaches of duties expressly or impliedly set forth in the Listing Agreement.  [*See* Listing Agreement §§ III(e)(2) (prohibiting conduct "adverse to the Company's interests"), IV.1(a) (stating that Consultant will assist with the Company's listing and prepare documents), IV.1(c) (stating that Consultant will assist with delivery of Company shares) (ECF. 253-1).]

## VIII.   THIRD-PARTY PLAINTIFFS FAILED TO ADEQUATELY PLEAD CIVIL CONSPIRACY.

This Court's prior ruling (ECF 137) does not bar Leshem's challenge to Third-Party Plaintiffs' civil conspiracy claim.  First, Leshem was not a party at that time and his unique arguments were not before the Court.

Second, Third-Party Plaintiffs' civil conspiracy allegations are improperly group-pleaded. "[W]here the unlawful act underlying the civil conspiracy is a fraud-based tort, both the underlying tort and the conspiracy claim must be pleaded with particularity."  *GeometWatch Corp. v. Hall*, No. 114-cv-60-JNP-PMW, 2017 WL 1136946, at *17 (D. Utah Mar. 27, 2017) (unpublished) (additional quotations and citation omitted) (dismissing group-pleaded civil conspiracy claim against individual defendants for failure to comply with Rule 9(b)).  Third-Party Plaintiffs do not allege at all, let alone with particularity, the details of Leshem's alleged participation in a conspiracy.

Finally, Third-Party Plaintiffs incorrectly suggest that Leshem did not read the Third-Party

Complaint as a whole. Not so. Reviewing the TPC as a whole, Third-Party Plaintiffs failed to

meet the heightened pleading requirement applicable here.

## IX.    THIRD-PARTY PLAINTIFFS' FRAUDULENT INDUCEMENT CLAIM FAILS FOR LACK OF PARTICULARITY.

For the same reasons identified in the preceding section, Third-Party Plaintiffs failed to

plead their fraudulent inducement claim with the requisite Rule 9(b) particularity.

## X.    THIRD-PARTY PLAINTIFFS' CIVIL THEFT COUNT SHOULD BE DISMISSED.

Third-Party Plaintiffs fail to meaningfully distinguish *Labertew v. WinRed, Inc.*, No. 2:21-

cv-555-TC, 2022 WL 1568924 (D. Utah May 18, 2022) (unpublished). "The theft statute is

primarily designed to address situations where an individual gives stolen property to a business

dealing in *secondhand goods*" and "refers to property that has already been stolen by *someone*

*else*." *Id.* at *8 (emphasis added). As in *Labertew*, Third-Party Plaintiffs do "not allege that

[Leshem] received [the stolen property] from third parties," but instead that Leshem "affirmatively

stole" 13,000,000 shares. *Id.* Accordingly, Third-Party Plaintiffs have "not set forth facts

establishing an essential element of [their] theft claim," and this Court should dismiss that cause

of action. *Id.*

Third-Party Plaintiffs allege that their civil theft claim survives dismissal because after

allegedly stealing the property, Leshem disposed of, concealed, or withheld the stolen shares.

However, that analysis ignores that the critical element in alleging a civil theft claim under Section

76-6-408 is the predicate act of receiving stolen property *from the thief*, which is distinct from the

direct theft of the property alleged here.

The statutory sections preceding Section 76-6-408 set forth numerous ways that the actual thief can be criminally charged with that crime, such as common theft (§ 76-6-404), theft by deception (§ 76-6-405), theft by extortion (§ 76-6-406), and theft of lost, mislaid, or mistakenly delivered property (§ 76-6-407).

Section 76-6-408, however, is titled "[t]heft by *receiving* stolen property," and imposes liability on a party who does not steal the property at issue himself, but instead "receives, retains, or disposes of the property of another, … or who conceals, sells, withholds … the property from the owner," after obtaining that property from the direct thief, but only if the receiving party knows or believes that property to be stolen. UTAH CODE ANN. § 76-6-408 (emphasis added). It therefore does not matter whether a plaintiff alleges that a defendant "received," "retained," "disposed," "concealed," or "withheld" of the property at issue, because unless that defendant performed one of these acts after obtaining the property from the direct thief, this section simply does not apply. Asserting Section 76-6-408 against the alleged thief would render the preceding statutory sections redundant and overlapping, and that section must therefore be interpreted to apply only to those receiving property from the direct thief, consistent with its plain language and as determined in *Labertew*. Because Third-Party Plaintiffs admit that Leshem did not receive stolen property from a third party, and they have been unable to cite any case distinguishing or avoiding the holding in *Labertew*, they cannot state a cause of action as a matter of law.

Finally, Third-Party Plaintiffs' reliance on *State v. Stevens*, 2011 UT App 366, 264 P.3d 555, is misplaced. *Stevens* examined the *mens rea*, not the predicate acts under Section 76-6-408. *Id.* ¶ 13. As such, *Stevens* has no relevance to the dispositive issue here of whether section 76-6-

408 can or cannot be applied to an initial thief in the first instance. On that issue, *Labertew* controls and requires dismissal.

## XI.    THIRD-PARTY PLAINTIFFS FAILED TO PLEAD AN ESSENTIAL ELEMENT OF CONVERSION.

An essential element of a conversion claim is the absence of lawful justification. Third-Party Plaintiffs concede that they failed to specifically plead that essential element, but argue that "it goes without saying that the theft is not lawfully justified" and should not to be required to use the magic word because "it goes without saying" that the missing term was intended [Opposition at 31 (ECF 312).] Third-Party Plaintiffs admit, then, that they did not allege essential elements of their conversion and ask this Court, without any precedent or concern, to simply dispense with this requirement. However, Third-Party Plaintiffs' failure to plead essential elements should not simply be ignored and this cause should be dismissed.

## CONCLUSION

For all of the foregoing reasons, Leshem respectfully requests that the Court dismiss him from this action because (A) this Court does not have personal jurisdiction over Leshem, and (B) Third-Party Plaintiffs failed to state any cause of action against Leshem.

DATED this 25th day of September, 2025.

**LAW OFFICES OF ANDREW B. PERETZ P.A.**

/s/ Andrew B. Peretz
Andrew B. Peretz (*admitted pro hac vice*)
*Attorneys for Third-Party Defendant Ashley Miron Leshem*

**MCNEILL VON MAACK**

/s/ Christopher M. Von Maack
Christopher Von Maack
*Attorneys for Third-Party Defendant Ashley Miron Leshem*

## WORD COUNT CERTIFICATION

I, Christopher M. Von Maack, certify that this reply memorandum contains 7,599 words (as counted using Microsoft Word's word count function) and complies with the Order Granting Motion for Leave to File Overlength Reply Memorandum Supporting Motion to Dismiss Amended Third-Party Complaint (ECF 328).

DATED this 25th day of September, 2025.

**MCNEILL VON MAACK**

/s/ Christopher M. Von Maack
Christopher Von Maack
*Attorneys for Third-Party Defendant Ashley Miron Leshem*

**CERTIFICATE OF SERVICE**

I hereby certify that I am employed by the law firm of MCNEILL VON MAACK, 236 South 300 East, Salt Lake City, Utah, and that, pursuant to Rule 5(b) of the Federal Rules of Civil Procedure, a true and correct copy of the foregoing **REPLY MEMORANDUM SUPPORTING THIRD-PARTY DEFENDANT ASHLEY MIRON LESHEM'S MOTION TO DISMISS** was delivered this 25th day of September, 2025, via CM/ECF to all parties and counsel registered to receive email notices of filings.

/s/ Camille Coley