Eric G. Benson (Bar No. 10414)
Loren Washburn (Bar No. 10993)
Brennan Moss (Bar No. 10267)
Clifford B. Parkinson (Bar No. 13327)
Parkinson Benson Potter
2750 Rasmussen Rd., Suite H-107
Park City, UT 84098
eric@pbp.law
loren@pbp.law
brennan@pbp.law
cliff@pbp.law

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CAPANA SWISS ADVISORS AG, a Swiss corporation; AMERIMARK AUTOMOTIVE AG, a Swiss corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>RYMARK, INC., a Utah corporation; NICHOLAS THAYNE MARKOSIAN, an individual; JOHN KIRKLAND, an individual; and VICKY SMALL, an individual,<br><br>Defendants. | **RENEWED MOTION FOR PROTECTIVE ORDER RE IMPROPER SUBPOENA HISTORY TO RYMARK'S PRIMARY LENDER AND THEIR RELATIONSHIP OFFICER AT THAT LENDER**<br><br>Case No.: 2:23-cv-00467<br><br>Judge Ted Stewart<br>Magistrate Judge Cecilia M. Romero |
| RYMARK, INC., a Utah corporation; and NICHOLAS THAYNE MARKOSIAN, an individual,<br><br>Counter Claimants,<br><br>vs.<br><br>CAPANA SWISS ADVISORS AG, a Swiss corporation, and Amerimark Automotive AG, a Swiss Corporation,<br><br>Counter Defendants. | |
| RYMARK, INC., a Utah corporation; and | |

| |
|---|
| NICHOLAS THAYNE MARKOSIAN, an individual, |
| Third-Party Plaintiffs, |
| vs. |
| SHAEN BERNHARDT, an individual; ASHLEY MIRON LESHEM, an individual; DAVID HESTERMAN, an individual; NICOLAI COLSHORN, an individual; STEFAN KAMMERLANDER, an individual; ALEXANDER COENEN, an individual; MARTIN FASSER HEEG, an individual; AMERIMARK GROUP AG, a Swiss corporation; and PHILOMAXCAP AG, a German corporation, |
| Third-Party Defendants. |

Defendants Rymark, Inc., Nicholas Markosian, John Kirkland, and Vicky Small (collectively, "Defendants") respectfully renew their motion for a protective order under Fed. R. Civ. P. 26(c) to forbid enforcement of Plaintiffs' improper Subpoena to Testify at a Deposition in a Civil Action (attached hereto as Ex. 1) and to forbid the reissuance or enforcement of their improper third-party subpoena issued to Bill Bower of Oak Street Funding (Dkt. No. 192-5). Defendants seek an order protecting them (and non-party Oak Street) from the undue burden, expense, and prejudice of this subpoena. In support of this motion, Defendants state as follows:

## INTRODUCTION

Oak Street Funding LLC is Rymark's primary commercial lender. As its Vice President and relationship manager, Bill Bower has unilateral authority to modify, restrict, or terminate Rymark's access to capital. The entire business depends on Oak Street's continued financial support—and Plaintiffs know it. That is why, after acknowledging in open court that their initial subpoena to Oak Street was overbroad and improper, and after agreeing to withdraw that

2

subpoena and proceed through a party-driven discovery process instead, Plaintiffs reneged. Last month, without discussing the decision with Defendants pursuant to the parties agreement and statements before the court Plaintiffs issued new subpoena deposition dates directly to Mr. Bower.

Plaintiffs do not seek discovery. They seek disruption. Their real objective is to apply financial pressure by placing Rymark's funding source under litigation scrutiny. The effort is transparent and improper. As this Court already ordered, discovery into Oak Street should proceed (if at all) through targeted requests to Rymark, not third-party harassment. Plaintiffs' end-run around that order—and their strategic misuse of Rule 45—calls for the issuance of a protective order. Defendants respectfully ask the Court to quash the subpoena to Mr. Bower and bar Plaintiffs from seeking discovery from Oak Street or Mr. Bower outside the party discovery process.

