IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CAPANA SWISS ADVISORS AG, a Swiss corporation, et al.,<br><br>            Plaintiffs,<br>v.<br><br>RYMARK, a Utah corporation, et al.<br><br>            Defendants,<br><br>ASHLEY MIRON LESHEM et al.,<br><br>            Third Party<br>            Defendants. | MEMORANDUM DECISION AND ORDER DENYING THIRD-PARTY DEFENDANT ASHLEY MIRON LESHEM'S MOTION TO DISMISS AMENDED THIRD-PARTY COMPLAINT<br><br>Case No. 2:23-cv-467-TS-CMR<br><br>Judge Ted Stewart<br>Magistrate Judge Cecilia M. Romero |

This matter comes before the Court on Third-Party Defendant Ashley Miron Leshem's

Motion to Dismiss Amended Third-Party Complaint.[1] For the reasons discussed below, the Court

will deny the Motion.

## I. BACKGROUND[2]

This case arises out of a dispute over the ownership of Rymark, Inc., ("Rymark") a used

car dealership in Taylorsville, Utah. Plaintiffs Capana Swiss Advisors AG and AmeriMark

Automotive AG initiated this action on July 18, 2023,[3] alleging that Defendants Rymark Inc.,

Nicholas Thayne Markosian, John Kirkland, and Vicky Small launched a scheme to transfer

---

[1] Docket No. 301.

[2] The following information is summarized in large part from the Third-Party Complaint and taken as true for purposes of the instant Motion.

[3] Docket No. 1.

ownership of Rymark into AmeriMark Automotive AG, a Swiss corporation, so that Defendants could list it on a foreign stock exchange.[4]

Defendants subsequently filed counterclaims against Plaintiffs and Defendants Rymark and Markosian filed a Third-Party Complaint against Shane Bernhardt, Ashley Miron Leshem, David Hesterman, Nicolai Colshorn, Stefan Kammerlander, Alexander Coenen, Martin Fasser Heeg, Frank Hueser, AmeriMark Group AG, and Philomaxcap AG.[5] Leshem then filed a Motion to Dismiss the Third-Party Complaint, which is at issue here.

The Third-Party Complaint alleges that Leshem and Hesterman targeted Rymark and its owner, Markosian, in a "pump-and-dump" scheme. According to Rymark and Markosian, this type of scheme involves seeking out small American companies to raise money through equity offerings on European stock exchanges and then once the company is listed "pumping" the stock by issuing false press releases and other promotional materials to drive the prices temporarily higher. Then the individuals, in this case Leshem and Hesterman, cash in or "dump" their stocks for a profit and the price of the stock falls.

In April 2016, Leshem through his company Anada Capital ("Anada"), and Markosian on behalf of Rymark entered into a listing agreement (the "Agreement") wherein Anada agreed to act as a business consultant and assist in listing Rymark as public company on the Marché Libre standard of the Euronext Exchange.[6] In exchange, Rymark agreed to pay Anada a total of

---

[4] Docket No. 16 ¶¶ 12–13.

[5] Docket No. 290 (operative Counterclaim and Third-Party Complaint).

[6] Docket No. 1-3, at 2. At some point the Marche Libre changed to the "Euronext." Docket No. 290 ¶ 63.

$125,000.00 in part to pay for listing costs and expenses.[7] The Agreement expired after one year.[8]

Leshem used the money to buy a dormant Swiss shell corporation that was renamed "AmeriMark Automotive AG," ("AmeriMark Auto").[9] Thereafter, Markosian's Rymark stock was swapped for AmeriMark Auto stock.[10] Markosian asserts that he did not sell this stock or any stock at issue in this case.[11]

Leshem attempted to list AmeriMark Auto on the Marche Libre, but it was not accepted for reasons that are disputed.[12] Leshem then attempted to get AmeriMark Auto on another European exchange, which also failed.[13] In May 2018, Leshem merged AmeriMark Auto with a company formerly known as 4Service Cloud Tech AG ("4Service"), but renamed AmeriMark Group AG ("AmeriMark Group") which was already listed on the Marche Libre.[14] In April 2019, the Euronext exchange refused admission of the new shares and suspended trading of the 4Service shares, delisting them.[15]

---

[7] Docket No. 1-3, at 2.

[8] *Id.* at 6.

[9] Docket No. 290 ¶ 55.

[10] *Id.*

[11] *Id.* ¶ 20.

[12] *Id.* ¶ 57.

[13] *Id.* ¶ 58.

[14] *Id.* ¶ 63.

[15] *Id.* ¶ 64.

Third-Party Plaintiffs assert that any documentation of these transactions regarding AmeriMark Auto or AmeriMark Group was fraudulently induced or a product of forgery by Leshem and Hesterman, including the forms showing the purported swaps of shares.[16]

In late 2018 or early 2019, Leshem took 13 million shares of AmeriMark Group and transferred them to Whitetree Capital, a Cyprus-based company.[17] Mr. Markosian asserts that he never consented to these transfers or signed documentation related to it.[18] Mr. Markosian alleges that he did not know that Whitetree owned the 13 million shares until he was sued in 2023.[19] In 2019, Leshem successfully listed AmeriMark Group on the Vienna Stock Exchange and sale of the shares began.[20] Mr. Markosian contends he never sold any shares or received any income from such sales.[21]

After AmeriMark Group was listed on the Vienna Stock Exchange, Leshem and other Third-Party Defendants worked to create the impression that AmeriMark Group had European operations. They did so through a series of actions that involved establishing a German voicemail or phone service. The Vienna Stock Exchange began investigating AmeriMark Group for other reasons, including because it had been delisted on the Euronext Exchange. While the stock price originally rose, it cratered when Leshem and others dumped the stock.[22] Investors became angry and began reaching out to Rymark.[23]

---

[16] *Id.* ¶¶ 65–76.

[17] *Id.* ¶¶ 5, 78.

[18] *Id.* ¶¶ 78, 84.

[19] *Id.* ¶ 85.