## FACTUAL BACKGROUND

**A.  Plaintiffs' Original Subpoena to Oak Street:**

On July 23, 2024, Plaintiffs served notice of their intent to subpoena Oak Street Funding ("Oak Street"), a lender that provided a line of credit to Defendant Rymark. On July 30, 2024, Plaintiffs issued that subpoena, commanding Oak Street to produce a broad array of documents by August 13, 2024.  *See* Dkt No. 192-2. This subpoena (served on a non-party financial institution) demanded virtually all documents and communications related to Rymark or its principals, including loan applications, correspondence with third parties, and due diligence materials. The requests were extraordinarily expansive – for example, Request No. 1 sought "ALL documents and communications relating to ALL personal or commercial loan applications" by Mr. Markosian or Rymark. Exhibit B is a representative excerpt of the requests

in the Oak Street/Bower subpoena, illustrating its sweeping scope. Notably, many of these categories went well beyond any issue raised in this litigation, indicating a fishing expedition into Rymark's finances and business dealings.

At the time, Defendants promptly objected to the Oak Street subpoena as improper. Defendants moved for a protective order to prevent this intrusive third-party discovery (Mot. for Protective Order re: Improper Subpoenas to Oak Street, Dkt. 192, filed Dec. 11, 2024). The Court addressed the issue at an October 2, 2024 motion hearing. Magistrate Judge Cecilia M. Romero expressly held that the Oak Street subpoena was overbroad and premature, and directed the parties to confer about narrowing its scope. In particular, Judge Romero specifically ordered that the parties discuss whether Defendants themselves could produce the necessary materials, rather than burdening Oak Street. *See* Tr. of October 2, 2024 Hr'g, at Dkt. No. 192-3.

The Court emphasized that the parties "needed to discuss" the breadth of the Oak Street requests and attempt to resolve the dispute cooperatively. This ruling aligned with the purpose of Local Rule 45-1, which requires advance notice before serving a nonparty subpoena – a safeguard to allow objections to be raised and resolved without court intervention.

Following the Court's guidance, counsel for both sides met in person on October 11, 2024 to address various discovery issues, including the Oak Street subpoena. Defendants' counsel offered a compromise: Defendants would voluntarily produce documents relating to Rymark's relationship with Oak Street (even though such documents had not been previously requested in party discovery). The goal was to provide Plaintiffs with the core information they claimed to need, while avoiding unnecessary involvement of the third-party lender. Plaintiffs' counsel, Ms. Sarah Diamond, indicated at the meeting that she would consider this offer.

On October 14, 2024, Ms. Diamond sent a letter memorializing the discussion. In that letter, she confirmed Plaintiffs' agreement to the proposed approach: *"Plaintiffs will provide Defendants with a targeted list of documents they are seeking from Oak Street and Defendants will confirm if they will agree to produce those documents in lieu of Plaintiffs seeking those same documents via third-party subpoena."*. (Dkt. No. 192-4, at 3-4)

In other words, Plaintiffs expressly agreed to withdraw their third-party subpoena and to request only specific, relevant Oak Street documents through the party discovery process. Defendants relied on this representation and awaited Plaintiffs' "targeted list."

**B. Plaintiffs' Breach of the Agreement – The December 3, 2024 Bower Subpoena:**

Plaintiffs never provided any "targeted list of documents" as promised. Instead, without warning, on December 3, 2024 Plaintiffs served a new subpoena directed to Bill Bower, an executive at Oak Street Funding who oversees Rymark's loan relationship. This subpoena to Mr. Bower demanded production of documents similar to (and even broader than) the original Oak Street subpoena, but now addressed to a named individual (Mr. Bower) at Oak Street. Plaintiffs *did not* give Defendants any advance notice that they intended to issue this subpoena, violating Fed. R. Civ. P. 45(a)(4) and DUCivR 45-1's notice requirement. Nor did Plaintiffs meet and confer with Defendants about the scope of the subpoena or attempt to obtain the documents from Defendants first, as Judge Romero had ordered. In sum, Plaintiffs completely reneged on their agreement and the Court's directive – they "told us [they weren't] going to" resort to a third-party subpoena, then "issued [one] without the advance notice…required by the Local and Federal Rules," as defense counsel summarized in a contemporaneous email. (Dkt. No. 192-6).

The December 3 Bower document subpoena contained 17 wide-ranging requests for production. Like the earlier subpoena, it sought essentially every scrap of information Oak Street

had regarding Rymark or Mr. Markosian. For example, it demanded all documents and communications related to any loan applications by Rymark, all communications between Oak Street and any third parties about Rymark, all communications between Oak Street and Rymark's principals or representatives (including Defendants Vicky Small and John Kirkland), and even any documents related to "ongoing or potential legal claims" against Defendants.