[20] *Id.* ¶¶ 87–89.

[21] *Id.* ¶ 89.

[22] *Id.* ¶ 8.

[23] *Id.*

Rymark sent a cease and desist letter to AmeriMark Group, Leshem, Hesterman, and Colshorn demanding that AmeriMark Group cease representing that it had "connection with, relationships with, agency with, or authority from" Rymark.[24] The Third-Party Complaint alleges that Leshem, Bernhardt, and Colshorn attempted to conceal the letter from stockholders and exchange authorities while they tried to convince Rymark to retract the letter.[25] Thereafter, Leshem and Bernhardt convinced the Vienna Stock Exchange to accept 6.8 million new shares for trading[26] and Bernhardt and his attorney got updated financial information from Rymark after saying they would use it to seek new investment opportunities for the company.[27] Before the Vienna Stock Exchange announced it would admit the shares, AmeriMark Group released two press releases falsely stating that AmeriMark Group was doing business with European used car marketplace.[28] AmeriMark Group also released two press releases that misleadingly used Rymark's financial results.[29] The stock price then went up 400% before it collapsed again and was delisted.[30]

Third-Party Plaintiffs assert six claims against Leshem: (1) violation of § 10(b) of the Exchange Act[31] and Rule 10b-5[32] (Fourth Cause of Action); (2) violation of Utah securities

---

[24] *Id.* ¶ 9.

[25] *Id.* ¶ 10.

[26] *Id.* ¶ 13.

[27] *Id.* ¶¶ 115-116.

[28] *Id.* ¶ 13.

[29] *Id.*

[30] *Id.* ¶¶ 14, 127. Third-Party Plaintiffs allege a number of additional facts that pertain to the delisted stock, the Court will not recount these as they are not at issue in this Motion.

[31] 15 U.S.C. § 78j(b).

[32] 17 C.F.R. § 240.10b-5(b).

law[33] (Third Cause of Action); (3) civil conspiracy (Fifth Cause of Action); (4) theft by receiving stolen property (Sixth Cause of Action); (5) conversion (Seventh Cause of Action); and (6) fraudulent inducement (Eighth Cause of Action).[34]

Leshem challenges the Third-Party Complaint under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). Having fully reviewed the parties' briefing and finding that oral argument would not be materially helpful,[35] the Court now rules on the Motion to Dismiss.

## II. ANALYSIS

### A. 12(b)(2)

Leshem asserts that this Court lacks personal jurisdiction over him and therefore the claims against him should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2).[36]

"[T]he threshold question in every federal case," is whether the court has the power to entertain the suit."[37] The plaintiff bears the burden to establish personal jurisdiction on each claim asserted.[38] Here, Third-Party Plaintiffs assert both state and federal claims. The Court will address them separately below.

To establish personal jurisdiction over a defendant in a federal question case, "the court must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with

---

[33] Utah Code Ann. §§ 61-1-1 *et seq.*

[34] Docket No. 290.

[35] *See* DUCivR 7-1(g).

[36] Docket No. 301, at 19.

[37] *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

[38] *See Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

due process."[39] Third-Party Plaintiffs' Fourth Cause of Action asserts claims under § 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10(b)(5).[40] The Exchange Act authorizes nationwide service of process.[41]

Having determined that the Exchange Act provides for nationwide service of process, the Court must determine whether exercising jurisdiction over Leshem comports with due process. "[I]n a federal question case where jurisdiction is invoked based on nationwide service of process, the Fifth Amendment requires the plaintiff's choice of forum to be fair and reasonable to the defendant."[42] "To establish that jurisdiction does not comport with Fifth Amendment due process principles, a defendant must first demonstrate 'that his liberty interests actually have been infringed.'"[43] "The burden is on the defendant to show that the exercise of jurisdiction in the chosen forum will 'make litigation so gravely difficult and inconvenient that he unfairly is at a severe disadvantage in comparison to his opponent.'"[44]

In determining whether Leshem has met this burden, the Court considers the following factors:

> (1) the extent of the defendant's contacts with the place where the action was filed; (2) the inconvenience to the defendant of having to defend in a jurisdiction other than that of his residence or place of business, including (a) the nature and extent and interstate character of the defendant's business, (b) the defendant's access to counsel, and (c) the distance from the defendant to the place where the action was brought; (3) judicial economy; (4) the probable situs of the discovery proceedings and the extent to which the discovery proceedings will take place outside the state

---

[39] *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000) (internal quotation marks and citation omitted).

[40] Docket No. 290, at 52.

[41] 15 U.S.C. § 78aa.

[42] *Peay*, 205 F.3d at 1212.

[43] *Id.* (quoting *Republic of Pan. v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 946 (11th Cir. 1997)).

[44] *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)).

of the defendant's residence or place of business; and (5) the nature of the regulated activity in question and the extent of impact that the defendant's activities have beyond the borders of his state of residence or business.[45]

"[I]t is only in highly unusual cases that inconvenience will rise to the level of constitutional concern."[46] Having considered these factors, the Court finds that Leshem does not meet his burden of showing that defending this action in Utah rises to a level of constitutional concern. First, Leshem has had contacts with Utah,[47] as the Complaint alleges that he worked with other Third-Party Defendants to target Rymark, a Utah-based car dealership.[48] Second, Leshem has failed to demonstrate any inconvenience in defending this action in Utah. Leshem's business is far-reaching and involves both foreign and domestic activities. Leshem has also been able to access counsel in this forum. While Florida (and Delaware) are a distance from Utah, Leshem's dealings internationally diminish his argument concerning inconvenience. Further, any inconvenience is lessened by modern methods of communication and transportation.[49]

Third, there is nothing to indicate that judicial economy makes this forum unfair. The Court is already addressing claims and counterclaims that are factually related. Additionally, it is foreseeable that a portion of discovery and discovery proceedings will take place in Utah as Rymark and Markosian are located in the state. Finally, Leshem's activities have effects outside the borders of his home state. As set forth above, this action arises in part out of Leshem's activities with foreign investors and entities, as well as those in the United States. Thus, Leshem

---

[45] *Id.*

[46] *Id.* (quoting *Republic of Pan.*, 199 F.3d at 947).