The subpoena was, in Defendants' view, even more overbroad than the original Oak Street subpoena – a point Defendants raised immediately. Rule 45(a)(4) requires that if a subpoena commands pretrial production of documents, the issuing party *must serve notice and a copy on each party before serving the subpoena on the non-party*. Likewise, **DUCivR 45-1** mandates that advance notice of a non-party subpoena be given to all parties, and it incorporates the meet-and-confer procedure of DUCivR 37-1 if any party objects. These rules exist "to give an opposing party the opportunity to object to a subpoena prior to service" and to facilitate a conference about the subpoena's scope. Plaintiffs flouted these requirements – they gave Defendants *zero notice* before serving Mr. Bower. This lack of notice and consultation was particularly egregious given Judge Romero's recent order specifically instructing Plaintiffs to confer with Defendants about Oak Street discovery. Plaintiffs' conduct was the exact scenario the Local Rule is designed to prevent.

**C. Meet-and-Confer Efforts and Plaintiffs' "Withdrawal" of the Document Subpoena.**

Upon learning of the Bower subpoena, Defendants acted swiftly. On December 4, 2024 – the very next day – then defense counsel of record, (Mr. Stephen Richards) emailed Plaintiffs' counsel demanding that the subpoena be withdrawn due to the rule violations and the conflict with the Court's instructions. Mr. Richards pointed out that Plaintiffs had broken their promise to provide a document list "in lieu" of a subpoena, and in fact had done *"exactly the thing [they]*

6

*told us [they weren't] going to do"*. Dkt. No. 192-6, at 2. He noted that Plaintiffs' unilateral action was "completely unacceptable," and that Defendants stood ready to work in good faith once Plaintiffs sent the promised list – but that using an improper subpoena as leverage was not appropriate. *Id.*

At that point, however, Plaintiffs still had not provided the "targeted list of documents" they wanted; Ms. Diamond indicated she would send the list by the next day. Effectively, Plaintiffs were threatening to forge ahead with Mr. Bower's deposition (and the enforcement of the document subpoena) unless Defendants preemptively agreed to an unknown set of demands. Defendants could not accede to such a one-sided ultimatum. As Mr. Richards replied, Rymark was willing to meet and confer in good faith regarding document requests, but it could not agree to produce an unspecified list of documents on two weeks' notice. *See* Dkt. No. 192-6 at 3.

Confronted with Defendants' refusal to be coerced, Plaintiffs finally relented – at least in part. On December 5, 2024, Ms. Diamond emailed that *"we have withdrawn the 12/3/24 Bower deposition subpoena and have served a new subpoena to Mr. Bower which does not include any requests for documents."* (Plaintiffs took the position that no advance notice is required for a pure deposition subpoena without document requests, citing Rule 45(a)(4) and DUCivR 45-1.) Dkt. No. 192-6, at 1. In the same email, Plaintiffs stated they would no longer pursue the Oak Street documents via subpoena; instead, they intended to serve Defendants with additional document requests for Oak Street-related materials, pursuant to the ongoing party discovery process. Plaintiffs offered to meet and confer about those forthcoming requests in due course. In essence, Plaintiffs conceded that their document subpoena was improper and withdrew it, substituting a notice for Mr. Bower's deposition only. Plaintiffs appeared to revert to the agreed path of obtaining documents from Defendants through formal requests, though only after

7

Defendants expended significant effort to enforce the prior agreement.

Following this exchange, Plaintiffs did serve a set of Rule 34 document requests on Defendants targeting Oak Street information (presumably mirroring the subpoena requests). Defendants responded to those requests in the ordinary course. Plaintiffs have since requested additional Oak Street documents and they have been and are being provided. In light of Plaintiffs' withdrawal of the Bower subpoena, Defendants' then-pending Motion for Protective Order (Dkt. 192) was taken off calendar. At a hearing on May 15, 2025, Magistrate Judge Romero denied that motion without prejudice as moot, "for the reasons stated on the record and based on the agreement of the parties." Minute Order at Dkt. No. 267.