[47] Even concluding that Leshem's contacts with Utah are minimal, based on the "broad standard" and the remaining factors, any inconvenience to Leshem does not rise to a level of constitutional concern. *See Peay*, 205 F.3d at 1212–13.

[48] Docket No. 290 ¶¶ 1–3.

[49] *Peay*, 205 F.3d at 1213.

"ha[s] not met [his] burden of demonstrating that the [Court's] assertion of jurisdiction will make litigation so difficult and inconvenient that [he] unfairly will be at a severe disadvantage compared to [P]laintiffs."[50]

Having determined that the Court may exercise personal jurisdiction over Third-Party Plaintiffs' federal securities claim, the Court must now consider whether it may exercise pendent personal jurisdiction over the remaining state-law claims, even assuming the Court lacks an independent basis to assert personal jurisdiction over those claims.

Pendent personal jurisdiction often arises where, as here, "one or more federal claims for which there is nationwide personal jurisdiction are combined in the same suit with one or more state or federal claims for which there is not nationwide personal jurisdiction."[51]

> Pendent personal jurisdiction . . . exists when a court possesses personal jurisdiction over a defendant for one claim, lacks an independent basis for personal jurisdiction over the defendant for another claim that arises out of the same nucleus of operative fact, and then, because it possesses personal jurisdiction over the first claim, asserts personal jurisdiction over the second claim. In essence, once a district court has personal jurisdiction over a defendant for one claim, it may "piggyback" onto that claim other claims over which it lacks independent personal jurisdiction, provided that all the claims arise from the same facts as the claim over which it has proper personal jurisdiction.[52]

---

[50] *Id.*

[51] *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180–81 (9th Cir. 2004); *see also IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1056 (2d Cir. 1993) ("[U]nder the doctrine of pendent personal jurisdiction, where a federal statute authorizes nationwide service of process, and the federal and state claims derive from a common nucleus of operative fact, the district court may assert personal jurisdiction over the parties to the related state law claims even if personal jurisdiction is not otherwise available.") (internal quotation marks and citations omitted).

[52] *United States v. Botefuhr*, 309 F.3d 1263, 1272 (10th Cir. 2002) (citations omitted).

Here, all of Third-Party Plaintiffs' claims against Leshem arise out of the same nucleus of operative facts as the Exchange Act claim. Therefore, the Court will exercise pendent personal jurisdiction over these claims.[53]

Leshem references the Agreement's[54] forum selection clause to support his argument that the Court does not have personal jurisdiction under the minimum contacts test.[55] He cites to *Shipp v. International Auto Group of South Florida, Inc.*,[56] in which this Court considered a forum selection and choice of law clause in finding that the Court lacked personal jurisdiction over the defendants. Based on the above finding of personal jurisdiction under nationwide service of process, the Court does not find this case particularly persuasive. Leshem does not otherwise address the Florida forum selection clause by, for example, filing a motion to transfer venue. Accordingly, the Court will not address the applicability of the forum selection clause further in this Order.

B. 12(b)(6)

Leshem next argues that the Court should dismiss each of the claims asserted against him for failure to state a claim.

When evaluating a complaint under Federal Rule of Civil Procedure 12(b)(6), the Court accepts all well-pleaded factual allegations, as distinguished from conclusory allegations, as true and views them in the light most favorable to the non-moving party.[57] The plaintiff must provide

---

[53] *See id.* at 1273 ("[E]ven where a court could legally exercise pendent personal jurisdiction over a claim, a district court retains discretion.").

[54] *See* Docket No. 1-3.

[55] *See* Docket No. 301, at 24–25.

[56] No. 2:16-CV-24-TS, 2016 WL 3951079 (D. Utah July 20, 2016).

[57] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

"enough facts to state a claim to relief that is plausible on its face,"[58] which requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[59] "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[60]

In addition to the forum selection clause discussed above, the Agreement also includes Florida choice of law clause. The parties do not substantively address the choice of law provision as it applies to the state law claims asserted by Third-Party Plaintiffs and both apply Utah law to the claims. Accordingly, the Court will apply Utah law to the state law claims as discussed below.

1. Securities Exchange Act

Third-Party Plaintiffs assert a claim under § 10(b) of the Exchange Act and Rule 10-5, which "prohibit[s] making any material misstatement or omission in connection with the purchase or sale of any security."[61] Leshem first argues that this claim fails because the purchase and sale of the securities at issue were on a foreign exchange or were foreign-based and are therefore extraterritorial and not reached by the Exchange Act. Third-Party Plaintiffs respond that the securities at issue are domestic as detailed below.

In *Morrison v. National Australia Bank*,[62] the Supreme Court held that § 10(b) of the Exchange Act reaches "the use of a manipulative or deceptive device or contrivance only in

---

[58] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[59] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[60] *Id.* (quoting *Twombly*, 550 U.S. at 555, 557) (alteration in original).

[61] *Haliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014).

[62] 561 U.S. 247 (2010).

connection with the purchase or sale of a security or sale listed on an American stock exchange, and the purchase or sale of any other security in the United States."[63] Accordingly, the Court concluded that "the focus of the Exchange Act is not upon the place where deception originated, but upon purchases and sales of securities in the United States."[64] "[R]egardless of whether the underlying fraudulent conduct occurs in or affects the United States, § 10(b) applies only where the security at issue is listed on a domestic stock exchange or, if not so listed, where 'its purchase or sale is made in the United States.'"[65]

Applying this test, the Supreme Court concluded in *Morrison* that § 10(b) did not reach the alleged deceptive write-downs of one of National Australia Bank's subsidiaries' value (located in the United States) because it did not apply extraterritorially.[66] There, the plaintiffs were all residents of Australia who purchased National Australia Bank Stock on the Australia Stock Exchange Limited. The conclusion in *Morrison* was further bolstered by Congress' subsequent decision to amend the Exchange Act to apply extraterritorially in actions initiated by the Securities Exchange Commission ("SEC") and the United States, but not in private actions.[67]

There are no allegations that the transactions at issue in this case were listed on a domestic stock exchange, and as such, the Court need only consider whether the purchase or sale of the securities at issue were made in the United States. Neither the Supreme Court nor the

---

[63] *Id.* at 273.