### D.  Renewed Dispute – Plaintiffs' Deposition Subpoena to Mr. Bower.

Plaintiffs recently renewed their efforts to pursue Mr. Bower's deposition. In September 2025, Plaintiffs issued a deposition subpoena setting Mr. Bower's deposition for October 8, 2025, attached hereto as Ex. 1. While some notice was provided, the deposition subpoena went out without regard to the parties' previous agreement referenced by the Court in the May 15, 2025 hearing.  Plaintiffs then subsequently submitted yet another Amended Notice of Deposition of Bill Bower, unilaterally setting the date for October 21, 2025, attached hereto as Ex 3. Defendants now bring this renewed motion because the issues that plagued the December 2024 subpoena have not been cured: Defendants have significant concerns that the true purpose of dragging Oak Street and Mr. Bower into this case is to harass Defendants or to fish for collateral evidence, rather than to obtain genuinely relevant, non-duplicative information. Accordingly, Defendants ask the Court to enter a protective order forbidding Mr. Bower's deposition and any related document demands, or at minimum sharply limiting the scope of such discovery and the use of any information derived therefrom.

# ARGUMENT

## I. Defendants Have Standing to Seek a Protective Order and to Challenge the Subpoena to Oak Street/Bill Bower

As a preliminary matter, Defendants have standing to object to Plaintiffs' subpoena and to move for a protective order. Ordinarily, a party lacks standing under Rule 45 to quash a subpoena directed to a non-party unless the party claims a **"personal right or privilege"** in the subpoenaed information. See *Hutchinson v. Kamauu*, 2022 WL 180641, at *2 (D. Utah Jan. 20, 2022) (quoting *Zoobuh, Inc. v. Rainbow Int'l*, No. 2:14-cv-477, 2015 WL 2093292, at *2 (D. Utah May 5, 2015)). Here, Defendants' relationship with Oak Street involves private commercial information (e.g. loan terms, financial statements, communications) in which Defendants have a strong interest. Accordingly, Defendants have standing to object to the Bower deposition to the extent it seeks disclosure of such sensitive information.

In short, this Court can and should exercise its authority to prevent enforcement of a subpoena that violates the rules and seeks improper discovery, in order to protect both the non-party and the Defendants. Defendants have a direct and compelling interest in preventing this abusive discovery tactic.

## II. The Subpoena Seeks Information That Is Irrelevant to the Claims or Defenses and Not Proportional to the Needs of the Case

Under Rule 26(b)(1), discovery must be "relevant to any party's claim or defense" and "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The Court has authority – indeed, an obligation – to limit or prohibit discovery that exceeds these bounds. See Fed. R. Civ. P. 26(b)(2)(C)(iii) (court *"must limit the frequency or extent of discovery"* if it is outside the scope of Rule 26(b)(1)). The subpoena to Oak Street/Bill Bower fails this fundamental test of relevance and proportionality. It amounts to an unwarranted detour into the

affairs of a non-party lender, with minimal if any probative value for the actual claims in this lawsuit.

Although a detailed discussion of the merits is beyond the scope of this motion, the Court should be aware that this case involves allegations by Plaintiffs – two foreign companies – that Defendants engaged in misconduct in connection with certain business transactions or investments. The core claims include breach of contract and fraud, as well as third-party claims by Defendants against individuals associated with Plaintiffs. The dispute largely centers on communications and dealings between Plaintiffs and Defendants (and their agents) regarding the sale of an automotive business and related financing. Oak Street Funding, by contrast, is not a party to this case and not alleged to have played any role in the dealings between Plaintiffs and Defendants. Oak Street is simply a commercial lender that provided financing to Rymark. Plaintiffs have not claimed, for example, that they relied on any statements made by Defendants to Oak Street, or that Oak Street's loan had any direct effect on Plaintiffs' rights. In short, Oak Street is tangential to the main dispute.

Against this backdrop, Plaintiffs' subpoena to Bower appears to be a speculative fishing expedition. Plaintiffs may theorize that Oak Street's files could contain some statement by Rymark or Mr. Markosian that Plaintiffs might argue is inconsistent with Defendants' representations to Plaintiffs. But that is layers removed from relevance. The initial subpoena even demanded Oak Street's communications with accounting firms and any *"legal risk disclosures"* by Rymark, straying far afield of any claim in the pleadings. In short, as shown by the document subpoena history, the vast majority of the subpoena's 17 requests have no clear nexus to Plaintiffs' claims of fraud or breach against Defendants.