[64] *Id.* at 266.

[65] *Quail Cruise Ship Mgmt. Ltd. v. Agencia de Viagens CVC Tur Limitada*, 645 F.3d 1307, 1310 (11th Cir. 2011) (quoting *Morrison*, 561 U.S. at 269).

[66] *Morrison*, 561 U.S at 273 ("This case involves no securities listed on a domestic exchange, and all aspects of the purchases complained of . . . occurred outside the United States.").

[67] *See Sec. & Exchange Comm'n v. Scoville*, 913 F.3d 1204, 1216–17 (10th Cir. 2019); 15 U.S.C. §§ 77vb(c), 78aa(b).

Tenth Circuit has addressed a test under *Morrison* to determine what constitutes a domestic purchase or sale.[68] However, courts in this district have looked to the Second Circuit's guidance in analyzing the territoriality of a transaction under § 10(b).[69]

The Second Circuit has held that the location of the parties at the point they "become irrevocably bound" "can be used to determine the locus of a securities purchase or sale."[70] Accordingly,

> in order to adequately allege the existence of a domestic transaction, it is sufficient for a plaintiff to allege facts leading to the plausible inference that the parties incurred irrevocable liability within the United States: that is, that the purchaser incurred irrevocable liability within the United States to take and pay for a security, or that the seller incurred irrevocable liability within the United States to deliver a security.[71]

The Second Circuit has also adopted the Eleventh Circuit's conclusion that "a sale of securities can be understood to take place at the location in which title is transferred."[72]

In his Motion, Leshem does not point to a specific transaction in the Third-Party Complaint, but asserts that the case does not involve the sale or purchase of securities on a domestic exchange and even if it had, the nature of the transactions at issue are all foreign-based, and therefore not subject to § 10(b).[73] Third-Party Plaintiffs assert in their Response that the following three securities purchases or sales of securities are the basis for their claim:

---

[68] The Tenth Circuit has addressed extraterritoriality as it pertains to § 10(b) actions brought by the SEC, but not private actions. *See Scoville*, 913 F.3d at 1216–17.

[69] *See SEC v. Traffic Monsoon, LLC*, 245 F. Supp. 3d 1275, 1295 (D. Utah 2017); *Combs v. Safemoon LLC*, No. 2:22-cv-00642-DBB-JCB, 2024 WL 1347409, at *6 (D. Utah Mar. 29, 2024).

[70] *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 68 (2d Cir. 2012).

[71] *Id.*

[72] *Id.* at 68 (citing *Quail Cruises Ship Mgmt. Ltd.*, 645 F.3d at 1310–11).

[73] Docket No. 301, at 30.

1. The purported exchange of Markosian's Rymark stock for AmeriMark Automotive stock, which was once a dormant Swiss shell company before Leshem purchased it.[74]

2. The alleged reverse merger involving Markosian exchanging AmeriMark Automotive shares for AmeriMark Group shares.[75]

3. The supposed 13,000,000 of Markosian's AmeriMark Group shares to Whitetree.[76]

They argue that the United States is the only place Markosian could have incurred liability or transferred the title in the shares of Rymark because it is the only place Markosian held the shares and he has never been to Switzerland.[77] Leshem argues that the Court should find that Third-Party Plaintiffs allegations regarding these transactions are procedurally improper because they were raised in their Response and should deny the Motion on this point alone. The Third-Party Complaint should be read as a whole,[78] and per the Court's reading, the transactions at issue are sufficiently alleged in the Complaint and properly before the Court.

In *Combs v. Safemoon LLC*,[79] a court in this district applied the Second Circuit's test and did not read *Morrison* and subsequent Supreme Court decisions[80] addressing territoriality under § 10(b) as requiring a plaintiff to affirmatively plead that the transactions were domestic but

---

[74] Docket No. 290 ¶ 55; Docket No. 312, at 27.

[75] Docket No. 290 ¶ 80; Docket No. 312, at 27–28.

[76] Docket No. 290 ¶ 78; Docket No. 312, at 28.

[77] Docket No. 312, at 28.

[78] *See, e.g., Jaramillo v. Padilla*, No. CIV 20-1286 RB/KRS, 2021 WL 4430627, at *4 (D.N.M. Sept. 27, 2021) ("Yet, the Court is not limited to reading the paragraphs immediately under the Count 1 heading but can consider the factual allegations of the Complaint as a whole.").

[79] No. 2:22-CV-00642-DBB-JCB, 2024 WL 1347409 (D. Utah Mar. 29, 2024).

[80] *See Kiobel v. Toyal Dutch Petroleum Co.,* 569 U.S. 108 (2018); *RJR Nabisco, Inc. v. European Cmty.*, 579 U.S. 325 (2016).

rather that dismissal under 12(b)(6) is proper where "the plaintiff pleads facts that suggests that nothing about the transaction is domestic—that is, the security was listed on a foreign exchange, and the purchase and sale took place outside the United States."[81] As such, the court concluded that "*Morrison* suggests that territoriality is closer to an affirmative defense, not a pleading requirement."[82]

The court concluded that if territoriality is an affirmative defense, where the complaint did not allege its elements, dismissal would be improper.[83] It concluded that "even if territoriality is more akin to an element," where the pleading alleged "that the entity originating the sales of securities is located within the United States, the sale [was] made to U.S. residents via the internet, and there is no indication that the sale was consummated elsewhere, th[e] complaint has plausibly alleged that liability was incurred or title was transferred within the United States."[84]

Leshem argues that Third-Party Plaintiffs "fail to carry their burden to demonstrate that the subject transactions were domestic securities."[85] Leshem cites to *City of Pontiac v. Policemen's & Firemen's Retirement Systems v. UBS AG*,[86] in which the Second Circuit concluded that the Exchange Act did not apply to "claims by a foreign purchaser of foreign-issued shares on a foreign exchange simply because those shares [were dual-] listed on a domestic exchange."[87] The court concluded that "the mere placement of a buy order in the

---

[81] *Combs*, 2024 WL 1347409, at *6.