Plaintiffs have not shown that Oak Street possesses unique, non-duplicative evidence that

is crucial to their case. See *Monroe v. FinWise Bank*, No. 2:21-cv-42, 2021 U.S. Dist. LEXIS 240298, at *6–7 (D. Utah Dec. 15, 2021) (Oberg, M.J.) (third party subpoena properly denied where the information's relevance was not established and the party failed to show it was crucial). Here, Plaintiffs' speculative desire to depose Rymark's lender's personnel does not outweigh the marginal (or non-existent) relevance of any such information to be obtained. In sum, the Court should **exercise its authority under Rule 26(b)(2)(C) to bar discovery that is outside the scope of relevance and proportionality**. Defendants respectfully submit that Plaintiffs' subpoena to Oak Street/Bower seeks largely irrelevant information and is not justified given the ample discovery already available from the parties. Moreover, additional documents from Defendants from Oak Street is in the process of being produced. As such, a protective order should issue to relieve Defendants (and Oak Street) from any obligation to comply.

## IV. Enforcing the Subpoena Would Impose Undue Burden and Expense on Both the Non-Party and Defendants, Contrary to Rule 45(d)(1)

Rule 45(d)(1) imposes an affirmative duty on the party issuing a subpoena to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). The Rule further provides that courts *"must enforce this duty"* and may impose appropriate sanctions on a party who fails to comply. Plaintiffs have breached this duty.

Crucially, Oak Street itself has not been shown to possess any information justifying this burden. Oak Street has not been accused of wrongdoing, nor does it appear to have unique evidence. As discussed, any relevant documents in Oak Street's possession likely originated from Defendants (and have been or are in the process of being produced by Defendants).

It is hard to escape the conclusion that Plaintiffs targeted Oak Street at least in part to put pressure on Defendants' business relationship. Rymark relies on Oak Street for financing; a

subpoena from Plaintiffs – essentially broadcasting that Rymark is embroiled in litigation – obviously damages that relationship and prompts Oak Street to treat Rymark with heightened caution. Plaintiffs knew this, and indeed their initial swift resort to a subpoena (bypassing a simple document request to Rymark) suggests a tactical motive to gain leverage. This is an improper use of discovery and exemplifies undue burden. See *HDSherer LLC v. Natural Molecular Testing Corp.*, 292 F.R.D. 305, 308 (D.S.C. 2013) ("Subpoenas issued for the purpose of annoying and harassment, or to pressure a party by inconveniencing a non-party, are *per se* improper.").

Although Rule 45 is aimed at protecting the subpoenaed person, courts recognize that a party can suffer undue burden indirectly when its sensitive information is subpoenaed or when it must monitor and address overbroad subpoenas. This Court should consider the totality of burden and hardship imposed by the subpoena as part of the good cause analysis for a protective order. Defendants have already incurred substantial burden in responding to Plaintiffs' shifting tactics. Defendants had to file a prior motion, prepare this renewed motion, and will likely need to participate in any deposition of Mr. Bower to protect their interests (attending the deposition, potentially lodging objections to irrelevant questions, etc.).

In issuing the Oak Street/Bower subpoenas, Plaintiffs manifestly failed to take "reasonable steps" to avoid imposing undue burden. Quite the opposite: Plaintiffs maximized the burden by serving duplicative requests on a distant non-party. Under Rule 45(d)(1), the Court *"must enforce"* the duty to avoid undue burden, which may include sanctions on the issuing party.

**V. The Circumstances Indicate Plaintiffs Issued the Subpoena for Improper Purposes, Warranting a Protective Order**

Finally, a protective order is justified because Plaintiffs' conduct surrounding the subpoena suggests an improper motive inconsistent with the goals of discovery. Discovery is meant to be a good-faith search for truth, not a strategic weapon to surprise or intimidate. Here, several facts point to Plaintiffs' misuse of the subpoena power:

**End-Run Around Agreements:** Plaintiffs agreed on the record to withdraw the Oak Street subpoena and use party discovery, only to renege on that agreement without explanation. This bait-and-switch indicates Plaintiffs were not truly interested in cooperative discovery but rather in gaining a tactical edge.

**Use of Subpoena as Leverage:** When confronted previously, Plaintiffs did not defend the subpoena on its merits. Plaintiffs withdrew the document subpoena, which speaks volumes. If Plaintiffs truly believed the subpoena was proper and necessary, they presumably would have stood their ground and litigated the issue then. Their readiness to withdraw it in exchange for documents suggests the subpoena's primary function was as a bargaining chip, not a bona fide discovery tool.