[82] *Id.*

[83] *Id.* at *7.

[84] *Id.*

[85] Docket No. 329, at 8.

[86] 752 F.3d 173 (2d Cir. 2014).

[87] *Id.* at 181.

United States for the purchase of foreign securities on a foreign exchange is [not] sufficient to allege that a purchaser incurred irrevocable liability in the United States."[88] In that case, the Second Circuit also made clear that "a purchaser's citizenship or residency does not affect where a transaction occurs."[89]

Leshem does not make any specific arguments that title was transferred or irrevocable liability was not incurred domestically. Instead, he argues that Third-Party Plaintiffs' contention that Markosian never sold shares in Rymark to anyone is fatal to their argument that the subject transactions were domestic. The Court does not agree. At this juncture, although the facts surrounding the stock transfers are disputed, the Third-Party Complaint "alleges facts leading to the plausible inference that . . . the seller incurred irrevocable liability within the United States to deliver the security."[90] Based on the pleadings, the Court "cannot say at this stage in the proceedings that the alleged transfer . . . lies beyond § 10(b)'s territorial reach."[91]

Next, Leshem contends that the action should be dismissed for failure to plead the claim with sufficient particularity.

To establish a violation under § 10(b) and Rule 10b-5, a complaint must plead the following elements:

> (1) the defendant made an untrue or misleading statement of material fact, or failed to state a material fact necessary to make statements not misleading; (2) the statement complained of was made in connection with the purchase or sale of securities; (3) the defendant acted with scienter, that is, with intent to defraud or

---

[88] *Id.*

[89] *Id.* (internal quotation marks and citation omitted).

[90] *Absolute Activist Value Master Fund Ltd.*, 677 F.3d at 68.

[91] *Quail Cruises Ship Mgmt. Ltd*, 645 F.3d at 1310–11.

recklessness; (4) the plaintiff relied on the misleading statements; and (5) the plaintiff suffered damages as a result of his reliance.[92]

Under Federal Rule of Civil Procedure 9(b), when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." To satisfy Rule 9(b)'s heightened pleading standard, a pleading "must set forth the time, place and contents to the false representation, the identity of the party making the false statements the consequences thereof."[93]

In addition, a claim under § 10(b) is governed by the Private Securities Litigation Reform Act ("PSLRA"), which imposes a heightened standard for pleading the element of scienter.[94] Accordingly, "the complaint shall specify each statement alleged to have been misleading, [and] the reasons why the statement is misleading."[95]

As to the first and third elements, Leshem argues that the Third-Party Complaint fails to plead the misrepresentations with sufficient particularity. Leshem argues, without pointing to any specific deficiency, that the Third-Party Complaint "pleaded a bare-bones count for securities fraud generally and incorporated by reference the entirety of their general allegations without

---

[92] *Smallen v. W. Union Co.*, 950 F.3d 1297, 1304 (10th Cir. 2020) (quoting *In re Zagg, Inc. Sec. Litig.*, 797 F.3d 1194, 1200 (10th Cir. 2015) (emphasis omitted); *see also In re Williams Sec. Litig.-WCG Subclass*, 558 F.3d 1130, 1136 (10th Cir. 2009) (adopting the same elements for violation of a private securities action but parsing the fifth element into (5) that the plaintiff suffered an economic loss; and (6) that the material misrepresentation was the cause of that loss."); *In rea Level 3 Commc'ns, Inc. Sec. Litig.*, 667 F.3d 1331, 1333 (10th Cir. 2012).

[93] *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997) (internal quotation marks and citation omitted).

[94] 15 U.S.C. § 78u-4(b)(2).

[95] *Id.* § 78u-4(b)(1).

pointing to any specific misstatements or facts that would support their . . . claim."[96] "[A] district court is not a depository in which a party may dump the burden of argument and research."[97]

Based on review of the Third-Party Complaint as a whole, the Court finds that it is sufficiently specific in identifying the time, place, and contents of the statements, as well as the identity of the person making the representation. The Third-Party Complaint also sufficiently alleges that Leshem acted with scienter. "Scienter is 'a mental state embracing (1) intent to deceive, manipulate, or defraud,' or (2) recklessness."[98] Intent to deceive, manipulate, or defraud "is easily identified since it encompasses deliberate illegal behavior."[99] Most notably, the Third-Party Complaint alleges that Leshem represented that he would help Rymark raise money in Europe and failed to disclose that he intended to use the shares in an illegal pump-and-dump scheme.[100]

As to the second element, Leshem rehashes the argument that the Third-Party Complaint does not sufficiently specify which securities are at issue. As discussed above, reading the Complaint as a whole, the Court rejects this argument and finds that Third-Party Plaintiffs sufficiently allege this element under Rule 12(b)(6).

Based on the foregoing, the Court will deny the Motion as to the Exchange Act claim.

---

[96] Docket No. 301, at 32–33.

[97] *Hill v. Superior Prop. Mgmt. Servs, Inc.*, 2013 UT 60, ¶ 47, 312 P.3d 1054; *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam) ("Judges are not like pigs, hunting for truffles buried in briefs.").

[98] *Smallen*, 950 F.3d at 1304 (quoting *Anderson v. Spirit Aerosystems Holdings, Inc.*, 827 F.3d 1229, 1236–37 (10th Cir. 2016)).

[99] *City of Phila. v. Fleming Cos.*, 264 F.3d 1245, 1260 (10th Cir. 2001) (internal quotation marks and citation omitted).

[100] *See* Docket No. 290 ¶ 53.