**Circumvention of Normal Discovery Channels:** Plaintiffs could have sought Oak Street-related documents directly from Defendants at any time (indeed, they eventually did). The fact that Plaintiffs initially chose the more onerous path of a third-party subpoena – and did so without even attempting a narrow request to Defendants – implies a tactical ploy. One inference is that Plaintiffs hoped to obtain from Oak Street some documents that Defendants might object to or withhold (perhaps on privilege or relevance grounds), thereby circumventing Defendants' right to review and object. Another inference is that Plaintiffs wanted to send a message to Defendants by involving their lender, as discussed above. Both inferences reflect an improper purpose. Discovery should not be used to "go around" a party's legitimate discovery objections

or to harass a party by dragging unrelated third parties into the fray. See *Stanford v. Freedom Equity Grp., LLC*, No. 18-cv-1315, 2019 WL 13023874, at *2 (D. Utah Nov. 4, 2019) (quashing third-party subpoenas that appeared aimed at "sidestepping" the normal discovery process and harassing the opponent).

Considering all the above, allowing the Bower deposition to proceed (or enforcing any part of the subpoena) would effectively reward Plaintiffs' improper conduct. The Court has broad discretion under Rule 26(c) to guard against discovery abuse. See *Thomas v. Int'l Bus. Machines*, 48 F.3d 478, 482 (10th Cir. 1995) ("The district court is in the best position to weigh the soundness of plaintiff's assertions that the discovery sought is unduly burdensome or otherwise improper…."). Defendants submit that this is an apt case for the Court to exercise its protective powers to prevent an abuse of the discovery process.

## VI. A Protective Order Should Issue Forbidding the Subpoena and Related Discovery, or Alternatively Strictly Limiting Its Scope

For all the reasons set forth, Defendants respectfully request that the Court quash the subpoena to Bill Bower and prohibit Plaintiffs from obtaining the requested discovery. In practical terms, since the document subpoena was withdrawn, the main relief sought is an order forbidding the deposition of Mr. Bower (and any re-issuance of document demands on Oak Street) on the grounds that such discovery is improper. See Fed. R. Civ. P. 26(c)(1)(A) (court may order "forbidding the disclosure or discovery" entirely). This relief is warranted given Plaintiffs' violations of the rules, the lack of relevance, and the undue burden and prejudice to Defendants.

## CONCLUSION

Plaintiffs' conduct in issuing and pursuing the Oak Street/Bill Bower subpoena has been irregular and improper at every step. They violated the Federal and Local Rules, defied the spirit

of Judge Romero's discovery order, and sought to circumvent ordinary discovery channels. The first two document subpoenas' contents were overbroad, irrelevant to the issues at hand, and intended more to harass and leverage than to obtain legitimate evidence. It is expected that the proposed subpoenaed deposition of Mr. Bower will be the same. Defendants should not have to expend further resources battling weaponized discovery, and a third-party lender should not be involuntarily swept into complex litigation without adherence to the Rules and a compelling need.

For these reasons, Defendants respectfully request that the Court GRANT this Motion and issue a Protective Order that:

1. Forbids Plaintiffs from enforcing or reissuing the December 2024 subpoena to Oak Street Funding or Bill Bower, and relieves Mr. Bower of any obligation to appear for a deposition in this matter (Fed. R. Civ. P. 26(c)(1)(A), (B));

Defendants have shown good cause for protective relief. The Court should uphold the integrity of the discovery process by preventing Plaintiffs from benefitting from their disregard of the rules. Defendants are amenable to further Court guidance on narrowing the scope of any Oak Street-related discovery, should the Court find some portion of it relevant. However, given the history here, the most appropriate outcome is to put an end to this improper third-party subpoena practice once and for all.

DATED:  October 15, 2025

**PARKINSON BENSON POTTER**
 /s/ *Brennan H. Moss*
Eric G. Benson
D. Loren Washburn
Brennan H. Moss
Clifford B. Parkinson

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of August, 2025, I filed the foregoing

**RENEWED MOTION FOR PROTECTIVE ORDER RE IMPROPER SUBPOENA HISTORY TO RYMARK'S PRIMARY LENDER AND THEIR RELATIONSHIP OFFICER AT THAT LENDER**

via the Court's CM/ECF system, which provided notice of such filing to all counsel of records.

*/s/ Clifford B. Parkinson*