2. Utah Uniform Securities Act

Leshem argues that the Court should dismiss the Utah Uniform Securities Act claim because the Exchange Act claim and the state statutory scheme are "substantively identical" and therefore the state claim should be dismissed on the same grounds.[101]

To plead a claim for securities fraud under Utah law, a plaintiff must allege that, "in connection with the offer, sale, or purchase of any security, directly or indirectly," a person

> (1) employ[ed] any device, scheme, or artifice to defraud; (2) ma[de] any untrue statement of material fact or . . . omit[ted] . . . a material fact necessary in order to make the statements in order to make the statements made, in the light of the circumstances under which they [we]re made, not misleading; or (3) engage[d] in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.[102]

The Act provides that § 61-1-1 applies "to persons who sell or offer to sell when . . . an offer to sell is made in this state."[103]

Based on Leshem's arguments, because the Court denied the Motion as to the Exchange Act claim, the Court will also deny it as to this claim.

3. Economic Loss Doctrine

Next, Leshem asserts that all claims asserted against him are barred under the economic loss rule because Anada and Rymark entered into the Agreement in 2016.[104]

---

[101] Docket No. 329, at 19.

[102] Utah Code Ann. § 61-1-1.

[103] Utah Code Ann. § 61-1-26(1).

[104] Docket No. 301, at 35. The Agreement states that it was entered into April 1, 2015, however, the parties appear to accept it was executed by the parties in 2016. *See id.*; Docket No. 312, at 27.

Third-Party Plaintiffs argue that Leshem's argument is impermissible because it necessarily relies on the Agreement which is not attached to the Amended Third-Party Complaint.[105]

In considering a motion to dismiss, a district court considers the complaint, any attached exhibits,[106] the "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[107] The Court may also consider other documents "referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."[108]

The Agreement is referenced in the Third-Party Complaint[109] but was also filed with the original Complaint against Third-Party Plaintiffs in this matter.[110] The Agreement is central to Third-Party Plaintiffs' claims against Leshem as it provides background for their relationship and a framework for the actions taken. Third-Party Plaintiffs do not dispute the authenticity of the Agreement. Accordingly, the Court will consider the Agreement in considering the Motion to Dismiss.

"The economic loss rule prevents recovery of economic damages under a theory of tort liability when a contract covers the subject matter of the dispute."[111] "Therefore, when a conflict arises between parties to a contract regarding the subject matter of that contract, the contractual

---

[105] Docket No. 312, at 31.

[106] *Commonwealth Prop. Advocs., LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2011).

[107] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

[108] *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

[109] Docket No. 290 ¶ 49.

[110] Docket No. 1-3.

[111] *Reighard v. Yates*, 2012 UT 45, ¶ 14, 285 P.3d 1168.

relationship controls, and parties are not permitted to assert actions in tort in an attempt to circumvent the bargain they agreed on."[112] When a contract exists, any tort claim must be based on a duty independent of the contract and the economic loss rule does not bar a party from bringing a tort claim based on the independent duty.[113]

Under the economic loss rule, "the 'initial inquiry' is 'whether a duty exists independent of any contractual obligations between the parties.'"[114] "If the duty 'emanates from bargains, it is within the ambit of contract law.' If the duty 'emanates from the interdependent nature of human society, it is governed by tort principles.'"[115]

Third-Party Plaintiffs first argue that because they have not brought any breach of contract claims, the economic loss rule does not apply. The Court does not agree. "[T]ort claims . . . are barred by the economic loss rule if those claims are grounded in the same duties that exist by virtue of the parties' contract."[116] Whether Third-Party Plaintiffs assert a contract claim or not is not relevant to the economic loss doctrine analysis, it is whether the duties asserted under the tort claims arise out of the contract. The Court therefore rejects this argument.

Leshem asserts that the following claims are barred by the economic loss rule: (1) Violation of the Utah Uniform Securities Act; (2) Violation of the Exchange Act; (3) Civil Conspiracy; (4) Receiving/Retaining/Withholding/Disposing of Stolen Property under Utah

---

[112] *Chinitz v. Ally Bank*, No. 2:19-cv-00059, 2020 WL 1692817, at *4 (D. Utah Apr. 7, 2020) (internal quotation marks and citation omitted).

[113] *Id.*

[114] *Preventive Energy Sols., LLC v. nCap Ventures 5, LLC*, No. 21-4099, 2023 WL 7148434, at *8 (10th Cir. Oct. 31, 2023) (quoting *Davencourt at Pilgrams Landing Homeowners Ass'n v. Davencourt at Pilgrams Landing, LC,* 2009 UT 65, ¶ 27, 221 P.3d 234).

[115] *Id.* (quoting *Reighard*, 2012 UT 45, ¶ 19) (internal quotation marks omitted).

[116] *KTM Health Care Inc. v. SG Nursing Home LLC*, 2018 UT App 152, ¶ 76, 436 P.3d 151.

Code Ann. § 76-6-408 (pled in the alternative); (5) Conversion (pled in the alternative); and (6) Fraudulent Inducement.

Third-Party Plaintiffs assert that the conduct pled in these claims occurred after the contract expired in April 2017 and therefore the economic loss rule does not apply. Leshem responds that the contract was "impliedly extended through the parties' continued performance thereunder."[117]

The Exchange Act and Utah Securities Act claims are based on both pre and post contract statements, as are the civil conspiracy and the theft by receiving stolen property claims.[118] The conversion claim arises from actions occurring after the contract expired.[119] Based on when the allegations supporting these claims occurred, it is not clear that the contract terms apply. For those allegations occurring after the Agreement expired, there is not enough information before the Court to determine that (1) there was an implied contract in fact and (2) the terms of such a contract. Accordingly, the Court will not apply the economic loss rule to bar these claims at this time.

Furthermore, the theft by receiving stolen property, conspiracy, and conversion claims involve the alleged transfer of AmeriMark Group stock to Whitetree Capital. The Agreement covers Anada listing Rymark on the Marché Libre, including assistance in formation and capitalization of a Swiss holding company. However, at this point, it is not clear to the Court if the Agreement, or some other implied in fact contract, covers the transfer of shares to Whitetree, and Leshem only makes conclusory assertions that the rule applies to these claims.

---

[117] Docket No. 329, at 27 (citing 17A Am. Jur. 2d Contracts § 17).

[118] *See* Docket No. 290 ¶¶ 78, 195.

[119] *Id.* ¶¶ 78, 204.

Finally, turning to the fraudulent inducement claim, the Third-Party Complaint pleads the following fraudulent misrepresentations regarding Leshem: (1) Leshem and Hesterman's representations that they could help Rymark raise money in Europe without disclosing that they actually intended to use Rymark for a pump-and-dump scheme; and (2) Leshem and Hesterman's repeated forging of documents in service of the scheme.[120]

The first allegation appears to have occurred prior to the Agreement,[121] while the forgery allegations appear to span from 2016 to 2019,[122] encompassing a time period before and after the Agreement was in effect and operative. Courts applying Utah law have concluded that the economic loss rule does not apply where a fraudulent inducement claim includes allegations that the defendant "committed a tort before the contract was ever entered into" by alleging that the defendant "misrepresented facts before the [contract] . . . ."[123] When a fraud in inducement claim contains allegations that are extraneous to the contractual dispute, it is not barred by the economic loss rule.[124] As to the second allegation, as discussed above, it includes allegations occurring after the expiration of the Agreement and there is insufficient information for the Court to determine whether an implied in fact contract existed and the terms of such a contract.

Leshem argues that Third-Party Plaintiffs' "central thesis" that he never intended to raise money in Europe but instead intended to use Rymark in a pump and dump scheme essentially

---

[120] Docket No. 290 ¶ 210.

[121] *Id.* ¶¶ 49–50, 53–54.

[122] *Id.* ¶¶ 67–76.

[123] *Assoc. Diving & Marine Contractors, LC v. Granite Constr. Co.*, No. 2:01-CV-330, 2003 WL 25424908, at *7 (D. Utah July 11, 2003).

[124] *See KTM Health Care Inc.*, 2018 UT App 152, ¶ 79.

states that he misrepresented that he would comply with the contract, an allegation that is barred by Utah's economic loss rule.[125]

Allegations that the defendant fraudulently represented that "it had the ability to comply and perform in accordance with the terms of the parties contract" or "that it would comply and perform in accordance with the terms[,]" "are quintessential breach of contract allegations."[126] Here, the allegations appear to be more than that Leshem merely did not intend to comply with the contract, but that he made a material omission in regards to the pump-and-dump scheme. Further, the application of the economic loss rule to the fraud-based claims "hinge[s] upon issues of fact that may not be appropriately resolved at this point."[127] Accordingly, the Court finds that at this juncture, the economic loss rule does not bar the claims.

4. Civil Conspiracy

"Under Utah law, civil conspiracy requires proof of five elements: '(1) a combination of two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof.'"[128] "[W]here the unlawful act underlying the civil conspiracy is a fraud-based tort, both the underlying tort and the conspiracy claim must be pleaded with particularity."[129]

---

[125] Docket No. 301, at 36.

[126] *KTM Health Care Inc.*, 2018 UT App 152, ¶ 78 (internal quotation marks and citation omitted).

[127] *Clearone Commc'ns, Inc. v. JAS Forwarding*, No. 2:09-CV-450-TS, 2009 WL 3248120, at *4 (D. Utah Oct. 7, 2009) (denying a motion to dismiss).

[128] *Celtig, LLC v. Patey*, 347 F. Supp. 3d 976, 985 (D. Utah 2018) (quoting *Pohl, Inc. of Am. v. Webelhuth*, 2008 UT 89, ¶ 29, 201 P.3d 944).

[129] *GeometWatch Corp. v. Hall*, No. 1:14-cv-00060-JNP-PMW, 2017 WL 1136946, at *17 (D. Utah Mar. 27, 2017) (quoting *Unified Container, LLC v. Mazuma Cap. Corp*, 280 F.R.D. 632, 636–37 (D. Utah 2012)).

Here, the Third-Party Complaint pleads that Third-Party Defendants and Counter Defendants "undertook fraudulent misrepresentations or material omissions, or other unlawful, overt acts,"[130] as part of the conspiracy. The conspiracy claim is based, at least in part, on an underlying fraud-based tort and therefore subject to Rule 9(b) particularity requirements.

Defendants assert that the Third-Party Complaint fails to allege Leshem's participation in the civil conspiracy with particularity and heightened pleading standard applicable to fraud. Third-Party Plaintiffs argue that this argument was already rejected by the Court in September 2024,[131] in which the Court granted Third-Party Plaintiffs' Motion to File an Amended Counterclaim and Third-Party Complaint.[132] The Court does not find that its ruling there precludes Leshem's argument.

The Court concludes however, that as above, the Third-Party Complaint sufficiently alleges "the time, place, and contents of the false representations," as well as "the identity of the party making" the representations.[133] Furthermore, the Court concludes that the Third-Party Complaint sufficiently pleads the details of Leshem's alleged participation in the conspiracy.[134] The Court will therefore deny the Motion as to the civil conspiracy claim.

5. Fraudulent inducement

To state a claim for fraudulent inducement, a plaintiff must plead,

(1) a representation; (2) concerning a presently existing materially fact; (3) which is false; (4) which the representator either (a) knew to be false, or (b) made recklessly, knowing that he or she had insufficient knowledge on which to base

---

[130] Docket No. 290 ¶ 189.

[131] Docket No. 137.

[132] *Id.* at 9.

[133] *Davis*, 2018 WL 1415192, at *3.

[134] *See, e.g.*, Docket No. 290, ¶¶ 56, 57, 59–63, 69, 78–83, 86–88, 94–95, 103, 113–114, 122.

such representation; (5) for the purpose of inducing the other party to act upon it; (6) that the other party, acting reasonably and in ignorance of its falsity; (7) did in fact rely upon it; (8) and was thereby induced to act; (9) to his or her injury and damage.[135]

Leshem asserts that the fraudulent inducement claim fails for the same reason as the civil conspiracy claim. As discussed above, the Court concludes that the Third-Party Complaint is sufficient under Rule 9(b) and will therefore deny the Motion as to this claim.

6. Theft by Receiving Stolen Property

Under Utah Code Ann. § 76-6-408(2),

[a] person commits theft if the person receives, retains, or disposes of the property of another knowing that the property is stolen, or believing that the property is probably stolen, or who conceals, sells, withholds, or aids in concealing, selling, or withholding the property from the owner, knowing or believing the property to be stolen, intending to deprive the owner of the property.

Leshem argues this claim should be dismissed because the statute "is primarily designed to address situations where an individual gives stolen property to a business dealing in secondhand goods."[136] This Court has previously rejected the argument that § 76-6-408 applies only to pawnbrokers, secondhand businesses, and coin dealers.[137]

Leshem also argues that the statute does not apply to the alleged conduct. He cites to *Labertew v. WinRed, Inc.*,[138] in which a court in this district dismissed a theft by receiving claim where the complaint alleged that the defendant "affirmatively stole" money through direct

---

[135] *Robinson v. Tripco Inv., Inc.*, 2000 UT App 200, ¶ 12, 21 P.3d 219 (internal quotation marks and citation omitted).

[136] Docket No. 301, at 37 (quoting *Labertew v. WinRed, Inc.*, No. 2:21-CV-555-TC, 2022 WL 1568924, at *8 (D. Utah May 18, 2022)).

[137] *Sorenson v. Polukoff*, No. 2:18-CV-67 TS-PMW, 2020 WL 1692815, at *8 (D. Utah Apr. 7, 2020).

[138] No. 2:21-CV-555-TC, 2022 WL 1568924, at *1 (D. Utah May 18, 2022).

solicitation, and concluded that "the statute does not cover such conduct."[139] Leshem argues that *Labertew* "controls" this issue regarding the application of § 76-6-408. The Court does not agree.

The allegations here differ from those in *Labertew*, as they include the allegation that Leshem transferred stolen shares to Whitetree. Further, the Court finds *State v. Stevens*,[140] a Utah Court of Appeals case in which a criminal defendant appealed his conviction for theft by receiving stolen property, instructive. There, the court concluded that "[t]he gravamen of theft by receiving stolen property in a case such as this is simply possession of the property with the required mental states, i.e. knowledge or belief that the property is stolen and the intent to deprive the owner of the property."[141] Read with § 76-6-408(1)(a)(vi), which states that "'[r]eceives' means acquiring possession, control, title, or lending on the security of the property[,]"[142] the Court is not persuaded by Leshem's argument that because the Third-Party Complaint pleads that Leshem stole the shares from Mr. Markosian and Rymark, it fails to state a claim. Not only does the Third-Party Complaint include allegations beyond that conduct, the statute's language and subsequent interpretation do not support Leshem's reading. Accordingly, the Court will deny the Motion as to the theft by receiving claim.

7. Conversion

"To prove conversion, a party must establish an act of willful interference with property, done without lawful justification, by which the person entitled to property is deprived of its use and possession, and that the party is entitled to immediate possession of the property at the time

---

[139] *Id.* at *8.

[140] 2011 UT App 366, 264 P.3d 555.

[141] *Id.* ¶ 13.

[142] Utah Code Ann. § 76-6-408(1)(a)(vi).

of the alleged conversion."[143] "A basic requirement of conversion is 'that there be a wrongful exercise of control over personal property in violation of the rights of its owner.'"[144]

Leshem asserts that the Third-Party Complaint fails to allege a lack of lawful justification. The Court does not agree. The Complaint alleges that Leshem stole the shares of AmeriMark Group stock from Markosian and transferred them to Whitetree Capital.[145] It further alleges that Mr. Markosian never consented to this transfer or signed any documentation related to it.[146] This sufficiently pleads the Leshem willfully interfered with Markosian's property without lawful justification.

In his Motion, Leshem also argues that the Complaint fails to sufficiently allege the fourth element, that Markosian would be entitled to immediate possession of the property at the time of the alleged conversion given his denial of the validity of the transactions from Rymark to AmeriMark Auto and AmeriMark Group. However, after Third-Party Plaintiffs point out that the claim is pled in the alternative, Leshem does not reassert his argument on Reply. The Court will therefore deny the Motion as to this claim.

8. Declaratory Judgment claims

Finally, although Leshem does not challenge the declaratory relief claims, the Court will address them sua sponte. "[T]he Declaratory Judgment Act does not provide an independent federal cause of action."[147] While Third-Party Plaintiffs may request declaratory relief, as they

---

[143] *Nielsen v. Cronquist*, 2026 UT App 65, ¶ 50, --- P. 3d --- (quoting *Rand v. KOA Campgrounds*, 2014 UT App 246, ¶11, 338 P.3d 222).

[144] *Bonnie & Hyde, Inc. v. Lynch*, 2013 UT App 153, ¶ 30, 305 P.3d 196 (quoting *Frisco Joes, Inc. v. Peay*, 558 P.2d 1327, 1330 (Utah 1977)).

[145] Docket No. 290 ¶ 78.

[146] *Id.*

[147] *Nero v. Oklahoma*, No. 22-6121, 2022 WL 14423872, at *2 (10th Cir. Oct. 25, 2022).

have done,[148] stand-alone claims for such are not proper. Accordingly, the Court will dismiss the first and second causes of action but still allow Third-Party Plaintiffs to seek those remedies to the extent they are supported by the asserted claims.

III. CONCLUSION

It is therefore

ORDERED that Third-Party Defendant Leshem's Motion to Dismiss (Docket No. 301) is DENIED.

DATED May 18, 2026

BY THE COURT:

_____
TED STEWART
United States District Judge

---

[148] Docket No. 290, at 61.